## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

RUSSELL ZINTER;
JACK MILLER;
BRIAN HOWD;
JAMES A. MEAD;                                   CIVIL ACTION NO: 5:18-CV-680
JOSEPH BRANDON PIERCE;
MARK BROWN;
DAVID BAILEY;
JUAN GONZALES JR.;
KEVIN EGAN;
JONATHON GREEN;
JAMES SPRINGER;

         *Plaintiffs*,

VS.

Chief Joseph Salvaggio;
Lieutenant David Anderson;
Deputy *Jane Doe* Goldman;
Officer Johnny Vasquez;
Cpl. Chad Mandry;
Sergeant *John Doe*;
Officer Jimmie Wells;
Corporal Louis Farias, badge 534;
Officer Brandon Evans, badge 556;
Officer Uziel Hernandez;
*John Doe Tazer 1*;
*John Doe Tazer 2*; and
The CITY OF LEON VALLEY, a political
subdivision of the State of Texas;

         *Defendants*.

_____/

## FIRST AMENDED COMPLAINT AND JURY DEMAND

NOW COME Plaintiffs, by and through their attorneys, Brandon Grable of Grable Law Firm PLLC, and Solomon M. Radner of Excolo Law PLLC, complaining of Defendants, respectfully allege as follows:

## JURISDICTION AND VENUE

1.     This is a civil rights action in which the Plaintiffs seeks relief for the violation of their rights secured by 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments.

2.     Jurisdiction of this Court is found upon 28 U.S.C. § 1331.

3.     Venue is properly laid in the Western District of Texas under 28 U.S.C. § 1391(b)(2).

4.     The events that give rise to this lawsuit took place at the police department located in Leon Valley, Texas.

## PARTIES

5.     Plaintiff, Russel Zinter  ("Russell"), is a law-abiding citizen of the United States and a resident of the City of San Antonio, Texas.

6.     Plaintiff, Jack Miller ("Miller"), is a law-abiding citizen of the United States and a resident of the City of San Antonio, Texas.

7.     Plaintiff, Brian Howd ("Howd"), is a law-abiding citizen of the United States and a resident of the City of Norton, OH and he was on vacation in the San Antonio area at all pertinent times.

8.     Plaintiff, James A. Mead  ("Mead"), is a law-abiding citizen of the United States and a resident of the City of San Antonio, Texas.

9.    Plaintiff, Joseph Brandon Pierce  ("Pierce"), is a law-abiding citizen of the United States and a resident of the City of Crowley, Texas.

10.   Plaintiff, Mark Brown ("Brown"), is a law-abiding citizen of the United States and a resident of the City of Tucson, Arizona.

11.   Plaintiff David Bailey is a law-abiding citizen of the United States and a resident of the City of San Antonio, Texas

12.   Plaintiff Juan Gonzales Jr, is a law-abiding citizen of the United States and a resident of the City of San Antonio, Texas.

13.   Plaintiff Kevin Egan is a law-abiding citizen of the United States and a resident of the City Chicago, IL.

14.   Plaintiff Jonathon Green is a law-abiding citizen of the United States and a resident of the City of Westerville, OH.

15.   Plaintiff James Springer is a law-abiding citizen of the United States and a resident of the City of Rowlett, TX.

16.   Defendant City of Leon Valley ("City Defendant") is a political subdivision of the State of Texas, acting under color of state law, and is a person for the purposes of a 42 U.S.C. 1983 action.

17.   Defendant Joseph Salvaggio is and was at all pertinent times the chief of the Leon Valley police department and as such was Leon Valley's policymaker and/or decisionmaker regarding law enforcement training, supervision, rules and procedures. He also at all pertinent times acted as supervisor to all other Leon Valley named defendants, all of whom were at all pertinent times his subordinates.

18.   Defendant *Jane Doe* Goldman was at all pertinent times a sheriff deputy employed by Bexar County and was at all pertinent times acting under color of state law in performance of her duties as a sheriff deputy.

19.   Defendant Lieutenant David Anderson was at all pertinent times a supervisory police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

20.   Defendant Johnny Vasquez was at all pertinent times a police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

21.   Defendant Chad Mandry was at all pertinent times a supervisory police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

22.   Defendant Jimmie Wells was at all pertinent times a detective police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

23.   Defendant Uziel Hernandez was at all pertinent times a police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

24.   Defendant Louis Farias was at all pertinent times a police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

25.   Defendant Brandon Evans was at all pertinent times a police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

26.   Defendants John Doe Tazer 1 and 2 were at all pertinent times police officers employed by Leon Valley and were at all pertinent times acting under color of state law in performance of their duties as a Leon Valley police officers.

27.   Defendant Sergeant *John Doe* was at all pertinent times a sergeant employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

28.   At all times relevant hereinafter mentioned, the individual Defendants were personally acting under the color of state law, and, with the exception of Goldman, in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the City of Leon Valley.

29.   Each and all the acts of the individual Defendants alleged herein were committed by said Defendants while acting within the scope of their employment by the Leon Valley Police Department, other than Goldman.

30.   Each and all of the acts of the individual defendants were committed by Defendants knowingly, recklessly, intentionally, wantonly, callously, and/or with deliberate indifference and/or gross negligence.

31.   Each and all of the herein complained of unlawful and/or unconstitutional acts of the individual law enforcement officials, were done despite their knowledge that they were engaging in unlawful and unconstitutional acts, and

yet did them anyway knowingly, recklessly, intentionally, wantonly, callously, and/or with deliberate indifference and/or gross negligence.

## STATEMENT OF FACTS

32.     This action involves activity that took place on June 14, 2018, June 18, 2018 and June 23, 2018.

### *The June 14, 2018 Incident*

33.     On June 14, 2018, people gathered at the Leon Valley police department to protest against what they perceived to be an unlawful arrest.

34.     Among those present, was Plaintiff Mark Brown.

35.     Brown and a second individual attempted to enter the municipal building, which was home to, among other things, the police station, municipal offices, and courthouse. Brown was holding a camera during this attempted entry.

36.     The duo was stopped at the door and ordered to turn around since cameras are not permitted in the building, per Leon Valley policy. Although the building houses the police department, Leon Valley policy precludes any cameras from being used anywhere in the building since the building is, occasionally used as a courthouse. This policy is in effect even on days and during times on which no court is in session.

37.     Brown was, without warning and without any lawful basis, grabbed by unidentified officers and tazed numerous times. Brown at no time resisted the officers' actions nor did he assault or threaten the officers. Brown was violently arrested and then he was maliciously and falsely charged with two crimes: failure to obey an officer, and resisting arrest. Both of these charges are baseless, yet they are

pending. Excessive force was unlawfully used by the police while taking people into custody.

### *The June 18, 2018 Incident*

38.     On June 18, 2018, people gathered at the Leon Valley police station to protest what they perceived to be unlawful police actions.

39.     Among those gathered were Russell Zinter, James A. Mead, Joseph Brandon Pierce, David Bailey, and Juan Gonzales.

40.     This protest included the hoisting of a partially burnt parody American flag made popular by law enforcement as a form of propaganda. The propaganda parody American flag looks similar to the real American flag but it is striped blue instead of red and white. This parody flag is not the real American flag – it is a law enforcement parody used for propaganda.

41.     Numerous police officers, at the direction of Chief Salvaggio, and Lieutenant Anderson and other supervisors, without lawful basis detained and/or arrested a number of people who were merely present. These officers, also at the direction of Chief Salvaggio and Lieutenant Anderson and other supervisors, acting in their capacities as both policymakers/decisionmakers for Leon Valley, in their supervisory capacities over the subordinate officers, and in their individual capacities, unlawfully confiscated personal property from the people present, and the unlawful and unconstitutional arrest and/or detainment of many.

42.     These seizures were without any lawful basis. The detentions and arrests were without lawful basis. The criminal charges charged were without any lawful basis. Excessive force was used by the police unlawfully.

### *The June 23, 2018 Incident*

43.     On June 23, 2018, people gathered at the Leon Valley police station to protest what they perceived to be unlawful actions by the Leon valley police.

44.     In the afternoon, at around 4:00 PM, Defendant Salvaggio personally told a number of the people there that he would hold a press conference shortly and showed them where the press conference would be with the intent that they would head to that area with their cameras.

45.     Shortly after the so-called press conference began, Defendant Salvaggio ordered his subordinate Leon Valley officers to arrest of all those present and he further ordered the confiscation of any property capable of taking pictures or video. Defendant Salvaggio and the other defendants also directed criminal charges to be levied against some of those gathered, even though no lawful basis whatsoever existed to levy these charges, and there was an absence of reasonable suspicion or probable cause.

46.     There was no lawful basis to detain or arrest people, nor was there a lawful basis to confiscate anybody's property. Virtually all the property seized by the police has still not been returned.

47.      Excessive force was used by the police unlawfully.

## MEET THE PLAINTIFFS

### *Plaintiff Russell Zinter*

48.     Plaintiff Zinter was present for the June 18 and June 23 incidents and was engaging in Constitutionally protected conduct at all times.

49.     On June 18, 2018, Zinter's personal property including his camera and his iPhone 6 and a cord were taken from him by Defendant Farias.

50.      Farias had no lawful basis to seize Zinter's property.

51.      Zinter's property is still in police custody.

52.     On June 23, Zinter was at the gathering but was not present for the protest. Zinter left earlier in the day and made it home safely.

### *Plaintiff Jack Miller*

53.     Plaintiff Miller was present for the June 23 incident and was engaging in Constitutionally protected conduct at all times.

54.     Miller was open carrying a rifle, which was strapped onto his person.

55.     Miller went to a store across the street from the police station only minutes before the press conference began. When Miller emerged from the store, he saw his friends being unlawfully arrested and having their property unlawfully seized. Based on these actions from the police, Miller was afraid to continue engaging in First Amendment protected conduct, including gathering in front of the police station, since it was clear he would be arrested if he did so.

56.     This chilling effect was the purpose of arresting those who were gathered and Miller suffered as a result.

### *Plaintiff Brian Howd*

57.     Plaintiff Howd was present for the June 23 incident and was engaging in Constitutionally protected conduct at all times.

58.     Plaintiff Howd was approached by Defendants Hernandez and another officer believed to be Defendant Evans who immediately and without lawful basis

detained, handcuffed, arrested and brought Howd into custody in the Leon valley police station.

59.     Howd's camera was taken from him by Defendants Hernandez and Evans without any lawful basis. Howd's camera is still unlawfully in police custody.

60.     Hernandez and Evans then maliciously, unlawfully, and without probable cause, initiated a criminal charge against Howd, for allegedly obstructing and resisting officers, but the magistrate dismissed this charge since it lacked probable cause.

### *Plaintiff James A. Mead*

61.     Plaintiff Mead was present for the June 18 and June 23 incidents.

62.     On June 18, 2018, Mead was holding Plaintiff Bailey's camera outside the police station when a commotion coming from inside the police station grabbed his attention. An unidentified sergeant, Defendant John Doe Sergeant, approached Mead and advised Mead that he is under arrest for failing to identify himself to law enforcement. Sergeant then handcuffed Mead and brought him into the custody of the police station.

63.     Upon entering the station, Sergeant falsely advised Defendant Anderson that Mead was refusing to identify himself.

64.     Sergeant then unlawfully searched Mead and emptied Mead's pocket and searched Mead's wallet.

65.     Sergeant took unlawfully seized Mead's camera as well as Bailey's camera, which Mead was holding for Bailey.

66.     Defendant Anderson, acting both in his supervisory capacity over Sargent as well as in his decisionmaker/policymaker capacity for Leon Valley, unlawfully ordered Sergeant to "book him."

67.     Sergeant then unlawfully brought Mead to the conference room where they were booking people, while Mead's hands were still cuffed.

68.     At one point, a corporal, presumed to be Defendant Mandry, approached Mead and tightened his handcuffs unnecessarily to the point where they were bruising Mead's skin.

69.     Shortly thereafter, Defendant Mandry released Mead but gave him an unlawful trespass warning which essentially advised Mead that if Mead would be on public property, Mead would be arrested for criminal trespass. There was no lawful basis whatsoever to give this order and it created a chilling effect on Mead to the extent that Mead avoided walking on public property for fear of being unlawfully arrested.

70.     Mead was then released from custody without being criminally charged.

71.     On June 23, 2018, Mead attended the gathering at the police station, but stayed off the sidewalk for fear of being unlawfully arrested for trespassing.

72.     When Chief Salvaggio began what was supposed to be a press conference, Mead stayed on the street but got as close to the press conference as he could without being on the sidewalk.

73.     Mead was approached by Defendant Vasquez who detained Mead and ordered Mead to go against a wall where the police were detaining people.

74. Mead advised that he was unable to do so because of the trespassing warning he had received, but Vasquez gave Mead special permission this once to be in the police station property.

75. Defendant Salvaggio unlawfully ordered that everyone must be detained until they could be identified.

76. Mead was approached by a San Antonio Police officer, badge number 1486, who ordered Mead to identify himself. This officer then placed Mead in his squad car, without any lawful basis.

77. Some time later, Defendant Vasquez returned and unlawfully searched Mead and then unlawfully seized Mead's phone without any probable cause or reasonable suspicion that criminal activity was afoot.

78. Vasquez provided a property receipt to Mead, thereby documenting this unlawful seizure of Mead's property.

79. Mead was then released without being charged with a crime.

### *Plaintiff Joseph Brandon Pierce*

80. Plaintiff Pierce was present for both the June 18 and June 23 incidents.

81. On June 18, 2018, Pierce's phone was seized without any lawful basis, at the direction of Defendant Salvaggio and Defendant Anderson despite there being no reasonable suspicion or probable cause that Pierce was involved in any criminal activity or that any criminal activity was afoot.

82.     Despite Pierce's phone being in police custody, the police have refused to acknowledge that his phone is in their custody or provide him with a property receipt.

83.     On June 23, 2018, Pierce was present for the gathering at the police station. He had a camera out and was livestreaming the events.

84.     Eventually, at around 4:00 pm, Defendant Salvaggio came outside and announced that there would be a press conference soon.

85.     After waiting some time to no avail for the press conference to begin, Pierce went to a store across the street and when he emerged from the store a short time later, he witnessed people being arrested at the press conference and having their property seized.

86.     Defendant Vasquez saw Pierce and ordered Pierce to stop. Vasquez handcuffed Pierce and brought Pierce into custody in the police station without any probable cause or reasonable suspicion that Pierce was engaged in criminal activity or that any criminal activity was afoot.

87.     Once in custody in the station, Pierce was subjected to a search of his person and a seizure of his camera without lawful basis.

88.     Defendant *Jane Doe* Goldman, a female sheriff deputy, groped Pierce sexually and made sexually explicit comments to Pierce while she was purporting to conduct a search of his person.

89.     Pierce was maliciously charged with the crime of "interference" but the magistrate dismissed that charge for lack of probable cause.

90.     Pierce was in police custody for around sixteen hours, including about four hours AFTER the magistrate dismissed the criminal charge.

91.     Without any lawful basis and with malicious intent, Defendants Anderson and Salvaggio approved or ordered Vasquez to handcuff, arrest, search, maliciously criminally charge Pierce with a crime, and seize Pierce's phone all without probable cause or reasonable suspicion of criminal wrongdoing or any other lawful basis.

92.     Prior to releasing Pierce, Defendants Vasquez and/or Anderson gave Pierce a property receipt and a trespass warning, unlawfully warning Pierce that he would be arrested if spotted on city owned property.

93.     This unlawful warning had a chilling effect on Pierce and it prevented Pierce from engaging in constitutionally protected conduct, IE walking on public property out of fear that we would be subject to an unconstitutional arrest for criminal trespass.

### *Plaintiff Mark Brown*

94.     Plaintiff Brown was present for the June 14, 2018 incident.

95.     One June 14, 2018, Brown was engaging in constitutionally protected conduct in front of the police station by engaging in peaceful protest.

96.     Despite this, brown was unlawfully arrested and has his camera seized without probable cause or reasonable suspicion of any criminal wrongdoing.

97.     During the unlawful arrest, at least two officers viciously attacked Brown tazing him repeatedly and breaking some of Brown's ribs.

98.     Brown was further frivolously and maliciously charged with two criminal offenses: interference and resisting arrest, which are pending as of the date of the filling of this action.

99.     Brown had his property, including his camera and car, seized, was arrested, and was criminally charged as a punishment and in retaliation for recording the police. Recording the police in a public domain is constitutionally protected conduct.

100.    Plaintiffs are unsure of who the officers were who participated in these violations of Brown's rights, so they are named as John Doe Tazer 1 and John Doe Tazer 2.

101.    Brown was taken to the hospital for treatment after the officers' vicious attack on him.

### *Plaintiff Bailey*

102.    Plaintiff Bailey was present for the June 18, 2018 incident.

103.    On June 18, 2018, Bailey entered the police station and was standing in the foyer holding the partially burnt police parody of the American flag and was dragging it on the floor and stepping on it. This was constitutionally protected conduct.

104.    Defendant Anderson arrested Bailey and told Bailey he was under arrest for "blocking a highway."

105.    Further, Defendant Anderson handcuffed Bailey, ensuring the handcuffs were extra tight which caused Bailey unnecessary pain, and then locked Bailey in a cell.

106.    In addition to the unlawful arrest, Bailey was subjected to seizure of his property as well. Specifically, Defendant Anderson, at the direction of Defendant Salvaggio and with the assistance of unidentified officers, seized from Bailey the following property:

      a.  2008 Mercedes Benz CLK550, which was unconstitutionally held for 28 hours before it was returned;

      b.  Samsung S6 Edge phone, which is still in police custody;

      c.  GoPro 4 Black, which is still in police custody;

      d.  Camera stabilizer, which is still in police custody;

      e.  GoPro microphone, which is still in police custody;

      f.  Miscellaneous wires, which are still in police custody;

      g.  ATT tablet which was in the seized vehicle but which was taken out of the vehicle and remains in police custody.

107.   There was no probable cause or reasonable suspicion of criminal wrongdoing that justified any of these actions by these officers. It was done as punishment and retaliation for Bailey's herein described protected conduct.

108.   Bailey's charge for "obstructing a highway" is currently pending.

### *Plaintiff Gonzales*

109.   Plaintiff Gonzales was present at the June 18, 2018 incident.

110.   On June 18, 2018, Gonzales was at a gathering at the police station recording the events that were taking place outside of the building.

111.   Without warning and without any lawful basis, Defendant Chad Mandry and another officer grabbed Gonzales' arm and ordered him to hand over his camera.

112.   Defendant Mandry then shoved Gonzales against a window and handcuffed Gonzales, advising that he was under arrest for failure to identify himself as a witness.

113.   Gonzales was never asked to identify himself.

114.   This arrest was without reasonable suspicion or probable cause of any criminal wrongdoing. It was done in retaliation and as punishment for recording the police, which was constitutionally protected conduct.

115.   Defendant Mandry further told Gonzales that he would obtain a warrant to watch the videos on Gonzales' devices.

116.   Gonzales was released several hours later without being charged, but his property is still in police custody.

117.   Prior to his release, Gonzales was warned by Mandry at the direction of Defendant Salvaggio, that he would be arrested for criminal trespass if he was seen on public property such as the Leon Valley library or police station.

118.   This was an unlawful threat of what would be an unlawful arrest and created a chilling effect on Gonzales who became fearful of walking on Leon Valley public property for fear of being arrested for criminal trespass.

### *Plaintiff Egan*

119.   Plaintiff Egan was present for the June 23, 2018 incident.

120. On June 23, 2018, Egan attended a gathering with others outside of the police station to protest what they perceived to be unlawful actions by the Leon Valley police.

121. Egan was not there to record anything and he did not take any pictures or videos. He was simply there to observe.

122. Egan was getting ready to leave due to the heat index coupled with his age, IE 70 years old, but then Defendant Salvaggio announced an impending press conference.

123. Wanting to hear what Defendant Salvaggio would say, Egan decided to stick around a little while longer.

124. Unfortunately, the press conference began with Defendant Salvaggio detaining and/or arresting everyone who was there, including Egan. In fact, Salvaggio began by announcing that everyone present was being detained as either a criminal suspect or as a witness. Detaining witnesses against their will is blatantly unconstitutional.

125. Defendant Salvaggio ordered Egan and others to remain outdoors in the blistering heat, demonstrating a callous indifference to their health.

126. Egan and others advised Defendant Salvaggio of Egan's health condition but Defendant Slavaggio did nothing adequate to address Egan's health concerns.

127. Egan was detained against his will in the hot sun while his health worsened, and yet there was no probable cause or reasonable suspicion of any criminal wrongdoing.

128.   Eventually, EMS arrived and transported Egan to a hospital where he was treated and released.

### *Plaintiff Green*

129.   Plaintiff Green was present for the June 23, 2018 incident.

130.   On June 23, 2018, Green and others attended a gathering outside of the Leon Valley police station to protest what they perceived to be unlawful actions by the Leon Valley police.

131.   During the press conference, Defendant Salvaggio ordered Green to "come here" and advised Green that he was under arrest.

132.   Green was handcuffed, detained, arrested, and taken into the Leon Valley police station where his phone was seized and he was eventually released without being criminally charged. His phone, a Samsung galaxy S8 is still in police custody.

133.   There was no lawful basis for Salvaggio to detain, handcuff, or arrest Green. There was no probable cause or reasonable suspicion of criminal wrongdoing.

134.   It was done to punish him and retaliate against him for the protest that was taking place, which was constitutionally protected conduct.

### *Plaintiff Springer*

135.   Plaintiff Springer was present for both the June 18 and June 23 incidents.

136.   On June 18, 2018, while Springer was gathered with others in front of the police station engaging in constitutionally protected protest, and Springer was recording with a camera.

137.   Defendant Evans approached Springer, and without any lawful basis placed Springer under arrest for the crime of "interference."

138.   Evans then grabbed Springer and caused twisted Springer's shoulder in a way that was far more excessive than necessary and caused a tremendous amount of pain to Springer's right shoulder.

139.   Evans seized Springer's camera and vehicle. Evans searched the vehicle and seized a lawful pistol that was in the vehicle. The pistol and camera are still in police custody.

140.   Evans, at the direction of Salvaggio, charged Springer with the crime of "interference" but the magistrate dismissed this charge since there was no probable cause.

141.   There was no probable cause to arrest Springer. Evans arrested, criminally charged, injured, and seized property from Springer to punish him and retaliate against him for participating in the protest and for recording with a camera.

142.   On June 23, 2018, Springer yet again was gathered with others in front of the police station engaging in constitutionally protected protest, and Springer was again recording with a different camera.

143.   Defendant Evans again arrested Springer but this time did not use more force than was necessary to effectuate the arrest. This time Evans arrested

Springer for the crime of "retaliation" essentially charging Springer with that crime due allegedly to some unknown person commenting on Springer's livestream with Salvaggio's home address.

144.   Defendant Evans seized Springer's camera, which is still in police custody.

145.   There was no probable cause to arrest Springer for this crime. Evans arrested, criminally charged, and seized property from Springer to punish him and retaliate against him for participating in the protest and for recording with a camera.

146.   The criminal charge of "retaliation" is still pending.

### Count 1 – June 14, 2018 Incident
### Unlawful Arrest or Detention – 42 USC 1983 and the Fourth Amendment

### Plaintiff Mark Brown
### Vs
### Defendants Leon Valley, Salvaggio, John Doe Tazer 1 and 2

147.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

148.   John Doe Tazer 1 and 2, under the direct supervision of Salvaggio and at his behest, and in accordance with the policies of Leon Valley, arrested or detained Plaintiff without probable cause of any criminal wrongdoing.

149.   If it was a detention that occurred, the detention was not based on reasonable suspicion supported by articulable facts that criminal activity was occurring.

150.   If an arrest occurred, there was no probable cause to arrest Plaintiff.

151.   Plaintiff suffered harm as a result of these actions.

### Count 2 – June 14, 2018 Incident
### Unlawful and Retaliatory Assault/Arrest/Detention/Property
### Seizure/Prosecution – 42 USC 1983 and the First Amendment

### Plaintiff Mark Brown
### Vs
### Defendants Leon Valley, Salvaggio, John Doe Tazer 1 and 2

152.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

153.   Specifically, John Doe Tazer 1 and 2, under the direct supervision of Salvaggio and at his behest, and in accordance with the policies of Leon Valley, arrested or detained Plaintiff without probable cause of any criminal wrongdoing and in retaliation for and to prevent Plainitff from engaging in constitutionally protected conduct, specifically recording the police.

154.   Defendants, adversely to Plaintiff, detained Plaintiff, arrested Plaintiff, seized Plaintiff's property, injured Plaintiff, and/or maliciously charged Plaintiff with a frivolous criminal charge.

155.   These adverse acts were done in retaliation for Plaintiff engaging in constitutionally protected conduct as described herein, and to prevent him from engaging in such conduct, specifically recording the police

156.   The defendants' adverse acts would deter a man of ordinary firmness from continuing to engage in such conduct in the future.

157.   Plaintiff suffered harm as a result.

**Count 3 – June 14, 2018 Incident**
**Excessive Force – 42 USC 1983 and the Fourth Amendment**

**Plaintiff Mark Brown**
**Vs**
**Defendants Leon Valley, Salvaggio, John Doe Tazer 1 and 2**

158.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

159.   John Doe Tazer 1 and 2, under the direct supervision of Salvaggio and at his behest, and in accordance with the policies of Leon Valley, tackled, injured, and repeatedly tazed Plaintiff for absolutely no lawful reason. Plaintiff at no time resisted and these actions were in no way necessary or justifiable.

160.   Plaintiff suffered an injury, which resulted directly and only from the defendants' use of force that was clearly excessive, and (3) the excessiveness of the force was clearly unreasonable.

161.   Plaintiff suffered harm as a result.

**Count 4 – June 14, 2018 Incident**
**Unlawful Seizure of Property – 42 USC 1983 and the Fourth Amendment**

**Plaintiff Mark Brown**
**Vs**
**Defendants Leon Valley, Salvaggio, John Doe Tazer 1 and 2**

162.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

163.   Defendants created a meaningful interference with Plaintiff's possessory interests in his property, which was unreasonable because the interference was unjustified by law. Specifically, John Doe Tazer 1 and 2, under

the direct supervision of Salvaggio and at his behest, and in accordance with the policies of Leon Valley, seized Plaintiff's car and camera, despite there being no lawful basis to do so.

164.   Plaintiff suffered harm as a result.

### Count 5 – June 14, 2018 Incident
### Abuse of Process – 42 USC 1983 and the Fourth Amendment

### Plaintiff Mark Brown
### Vs
### Defendants Leon Valley, Salvaggio, John Doe Tazer 1 and 2

165.   Defendants engaged in the extortionate perversion of lawfully initiated process to illegitimate ends in that they procured a prosecution against Plaintiff knowing he is innocent of the charged crime. They initiated the charges to somehow justify their own unlawful actions.

166.   Specifically John Doe Tazer 1 and 2, under the direct supervision of Salvaggio and at his behest, and in accordance with the policies of Leon Valley, charged Plaintiff with a crime of which they know he is innocent and they only did so to justify their actions and to punish him for his lawful conduct.

167.   Plaintiff suffered harm as a result.

### Count 6 – June 18, 2018 Incident
### Unlawful Arrest or Detention – 42 USC 1983 and the Fourth Amendment

### Plaintiffs Mead, Bailey, Gonzales, Springer,
### Vs
### Defendants Leon Valley, Salvaggio, John Doe Sergeant, Anderson, Mandry, Evans,

168.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein These Defendants arrested or detained these Plaintiffs.

169.   Mead was detained or arrested by Defendants John Doe Sergeant and Anderson, under the direct supervision of Salvaggio and/or Anderson and at their behest, and in accordance with the policies of Leon Valley, despite the fact that there was no probable cause or reasonable suspicion that Mead was engaging in criminal wrongdoing or that criminal activity was afoot.

170.   Bailey was arrested or detained by John Doe Sergeant, Anderson, and/or Mandry, under the direct supervision of Salvaggio, Anderson, and/or Mandry, and at their behest, and in accordance with the policies of Leon Valley, despite the fact that there was no probable cause or reasonable suspicion that Bailey was engaging in criminal wrongdoing or that criminal activity was afoot.

171.   Gonzales was arrested or detained by Mandry, under the direct supervision of Salvaggio and/or Anderson and at their behest, and in accordance with the policies of Leon Valley, despite the fact that there was no probable cause or reasonable suspicion that Mead was engaging in criminal wrongdoing or that criminal activity was afoot.

172.   Springer was arrested or detained by Evans, under the direct supervision of Salvaggio, Mandry, and/or Anderson and at their behest, and in accordance with the policies of Leon Valley, despite the fact that there was no probable cause or reasonable suspicion that Springer was engaging in criminal wrongdoing or that criminal activity was afoot.

173.   If detention occurred, the detention was not based on reasonable suspicion supported by articulable facts that criminal activity was occurring.

174.   If arrests occurred, there was no probable cause to arrest Plaintiffs.

175.   Plaintiffs suffered harm as a result.

### Count 7 – June 18, 2018 Incident
### Unlawful and Retaliatory Assault/Arrest/Detention/Property Seizure/Prosecution/Prevention – 42 USC 1983 and the First Amendment

### Plaintiff Zinter, Mead, Pierce, Bailey, Gonzales, Springer,
### Vs
### Defendants Leon Valley, Salvaggio, Farias, Joh Doe Sergeant, Anderson Mandry, Evans,

176.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

177.   Zinter's personal property, including his camera and phone, were taken by Farias, under the direct supervision of Salvaggio and/or Anderson and/or Mandry and at their behest, and in accordance with the policies of Leon Valley, as retaliation for his participation in a lawful protest and to prevent him from engaging in such protests.

178.   Mead was injured by Mandry's unnecessary tightening of the handcuffs. Further, Mead's personal property, including his camera and Bailey' camera which Mead was holding, were seized by John Doe Sergeant, Mead was threatened with criminal prosecution if he dared set foot on any of a number of public properties, and Mead was taken into custody, all under the direct supervision of Salvaggio and/or Anderson and/or Mandry and at their behest, and

in accordance with the policies of Leon Valley, as retaliation for his participation in a lawful protest and to prevent him from engaging in such protests.

179.   Pierce's phone was seized by the police, under the direct supervision of Salvaggio and/or Anderson and/or Mandry and at their behest, and in accordance with the policies of Leon Valley, as retaliation for his participation in a lawful protest and to prevent him from engaging in such protests.

180.   Bailey was arrested by Anderson, had his property seized, and was falsely charged with a criminal charge which is pending, all under the direct supervision of Salvaggio and/or Mandry and at their behest, and in accordance with the policies of Leon Valley, as retaliation for his participation in a lawful protest and to prevent him from engaging in such protests, and for his lawful handling of a partially burnt law enforcement parody American flag.

181.   Gonzales' personal property was seized by Anderson, Gonzales was threatened with criminal prosecution if he dared set foot on any of a number of public properties, and Gonzales was handcuffed and taken into custody, all under the direct supervision of Salvaggio and/or Mandry and at their behest, and in accordance with the policies of Leon Valley, as retaliation for his participation in a lawful protest and to prevent him from engaging in such protests.

182.   Springer was arrested by Evans, was subjected to far more force by Evans than necessary to effectuate an arrest, had his personal property, including his camera, vehicle, and pistol seized by Evans, and was falsely charged by Evans with the crime of "interference" which the magistrate dismissed, all under the direct supervision of Salvaggio and/or Anderson and/or Mandry and at their

behest, and in accordance with the policies of Leon Valley, as retaliation for his participation in a lawful protest and to prevent him from engaging in such protests.

183.   Defendants' actions were adverse to Plaintiffs.

184.   These adverse acts were done in retaliation for Plaintiffs engaging in constitutionally protected conduct as described herein, and to prevent them from engaging in such conduct.

185.   The defendants' adverse acts would deter a man of ordinary firmness from continuing to engage in such conduct in the future.

186.   Plaintiffs suffered harm as a result.

**Count 8 – June 18, 2018 Incident**
**Excessive Force – 42 USC 1983 and the Fourth Amendment**

**Plaintiff Mead, Gonzales, Springer,**
**Vs**
**Defendants Leon Valley, Salvaggio, Mandry, Evans,**

187.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

188.   Mead was subjected to being injured by Mandry when Mandry went over to an already handcuffed Mead and tighten Mead's handcuffs to the point where they were digging into Mead's skin.

189.   Gonzales was grabbed and violently shoved by Mandry against a window, which was more force than necessary to effectuate an arrest.

190.    Springer was subjected to far more force than necessary to effectuate an arrest at the hands of Evans, specifically by Evans twisting Springer shoulder in an extremely painful position.

191.    Plaintiffs suffered injury, which resulted directly and only from the defendants' use of force that was clearly excessive, and the excessiveness of the force was clearly unreasonable.

192.    Plaintiffs at no time resisted, obstructed, or assaulted the defendants.

193.    Evans was acting under the direct supervision of Salvaggio and/or Anderson and/or Mandry and at their behest, and in accordance with the policies of Leon Valley.

194.    Mandry was acting under the direct supervision of Salvaggio and/or Anderson and at their behest, and in accordance with the policies of Leon Valley.

195.    Plaintiff suffered harm as a result.

**Count 9 – June 18, 2018 Incident**
**Unlawful Seizure of Property – 42 USC 1983 and the Fourth Amendment**

**Plaintiffs Zinter, Mead, Pierce, Bailey, Gonzales, Springer,**
**Vs**
**Defendants Leon Valley, Salvaggio, Farias, John Doe Sergeant, Anderson,**
**Mandry, Evans,**

196.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

197.    Zinter's personal property was seized by Farias, under the direct supervision of Salvaggio, Mandry, and/or Anderson and at their behest, and in accordance with the policies of Leon Valley, despite the fact that there was no

probable cause or reasonable suspicion that Springer was engaging in criminal wrongdoing or that criminal activity was afoot.

198.   Mead's personal property was seized by Anderson and Sergeant under the direct supervision of Salvaggio, and/or Mandry and at their behest, and in accordance with the policies of Leon Valley, despite the fact that there was no lawful basis to seize it.

199.   Pierce's personal property was seized by the police under the direct supervision of Salvaggio, Mandry, and/or Anderson and at their behest, and in accordance with the policies of Leon Valley, despite the fact that there was no lawful basis to seize it.

200.   Bailey's personal property was seized by Anderson and Mandry under the direct supervision of Salvaggio, and at their behest, and in accordance with the policies of Leon Valley, despite the fact that there was no lawful basis to touch it.

201.   Gonzales' personal property was seized by Mandry under the direct supervision of Salvaggio, and/or Anderson and at their behest, and in accordance with the policies of Leon Valley, despite the fact that there was no lawful basis to touch it.

202.   Springer's personal property was seized by Evans, under the direct supervision of Salvaggio, Mandry, and/or Anderson and at their behest, and in accordance with the policies of Leon Valley, despite the fact that there was no lawful basis to seize it.

203.   Defendants created a meaningful interference with Plaintiffs' possessory interests in their respective property, which was unreasonable because such interference was unjustified by law.

204.   Plaintiffs suffered harm as a result.

<u>**Count 10 – June 18, 2018 Incident**</u>
<u>**Malicious Prosecution – 42 USC 1983 and the Fourth Amendment**</u>

<u>**Plaintiff Springer**</u>
<u>**Vs**</u>
<u>**Defendants Leon Valley, Salvaggio, Evans,**</u>

205.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

206.   Springer was falsely criminally charged by Evans, under the direct supervision of Salvaggio, and at his behest, and in accordance with the policies of Leon Valley, despite the fact that there was no probable cause that Springer was engaging in criminal wrongdoing or that he committed the criminal office of "interference." The charge was dismissed by the magistrate since no probable cause existed.

207.   A criminal proceeding was commenced against the plaintiff;

208.   the defendant initiated or procured the proceeding;

209.   the proceeding was terminated in the plaintiff's favor;

210.   the plaintiff was innocent of the crime charged;

211.   the defendant lacked probable cause to initiate the criminal proceeding; (6) the defendant acted with malice; and

212.   the plaintiff suffered harm as a result.

## Count 11 – June 18, 2018 Incident
## Abuse of Process – 42 USC 1983 and the Fourth Amendment

### Plaintiff Bailey, Springer
### Vs
### Defendants Leon Valley, Salvaggio, Evans,

213.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

214.   Bailey was falsely charged with "obstructing a highway" by Anderson, under the direct supervision of Salvaggio and/or Mandry, and at their behest, and in accordance with the policies of Leon Valley, despite the fact that there was no probable cause that Bailey was engaging in criminal wrongdoing. He was charged to punish him for his constitutionally protected conduct described herein. That charge is pending.

215.   Springer was charged with "interference" by Evans under the direct supervision of Salvaggio, Mandry, and/or Anderson and at their behest, and in accordance with the policies of Leon Valley, despite the fact that there was no probable cause that Springer was engaging in criminal wrongdoing. He was only charged to punish him for his herein described lawful conduct.

216.   Defendants engaged in the extortionate perversion of lawfully initiated process to illegitimate ends in that they procured a prosecution against Plaintiffs knowing they were innocent of the charged crime. They initiated the charges to somehow justify their own unlawful actions.

217.   Plaintiffs suffered harm as a result.

## Count 12 – June 23, 2018 Incident

**Unlawful Arrest or Detention – 42 USC 1983 and the Fourth Amendment**

**Plaintiffs Howd, Mead, Pierce, Egan, Green, Springer**
**Vs**
**Defendants Leon Valley, Salvaggio, Hernandez, Evans, Vasquez, Vasquez,**

218.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

219.   Howd was handcuffed and arrested or detained by Evans, under the direct supervision of Salvaggio, and at his behest, and in accordance with the policies of Leon Valley, despite the fact that there was no probable cause or reasonable suspicion that Howd was engaging in criminal wrongdoing or that criminal activity was afoot.

220.   Mead was arrested or detained by Vasquez, under the direct supervision of Salvaggio, and at his behest, and in accordance with the policies of Leon Valley, despite the fact that there was no probable cause or reasonable suspicion that Mead was engaging in criminal wrongdoing or that criminal activity was afoot.

221.   Pierce was handcuffed and arrested or detained by Vasquez, and subsequently transported to the Bexar County jail. Vasquez acted under the direct supervision of Salvaggio, and at his behest, and in accordance with the policies of Leon Valley, despite the fact that there was no probable cause or reasonable suspicion that Pierce was engaging in criminal wrongdoing or that criminal activity was afoot.

222.   Egan was detained by officers under the direct supervision of Salvaggio, and at his behest, and in accordance with the policies of Leon Valley,

despite the fact that there was no probable cause or reasonable suspicion that Egan was engaging in criminal wrongdoing or that criminal activity was afoot.

223.   Green was handcuffed and arrested or detained under the direct supervision of Salvaggio, and at his behest, and in accordance with the policies of Leon Valley, despite the fact that there was no probable cause or reasonable suspicion that Green was engaging in criminal wrongdoing or that criminal activity was afoot.

224.   Springer was handcuffed and arrested or detained by Evans, under the direct supervision of Salvaggio, and at his behest, and in accordance with the policies of Leon Valley, despite the fact that there was no probable cause or reasonable suspicion that Springer was engaging in criminal wrongdoing or that criminal activity was afoot. The strongest claim the police have that Springer committed a criminal offense was that someone other than Springer, and over whom Springer had absolutely no control, posted Defendant Salvaggio's home address as a comment on Springer's livestream.

225.   These Defendants arrested or detained these Plaintiffs.

226.   If it was a detention that occurred, the detention was not based on reasonable suspicion supported by articulable facts that criminal activity was occurring.

227.   If an arrest occurred, there was no probable cause to arrest Plaintiffs.

228.   Plaintiffs suffered harm as a result.

**Count 13 – June 23, 2018 Incident**
**Unlawful and Retaliatory Assault/Arrest/Detention/Property-**
**Seizure/Prosecution/Prevention – 42 USC 1983 and the First Amendment**

**Plaintiffs Miller, Howd, Mead, Pierce, Egan, Green, Springer**
**Vs**
**Defendants Leon Valley, Salvaggio, Hernandez, Evans, Vasquez,**
**Goldman**

229.  Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

230.  Miller was effectively forced to leave a lawful protest under threat of arrest, in blatant violation of the First Amendment. This threat took the form of Salvaggio ordering the arrest of everyone present, including Miller. Miller had just left prior to the arrests beginning and was about to return when he noticed everyone being handcuffed, which served to chill him from exercising his First Amendment rights by returning to the lawful gathering. Salvaggio's actions therefore prevented Miller from exercising his First Amendment rights.

231.  Howd was arrested by Hernandez. Howd's personal property was seized by Hernandez. Howd was then criminally charged by Hernandez and Evans. These things were done to Howd under the direct supervision of Salvaggio and at his behest, and in accordance with the policies of Leon Valley, as retaliation for his participation in a lawful protest and to prevent him from engaging in such protests.

232.  Mead was handcuffed and arrested or detained by Vasquez. Mead's personal property was seized by Hernandez. These things were done to Mead under the direct supervision of Salvaggio and at his behest, and in accordance with the policies of Leon Valley, as retaliation for his participation in a lawful protest and to prevent him from engaging in such protests.

233.    Pierce was handcuffed and arrested or detained by Vasquez. Pierce was falsely charged by Vasquez with the crime of "interference" which was summarily dismissed by the magistrate for lacking probable cause. Pierce was threatened by Vasquez and Anderson with criminal arrest and prosecution for trespassing if he had the audacity to step foot on any of a number of public buildings or property. These things were done to him under the direct supervision of Salvaggio and at his behest, and in accordance with the policies of Leon Valley, as retaliation for his participation in a lawful protest and to prevent him from engaging in such protests. Goldman sexually assaulted Pierce while he was in her custody at the Bexar County Detention Center, as described herein. Goldman did so as retaliation for his participation in a lawful protest and to prevent him from engaging in such protests.

234.    Egan was detained by officers and forced to stay in the hot sun where he suffered and had to be hospitalized, under the direct supervision of Salvaggio and at his behest, and in accordance with the policies of Leon Valley, as retaliation for his participation in a lawful protest and to prevent him from engaging in such protests.

235.    Green was handcuffed and arrested or detained under the direct supervision of Salvaggio and at his behest, and in accordance with the policies of Leon Valley, as retaliation for his participation in a lawful protest and to prevent him from engaging in such protests.

236.    Springer was handcuffed, subjected to excessive force during his arrest or detainment, and falsely charged with a crime, all at the hands of Evans.

Evans then seized Springer's personal peroperty. This was all done by Evans under the direct supervision of Salvaggio and at his behest, and in accordance with the policies of Leon Valley, as retaliation for his participation in a lawful protest and to prevent him from engaging in such protests.

237.   Defendants, adversely to Plaintiff, detained Plaintiff, arrested Plaintiff, seized Plaintiff's property, injured Plaintiff, and/or maliciously charged Plaintiff with a frivolous criminal charge.

238.   These adverse acts were done in retaliation for Plaintiff engaging in constitutionally protected conduct as described herein, and to prevent him from engaging in such conduct.

239.   The defendants' adverse acts would deter a man of ordinary firmness from continuing to engage in such conduct in the future.

240.   Plaintiff suffered harm as a result.

### Count 14 – June 23, 2018 Incident
### Excessive Force – 42 USC 1983 and the Fourth Amendment

### Plaintiff Pierce, Egan,
### Vs
### Defendants Leon Valley, Salvaggio, Goldman,

241.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

242.   Pierce was subjected to humiliating sexual assault by Goldman while in her custody, as retaliation for his participation in a lawful protest and to prevent him from engaging in such protests.

243.   Egan was forced to sit in the hot sun and suffer to the point where he was hospitalized. This was done to him by the Leon Valley police under the direct supervision of Salvaggio and at his behest, and in accordance with the policies of Leon Valley, as retaliation for his participation in a lawful protest and to prevent him from engaging in such protests.

244.   Plaintiffs suffered an injury, which resulted directly and only from the defendants' use of force that was clearly excessive, and the excessiveness of the force was clearly unreasonable.

245.   Plaintiffs suffered harm as a result.

**Count 15 – June 23, 2018 Incident**
**Unlawful Seizure of Property – 42 USC 1983 and the Fourth Amendment**

**Plaintiffs Howd, Mead, Pierce, Green, Springer,**
**Vs**
**Defendants Leon Valley, Salvaggio, Hernandez, Evans, Vasquez**

246.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

247.   Howd's personal property was seized by Hernandez and Evans, acting under the direct supervision of Salvaggio and at his behest, and in accordance with the policies of Leon Valley, as retaliation for his participation in a lawful protest and to prevent him from engaging in such protests.

248.   Mead's personal property was seized by Vasquez acting under the direct supervision of Salvaggio and at his behest, and in accordance with the policies of Leon Valley, as retaliation for his participation in a lawful protest and to prevent him from engaging in such protests.

249.   Pierce's personal property was seized by Vasquez acting under the direct supervision of Salvaggio and at his behest, and in accordance with the policies of Leon Valley, as retaliation for his participation in a lawful protest and to prevent him from engaging in such protests.

250.   Green's personal property was seized by officers acting under the direct supervision of Salvaggio and at his behest, and in accordance with the policies of Leon Valley, as retaliation for his participation in a lawful protest and to prevent him from engaging in such protests.

251.   Springer's personal property was seized by Evans acting under the direct supervision of Salvaggio and at his behest, and in accordance with the policies of Leon Valley, as retaliation for his participation in a lawful protest and to prevent him from engaging in such protests.

252.   Defendants created a meaningful interference with Plaintiff's possessory interests in his property, which was unreasonable because the interference was unjustified by law.

253.   Plaintiff suffered harm as a result.

### Count 16 – June 23, 2018 Incident
### Malicious Prosecution – 42 USC 1983 and the Fourth Amendment

### Plaintiffs Howd
### Vs
### Defendants Leon Valley, Salvaggio, Hernandez, Evans,

254.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

255.   Howd was falsely criminally charged by Hernandez and Evans, under the direct supervision of Salvaggio, and at his behest, and in accordance with the policies of Leon Valley, despite the fact that there was no probable cause that Springer was engaging in criminal wrongdoing or that he committed the criminal office of obstructing and resisting officers. The charge was dismissed by the magistrate since no probable cause existed.

256.   A criminal proceeding was commenced against the plaintiff;

257.   the defendant initiated or procured the proceeding;

258.   the proceeding was terminated in the plaintiff's favor;

259.   the plaintiff was innocent of the crime charged;

260.   the defendant lacked probable cause to initiate the criminal proceeding;

261.   the defendant acted with malice; and

262.   the plaintiff suffered damages as a result.

**Count 17 – June 23, 2018 Incident**
**Abuse of Process – 42 USC 1983 and the Fourth Amendment**

**Plaintiffs Howd, Springer,**
**Vs**
**Defendants Leon Valley, Salvaggio, Hernandez, Evans,**

263.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

264.   Howd was falsely criminally charged by Evans, under the direct supervision of Salvaggio, and at his behest, and in accordance with the policies of Leon Valley, despite the fact that there was no probable cause that Springer was

engaging in criminal wrongdoing or that he committed the criminal office of "interference." The charge was dismissed by the magistrate since no probable cause existed. The process was wrongly initiated to justify their actions.

265.   Springer was falsely charged with the crime of "retaliation" acting was falsely criminally charged by Evans, under the direct supervision of Salvaggio, and at his behest, and in accordance with the policies of Leon Valley, despite the fact that there was no probable cause that Springer was engaging in criminal wrongdoing or that he committed the criminal office of "retaliation." Springer was charged by the police as an attempt to justify their unlawful actions against all those present on June 23, 2018, specifically the mass detention, arrests, and property seizures that they engage din. The defendants claim this was all in response to the crime they allege Springer committed, IE someone over whom Springer had no control posted Salvaggio's address online as a comment to Springer's livestream.

266.   Defendants engaged in the extortionate perversion of lawfully initiated process to illegitimate ends in that they procured a prosecution against Plaintiff knowing he is innocent of the charged crime. They initiated the charges to somehow justify their own unlawful actions.

267.   Plaintiffs suffered harm as a result.

### Count 18 – *Monell* Liability

268.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

269.   A municipality is liable under 42 U.S.C. § 1983 if the acts that violated a person's right were undertaken pursuant to the municipality's policies and customs.

270.   Defendant Leon Valley directly caused the constitutional violations suffered by Plaintiffs, and is liable for the damages caused as a result of the conduct of the individual Defendants. The conduct of the individual Defendant officers was a direct consequence of the policies and practices of Defendant City.

271.   At all times relevant in this complaint, direct and proximate cause of the damages and injuries complained of were caused by policies, practices and /or customs developed, implemented, enforced, encouraged, and sanctioned by Defendant City, including the failure:

    a.   To adequately supervise and train its officers and agents, including individual Defendants, thereby failing to adequately discourage further constitutional violations on the part of its police officers;

    b.   To properly and adequately monitor and discipline its officers, including individual Defendants; and

    c.   To adequately and properly investigate citizen complaints of police misconduct and instead, acts of misconduct were tolerated by the Defendant City. Defendant City has acted with deliberate indifference to the constitutional rights of the Plaintiffs. As a direct and proximate result of the acts as stated herein by each of the Defendants, each of the Plaintiffs' constitutional rights have been violated.

272.   This failure to supervise, discipline, or control its officers demonstrates deliberate indifference to the constitutional rights of the plaintiffs and is directly responsible for the individual defendants acting the way they did as outlined in this lawsuit.

273.   Further the de facto unwritten policy, procedure, or custom, described herein, demonstrates deliberate indifference to the constitutional rights of the plaintiffs and is directly responsible for the individual defendants acting the way they did as outlined in this complaint.

274.   Defendant City's supervision of the defendant officers, was deficient as it to relates to excessive force, unlawful arrests, and unlawful seizures and searches of cell phones. Defendant City made a deliberately indifferent choice to not provide adequate supervision of these officers to ensure that such actions are not repeated, and that is exactly why these defendant officers were enabled and in fact emboldened to violate the plaintiffs' Constitutional rights as outlined herein.

275.   As a proximate result of the unconstitutional acts and omissions of Defendant City, Plaintiffs were harmed and suffer damages for their physical, mental, and emotional injury and pain, mental anguish, humiliation, and embarrassment.

276. Further, Defendant City has explicit unconstitutional policies including:

   a)  To detain people who are witnesses to a crime, even though there is no reasonable suspicion or probable cause of criminal wrongdoing.

   b)  To arrest people for failing to ID as witnesses

c) To arrest people for failing to ID themselves even when there is no reasonable suspicion of criminal wrongdoing

d) To not allow people to recording in a public building because it is once in a blue moon used as a court facility.

e) To hand out trespass warnings to people threatening an unlawful arrest

f) To seize people's phones/cameras without a warrant, consent, reasonable suspicion of criminal wrongdoing, or any other lawful basis;

g) To seize people's cameras if the camera recording a crime;

277.   These policies directly caused the harm suffered by the plaintiffs in the instant action.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs demand judgment and pray for the following relief, jointly and severally, against all Defendants:

a.  Declaratory judgment that Leon Valley's policies are unconstitutional;

b.  Full and fair compensatory damages in an amount to be determined by a jury;

c.  Punitive damages in an amount to be determined by a jury;

d.  Reasonable attorney's fees and the costs and disbursements of this action; and

e.  Any such other relief as appears just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury of all issues so triable, pursuant to

Fed. R. Civ. P. 38(b).

Respectfully submitted,

**GRABLE LAW FIRM PLLC**
1603 Babcock Road, Suite 118
San Antonio, Texas 78229
Telephone:   (210) 963-5297
Telefax:      (210) 963-5291

Brandon J. Grable
Texas State Bar No.: 24086983
bgrable@grablelawfirm.com

**EXCOLO LAW, PLLC**

*/S/ Solomon M. Radner (admission pending*
SOLOMON M. RADNER (MI No. P73653)
Attorney for Plaintiffs
26700 Lahser Rd, Suite 401
Southfield, MI 48033
248-291-9712
sradner@excololaw.com

DATED: July 5, 2018