FILED
8/17/2018 3:13 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Roxann Sanchez

CAUSE NO. 2018-CR-7461

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| V | § | 227TH JUDICIAL DISRICT |
| | § | |
| JAMES SPRINGER | § | BEXAR COUNTY, TEXAS |

### REQUEST FOR TEMPORARY RESTRAINING ORDER, MOTION TO STAY EXECUTION OF AND TO QUASH SEARCH WARRANT

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes Defendant, **JAMES SPRINGER**, by and through Counsel, **Steven Gilmore**, and files this Request for Temporary Restraining Order, Motion to Stay execution, and Motion to Quash Search Warrant and shows the following:

**I.**

On or about June 23, 2018, the Leon Valley Police Department arrested Defendant for the charge of Obstruction or Retaliation under Texas Penal Code § 36.03. Defendant was subsequently indicted for this offense on July 19, 2018. On August 7, 2018, a warrant was issued (No. 2018 W 0994) and sent to Google, Inc. ("Google") at 1600 Amphitheatre Parkway, Mountain View, CA 94043. Google has not yet complied with the search warrant and ask that Defendant submit notice to Google of any objections Defendant has to the execution of the warrant.

**II.**

**JAMES SPRINGER** requests the Court to be permanently enjoined from further execution of the search warrant and in support thereof would show the following:

1. The actions of the Leon Valley Police Department, the Bexar County District Attorney's Office and other State and Federal Agency's violated the constitutional



and statutory rights of **JAMES SPRINGER** under the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, Article I, Section 9 of the Texas Constitution, and under Article 38.23 of the Texas Code of Criminal Procedure.

2. Any evidence seized or may be seized in connection with this case was or may be seized without warrant, probable cause or other lawful authority in violation of the rights of **JAMES SPRINGER** pursuant to the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, Sections 9, 10 and 19 of the Constitution of the State of Texas.

3. **JAMES SPRINGER** specifically shows that the search warrant at issue in this case, under which said evidence was seized or may be seized, was in violation of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article 1, Sections 9, 10 and 19 of the Constitution of the State of Texas and under Article 38.23 of the Texas Code of Criminal Procedure, for the following reasons:

    a. It appears to counsel that the affidavit upon which the search warrant was based was improperly and illegally executed because of the extensive breath and scope of the search warrant on its face. Specifically, the probable cause affidavit explains that it was the "Livestream viewers" that posted the "residence address and personal information of the Leon Valley Chief of Police and his family members." The investigative and prosecuting authorities in this cause, therefore, have probable cause to execute this search on those livestream viewers—whose account names are in fact known to the investigative and prosecuting authorities—but no probable to

execute this search on Defendant, **JAMES SPRINGER**. The breadth and scope of the search warrant extends into and invades the privacy of the account of Defendant and other innocent livestream viewers, when authorities have the less invasive option of searching the specific accounts known to them to have committed the act of posting the residence address described in the affidavit. This less invasive option is also the only option lawfully permissible by statute and the Constitutions of Texas and United States.

b. It appears to counsel, based on the breadth and scope, of the warrant that the warrant was illegally issued because the affidavit did not show probable cause sufficient to justify the issuance of the search warrant, because the magistrate who issued the search warrant did not have a substantial basis for concluding that probable cause existed, i.e., that the alleged contraband/ evidence would be found in a particular place, and thus did not meet the totality of the circumstances analysis adopted in *Illinois v. Gates,* 462 U.S. 213 (1983). The investigative and prosecuting authorities in this cause, therefore, have probable cause to execute this search on those livestream viewers—whose account names are in fact known to the investigative and prosecuting authorities—but no probable to execute this search on Defendant, **JAMES SPRINGER**. In short it is logically impossible the affidavit could have contained probable cause to believe the enumerated information sought by this search warrant to be executed on the described associated account contained the evidence particularly described in the search warrant.

    **c.** The search and seizure was illegal in that the search warrant was facially deficient because the search warrant failed to specify the place to be searched. Specifically, the search warrant describes the account associated with screen name: "JAMES FREEMAN". However, none of the available discovery nor probable cause affidavit indicate that this account created the identifying information listed in the indictment. Rather, the discovery and probable cause affidavit attached to this warrant indicate that such information was posted by a third party, whose screen name(s) is/are identified and known to Leon Valley Police Department and the Bexar County District Attorney's Office. Moreover, execution of this search warrant would necessarily violate the privacy and constitutional protections against unlawful searches and seizures of innocent third parties who did violate any state or federal law in their participation as commenters and passive observers of the account to be searched. This is not unlike the execution of a search warrant on a multi-unit dwelling in that the searching authorities are aware of particularized identifying information regarding a particular user (analogue: apartment number), but are searching the entire account (analogue: every apartment in the entire complex) of a third party not believed to have provided the offending information to begin with. Where a warrant describes a multi-unit dwelling, the description must contain sufficient guidelines to apprise the officers executing the warrant of the particular unit to be searched *Morales v. State*, 640 S.W. 2d 273 (Tex. Crim. App. 1982): *Jones v. State*, 914 S.W. 2d 675 (Tex. App.—Amarillo 1996, no

pet). Further, the description of the property should be sufficient to enable the executing officer to locate and distinguish the property from others in the community. *Etchieson v. State*, 574 S.W. 2d 753 (Tex. Crim. App. 1978) The constitutional objectives of requiring a particular description of the place to be searched include the following: [1] ensuring that the officer searches the right place; [2] confirming that probable cause is, in fact, established for the place described in the warrant; [3] limiting the officer's discretion and narrowing the scope of his search; [4] minimizing the danger of mistakenly searching the person or property of an innocent bystander or property owner, and [5] informing the owner of the officer's authority to search that specific location. *Long v. State*, 132 S.W.3d 443 (Tex. Crim. App. 2004). In the present case the search warrant essentially authorized the search of an entire account or neighborhood showing allowing no privacy protection of the defendant, innocent bystanders, or their individual accounts.

### III. JURISDICTION AND AUTHORITY

This Honorable Court, as the court presiding over the indicted cause to which this search warrant is associated, has an obligation to ensure that the execution of any warrant in said cause comports with both statutory and Constitutional proscriptions. For example, Art. 18.12 of the Texas Code of Criminal Procedure requires in mandatory terms that:

> **Art. 18.12. MAGISTRATE SHALL INVESTIGATE**
> The magistrate, upon the return of a search warrant *shall* proceed to try the questions arising upon same, and shall take testimony as in other examinations before him [or her]." Emphasis added.

While there has yet to be a "return" of the warrant, the Texas Code clearly authorizes and mandates that this Court has not just authority, but a mandatory duty to see

that the warrant and its execution are carried out according to the law, as well as an obligation to "take testimony as in other examinations" in order to assure that same is accomplished.

Furthermore, Art. 18.13 of the Texas Code of Criminal procedure similarly mandates that "[i]f the magistrate is not satisfied, upon [such] investigation, that there was good ground for the issuance of the warrant, he shall discharge the defendant and order restitution of the property taken." *See: In re Cornyn,* 27 S.W.3d 327 (Tex. App.—Houston, 2000). As this case has been indicted, 22 Tex. Const. art. V, § 12(b) provides that the presentment of indictment or information vests a court with jurisdiction of all matters to be raised in that cause. *See* Shields v. State, 379 S.W.3d 368, 370 (Tex. App.—Waco 2012, no pet.) (citing *McBee v. State*, 981 S.W.2d 694, 697 (Tex. App.—Houston 1998, pet. ref'd) (attachment of jurisdiction in district court gives it power to determine all essential questions and do anything pertaining thereto that is authorized by Constitution, statute, or law)).

### IV. PARTICULARIZED PROBABLE CAUSE AND THE RELATIONSHIP OF FREE SPEECH

It is now settled that the fundamental protections of the Fourth Amendment are guaranteed by the Fourteenth Amendment against invasion by the States. *See, e.g., Wolf v. People of State of Colorado*, 338 U.S. 25, 27 (1949); *Mapp v. Ohio*, 367 U.S. 643 (1961); *Ker v. California*, 374 U.S. 23 (1963); *Stanford v. State of Tex.*, 379 U.S. 476, 481 (1965). The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

This protection against unlawful searches is particularly implicated in situations where the evidence to be seized may constitute protected speech under the First Amendment to the U.S. Constitution. *See Zurcher v. Stanford Daily,* 436 U.S. 547, 564 (1978) ("Where the materials sought to be seized may be protected by the First Amendment, the requirements of the Fourth Amendment must be applied with 'scrupulous exactitude.'") (quoting *Stanford v. Texas,* 379 U.S. 476, 485 (1965)). The Supreme Court in Zurcher advised that, "[w]here presumptively protected materials are sought to be seized, the warrant requirement should be administered to leave as little as possible to the discretion or whim of the officer in the field." 436 U.S. at 564.

Under the Texas Constitution, art. 1 § 8, the protections for individual speech exceed those described in the U.S. Constitution. *See* James C. Harrington, *Free Speech, Press, and Assembly Liberties Under the Texas Bill of Rights*, 68 TEX. L. REV. 1435, 1450 (1990) (citing *Ex Parte Tucker*, 220 S.W. 75, 75 (Tex. 1920) ("Ex parte Tucker's language might seem to suggest that section 8 and first-amendment protections are coextensive, the decision [in *Ex Parte Tucker*] by overturning an injunction against speech 'which might be calculated to provoke or inspire a breach of the peace,' goes beyond federal law, bringing at least some 'fighting words' within its protective ambit.")).

Finally, Defendant's role as an independent investigative news reporter further implicates First Amendment protections of speech. In this particular instance, the law enforcement and prosecuting authorities seek to access the entirety of Defendant's private Google account in order to get the IP addresses and credit card information (among other data) from every single person that has ever interacted with that account as a commenter or non-participatory observer. Texas Const. art. 1, § 8 provides that "... no law shall ever be

passed curtailing the liberty of speech or of the press." In civil cases concerning whether reporters must reveal confidential sources of information, the Court of Appeals has interpreted this to mean that:

> "[O]nce the [art. 1, § 8] privilege is asserted, the party seeking disclosure of the reporter's investigative materials […] must demonstrate that there is a compelling and overriding need for the information. At a minimum, the litigant must make a clear and specific showing in the trial court that the information sought is: (1) highly material and relevant; (2) necessary or critical to the maintenance of the claim; and (3) not obtainable from other available sources."

*Channel Two Television Co. v. Dickerson*, 725 S.W.2d 470, 472 (Tex. App.—Houston 1987). Here, Defendant asserts his art. 1, § 8 privilege of free speech and free press to be protected from being complicit in revealing the person or persons who made the offending comments described in the probable cause affidavit. A small quantity of the information to be obtained may be material and relevant, but the overwhelming majority of the information sought will have absolutely nothing to do with the offense charged in this cause. None of the information sought in this manner would be necessary or critical to the maintenance of the claim because the comments at issue are already publicly available to the authorities in this cause, and copies of which are already in their possession. Lastly, the particular information sought in this warrant is obtainable from other available sources—law enforcement and the District Attorney's Office know the account names of the offending commenters, and are capable and far more entitled to obtain account information from Google as to those particular accounts by search warrant, subpoena, or other means without violating the rights and constitutional protections of Defendant and other innocent third parties in this cause.

**WHEREFORE**, Defendant requests that the State of Texas through any of its agents

be Temporarily Restrained from further execution of the search warrant, the court Stay further execution of the warrant, and that after notice and hearing the court permanently enjoin the State from further execution of the search warrant, and quash the warrant and take such further action as the court feels is appropriate.

Respectfully Submitted,

**STEVEN GILMORE**
STATE BAR I.D. NO. 24096173
110 W. Nueva
San Antonio, Texas 78204
Tel: 210-560-3603
Fax: 210-475-9447
Email: SGilmoreLaw@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of defendant's REQUEST FOR TEMPORARY RESTRAINING ORDER, MOTION TO STAY EXECUTION OF AND TO QUASH SEARCH WARRANT has been delivered to the Bexar County District Attorney's Office by e-service on the same day as filed.

**STEVEN GILMORE**

**CAUSE NO. 2018-CR-7461**

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | § | **IN THE DISTRICT COURT** |
| | § | |
| **V** | § | **227ᵀᴴ JUDICIAL DISRICT** |
| | § | |
| **JAMES SPRINGER** | § | **BEXAR COUNTY, TEXAS** |

## ORDER

On this day, came on to be considered Defendant's REQUEST FOR TEMPORARY RESTRAINING ORDER, MOTION TO STAY EXECUTION OF AND TO QUASH SEARCH WARRANT an offense and said Motion is hereby:

(**GRANTED**)        (**DENIED**).

SIGNED on the ___ day of _____, 20__

_____
**JUDGE PRESIDING**

CAUSE NO. 2018-CR-7461

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | § | **IN THE DISTRICT COURT** |
| | § | |
| **V** | § | **227ᵀᴴ JUDICIAL DISRICT** |
| | § | |
| **JAMES SPRINGER** | § | **BEXAR COUNTY, TEXAS** |

**NOTICE OF SETTING**

TO THE BEXAR COUNTY DISTRICT ATTORNEY'S OFFICE:

The Defendant in this case has filed a REQUEST FOR TEMPORARY RESTRAINING ORDER, MOTION TO STAY EXECUTION OF AND TO QUASH SEARCH WARRANT. A hearing has been set at the date and time below and the above motion will be heard at that time, subject to the discretion of the Court.

PRETRIAL HEARING: _____ at ___ AM/PM

The scheduling of this hearing does not affect any other dates or deadlines already set by the Court.

_____
**JUDGE PRESIDING**