<div align="center">

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

</div>

RUSSELL ZINTER, et al;  CIVIL ACTION NO: 5:18-CV-680

    *Plaintiffs*,

VS.

CHIEF JOSEPH SALVAGGIO, et al;

    *Defendants*.

_____/

<div align="center">

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

</div>

    NOW COME Plaintiffs, by and through their attorneys, and respectfully seek an order preliminarily enjoining the defendants from searching the electronic devices or any electronic accounts of the people present for the protests which form the basis of this action. For the reasons set forth in the accompanying Brief in Support, this Motion must be GRANTED.

    Respectfully Submitted,

    **EXCOLO LAW, PLLC**

    */S/ Solomon M. Radner*
    SOLOMON M. RADNER (*admitted pro hac vice*)
    Attorney for Plaintiffs
    26700 Lahser Rd, Suite 401
    Southfield, MI 48033
    248-291-9712
    sradner@excololaw.com

DATED: September 18, 2018

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

RUSSELL ZINTER, et al;                          CIVIL ACTION NO: 5:18-CV-680

    *Plaintiffs*,

VS.

Chief Joseph Salvaggio, et al;

    *Defendants*.

_____/

## PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION

### Factual Background

This case stems from several incidents that took place in and around the Leon Valley Police department on June 14, 2018, on June 18, 2018, and June 23, 2018, as is explained in detail in Plaintiffs' First Amended Complaint, ECF #3.

**On June 14, 2018**, people gathered at the Leon Valley police department to protest against what they perceived to be an unlawful arrest. Among those present, was Plaintiff Mark Brown. Brown and a second individual attempted to enter the municipal building, which was home to, among other things, the police station, municipal offices, and courthouse. Brown was holding a camera during this attempted entry. The duo was stopped at the door and ordered to turn around since cameras are not permitted in the building, per Leon Valley policy. Although the building houses the police department, Leon Valley policy precludes any cameras from being used anywhere in the building since the building is occasionally used as

- 3 -

a courthouse. This policy is in effect even on days and during times on which no court is in session.

Brown was, without warning and without any lawful basis, grabbed by unidentified officers and tazed numerous times. Brown at no time resisted the officers' actions nor did he assault or threaten the officers. Brown was violently arrested and then he was maliciously and falsely charged with two crimes: failure to obey an officer, and resisting arrest. Both of these charges are baseless, yet they are pending. Excessive force was unlawfully used by the police while taking people into custody.

Further, Mark Brown had the following property seized from him by Defendant Rivera, up until identified as a John Doe Tazer:

   a. 3 car charging adapters/USB cord/Multiplug Outlet/1080 FHO Camera 8GB/iKross USB Electric stand/Bank Receipt (see items listed on letter to Brown attached hereto as Exhibit A). This property was in Mr. Brown's rental car. The police also seized several articles of clothing from Mr. Brown's rental vehicle, but none of that property made it to any of their inventory lists or property receipts.

   b. A Hertz rental car, which Brown had rented and parked at Walgreen's parking lot a short distance from the Leon Valley police station. This vehicle was towed to a tow yard where it remained for over a month until the police finally released it to Hertz. Mr. Brown had to pay rental fees for that entire duration. Mr. Brown requested the vehicle from the defendants on numerous occasions but he was advised that the vehicle would not be

released to him, only to Hertz. Mr. Brown then advised Hertz that its vehicle was stolen by the Leon Valley police.

c. Hat, torn shirt, VA card, Arizona Health Card, Arizona Medical marijuana card, Arizona driver license, 310 US Dollars, brown wallet, chase check for $65, 3 visa cards, 3 master cards, 1 discover card, and 1 American express card (see items listed on property receipt attached jointly as Exhibit B – let's call this the Wallet Property). Mr. Brown was trespass-warned by an unidentified African-American male police officer that he may retrieve his property the following day if he pays $25.00 but that he would be arrested for trespassing if he entered city property. Mr. Brown therefore had his girlfriend enter city property to retrieved his property. All that was released was the Wallet Property and the Hertz rental agreement.

d. An Acer Tablet and a Google Pixel 2 smartphone, both of which are not listed on any property receipts.

Mr. Brown is being charged with two misdemeanors, and nothing more. For the extremely minor, if not frivolous charges, of two misdemeanors, Mr. Brown's property is being kept from him including his Acer tablet, 3 car charging adapters/USB cord/Multiplug Outlet/1080 FHO Camera 8GB/iKross USB Electric stand/Bank Receipt. There is no possible good faith basis to keep this property from Mr. Brown. Further, in the event the police make a claim that they need Mr. Brown's phone and tablet for this criminal prosecution, the question remains why Mr. Brown was not even provided a property receipt with those items listed. There was further no possible good faith basis to deprive Mr. Brown of the rental car and force him to

incur significant charges. This was done, at least in part, to punish Mr. Brown for participating in the protest, which the defendants believe make him an "anarchist" and "agitator" despite it being constitutionally protected conduct. See police reports, full of this type of language.

At a hearing, we will call the police officers involved to establish our claims through their own testimony. The testimony will establish that the defendants are maintaining possession of Plaintiff Brown's property for no lawful basis and as punishment for his involvement in a constitutionally protected protest.

**On June 18, 2018**, many people, including a number of plaintiffs, gathered outside of the Leon Valley police station to lawfully and constitutionally protest what they perceived to be unlawful police practices, the specifics of which are not pertinent to the instant motion, since the fact of the matter is this: They were lawfully gathered outside the police station in a lawful form of protest. Among those gathered were Plaintiffs Russell Zinter, James A. Mead, Joseph Brandon Pierce, David Bailey, and Juan Gonzales. This protest included the displaying of a partially burnt parody American flag made popular by law enforcement as a form of propaganda. The propaganda parody American flag looks like the real American flag but it is striped blue instead of red and white. This parody flag is not the real American flag – it is a law enforcement parody used for propaganda.

Attached as Exhibit C are the police reports from June 18, 2018. Portions are highlighted to draw the court's attention to the herein-described pertinent admissions by the defendants. We plan on calling the officers at a hearing so that these statements become actual testimony.

At one point in time, Plaintiff David Bailey entered the building to capture on video a sign that he perceived to be problematic if not unlawful. Although the police don't explicitly admit it, it is clear from reading the reports and understanding what transpired, that the police wanted desperately to punish this group of people whom the police refer to as "agitators" and "anarchists." This fact became clear by how the police acted in attempting to manufacture criminal actions against the plaintiffs, starting with Plaintiff Bailey who at no point in time blocked the doorway, as falsely claimed by the police in their reports, but was violently arrested for this bogus charge.

The police themselves admit that James Springer was arrested for the alleged crime of Interference with Public Duties, but thankfully the magistrate saw through the defendants and rejected that charge.

Also, violently arrested was Plaintiff Juan Gonzales, for failure to identify as a witness, which ironically did not make it to the police reports. This fact was left out because the defendants know how ridiculous and petty they would look if they admit such a thing. At a hearing, we would call Mr. Gonzales and his arresting officers to establish that he was frivolously arrested for failure to identify as a witness and subject to property seizures. The police do admit that they seized Mr. Gonzales' property.

Also arrested for the same fictional crime of failure to identify as a witness, was Plaintiff James Mead. The police indicate that Mead was merely "detained" for failure to identify as witness, but given the fictional nature of this crime, detention

and arrest are equally unlawful for a non-existent crime. Mead was also subjected to seizure of his property.

Plaintiff Russell Zinter was also merely a witness yet he too had his property seized by the police as well, as admitted by the police.

At a hearing, we will subpoena the surveillance footage from within the police station, which will show that Plaintiff Bailey's arrest was unwarranted since he never "physically prevented a member of the public from entering the public building," which, per the defendants, is the sole basis for seizing all the property that they seized and continue to maintain possession over, since their defense to Plaintiffs' allegation is that they need all this seized property for the video it **_might_** contain that **_might_** show one person blocking a door. Also, they certainly already have the footage from their own surveillance system, which means they have absolutely no need whatsoever for this footage from these devices. This leaves open a question: Why are they keeping Plaintiffs' property? Plaintiffs answer is simple: As punishment for constitutionally protected conduct, which according to the police, make the plaintiffs "anarchists" and "agitators." Plaintiffs eagerly await, and in fact challenge Defendants to articulate, any reasonable explanation as to why they really feel the need to maintain possession over all this property.  It is an affront to judicial intellect for them to claim that they are maintaining possession of this seized property solely for the evidentiary value that some of the property might have supporting one misdemeanor of one person, for which they have far better footage already.

It is unquestionable that seizing the cell phones and cameras as described herein was unlawful.  It is also unquestionable that arresting people for failure to

identify as a witness was equally unlawful. The only real question is whether this can be chalked up to police incompetence, or if these unlawful actions were done in bad faith. Plaintiffs submit that the defendant officers cannot possibly be so incompetent as to actually believe that it is reasonable to seize numerous witnesses' cell phones for months at a time with the hope that there may be evidence of a single misdemeanor on them – especially when they already have better footage of that same alleged misdemeanor on their own surveillance system thereby making whatever footage they may recover on the cell phones duplicative and unnecessary. And it is certainly a stretch to come up with any conceivable way to excuse arresting people repeatedly for fictional crimes such as failure to identify as a witness. This could not possibly be the result of police incompetence, which leaves open a gaping question: Why did the police do these things? Plaintiffs submit that based on the defendants' own words in their own reports and the proposed testimony we have outlined herein, it will become clear that the police are doing these things to punish the plaintiffs for their constitutionally protected protest. Lastly, we plan on calling the person claimed by the police as the one being blocked by David Bailey, who we believe will testify that she was not blocked by Bailey at any time.

Simply put, these arrests were motivated at least in part by the protest.

**On June 23, 2018**, many people, including a number of plaintiffs, gathered outside of the Leon Valley police station to lawfully and constitutionally protest what they perceived to be unlawful police practices, the specifics of which are not pertinent to the instant motion, since the fact of the matter is this: They were lawfully

gathered outside the police station in a lawful form of protest. Included in the group of protestors, were Plaintiffs Howd, Mead, Pierce, Egan Green, and Springer.

Attached as Exhibit D are the police reports from June 23, 2018. Portions are highlighted to draw the court's attention to the herein-described pertinent admissions by the defendants. We plan on calling the officers at a hearing so that these statements become actual testimony.

Per the June 23, 2018 police reports, during an "anarchist[1] demonstration" some people, including some plaintiffs, were livestreaming. The livestreamers included Bao-Quac Nguyen and Plaintiff James Springer. The police claim, without any supporting documentation or evidence whatsoever, that the address of Defendant Salvaggio was posted on these two livestreams and that they "did nothing to delete or stop the personal identifying information from being listed on the comments" which the police purport to claim is a violation of Sec. 36.06. Obstruction Or Retaliation. Merely a cursory review of this statute makes it clear that if the post even constituted a felony, which is questionable, it only would have been a felony on the part of the one who posts, not on the part of the host of the livestream. The statue states clearly "A person commits an offense **if the person posts** on a publicly accessible website…." The police readily admit that the only crime allegedly committed by Nguyen or Plaintiff Springer was that "did nothing to delete or stop the personal identifying information from being listed on the comments." As further proof that the Leon Valley police don't actually need any of these electronic devices, see Exhibit G; an offer to return the property belonging to

---

[1] Upgraded from simply "agitators" on June 18, 2018, apparently.

Plaintiff Springer's co-defendant in the criminal matter, a non-party to this action, Bao-Quoc Ngyuen.

Further, undersigned counsel did a simple Google search and found a non-paying website that offers information that is supposedly Salvaggio's address, two possible cell phone numbers, the names of his relatives, and even his email address. Out of an abundance of caution, paranoia, and an ardent desire to not be arrested for Retaliation by the Leon Valley police department, undersigned counsel will email this document to the Court and cc defense counsel but will not "post" it by filing it on this Court's efiling website.[2]

Further, the defendants' follow-up actions to this so-called felony really tell the story of their bad faith. The way to identify those who posted that 'felony post' is very simple: Request a warrant, which they could easily obtain, demanding Google/YouTube to identify the person who left the comment. Instead, they seized everyone's phones and cameras and have submitted warrant request, which **_somehow_** they tricked a state court judge to sign, to allow them access to every single email ever sent or received on the Google accounts of Jason Green and Plaintiff Jonathon Green. What could **_possibly_** be the good faith basis for those warrants? Even if the police claim that the Green's were the ones who did the posting, two questions remain unanswered:

      a. Why are Nguyen and Plaintiff Springer still being charged?

      b. Why do the police need every single email ever sent or received, isn't identifying information enough, assuming they have some

---

[2] But if I did "post" it on this court's website, who would be the poster: me or the court?

screenshot somewhere that shows the Google name of the one who supposedly made the felony post?

Also, Jonathon Green, who was subjected to the Google Warrant, attached hereto as Exhibit E, is identified as "SP1" on the June 23, 2018 reports (see the page stamped "Page 18 of 25" in Exhibit D) yet he appears absolutely nowhere in the factual narrative of the reports. In spite of this his property remains seized and his Google account is being sought, including every single email he ever sent or received, based on something unknown that the defendants told Judge Jefferson Moore. Plaintiffs challenge Defendants to answer this: What evidence can conceivably be on any of the devices that could in any way identify the person who posted the comment that they believe constitutes felony retaliation? And more importantly, what good faith basis exists to read every single email ever sent or received by the Greens when all they really need is identifying information?

Further, per the police reports, Brian Howd was arrested and frivolously charged with Interference and Resisting Arrest, which thankfully the magistrate again saw through and rejected. However, the defendants are still keeping Howd's seized property for no conceivable reason other than to punish him for being an "anarchist" or what is in reality a constitutionally protected protestor.

Further, per the police reports, Plaintiff Pierce was also arrested and frivolously charged with Interference and resisting Arrest, which thankfully the magistrate again saw through and rejected. However, the defendants are still keeping Pierce's seized property as well for no conceivable reason other than to punish him for being an "anarchist" or in reality a constitutionally protected protestor.

Further, Interested Party and soon to be added as a plaintiff in the instant matter, Greg Gardiner, was ordered to turn over his camera since it was being seized as evidence. There exists no good faith basis for the police to have seized this property and to continue to maintain possession over it. It was seized, like so much of the other seized property, to punish him for protesting, or as the police call it, for being an "agitator."

Further, what's missing from the reports, specifically because it shows the bad faith tactics being used by the police, is the fact that in the afternoon, at around 4:00 PM, Defendant Salvaggio announced that he would hold a press conference and showed everyone where the press conference would be with the intent that the group of protesters, referred to by the police as "anarchists," would head to that area with their cameras. Almost immediately after the so-called press conference began, Defendant Salvaggio ordered his subordinate Leon Valley officers to arrest of all those present and further ordered the confiscation of any property capable of taking pictures or video from ***everyone*** present. In all seriousness, can there be a more egregious action by the police than a fake news conference with the intent to frivolously arrest people and seize their property? In fact, the reports dance around this fake press conference without mentioning that Salvaggio called a press conference specifically to make the plaintiffs look worse. See the June 23, 2018 reports, specifically page stamped "Page 22 of 25" where the report, written by Defendant Vasquez, states that Salvaggio "advised Leon Valley Patrol units will be executing an arrest of AP1 (Nguyen)……. As C (Salvaggio) stepped out of the building, the large group of agitators/anarchists approached C and C immediately

announced in a loud clear tone that AP1 was under arrest……they are not free to leave….surrender their recording devices due to them being witness to a crime."

Obviously, a large group of people approaching a police chief as soon as he steps out of a building sounds bad, which was the goal of the drafter of the report. That is why he, in obviously bad faith, left out the fact that they approached Salvaggio when he walked out because Salvaggio himself had called a press conference at that time and place. More bad faith.

Further, exactly what crime were all of the recording devices witness to? Surely they did not record the commenter who posted the offensive post, which begs the question: what good faith basis was there to believe that all these recording devices had anything of any evidentiary value that would be relevant to the alleged felonious post? Plaintiffs' answer is simple: None. The plaintiffs were being punished for their protests.

Further, why was Plaintiff Springer arrested? Was it really because he did not delete a comment, which the police decided gave them a good faith basis to arrested him as the poster of that comment, as they themselves claim? Or was it because the police tried only days earlier to have him criminally charged but the magistrate rejected it? Then to punish him for being a protestor and for avoiding prosecution days earlier, the defendants went to a grand jury, where procuring indictments is about as easy as eating a ham sandwich[3]. Simply put, all of these arrests were motivated at least in part by the protest.

---

[3] The undersigned counsel is aware that he is misstating the 'ham sandwich line'

Lastly, what could possibly be gained by reading all of Springer's email (see Google subpoena attached hereto as Exhibit F) that would in any way have evidence of who the person is who posted something felonious on Springer's livestream? There simply is no good faith explanation.

**<u>Legal Standard</u>**

The legal standards at play here are the following:

1. Facts must be presented through evidence or as not in dispute. A preliminary injunction was denied where the movant failed to adduce any evidence demonstrating irreparable harm and explaining that "[w]hile evidentiary standards at the preliminary injunction stage are less formal . . . and the court . . . may issue a preliminary injunction without the presentation of evidence, it can do so only when the facts are not disputed"). *Digital Generation, Inc. v. Boring*, 869 F. Supp. 2d 761, 777-78 (N.D. Tex. 2012).

    a. Plaintiffs submit to the Court that facts in the police reports, attached hereto, portions of which upon Plaintiffs rely, certainly fall within the category of "not disputed" facts.

2. "The proper test to be applied in the context of a suit to enjoin a criminal prosecution allegedly brought in retaliation for or to deter the exercise of constitutionally protected rights is as follows: The Court should consider whether the plaintiffs have shown, first, that the conduct allegedly retaliated against or sought to be deterred was constitutionally protected, and, second, that the State's bringing of the criminal prosecution was

motivated at least in part by a purpose to retaliate for or to deter that conduct. If the Court concludes that the plaintiffs have successfully discharged their burden of proof on both of these issues, it should then consider a third: whether the State has shown by a preponderance of the evidence that it would have reached the same decision as to whether to prosecute even had the impermissible purpose not been considered." *Wilson v. Thompson*, 593 F.2d 1375, 1387 (5th Cir. 1979.) "[A] plaintiff asserting bad faith prosecution as an exception to *Younger* abstention must allege specific facts to support an inference of bad faith"). *Id,* 1384-85. Even with indictment, there still could be bad faith. *Smith v. Hightower*, 693 F.2d 359, 369 (5th Cir. 1982).

    a. Plaintiffs submit that the facts described herein with cites to the defendants' own words in their own police reports, coupled with Plaintiffs' proposed testimony, infer bad faith on the part of the defendants. They now must explain Plaintiffs' concerns away; they can begin by answering the numerous questions Plaintiffs raised herein, specifically asking them what their good faith bases were. The question that must be asked after reviewing the attached police reports is this: Why are Brown, Bailey, and Springer being prosecuted? It is very clear that the prosecution is motivated at least in part by the fact that they were acting as protesters, or of course as the defendants see them, "anarchists."

3. "The criteria for determining whether a preliminary injunction will be granted are set out in *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567 (5th Cir.1974). *Callaway* established that the following requirements must be shown before a party will be entitled to preliminary injunctive relief:

   (1) a substantial likelihood that plaintiff will prevail on the merits,

   (2) a substantial threat that irreparable injury will result if the injunction is not granted,

   (3) that the threatened injury outweighs the threatened harm to defendant, and

   (4) that granting the preliminary injunction will not disserve the public interest." *Id*.

   a. **Substantial likelihood that plaintiff will prevail on the merits.**

Plaintiffs herein explain the facts and circumstances surrounding each arrest, detention, and seizure and will not repeat them all. Certainly, the plaintiffs who were either not charged or whose charges were rejected outright by the magistrate have a strong likelihood of proving that they were arrested unlawfully. Further, the property seized from them after their arrests was likewise seized unlawfully. Further, there exists no basis whatsoever to seize the property of a witness, just as there is no basis to arrest someone for not identifying as a witness. Lastly, the charges pending against Brown, Bailey, and Springer are all frivolous and can be proven so at a hearing during which we hear testimony from the arresting officers and more

importantly view the video footage that relates to the Brown and Bailey incidents, and view the threatening felonious posts, which will be subpoenaed.

### b. A substantial threat that irreparable injury will result if the injunction is not granted.

"Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans 'the privacies of life,' *Boyd vs United States*, 116 U.S. 616, 630 (1886). The fact that technology now allows an individual to carry such information in his hand does not make the information any less worthy of the protection for which the Founders fought." *Riley v. California*, 134 S. Ct. 2473, 2494-2495, 189 L. Ed. 2d 430, 452 (2014). Simply put, allowing the police to gain access to Plaintiffs' cell phones would be an uncorrectable "invasion into the privacies of life." Just as the illustrious defense counsel or anyone else would not want me or any other stranger to snoop around in his cell phone, for which the damage would be done the minute the snooping takes place, Plaintiffs don't deserve to have the defendants invade into the privacies of life on a whim. And once the snooping takes place, the invasion into the privacies of life would be complete and thus irreparable. Simply stated, once the defendants begin looking through the unlawfully seized cell phones, the irreparable harm will be done.

### c. Public interest to be served by granting a preliminary injunction;

There could be no bigger public interest than for the public to know that their Constitutional rights, protecting their "privacies of life," will not be shredded by bad faith police officers.

### d. Any harm possibly resulting to other parties in the proceeding.

Plaintiffs challenge the defendant to state ANY harm that the defendants will suffer if they are not permitted to unlawfully examine Plaintiffs' cell phones and Google account info, including their emails. Further, Plaintiffs are willing to offer the following: Return the items to the undersigned counsel who will as an officer of the court examine the items and preserve all footage and pictures that relate to the complained-of incidents. That way the privacies of life remain protected and the defendants still may get whatever evidence, imaginary or otherwise, may exist on these items.

4. "A preliminary injunction is an extraordinary remedy. It should only be granted if the movant has clearly carried the burden of persuasion on all four *Callaway* prerequisites. The decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

Plaintiffs submit that the extraordinary nature of the defendants' actions and warrants being sought, coupled with the established facts and proposed testimony,

## **CONCLUSION**

The facts and law, though somewhat complicated, point to the defendants' bad faith and their desire to punish the plaintiffs for their constitutionally protected protest. In fact, the police reports use the following words to describe the plaintiffs at various times:

- Agitators
- Activists
- Protesting police activity (Ex. C, page 8 of 13)

- Conducting a demonstration (Ex. C page 10 of 13)
- Anarchist demonstration (Ex. D page 18 of 25)
- Anti-government/anti-police event (Ex. D page 18 of 25)
- First amendment auditors (Ex. D page 19 of 25)

At least some of these terms describe constitutionally protected conduct. If even the police seem to agree that this may have been constitutionally protected, but with their choice of words and of course their actions make it clear that they can't stand the plaintiffs, Plaintiffs submit that we have satisfied our burden to shift the bad faith burden to the defendants to prove by preponderance of the evidence that the arrests were not motivated at least in part by the constitutionally protected conduct. Wherefore, Plaintiffs request a Preliminary Injunction be ordered and a hearing be scheduled as soon as practical.

<div style="text-align:right">

Respectfully Submitted,

**EXCOLO LAW, PLLC**

*/S/ Solomon M. Radner*
SOLOMON M. RADNER (*admitted pro hac vice*)
Attorney for Plaintiffs
26700 Lahser Rd, Suite 401
Southfield, MI 48033
248-291-9712
sradner@excololaw.com

</div>

DATED: September 18, 2018


## PROOF OF SERVICE

On September 18, 2018, the undersigned served this notice on all known parties of record by efiling it on this Court's efiling system which will send notice to counsel of record for all parties, with the exception of the Doe defendants who have yet to be identified.

*/s/ Solomon M. Radner*