**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **RUSSELL ZINTER; ET AL.** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL NO. SA-18-CA-680-FB** |
| | § | |
| **CHIEF JOSEPH SALVAGGIO; ET AL.** | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANT, CITY OF LEON VALLEY'S**
**RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Defendant CITY OF LEON VALLEY ("City") files this Response to Plaintiffs' Motion for Preliminary Injunction [Dkt. 46] as follows:

## I.
## BACKGROUND

1.  Plaintiffs are RUSSELL ZINTER; JACK MILLER; BRIAN HOWD; JAMES A. MEAD; JOSEPH BRANDON PIERCE; MARK BROWN; DAVID BAILEY; JUAN GONZALES JR.; KEVIN EGAN; JONATHAN GREEN; and JAMES SPRINGER ("Plaintiffs").

2.  Defendants are CHIEF JOSEPH SALVAGGIO; LIEUTENANT DAVID ANDERSON; DEPUTY JANE DOE GOLDMAN; OFFICER JOHNNY VASQUEZ; CPL. CHAD MANDRY; SERGEANT JOHN DOE; OFFICER JIMMIE WELLS; CORPORAL LOUIS FARIAS, badge 534; OFFICER BRANDON EVANS, badge 556; OFFICER UZIEL HERNANDEZ; JOHN DOE TAZER 1; JOHN DOE TAZER 2 ("Individual Defendants"); and THE CITY OF LEON VALLEY, a political Subdivision of the State of Texas ("City").

3.      Plaintiffs filed their Motion for Preliminary Injunction on September 18, 2018. Defendants were served with said motion on the same date via electronic filing. [Dkt.44].

4.      Defendant contends that Plaintiffs have not filed a procedurally appropriate Motion for Preliminary Injunction; Plaintiffs cannot meet their burden of "a clear showing" of evidence to obtain the "extraordinary and drastic remedy" of a preliminary injunction.  In the alternative, the *Younger* abstention doctrine applies, because there are current state criminal prosecutions pending against Plaintiffs, Springer, Mead, Brown and Miller.  In Springer's criminal case, he filed a similar motion for injunctive to preclude the District Attorney's Office from searching not only Springer's electronic information, but the information of others which include Plaintiffs who are not currently charged with a criminal offense. The continued prosecution of the criminally charged Plaintiffs involves important state interests that offers Plaintiffs adequate opportunity to raise constitutional challenges in state court; and the TRO is overbroad and should be vacated.

## ARGUMENTS AND AUTHORITIES

## II.
## PLAINTIFFS HAVE NOT FILED A PROCEDURALLY APPROPRIATE MOTION FOR PRELIMINARY INJUNCTION WITH SUPPORTING EVIDENCE AND LEGAL BRIEFING TO ALLOW DEFENDANT TO ADEQUATELY RESPOND

5.      Pursuant to this Court's September 14, 2018 Order [Dkt. 44], the Plaintiffs were allowed to file a "procedurally appropriate" motion with supporting evidence and legal briefing. Defendant contends that Plaintiffs' Motion for Preliminary Injunction [Dkt. 46] does not include appropriate evidence or legal briefing to support the Motion for Preliminary Injunction.

Therefore, Plaintiffs do not meet the burden of persuasion on all four *Callaway*[1] prerequisites to show their entitlement to a preliminary injunction.

**June 14, 2018 Incident**

6.      Plaintiffs attach Exhibit "A" to their Motion for Preliminary Injunction ("Motion") which shows the Leon Valley Police Department attempted to return Plaintiff Brown's personal property back to him [Dkt. 46-2].  Plaintiffs' Exhibit "B" verifies that Mark Brown's property he had in his possession at the time of his June 14, 2018, arrest was picked up by his girlfriend the next day [Dkt. 46-3].  Plaintiffs' allegations that Brown's property listed as "3 car charging adapters/USB cord/Multiplug Outlet/1080 FHO Camera 8 GB/iKross USB Electric stand/Bank Receipt are being kept from him is a misrepresentation.  The above-referenced items are included in the list of property the Leon Valley Police Department attempted to return to Brown as evidenced by the letter dated June 21, 2018 attached to Plaintiffs' Motion as Exhibit "A". Attached to Defendant's Response as **Exhibit "A"** is a copy of the letter and Return Receipt card indicating that Brown accepted delivery of the letter on July 3, 2018.  If the above-referenced property is still in the possession of the Leon Valley Police Department, it is Brown's choice not to pick it up.  If Plaintiffs are attempting to make an argument that Brown's property is still in the possession of the Leon Valley Police Department or the Bexar County District Attorney, Plaintiffs' do not tender any legal argument or cite legal authority by way of a legal brief to support their contention that the retention of Brown's property is in violation of Brown's the First or Fourth Amendment rights.  Attached hereto as **Exhibit "B"** is the affidavit of Chief Joseph Salvaggio in response to Plaintiff Brown's allegation of contacting the Leon Valley

---

[1] *Canal Authority of State of Florida v. Callaway* 489 F. 2d. 567, 572 (5th Cir. 1974). Discussed at length in Section II below.

Police Department regarding the status of his rental car and a copy of the June 14, 2018 incident report.

7.      Plaintiffs do not cite any authority for their contention that there is no lawful basis for Defendants to maintain possession of Brown's property.   Plaintiffs' evidence and legal briefing is wholly insufficient and not appropriate to grant Plaintiffs' Motion.  Further, Plaintiffs do not identify the police officers they intend to call as witnesses.  If Plaintiffs do call certain unnamed police officers as witnesses, what elements of established law are Plaintiffs expecting show the court in order to have a substantial likelihood of success concerning Defendants' unlawful retention of Brown's property as retaliation for Brown's protest in front of City Hall on June 14, 2018.

### June 18, 2018 Incident

8.      Plaintiffs' Exhibit "C" attached to their motion is a partial Incident Report from the June 18, 2018 incident.  [Dkt. 46-4].  It appears Plaintiffs' submission of this incident report is to draw the Court's attention to alleged "pertinent admissions" made by Individual Defendants identified in the report.[2]  Although Plaintiffs intend to rely on the oral testimony of officers in the report, Plaintiffs do not indicate what they believe each of the officer's testimony will show.  Defendant City disputes Plaintiffs' "clear" reading of the June 18, 2018 Incident Report allegedly showing that the Individual Defendants wanted "desperately to punish this group of people" and attempted to "manufacture criminal actions against the plaintiffs." [Dkt. 46, pg. 6].   Plaintiffs claim that Defendants failed to include Plaintiff, Juan Gonzales, as a witness in the incident report because Defendants knew that Gonzales' alleged "violent arrest" would sound

---

[2] Plaintiffs just provide a global pronouncement that they "plan" to call the officers listed in the June 18, 2018 report, but do not identify what officers they will call to testify.

"ridiculous" and "petty" in the report. Plaintiffs assert that they will call Gonzales to testify together with the unidentified police officers.

9.      Attached to the City's Response as **Exhibit "C"** is a complete June 18, 2018 incident report, which clearly shows that Gonzales is identified as SP1 and that Gonzales was released and not arrested. Plaintiffs again cite to no legal authority to support Plaintiffs' allegations that (1) Gonzales' and Plaintiff James Mead's failure to identify is a fictitious crime;[3] (2) detention and arrest are equally unlawful for a non-existent crime; and (3) the seizure of Gonzales', Mead's, and Plaintiff, Russell Zinter's, property is unlawful. In addition, Plaintiffs did not indicate they will rely on oral testimony to show Defendants' alleged constitutional violations against Plaintiffs Springer, Mead and Zinter.

10.      Plaintiffs assert they will introduce surveillance footage from the Leon Valley Police Station showing Plaintiff, David Bailey's, June 18, 2018, arrest for Obstruction of a Passageway was "unwarranted." Defendant City disputes Plaintiffs' allegation. Plaintiffs again fail to indicate if they intend to rely on oral testimony regarding the arrest of Bailey. As such, Plaintiffs cannot show what they believe testimony will show. Plaintiffs make several legal arguments that are not supported by cited legal authority or legal briefing. There is no legal authority to support their accusation that Defendants should not have seized video recording property from Plaintiffs which may have contained evidence of a crime. Further, Plaintiffs have no legal authority to show the Court that it is unconstitutional for the police to seize video evidence of a crime recorded on a cell phone or camera by a witness, detainee, or arrestee. In addition, Plaintiffs have no legal authority to prove their unsupported contention that it makes a difference if the crime is a misdemeanor or felony. Plaintiffs merely throw up their hands and ask "Why did the police do

---

[3] As clearly noted on the first page of Exhibit "D" (Partial June 23, 2018 Incident Report) in Plaintiffs' Motion, the Texas Penal Code reference for "Failure to Identify" is cited as "Statute 38.02 and is not fictitious.

such things?"[4] instead of providing procedurally appropriate supporting evidence and legal briefing to meet their burden to show they are entitled to a preliminary injunction. [Dkt. 46, pg. 8.]

**June 23, 2018 Incident**

11.    Plaintiffs' Exhibit "D" consists of nine (9) pages of the June 23, 2018 Incident Report, Plaintiffs attach to their Motion to show highlighted portions of alleged "pertinent" admissions made by Defendants.  Plaintiffs assert that they are planning to call unnamed officers identified in the report.   Plaintiffs provide no evidence, testimony or legal briefing on their primary contention that, Section 36.06 of the Texas Penal Code, Obstruction or Retaliation, constitutes a questionable felony on one who posts, not on the part of the host of the livestream. The only evidence Plaintiffs provide is Plaintiffs' counsel's interpretation of the statute. Plaintiffs' counsel improperly attempts to proffer self-serving testimony on a method to identify the person or persons who posted Chief Salvaggio's personal information. Again, there is no supporting evidence or legal briefing to support Plaintiffs' counsel's contentions.   Plaintiffs' false accusation that Plaintiff Johnathan Green is not identified as "SP1" in the June 23, 2018 incident report is surprising, since Plaintiff Green as "SP1" is mentioned in Plaintiffs' Exhibit "D" on page 25. [Dkt. 46-5]

12.    Plaintiffs proffering of Exhibit "G" as proof that the Defendants do not need any of the electronic devices taken from non-party, Bao-Quoc Ngyuen, is misguided.  The September 7, 2018 letter to Mr. Ngyuen was to return his personal property. [Dkt. 46-8].  Attached hereto as **Exhibit "D",**   are similar return of property letters sent to Plaintiffs, Brown, Pierce, Bailey and Springer.

---

[4] It is noted in Defendant City's Original Answer and this Response that it denies and refutes all of Plaintiffs' allegations made in their Motion for Preliminary Injunction.

13.     Plaintiffs provide no evidence, testimony or legal briefing on their allegations that Defendants "frivolously" charged Plaintiffs Howd and Pierce with Interference and Resisting Arrest; and Defendants retention of unlawfully seized property from Howd and Pierce "for no conceivable reason other than to punish" them for being anarchists. [Dkt. 46, pg. 11].

14.     Plaintiffs have also not provided any legal authority or briefing that Plaintiffs have standing to assert relief for nonparties, Greg Gardiner; Jason Green and Bao-Quac Nyguen.

15.     Defendant City denies Plaintiffs' accusation that Police Chief Salvaggio ordered his officers to arrest all of the protestors present at the June 23, 2018 incident in front of City Hall. Plaintiffs provide no evidence or testimony to support this contention.  Plaintiffs assert that it was "bad faith tactics" used by the police in calling for a press conference where Chief Salvaggio (1) called for the arrest of Bao-Quac Nyguen ("AP1") for Obstruction or Retaliation under Texas Penal Code §36.06; (2) requested the protestors to remain on site; and (3) advised the protestors to surrender their recording devices, because they were witnesses to the crime committed by Mr. Nyguen.  However, Plaintiffs do not provide any legal briefing that the alleged "bad faith tactics" is a constitutional violation.

16.     Plaintiffs' conclude their "Factual Background" section without additional evidence to support their factual allegations or cite legal authority to support Plaintiffs' conclusory averments. They offer at least six more questions without a sufficient evidentiary basis supporting a preliminary injunction. [Dkt. 46, pgs. 13, 14].  Plaintiffs merely assert it is self-evident from the Incident Reports that Defendants violated Plaintiffs' First and Fourth Amendment rights.  Such erroneous assertion cannot support Plaintiffs' unsubstantiated legal conclusions.

**III.**
**PLAINTIFFS CANNOT MEET THEIR BURDEN OF PERSUASION FOR THE COURT**
**TO GRANT A PRELIMINARY INJUNCTION.**

17.    A permanent injunction is an extraordinary and drastic remedy, not to be granted routinely, but only when the plaintiff by "a clear showing" carries the burden of persuasion. *Holland Am, Ins. Co. v. Succession of Roy, 777 F.2d 992, 997 (5th Cir. 1985)*. To succeed in obtaining injunctive relief, a plaintiff must prove the following elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction does not issue; (3) the threatened injury to the plaintiff outweighs any damage the injunction might cause to the opponent; and (4) the injunction will not disserve the public interest. *Villas at Parkside Partners v. City of Farmers Branch*, 701 F. Supp. 2d 835, 859 (N.D. Tex. 2010); *Callaway* at 576.  Even when a plaintiff establishes the four elements required for a permanent injunction, the decision to grant or deny it remains in the Court's discretion. *Lemon v. Kurtzman*, 411 U.S. 192, 200-01 (1973).  Plaintiffs cannot meet their legal standard as cited in the Brief in support of their Motion. [Dkt. 46, pg. 14].

**A.    Plaintiffs cannot show a substantial likelihood of success against the City.**

18.    Ordinarily a municipality cannot be held liable for the actions of its employees on a *respondeat superior* theory.  *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, a plaintiff seeking to impose liability on a municipality must identify a policy or custom that caused the plaintiff's injury.  *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). "[M]unicipal liability under [S]ection 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.2001) (citing *Monell*, 436 U.S. at 694).

**(i)      Plaintiffs cannot demonstrate an official policy exists that was adopted or maintained by policymaker**

19.     The City argues there is no evidence to demonstrate the City has a custom, policy or practice adopted or maintained by a policymaker  supporting or condoning use of unlawful arrest or detention; unlawful and retaliatory assault; unlawful detention of property; unlawful seizure and prosecution; excessive force; unlawful seizure of property; and abuse of process.   In this case, Plaintiffs only present unsubstantiated legal conclusions that must be rejected.

**(ii)      Plaintiffs cannot demonstrate violations of the First and Fourth Amendment in the search and seizure of phones and electronic recording devices**

20.     Disputed facts exist to Plaintiffs' allegations that the City unlawfully search and seized Plaintiffs' phones and electronic recording devices.

21.     The Supreme Court has stated that there is no need to obtain a warrant if (1) there is probable cause and (2) there are **exigent** circumstances requiring immediate action. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).   It is well recognized that "(w)hen the police possess probable cause to conduct a search, but, because of exigent circumstances, do not have time to obtain a warrant, they may search without a warrant." *Roaden v. Kentucky*, 413 U.S. 496, 505, 93 S.Ct. 2796, 2802, 37 L.Ed.2d 757 (1973).         With regards to *Katz'* first requirement, "probable cause is a 'flexible, common-sense standard,' merely requiring that a person of reasonable caution believe that 'certain items may be contraband or stolen property or useful as evidence of a crime.'" *Berglund v. City of Maplewood,* 173 F. Supp. 2d 935, 943 (8th Cir. Minn, 2002) (emphasis added), *citing, Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). It does not require that the belief be correct or more likely true than false. *Id.*   In *Berglund,* plaintiff had control of his camera and was videotaping his confrontation and arrest with police.  Therefore, the police had a reasonable

belief and probable cause to seize the videotape. *Id.* at 943-944.  The second requirement in *Katz*

provides that exigent circumstances of the possible loss of evidence can justify a seizure. *Id.* at

944, *citing, State v. Wilson,* 594 N.W.2d 268, 270 (Minn. Ct. App. 1999). The *Berglund* court

found that the police officers had a reasonable belief that not only Berglund could destroy the

evidence, but that a third party, Berglund's companion, could also either destroy, erase or tamper

with the videotape. Therefore, seizure from the third party satisfied the exigent circumstance

exception and did not violate the Constitution. *Id.* at 944.

22.    In the instant case, Plaintiffs will not be able to prove the Defendants did not have

probable cause for the seizure and detention of property belonging to Plaintiffs or third parties.

Therefore, the Defendants cannot be held liable for Plaintiffs' claims of unlawful search and

seizure of their property. The above above-referenced persuasive authority adds support to the

City's contention that Plaintiffs cannot maintain their claim against the City for a policy or

custom in the alleged unlawful seizure of Plaintiffs' property.

**(iii)    Plaintiffs cannot establish Fourth Amendment violations of arrest without probable
cause or reasonable suspicion**

23.    Disputed facts exist to Plaintiffs' allegations that they were arrested or detained without

probable cause or reasonable suspicion.

24.    An arrest based on probable cause cannot constitute an unreasonable seizure within the

meaning of the Fourth Amendment.  *Halcomb v. Woods*, 767 F. Supp. 2d 123 (D.D.C. 2011).

Whether a charge is later dropped or a defendant is found not guilty is immaterial to the probable

cause         analysis.        *Buehler v. City of Austin/Austin Police Dep't*, No. A-13-CV-1100-

L, 2015 WL 737031, * at 12 (W.D. Tex. Feb. 20, 2015); *Baker v. McCollan*, 443 U.S. 137, 145

(1979).  The Constitution does not guarantee that only the guilty may be arrested. *Id.* at 145.

"The ultimate release of charges ... is of no significance in the probable cause analysis.  Officers

are not expected to be legal technicians." *Arrington v. Kinsey*, 512 Fed. Appx. 956, 959 (11th Cir. 2013). The fact that an arrested individual is ultimately acquitted, or charges against him are dropped, is of no consequence in determining the validity of the arrest. *Marx v. Gumbinner*, 905 F.2d 1503, 1507 (11th Cir.1990); *Mills v. Town of Davie*, 48 F.Supp.2d 1378, 1380 (S.D.Fla.1999). In the instant case, Plaintiffs allege that since some of the Plaintiffs' charges were dismissed by the Magistrate, there is *prima facie* proof that Defendants acted in bad faith in pursuing those charges. As supported by the above-referenced authority, this allegation has no merit. Plaintiffs allege throughout their First Amended Complaint that Plaintiffs were arrested or detained without probable cause.[5] However, Plaintiffs will not be able to meet their burden that all of Plaintiffs seizures/arrests were unreasonable or without probable cause and therefore, Plaintiffs' request for extraordinary relief should be denied.

25.     In a 2016 factually similar case from the Western District of Texas, San Antonio Division, Judge Ezra granted police officers' Motion for Summary Judgment dismissing all of Plaintiffs' First, Fourth and Fourteenth Amendments to the U.S. Constitution, which included Cadena's claims he was arrested in retaliation for video-taping his wife's arrest.[6] "The Supreme Court 'has never held' that there is a right to be free from a retaliatory arrest that is otherwise supported by probable cause." *Reichle v. Howards* 132 S. Ct. 2088, 2094 (2012). "Accordingly, if a plaintiff's arrest is based on probable cause, he or she may not state a First Amendment retaliation claim." *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the

---

[5] Plaintiffs' First Amended Complaint [Dkt. 3, ¶¶ 45, 60, 81, 86, 89, 91, 96, 107, 114, 127, 133, 140, 141, 145, 148, 150, 153, 169, 170, 171, 172, 174, 197, 206, 211, 214, 215, 219, 220, 221, 222, 223, 224, 227, 233, 255, 264, 265, 276 a).
[6] *Cadena v. Ray*, No. 5: 15-CV-552-DAE, 2016 WL 6330438 (W.D. Tex. Oct. 27, 2016), *aff'd*, 728 F. App'x 293 (5th Cir. 2018) *3. Attached as **Exhibit "E."**

moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004)." "Under Texas law, "a person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law." Tex. Penal Code § 38.15."[7]   *Id.* at *4.

26.     In *Cadena*, Cadena and his wife attended a bachelor and bachelorette party at the Hotel Valencia in downtown San Antonio. A San Antonio police officer arrested Cadena's wife for public intoxication. Cadena showed up during the arrest and started using his cell phone to record the scene.  The officer asked Cadena to leave the scene because his presence was agitating his wife. Cadena left the scene to avoid both interference with police work and agitation of his wife, but Cadena then returned to the scene and started walking towards his wife. The officer told Cadena to put his hands behind his back. Cadena replied "No" multiple times, retracted his arms and back pedaled away.  Cadena resisted while the officer was attempting to place him under arrest. Cadena was then wrestled to the ground by several officers, who had continued difficulty getting control of Cadena's body.  Another officer, tased  Cadena twice before officers were able to handcuff Cadena. *Id* at *2.  The *Cadena* court found that,  ". . . due to Cadena's return to the scene after acknowledging that his presence was interfering with police operations, Officer Rodriguez had probable cause to arrest Cadena for violation  of Section 38.15. *Id* at *4.

27.     The *Cadena* Court further found Cadena's conduct that created probable cause did not consist of speech. "Texas courts have recognized that merely arguing with police officers about the propriety of their conduct... falls within the speech exception to section 38.15." *Freeman v.*

---

[7] Interference with Public Duties.

*Gore,* 483 F.3d 404, 414 (5th Cir. 2007) (citing *Carney v. State,* 31 S.W.3d 392, 394, 398 (Tex. Ct. App. 2000)).” *Id.* at *4. “Here, Cadena did more than just argue with the police and talk to his wife from afar; after being told to leave the scene, Cadena doubled back and walked toward the officers arresting his wife, thus, threatening the safety of the arresting officers and creating probable cause that he was interfering and disrupting the police. Therefore, Cadena may not avail himself of the statutory defense.” *Id.* at *4. As such, in the instant case, Plaintiffs arrests and/or detentions resulted from the statutory violations of Interference with Public Duties (Texas Penal Code 38.15); Resisting Arrest, Search, or Transport (Texas Penal Code 38.03 (a)); and Failure to Identify, (Texas Penal Code 38.02)[8], and did <u>not</u> consist of retaliation for speech under the First Amendment.

**(iv)   Plaintiffs will not suffer an irreparable injury if the injunction is not granted because there is no expectation of privacy in file sharing.**

28.    In *U.S. v. Weast*, 811 F.3d 743 (5th Cir. 2016), Defendant who used a computer to share and download illegal content did not have a reasonable expectation of privacy in his internet protocol address or a file shared through a peer-to-peer network; therefore, law enforcement's warrantless use of peer-to-peer software to identify defendant's internet protocol address and to download possible illegal content from the file shared by defendant did not violate his Fourth Amendment right to be free from unreasonable search and seizure. Defendant voluntarily disseminated his address in the normal course of internet use and made the illegal content files publicly available. *Weast* at 747.[9]

29.    The *Weast* Court distinguished their case from *Riley v. California* 134 S. Ct. 2473 (2014) holding that *Riley* presumed the arrestees had a reasonable expectation of privacy in the

---

[8] See Exhibit “D” pg. 1, Plaintiffs’ Motion. Dkt. 46-5.
[9] Defendant was accused of distributing child pornography.

information on their cell phones. However, unlike the arrestees in *Riley*, "Weast had already voluntarily shared all of the information at issue in this case. He broadcast his IP address far and wide in the course of normal internet use,[10] and he made the child pornography files and related data publicly available by downloading them into a shared folder accessible through a peer-to-peer network.[11] Such behavior eliminates any reasonable expectation of privacy in the information, rendering *Riley* inapposite."[12]   *Id.* at 747-748.   The *Weast* Court noted that its decision in the *United States v. Guerrero*, 768 F.3d 351, 358–60 & 360 n. 7 (5th Cir.2014, cert denied), reinforced this conclusion. In *Guerrero*, the Fifth Circuit found *Riley* did not overrule their precedent withholding Fourth Amendment protection from cell phone location data passively transmitted to service providers.[13] The *Weast* Court found the "reasoning of *Guerrero* easily extends to the facts now before us; IP addresses and peer-to-peer-shared files are widely and voluntarily disseminated in the course of normal use of networked devices and peer-to-peer software, just as cell phone location data are disseminated in the course of normal cell phone use. For this reason, Weast's Fourth Amendment rights were not violated when Officer Watkins accessed his IP address and shared files." *Weast* at 748.[14]

30.     This Court must follow Fifth Circuit precedent which mandates that Plaintiffs have no

---

[10] *U.S. v. Christie*, 624 F.3d 558, 563 (3rd. Cir. 2010) ("IP addresses are also conveyed to websites that an internet user visits, and administrators of websites ... can see the IP addresses of visitors to their sites.").

[11] *U.S. v. Conner*, 521 Fed. Appx. 493, 497, 2013 ("[P]eer-to-peer file sharing ... programs ... are expressly designed to make files on a computer available for download by the public, including law enforcement. Peer-to-peer software users are not mere intermediaries, but the intended recipients of these files. Public exposure of information in this manner defeats an objectively reasonable expectation of privacy under the Fourth Amendment."). In his pre-warrant investigation, Officer Watkins could not and did not access data on Weast's computer other than that stored in the shared folder.

[12] *United States v. Post*, 997 F.Supp.2d 602, 606 (S.D.Tex.2014) ("[*Riley* was] not about whether an arrestee has a privacy interest in a cellphone found in his possession. He maintains such an interest in both the phone and its contents. The issue [was] whether the justifications that overcome that privacy interest and allow for warrantless seizure of the phone also support warrantless search of its contents.").

[13] *Guerrero*, n. 7, *Riley* did not overturn Supreme Court precedent finding no reasonable expectation of privacy in "information already in the possession of an identifiable third party".

[14] *Accord United States v. Carter*, 2015 WL 5474180, at *1–2 (N.D. Ohio Sept. 16, 2015) (on essentially identical facts, denying motion to suppress and distinguishing *Riley*).

expectation of privacy for the voluntary dissemination and sharing of Chief Salvaggio's residence address in violation of Texas Penal Code 36.06. Plaintiffs cannot contend irreparable injury resulting from their own intentional and illegal acts.  Plaintiffs' reliance in *Riley* as legal authority to support their request for a preliminary injunction is misplaced.  Pursuant to Fifth Court precedent, this Court must deny Plaintiffs' Motion for Preliminary Injunction.

## IV.
## PLAINTIFFS CONTENTION OF NO DISPUTED FACTS IS ERRONEOUS

31.    Plaintiffs contend the partial Incident Reports attached as Exhibits C-D to Plaintiffs' Motion are not in dispute. Although the referenced Incident Reports authored by Individual Defendant Officers are not in dispute, Plaintiffs characterization and interpretation of those facts are distorted and nonsensical. In actuality, Plaintiffs dispute the facts in those reports in their assertion of unlawful seizure of property and arrests/detentions unsupported by probable cause in both their Motion and First Amended Complaint.

## V.
## IN THE ALTERNATIVE, THE YOUNGER ABSTENTION APPLIES

32.    The Supreme Court held in *Younger v. Harris* that, when a party in federal court is simultaneously defending a state criminal prosecution, federal courts "should not act to restrain [the state] criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." 401 U.S. 37, 43–44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Its conclusion was motivated by the "basic doctrine of equity jurisprudence," "notion[s] of 'comity,' " and "Our Federalism." *Id.*   Courts apply a three-part test when deciding whether to abstain under *Younger*.  There must be (1) "an ongoing state judicial proceeding" (2) that "implicate[s] important state interests" and (3) offers "adequate opportunity" to "raise constitutional challenges."  *O'Donnell v. Harris County et al.* 892 F. 3d

147, 156 (5th Cir. June 1, 2018), citing *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). The Younger doctrine applies to suits for injunctive and declaratory relief. *Google, Inc., v. Hood*, 822 F. 3d 212, 222 (5th Cir. 2016) citing *Nobby Lobby, Inc. v. City of Dallas,* 970 F.2d 82, 86 (5th Cir. 1992).

33.     Attached hereto as **Exhibit "F"** is a copy of Plaintiff, Springer's Request for Temporary Restraining Order, Motion to Stay Execution of and to Quash Search Warrant filed in his criminal case styled, *The State of Texas v. James Springer*, In the District Court, 227th Judicial District, Bexar County, Texas, Cause No. 2018-CR-7461, requesting the court to enjoin the Leon Valley Police Department, Bexar County District Attorney's Office, and other State and Federal Agencies from obtaining any evidence seized or may be seized in connection with his state case, pursuant to the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution; Article 1 Section 9 of the Texas Constitution, and under Article 38.23 of the Texas Code of Criminal Procedure. Plaintiff, Springer, not only filed the same type of temporary restraining order in state court, he is also reasserting his constitutional challenges to the alleged unlawful seizure of "any" property he may possess  as well as property in the possession of third parties. This broad request to the state court regarding "any" seized property would include any Plaintiffs whose property was seized and not charged with a criminal offense.

34.     The second *Younger* requirement provides, "[w]hen a state proceeding is commenced before the federal suit is filed or before the federal court takes any substantive action in the case…the balance weighs in favor of the state: the risk of federal interference is greater and the state interest is stronger." *DeSpain v. Johnson*, 731 F.2d 1171, 1178 (5th Cir. Tex. 1984). As evidenced by the Affidavit of Brandon Ramsey, Assistant Criminal District Attorney, from the

Bexar County District Attorney's Office,[15] the following Plaintiffs have ongoing criminal proceedings[16]: James Springer  (Obstruction/Retaliation, Penal Code §36.06); David Bailey (Obstructing Highway or other Passageway); Jack Miller (Places Weapons Prohibited); and Mark Brown (Interference with Public Duties, Resetting Arrest).  Police Officers came in contact with Plaintiffs, Howd, Mead, Pierce and Green.  Search Warrants were issued for the property seized from these individuals, including Springer.

35.     As the Supreme Court has explained, interference with state judicial proceedings "prevents the state ... from effectuating its substantive policies.... results in duplicative legal proceedings, and can readily be interpreted 'as reflecting negatively upon the state courts' ability to enforce constitutional principles.'" *Google,* at 222, citing *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 604, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (quoting *Steffel v. Thompson,* 415 U.S. 452, 462, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974)).  The Affidavit of Brandon Ramsey provides evidence that a restraining order interferes with the District Attorney's criminal investigation which demonstrates an important state interest in prosecuting criminal violations.  *See* **Exhibit "F."**

36.     The third prong for *Younger* applicability is whether the state proceeding affords an adequate opportunity to raise constitutional challenges to the actions enjoined as specified in the TRO. *Wightman v. Tex. Supreme Ct.,* 84 F.3d 188, 189 (5th Cir. 1996).  Since Springer requests "any" seized property that would include any Plaintiff whose property was seized, including those Plaintiffs who were not charged with a crime, a forum in state criminal court is available for any Plaintiff to raise his objection. The availability of the opportunities to litigate

---

[15] Affidavit of Brandon Ramsey, is attached as **Exhibit "G."**
[16] Although Jason Green is referred to in the TRO, he is not a plaintiff in this case nor have criminal charges been filed against him. [Dkt. 22 p. 2].

constitutional claims in the state courts (trial and appellate) constitute "an adequate opportunity to raise constitutional challenges" in the state criminal proceedings. This prong of the *Younger* test is satisfied and abstention is warranted.

## VI.
## IN THE ALTERNATIVE, THE PRELIMINARY INJUNCTION IS OVERBROAD

37.    "When crafting an injunction, district courts are guided by the Supreme Court's instruction that 'the scope of injunctive relief is dictated by the extent of the violation established.'" *O'Donnell* at 163*, citing Califano v. Yamasaki*, 442 U.S. 682, 702, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). "A district court abuses its discretion if it does not '**narrowly** tailor an injunction to remedy the specific action which gives rise to the order.'" *O'Donnell* at 163, citing *John Doe # 1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004) (Emphasis added). "Thus, an injunction must be vacated if it "fails to meet these standards" and "is overbroad." *Id.* "The broadness of an injunction refers to the range of proscribed activity .... [and] is a matter of substantive law." *O'Donnell* at 163, citing *U.S. Steel Corp. v. United Mine Workers of Am.*, 519 F.2d 1236, 1246 n.19 (5th Cir. 1975). In *O'Donnell,* the district court granted Plaintiff's motion for a preliminary injunction which required the implementation of new safeguards and the release of numerous detainees subjected to insufficient procedures.[17] *Id.* The Fifth Circuit found that there was a significant mismatch between the district court's procedure-focused legal analysis and the sweeping injunction it implemented. *Id.*

38.    In the instant request for a preliminary injunction, all the Defendants are enjoined from, "searching the electronic devices or any electronic accounts of the people present for the protests

---

[17]Arrestees brought § 1983 action, on behalf of themselves and others similarly situated, against county, county sheriff, county judges, and other county officials, alleging that county's system for setting bail for indigent misdemeanor arrestees, which resulted in detention of indigent arrestees solely due to their inability to pay bail, violated Equal Protection and Due Process Clauses.

which form the basis of this action." The request for is overly broad because it includes not only the Plaintiffs' devices, but devices from any person who attended the protests who are not a party in this case.

39.     The unidentified people attending one or all of the protests is overly broad for the scope of the injunctive relief.   As read, the injunction would include all information that can be viewed or discovered from the seized electronic devices and electronic accounts from all protest participants.   The broad scope of the preliminary injunction stymies Defendants and other investigative agencies prosecution of criminal complaints.

## VII.
## CONCLUSION

40.     The sole reason for Plaintiffs' Motion for Preliminary Injunction is to enjoin Defendants from searching the electronic devices or any electrical accounts from people, not only Plaintiffs, who attended protests on June 14, 18, and 23, 2018. Plaintiffs simply have not filed the procedurally appropriate Motion for Preliminary Injunction as directed by this Court order [Dkt. 44] to receive "extraordinary" relief.  Defendant City has provided persuasive legal authority in responding to Plaintiffs' allegations of unlawful searches/seizures of property and arrests without probable cause.   Moreover, Plaintiffs do not have an expectation of privacy regarding information disseminated or shared with the public.  As a consequence, Plaintiffs' Motion for Preliminary Injunction should be denied.

## VIII.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant CITY OF LEON VALLEY, prays that this Court deny Plaintiffs' Motion for Preliminary Injunction; and that Defendant City

be given such other and further relief, at law or in equity, general or special, to which Defendant City may be justly entitled.

 SIGNED this 28th day of September, 2018.

     Respectfully submitted,

     DENTON NAVARRO ROCHA BERNAL & ZECH
     A Professional Corporation
     2517 N. Main Avenue
     San Antonio, Texas 78212
     Telephone: (210) 227-3243
     Facsimile: (210) 225-4481
     patrick.bernal@rampage-sa.com
     adolfo.ruiz@rampage-sa.com

   BY:  _____
     PATRICK C. BERNAL
     State Bar No. 02208750
     ADOLFO RUIZ
     State Bar No. 17385600
     ATTORNEYS FOR DEFENDANT
     CITY OF LEON VALLEY

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been served upon the below named individual(s) via certified mail, return receipt requested, unless otherwise indicated, and according to the Federal Rules of Civil Procedure on the 28th day of September, 2018.

Brandon J. Grable                                    **E-NOTIFICATION**
GRABLE LAW FIRM PLLC
1603 Babcock Road, Suite 118
San Antonio, Texas 78229

Solomon M. Radner                                    **E-NOTIFICATION**
EXCOLO LAW, PLLC
26700 Lahser Rd, Suite 401
Southfield, MI 48033

Charles S. Frigerio                                  **E-NOTIFICATION**
Law Offices of Charles S. Frigerio PC
111 Soledad, Ste. 840
San Antonio, Texas 78205

_____
PATRICK C. BERNAL
ADOLFO RUIZ

F:\Zinter et al v Leon Valley (45259)\Pleadings\Drafts\City's Resp to Ps' Mt for Prelim Injunction\City's Resp to Ps' Mt for Prelim Inj 2018 0928..doc

Defendant City's Response to Plaintiffs' Motion for Preliminary Injunction                     Page 21