UNITED STATES DSICTRICT COURT
WESTERN DSICTRICT OF TEXAS
SAN ANTONIO DIVISION

RUSSELL ZINTER, *et al*;

    *Plaintiffs*,                         Case No.: 5:18-CV-680-FB-RBF

vs.

CHIEF JOSEPH SALVAGGIO, *et al*;

    *Defendants*.
_____/

## PLAINTIFFS' OBJECTIONS TO MAGISTRATE-JUDGE'S REPORT AND RECOMMENDATION, ECF #62

    Now Come Plaintiffs, by and through their attorney, Solomon M. Radner and Excolo Law, PLLC, and for their Objections, state as follows:

- Objection Number 1: In the "Analysis" section under Factor 1, ECF # 62, page 6, the Magistrate-Judge fails to analyze evidence of Defendants' retaliation raised in Plaintiffs' Motion, ECF #46.

- Objection Number 2: In the "Analysis" section under Factor 1, ECF #62, pages 8-10, the Magistrate-Judge fails to analyze, discuss, or mention Plaintiff's unlawful arrest claim in determining Plaintiffs' ability to show success on the merits, despite its relevance to the instant motion for preliminary relief and it being raised in Plaintiffs' Motion, ECF #46.

- Objection Number 3: In the "Analysis" section under Factor 2, ECF #62, pages 10-11, the Magistrate-Judge fails to analyze, discuss, or mention

1

      Plaintiffs' "privacy" argument, based on established United States Supreme Court precedent raised in Plaintiffs' Motion, ECF #46.

– Objection Number 4: In the "Analysis" section under Factor 2, ECF #62, pages 10-11, the Magistrate-Judge fails to analyze, discuss, or mention Chief Salvaggio's testimony discussing the personal and private information that he will indeed view if permitted to search Plaintiffs' cell phones and electronic devices, on the Magistrate-Judge's analysis of the threat of irreparable harm.

The Magistrate-Judge's failure to analyze the evidence and claims at the heart of Plaintiffs' motion was erroneous. While Plaintiffs acknowledge that this motion is not dispositive of the case under Fed. R. Civ. P. 72, Plaintiffs suggest a de novo review of the instant motion for preliminary relief due to the pervasive effect of the stated objections on the entirety of the Report and Recommendation.

## INTRODUCTION

Citizens of the United States of America have a constitutionally-protected right to protest in public places. *See Davidson v. City of Stafford*, 848 F.3d 384, 393-394 (5th Cir. 2017). Citizens also have the right to record public officials, including the police, in public places while performing their duties. *See Turner v. Driver*, 848 F.3d 678, 687-688 (5th Cir. 2017). In this case, Plaintiffs, for engaging in constitutionally protected conduct of protesting and/or gathering in a public space, were subjected to either an arrest, and/or had their personal property confiscated, and/or were criminally charged. In the police reports, Defendants demonstrate their hostility and ill will toward Plaintiffs' engagement in constitutionally-protected

activity when they resort to persistent name-calling and ridicule. *See* ECF # 45-4, 45-5 (Exhibits C & D of Plas' Motion for Preliminary Relief). Now, Defendants want to search through the infinite and limitless amount of private information contained on the average person's cell phone, under the guise of criminal investigation, for information they either already have or are requesting in bad faith. The Fifth Circuit has explicitly noted that individuals have an expectation of privacy in their cell phones, because they "are similar to a personal computer that is carried on one's peson" and contains "a wealth of private information, including emails, text messages, call histories, address books, and subscriber numbers." *United States v. Zavala*, 541 F.3d 562, 577 (5th Cir. 2008). Plaintiffs object to the Magistrate-Judges finding that their request for a preliminary injunction be denied for the reasons contained herein and ask this court to sustain their objections and enjoin Defendants from searching the electronic devices or any electronic accounts of the people present for the protests which form the basis of this action.

**Objection Number 1:**

On page 6 of ECF #62, the Magistrate-Judge wrote: "There are no specific facts or other evidence in the record sufficient to show that Defendants initiated the underlying state criminal prosecutions (against some but not all of Plaintiffs) to retaliate against Plaintiffs (even in part) or deter them from engaging in protected First Amendment activity."

However, Plaintiffs assert that they did provide evidence sufficient to support their claim of retaliation for protected conduct. *See generally*, ECF #46 pages 4-14; Exhibits B & C. Plaintiffs' argument that Defendants retaliated against them for

protected conduct is supported by the statements and facts contained in the police report contained in Exhibits B & C of Plaintiffs' motion. *See Id.*, page 14, ¶ 1a. Not only does the Magistrate-Judge not address Plaintiff's argument that the police reports should fall in the category of "not disputed" facts, he doesn't even mention the police reports at any point in his Report. The police reports are riddled with instances where the police refer to the protestors with derogatory language in response to their acts of engaging in the constitutionally protected conduct of peaceful protesting. Plaintiffs point to this at several points in their motion and posit that, due to the actions taken against Plaintiffs and the words used to describe Plaintiffs, this evidence suggests that the Defendants wanted to punish Plaintiffs. *See Id.*, page 15, ¶ a.

Plaintiffs have shown they were engaging in a constitutionally protected activity of protesting public officials. Plaintiffs have provided evidence that suggests that the bringing of criminal charges "was motivated *at least in part* by a purpose to retaliate for or to deter that conduct," *Wilson v. Thompson*, 593 F.2d 1375, 1387 (5th Cir. 1979) (emphasis added), where the police reports demonstrate consistent name-calling toward Plaintiffs, failed attempts to prosecute certain Plaintiffs with frivolous charges, and the seizure of personal property without a good faith basis. Where Plaintiffs' allegations of bad faith and retaliation stem from the statements contained in the police reports, Plaintiffs respectfully request this Honorable Court take Plaintiffs proffered evidence into consideration in making their final determination for preliminary relief.

Further, the fact remains that Salvaggio admitted in his hearing testimony that as of now he has **absolutely no evidence** linking the plaintiffs to the threats he and his department have been receiving. NONE. In fact his testimony was that the **lack** of existing evidence is the reason he needs to examine all contents of all phones and all emails from all people present at the protests: To **find** evidence of these threats there, which he has no reason to believe even exists other than the fact that they were at a protest. This is the very definition of a fishing expedition because the fact remains that the only basis the police have as of now to be in possession of the plaintiffs' phones, know their identities, or know their email address is the mere fact that they protested the police. This is further the very definition of retaliation for protesting.  Bottom line: The only 'evidence' that exists that suggests that any plaintiffs are liable, is the fact that they protested.

**Objection Number 2:**

On pages 8-10, the Magistrate-Judge determined that Plaintiff could not prevail on the merits because they could not defeat the individual officers' affirmative defense of qualified immunity. However, in making this determination the Magistrate-Judge failed to analyze, discuss, or mention Plaintiff's unlawful arrest claim in determining Plaintiffs' ability to show success on the merits, despite its relevance to the instant motion for preliminary relief and it being raised in Plaintiffs' Motion, ECF #46, pages 4-14, 16-17. The Magistrate-Judge only discusses the warrant issue but does not consider that Plaintiffs allegation of unlawful arrest and unlawful seizure of personal property were done without a warrant or probable cause and also in retaliation for constitutionally protected conduct.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (citing *Pearson v. Callahan*, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quotations omitted)). To defeat a claim of qualified immunity, a plaintiff must first "claim that the defendants committed a constitutional violation under current law" and second "he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the cations complained of." *Id*. at 194. To be clearly established, "[a] case on point in not required; rather the central concept is that of fair warning: [t]he law can be clearly established despite notable factual distinctions . . .." *Trent v. Wade*, 776 F.3d 368, 383 (5th Cir. 2015).

In this case, the Exhibits to Plaintiffs' Motion for Preliminary Injunction provides sufficient facts to support the allegations for each claim contained therein. Defendant Officers unlawfully arrested or detained plaintiffs, unlawfully seized their property and unlawfully retaliated against them. The violations claimed by Plaintiffs are objectively unreasonable under constitutional standards. The Fourth Amendment right to be free from an arrest without probable cause is clearly established. *Club Retro LLC*, at 206. The Fourth and Fourteenth Amendment rights "to be free from malicious prosecution, false arrest, and bodily harm" are clearly established. *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995) (citing e.g., *Shaw v. Garrison*, 467 F.2d 113, 120 (5th Cir. 1972)). Finally, it is clearly established that the Fourth Amendment requires a search warrant before property can be seized.

*Franco v. Kluge*, 2015 U.S. Dist. LEXIS 47954, at * 36 (W.D. Tex. Apr. 13, 2015). Plaintiffs allege that Defendant Officers did not have probable cause or a warrant for any of the charges, arrests, or seizures or any other actions taken with regard to Plaintiffs constitutionally protected conducted described herein. (*See* Doc. 3). Therefore, Plaintiffs can rebut Defendants claim of qualified immunity at this stage of the proceedings and request this Honorable Court take Plaintiffs' evidence into consideration.

Further, the videos prove unequivocally that Salvaggio's testimony was untruthful in several regards. First, the videos unequivocally prove that when Brown was arrested, it was a false arrest because at no time did he do anything that conceivably could have been interpreted as interfering with law enforcement. Salvaggio's testimony that Brown was interfering and "lording over" the officers who were arresting another person is clearly contradicted by video which shows that Brown was standing at a distance while recording the arrest, and even more, obeying the officers orders to back up when he was arrested. Second, the police footage clearly showed that the both the police reports and Salvaggio falsely claimed that Bailey was blocking the door by impeding a member of the public from entering the building. This too is clearly refuted by the footage introduced which shows that Bailey did not impede her ability whatsoever to enter the building. Salvaggio even admitted that the city has a policy to detain people who refuse to identify as witnesses, even though this blatantly unconstitutional because such refusal is in conformity with Texas law, as is quite clear by now having been briefed repeatedly.

Also, the footage introduced shows another important fact: that the defendants were misdealing to the courts when arguing to the court that they need all the subpoenas in this case. Up until the hearing, they claimed they needed the subpoenas in furtherance of the prosecutions against Brown and Bailey. However, not only are these prosecutions demonstrably vexatious based on the introduced footage, but footage of exactly what transpired is already in the hands of the police so what could possibly be gained by reading all of Mr. brown's emails or examining his phone? Nothing! It was not until the hearing that Salvaggio told us the truth about why these items were really seized, why these people were arrested/detained, and why everyone's emails and texts need to be read by the police: To establish that the plaintiffs are members of this cabal of anti-government anarchists who want to overthrow the government, for which there currently exists not a shred of supporting evidence other than the fact that they participated in a constitutionally protected protest. These lies eliminate the cloak of qualified immunity.

**<u>Objection Number 3 & 4:</u>**

The Magistrate-Judge fails to consider evidence and arguments of the risk of an extreme invasion of privacy proffered by Plaintiffs and corroborated by Chief Salvaggio's testimony into his consideration of irreparable harm.

First, in the "Analysis" section under Factor 2, ECF #62, pages 10-11, the Magistrate-Judge fails to analyze, discuss, or mention Plaintiffs' "privacy" argument, based on established United States Supreme Court precedent raised in Plaintiffs' Motion, ECF #46.

Second, in the "Analysis" section under Factor 2, ECF #62, pages 10-11, the Magistrate-Judge fails to analyze, discuss, or mention Chief Salvaggio's testimony discussing the personal and private information that he will indeed view if permitted to search Plaintiffs' cell phones and electronic devices, on the Magistrate-Judge's analysis of the threat of irreparable harm, despite finding the Chief's testimony "credible." *See* pages 4, 8, 11-12.

Plaintiffs' believe that allowing the Defendants to gain access to their cell phones would be an uncorrectable "invasion into the privacies of life," as described by the Supreme Court originally in *Boyd v. United States*, 116 U.S. 616, 630 (1886) and applied to contemporary technology in *Riley v. California,* 134 S. Ct. 2473, 2494-2495, 189 L. Ed. 2d 430, 452 (2014). In his testimony, Chief Salvaggio confirmed the extent to which Plaintiffs' privacy would be violated. He testified that he would read personal texts and emails sent and received by Plaintiffs. *See* Testimony of Chief Salvaggio. Every email and text sent or received from Plaintiffs cell phone or electronic device is far beyond the scope of what Defendants claim they need to properly "investigate" Plaintiffs. The Magistrate-Judge, instead of addressing Plaintiffs legitimate privacy argument, hypothesizes that "one could easily imagine a situation where one or more of the cell phones seized here does not contain much or any personal or confidential information." ECF #62, Page 11. Plaintiffs object that this imagined scenario is at odds with the reality of the type of information kept on cell phones as pronounced by the Fifth Circuit in *Zavala*, and is not a proper response to Plaintiffs' privacy argument.

Further, Plaintiffs do not believe that expert evidence is required to show that allowing Defendants to randomly search through all the contents on the seized electronic devices would be an overwhelming invasion of privacy that would cause irreparable harm. Plaintiffs find it hard to imagine a scenario where the Court would permit an all-out investigation of another source of personal information, like an individual's pile of mail. While there may be some pieces of mail in there that don't contain personal or confidential information, that surely does not permit the government to make that determination throughout the course of their own investigation into the contents of your personal mail. Where Chief Salvaggio explicitly testified that he would look at personal texts and emails contained in Plaintiffs electronics, and the Magistrate-Judge did not properly weigh Plaintiffs argument of irreparable harm, Plaintiffs ask this court to take Plaintiffs privacy argument into consideration.

The fact remains that Supreme Court precedent establishes that cell phones contain the privacies of life and Salvaggio wants to invade that by reading all emails and texts, including private ones among spouses, as he admitted in his testimony, all in a desperate Hail Mary to hopefully find some evidence that the plaintiffs in this case, who merely protesting the police, are members of anarchists groups with criminal intentions of overthrowing the government. Such a conspiracy theory is not only patiently absurd, but the defendants cannot point to a single shred of evidence that any of the plaintiffs are actually members of this unknown, nameless, faceless group, which may very well only exist in Salvaggio's imagination.

## **CONCLUSION**

WHEREFORE, Plaintiff respectfully requests of this Honorable Court enter an Order sustaining Plaintiff's Objections to the Magistrate-Judge's Report and Recommendation, ECF #62, enjoin Defendants from searching the electronic devices or any electronic accounts of the people present for the protests which form the basis of this action. Further, the Court need only look at the warrants submitted, the police reports, and Salvaggio's testimony to be able to conclude unequivocally that not a single shred of evidence exists to support Salvaggio's wild conspiracy theory and also that the only basis Salvaggio has to make such an absurd claim as of now is that the plaintiffs were members of a constitutionally protected protest.

Plaintiffs suggested a very reasonable request at the conclusion of the hearing based on the defendants' drastic bait and switch technique employed by the defendants to claim they needed the subpoenaed records: First they claimed it was in furtherance of the existing prosecutions, then at the hearing it became about this cabal of rebels. Plaintiffs suggested and reiterate that the following be ordered:

- The warrants are quashed for both the devices and also for the Google email accounts of the plaintiffs
- The devices are immediately returned to counsel for the devices' owners
- Counsel will then produce all footage related to these events
- New warrants are to be created requesting the IP addresses and identifying information of any YouTube accounts who made threats on the plaintiffs' YouTube pages

In other words, Plaintiffs don't object to the police going after the people making threats; in fact we WANT the police to! But if, for example looking at the

defendants' Exhibit 2 from the hearing, a YouTube subscriber named "Skorp Kitsan" posts the chief's address and description of his home on James Springer's YouTub page, the police should seek the IP address and identifying information of "Skorp Kitsan" but are in no way entitled to read every single email ever sent to James Springer merely because "Skorp Kitsan" left that comment on James Springer YouTube page, and such a request can in no way be made in good faith.

More examples are the comments made for which the police should seek the commenters' information are: YouTube user "Cubicle Bear" ECF #48-5 pg 1 of 13, "Nikos Katsaros" ECF #48-5 pg 2 of 13, "Robert Adams" ECF #58-5 pg 5 of 13, "rockit730" ECF #48-5 pg 6 of 13, "Shawn R" ECF #48-5 pg 10 of 13. All these comments were made by people who are currently unknown. Salvaggio admitted that not a shred of evidence exists to link any of these comments or any of these threats to any of the plaintiffs, other than his wild conspiracy theory. The fact remains that the police can easily get a warrant for the IP addresses and identifying information of the people leaving these comments without also asking for a warrant to be able to read every single email ever sent by James Springer simply because these crazy people left their crazy comments on James Springer's YouTube page. So, let the police get warrants for YouTube to produce all identifying information of YouTube users "Cubicle Bear", "Nikos Katsaros", "Robert Adams", "rockit730", "Shawn R" and all others who made threats, **_without_** also being permitted to have a warrant to read every email ever sent or received by the people upon whose YouTube pages these comments were made.

Put another way, the Leon Valley police have a facebook page. If someone with the facebook name "Cop HaterZZZ[1]" were to leave a threat on that page, the appropriate response would be to get a warrant for the information of "Cop HaterZZZ", not to get a warrant for every message ever sent or received by the Leon Valley Police facebook page. Yet that is exactly what the police are attempting to do in this case. Such an argument is offensive to the Fourth Amendment and to general American principles and should not in any way shape or from be allowed.

Finally, there exists no reason whatsoever for the police to be permitted to gain access to every single cell phone seized simply because they were present at a protest, and no argument can be made for such a position.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | EXCOLO LAW, PLLC |
| Dated: November 2, 2018 | /s/ Solomon M. Radner |
|  | Solomon M. Radner (admitted *pro hac vice*) |
|  | Attorney for Plaintiff |
|  | 26700 Lahser Rd., Suite 401 |
|  | Southfield, MI 48033 |
|  | (866) 939-2656 |
|  | sradner@excololaw.com |

## CERTIFICATE OF SERVICE

Undersigned hereby states that on the 2nd day of November 2018, he caused the foregoing document to be filed electronically with the United States District Court and that a copy of said document was sent to all counsel of record through the Court's CM/ECF electronic filing system.

/s/ Solomon M. Radner

---

[1] A FICTIONAL FACEBOOK USER!