IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

RUSSELL ZINTER *ET AL.*              §
                                     §
              *Plaintiffs*,          §                    5-18-CV-00680-FB-RBF
                                     §
vs.                                  §
                                     §
CHIEF JOSEPH SALVAGGIO *ET AL.*      §
                                     §
              *Defendants*.          §
                                     §
                                     §
                                     §

## ORDER

Before the Court is the pretrial status of the above-referenced case. After some initial proceedings respecting a temporary restraining order and a request for a preliminary injunction, this civil rights action is now in a procedural posture where entry of a scheduling order is typically contemplated. But in the somewhat unusual circumstances presented, as discussed more fully below, entry of a scheduling order and proceeding with discovery and other pretrial matters is not appropriate at this time. Instead, a slower approach to pretrial matters is the most appropriate course.

Three reasons support the slow approach for pretrial matters now ordered in this civil rights case. First, the undersigned's October 19 Report and Recommendation (at Dkt. No. 62) reflects that Plaintiffs' request for preliminary injunctive relief is unfounded. There is, in other words, no exigent circumstance demanding an immediate start to full-blown discovery or expedited resolution of Plaintiffs' § 1983 claims. Added to that consideration, and as the undersigned previously explained in the above-referenced Report and Recommendation, the credible testimony of Chief Salvaggio and questioning of him by Plaintiffs' counsel at the

October 4 preliminary injunction hearing strongly suggest that forging ahead with this civil case at this time may inappropriately impede several interrelated and intertwined ongoing criminal investigations and prosecutions. *See id.* at 12 n. 10. And added to these two concerns, it now also appears that these civil proceedings threaten to devolve into a distracting spectacle, especially if this civil case proceeds contemporaneously with the aforementioned state investigations and prosecutions. The simple solution of temporarily staying these civil proceedings, under the Court's discretionary authority to manage its docket and the progress of pretrial proceedings, is the best course at this juncture.

On November 13, 2018, Defendants filed an advisory explaining that excerpts of an audio recording of official court proceedings from the October 4 preliminary injunction hearing have been posted on YouTube by "lead Plaintiff James Miller" in alleged contravention of this Court's prior orders and in an apparent attempt to undermine Chief Salvaggio's authority. *See* Dkt. No. 64. The posted recording was apparently prefaced by the following text:

> In this short preview clip you will hear the attorney for the plaintiffs, Solomon Radner, questioning DEFENDANT Joe Salvaggio about a "failure to identify" arrest of a WITNESS in Texas. Joe is "on the stand" in front of a Federal Judge. Joe is finding it extremely difficult to be "IN CHARGE."

Excerpts from Miller's YouTube posting set forth in Defendants' advisory (emphasis in original).

Plaintiffs subsequently filed a Response admitting that Plaintiff Jack Miller posted the material online on YouTube. But Plaintiffs also noted that Miller is not the "lead plaintiff" and that, in any event, Miller lawfully acquired a copy of the audio recording from the clerk's office. *See* Dkt. No. 65. It is the practice in the undersigned's court that most proceedings are placed on an official record primarily via audio recording equipment, rather than through the use of a court

reporter and a written transcript (unless a written transcript is later needed or requested, in which case the transcript is typically produced with reference to the audio recording).

At the aforementioned hearing on Plaintiffs' preliminary injunction request, signs posted outside the courtroom—citing Federal Rule of Criminal Procedure 53[1]—explained that the recording or broadcasting of judicial proceedings from the courtroom was prohibited. At the start of the hearing, the undersigned also informed those present in the courtroom of this prohibition. Such an instruction was in keeping with the Local Rules for the Western District of Texas, which provide as follows:

> (l) Photographing, broadcasting or televising any judicial proceeding or any person directly or indirectly involved in a proceeding, whether court is in session or not, in or from any part of a United States Courthouse, is prohibited, except with the permission of the judge presiding.
>
> (m) Audio recorders, audio- or video-recording cell phones, or other means of recording the proceedings must not be brought into a courtroom, except with the permission of the judge presiding. This rule does not apply to such recorders or other devices used by, and under the direction and control of, a judicial officer or the official court reporter.

Local Rule AT-5(m-l).[2]

There is perhaps room for debate about whether a party's online posting (with some brief commentary) of an official recording, without prior permission from the Court, violates the aforementioned rules, the signs posted outside the courtroom, the undersigned's verbal instructions to those present in the courtroom, or the standards and rules generally governing the behavior demanded and expected of those participating in federal litigation. But "as a matter of

---

[1] Federal Rule of Criminal Procedure 53 provides: "Except as otherwise provided by a statute or these rules, the court must not permit the taking of photographs in the courtroom during judicial proceedings or the broadcasting of judicial proceedings from the courtroom."

[2] The prohibition also comports with Fifth Circuit authority. *See, e.g.*, *United States v. Edwards*, 785 F.2d 1293, 1295 (5th Cir. 1986) ("[T]he First Amendment does not guarantee a positive right to televise or broadcast . . .  trials.").

public policy . . . courts should avoid becoming the instrumentalities of commercial or other private pursuits." *United States v. McDougal*, 103 F.3d 651, 658 (8th Cir. 1996). And here, Mr. Miller did not merely post an official recording, he did so in an apparent attempt to disparage another litigant in this pending action—Chief Salvaggio. *See* excerpts from Miller's YouTube posting set forth in Defendants' advisory. Of course, it is not entirely uncommon for publicly available court recordings to be posted online; yet perhaps much less so when done by a party seeking to disparage a litigation adversary.

Ultimately, there is no need to address at this time whether a violation or other sanctionable conduct has occurred. The undersigned has determined that the current climate of this case presents an unacceptably high risk of steering proceedings to a place where they could be used for improper purposes, could devolve into a spectacle that diminishes the dignity of the federal court, or could inappropriately interfere with ongoing state criminal investigations or prosecutions. This is evident from the questioning of Chief Salvaggio at the preliminary injunction hearing, counsel's agitated demeanor in the courtroom in the presence of the undersigned, the inflammatory rhetoric employed in briefing submitted to the Court,[3] and, finally, perhaps also from Mr. Miller's YouTube posting.

---

[3] For example, counsel for Plaintiffs accuses Defendants of "purposely mislead[ing] the court," issuing "salacious lies," "show[ing] repeatedly that they don't believe in or respect the constitution," and "demonstrat[ing] to the court that nothing [Defendants] say about the plaintiffs can be trusted." *See* Dkt. No. 65 at 2-3, 8. "Such characterization of a party opponent's conduct should be sparingly employed by counsel and should be reserved for only those instances in which there is a *sound basis in fact* demonstrating a party's *deliberate and intentional disregard* of an order of the court or of obligations imposed under applicable Federal Rules of Civil Procedure." *Dondi Props. Corp. v. Commerce Sav. & Loan Ass'n*, 121 F.R.D. 284, 289 (N.D. Tex. 1988) (emphasis added) (incorporated within Appendix M to the Local Rules for the Western District of Texas). Such allegations, when inappropriately made, as it appears to be the case here, "add much heat but little light to the court's task of deciding . . . disputes." *Id.*

As the Local Rules explain, "[n]either written submissions nor oral presentations should disparage the integrity, intelligence, morals, ethics, or personal behavior of an adversary unless such matters are directly relevant under the controlling substantive law." *See* Local Rule AT-4(a). While the Court understands and certainly expects counsel to zealously advance the legitimate interests of their clients, "appropriate standards of civility and decorum" must still be maintained. *See id.*(d). Accordingly, "[i]n dealing with others, a lawyer should not reflect any ill feelings that the client may have toward the adversary. A lawyer should treat all other lawyers, all parties, and all witnesses *courteously*, not only in court, but also in other written and oral communication." *Id.* (emphasis added). "A lawyer must never be unfair or abusive or inconsiderate to adverse witnesses or opposing litigants, or ask any question not intended to legitimately impeach but only to insult or degrade the witness." Local Rule AT-5(d). Counsel should "avoid disparaging personal remarks or acrimony toward opposing counsel." *Id*. AT-5(e). And especially pertinent to Mr. Miller's YouTube posting (even if it didn't occur in the courtroom), counsel must also "advise the client, witnesses, and spectators of the behavior and decorum required in the courtroom, and take all reasonable steps to prevent disorder or disruption of court proceedings." *Id.* AT-5(f). "The dignity, decorum and courtesy that traditionally characterize the courts of civilized nations are not empty formalities. They are *essential* to a courtroom atmosphere in which justice can be achieved." Local Rule AT-5 (emphasis added).

The undersigned has the authority to control the pace and progress of pretrial matters, including authority to stay a case for a specified duration.[4] That authority is particularly relevant

---

[4] *See, e.g.*, *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants . . . ."); *In re*

here in light of the above and where the record also reveals that ongoing proceedings in this civil action could interfere with ongoing criminal investigations or prosecutions involving some of the plaintiffs in this case, as well as several of their alleged associates. Accordingly, the undersigned finds that putting matters in this case on hold—at least temporarily to permit the authorities time to conduct their investigations—is the best course of action scheduling-wise. Moreover, without such action there is also a risk that matters in this Court will devolve into something akin to a sideshow, which the undersigned will not permit.

A number of possible next steps have been previously raised or discussed with the parties. These ideas included possibly staying matters as to only some Plaintiffs but not others, staying the entire proceedings pending ongoing criminal investigations and prosecutions involving some but not necessarily all of the Plaintiffs, and seeking some kind of out-of-court resolution of the dispute. As none of these possible approaches has garnered much support from the parties, and as Defendants have not sought a stay on grounds other than *Younger* abstention (and even then the argument was raised only in response to Plaintiffs' preliminary injunction request and not via motion),[5] the undersigned will exercise the Court's inherent authority over pretrial and scheduling matters to stay all proceedings in this case, except as discussed below, for a period of six months.

---

*Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990) ("The stay of a pending matter is ordinarily within the trial court's wide discretion to control the course of litigation, which includes authority to control the scope and pace of discovery. This authority has been held to provide the court the general discretionary power to stay proceedings before it in control of its docket and in the interests of justice.") (citations and quotations omitted); *Gray v. Raymond*, No. CIV.A. 15-1463, 2015 WL 5553664, at *4 (E.D. La. Sept. 14, 2015) ("A magistrate judge has authority to issue such a stay order, where the order is not dispositive, merely suspends the proceedings and does not result in an absolute denial of ultimate relief.").

[5] *See* the undersigned's October 19 Report and Recommendation at 6 (explaining that "it appears that *Younger* abstention would be better framed here through a Rule 12(b)(1) motion, or some similar procedure, with more robust briefing and developed argument from all involved) (citing *M.D. v. Perry*, 799 F. Supp. 2d 712, 715 (S.D. Tex. 2011)).

At the conclusion of six months from the date of this Order, the parties should confer and file a joint advisory with the Court discussing their respective views on whether the case is then ready to proceed or should remain stayed. They should include relevant supporting authority, as well as any relevant specific facts. To the extent Defendants believe *Younger* or some other abstention doctrine is appropriate here, they should make that argument at that time—via motion and with supporting authorities and argument that also address the specific concerns the undersigned previously expressed regarding these matters.

To reiterate, there is ample authority for delaying entry of a scheduling order and imposing a stay here. Stays like this may be entered as a matter of discretion over scheduling.[6] They may also issue in analogous, if not perfectly identical, situations where ongoing criminal proceedings or investigations are threatened by continuing with a related civil case.[7] Indeed, the Fifth Circuit has recognized that "due to the significant public interest in law enforcement, criminal prosecutions often take priority over civil actions" and, therefore, a stay of civil litigation may be sought "to protect the integrity of [ ] criminal investigations." *In re Grand Jury Subpoena*, 866 F.3d 231, 234 (5th Cir. 2017). And, "[w]hen faced with uncertainty regarding whether adjudication of a § 1983 claim will impact a potential criminal conviction, courts in this Circuit have concluded that the civil proceeding should be stayed until the pending criminal case

---

[6] *See, e.g., Streber v. Hunter*, 221 F.3d 701, 736 (5th Cir. 2000) (noting that the trial court's discretion in making scheduling decisions is "exceedingly wide"); *United States v. Strother*, No. 1:16-CV-00007, 2016 WL 7664303, at *7 (E.D. Tex. Dec. 7, 2016), *report and recommendation adopted*, 2017 WL 67864 (E.D. Tex. Jan. 6, 2017) (explaining that "given the unique circumstances of the case, the Court utilized the wide discretion afforded to it in managing its docket and opted to delay issuing a scheduling order until after the issues regarding injunctive relief were heard").

[7] *See, e.g., United States v. Kordel*, 397 U.S. 1, 12 n. 27 (1970) ("Federal courts have deferred civil proceeding pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action") (collecting authorities).

has run its course." *Santos v. White*, No. CV 16-00598-BAJ-EWD, 2017 WL 5953290, at *4 (M.D. La. Dec. 1, 2017) (collecting authorities).

In determining whether a civil action or civil discovery should be allowed to proceed in light of an impending criminal case, the Fifth Circuit directs district courts to "employ judicial discretion and procedural flexibility to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other." *In re Grand Jury Subpoena*, 866 F.3d at 234 (quotations omitted). In balancing these competing interests, district courts in this circuit often consider the following: "(1) the extent to which the issues in the criminal case overlap with the those presented in the civil case; (2) the status of the case, including whether the criminal defendant has been indicted; (3) the private interests of the plaintiff in proceeding expeditiously weighed against the prejudice to plaintiff caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest." *Billiot v. Beavers*, No. CIV.A. 12-2946, 2015 WL 4397108, at *3 (E.D. La. Jul. 13, 2015). These considerations also merit imposing the contemplated stay in this case.

First, there appears to be a substantial overlap between the underlying state criminal proceedings and investigations and the instant federal action; many of the current criminal charges against several Plaintiffs and the anticipated criminal charges arise from the same set of operative facts that underlie this civil case. As to the second consideration, this case is still in its early stages. Conversely, the record appears to reflect that criminal charges have been initiated and are ongoing against Plaintiffs Bailey, Brown, Springer, Miller, Green, and Howd, and the Leon Valley Police Department has requested that criminal charges be filed against several other Plaintiffs. With respect to considerations four and six, while Plaintiffs have an interest in the

prompt determination of their § 1983 claims, that interest is far outweighed, under the circumstances of this case, by Defendants' and the public's interest in ensuring any and all alleged criminal offenses are thoroughly investigated and appropriately prosecuted.[8] Moreover, imposing the contemplated stay would not unduly prejudice Plaintiffs.

As to the fifth consideration, the Court has a strong interest in ensuring that federal civil proceedings do not undermine legitimate law enforcement investigations and state court criminal proceedings. When considering the appropriateness of a stay "a judge should be sensitive to the difference in the rules of discovery in civil and criminal cases"; [w]hile the Federal Rules of Civil Procedure have provided a well-stocked battery of discovery procedures, the rules governing criminal discovery are far more restrictive." *Campbell*, 307 F.2d at 487. At the October 4 preliminary injunction hearing, counsel for Plaintiffs solicited testimony—oddly without Defendants' objection—regarding ongoing (perhaps confidential) criminal investigations relating to Plaintiffs and their alleged associates. This type of *civil discovery* should not provide a means to circumvent the normal *criminal discovery* rules, as well as to run roughshod over the confidentiality of law enforcement investigative efforts. *See id.* ("A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit."). Additionally, the court "has interests in judicial economy and expediency." *Doe v. Morris*, 2012 WL 359315, at *2 (E.D. La. Feb. 2, 2012). Staying this case at this juncture may prevent the Court from making rulings regarding

---

[8] *See Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962) ("The very fact that there is clear distinction between civil and criminal actions requires a government policy determination of priority: which case should be tried first. Administrative policy gives priority to the public interest in law enforcement. This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities.").

potential discovery disputes involving issues that may affect ongoing criminal matters and investigations. *See Billiot*, 2015 WL 4397108, at *2. And, while the Court undoubtedly has an obligation to move its docket and not let cases languish before it, *see Doe v. Morris*, No. CIV.A. 11-1532, 2012 WL 359315, at *2 (E.D. La. Feb. 2, 2012), a six-month stay will not disserve this important interest under the circumstances presented here.

Further, as discussed in detail elsewhere, there also appears to be sufficient basis to stay under the doctrine of *Younger* abstention, at least perhaps with respect to some of the Plaintiffs here.[9] With no party having provided any suggestion as to how or why a stay should or ought to operate as to some, but not all, Plaintiffs, it is apparent under the circumstances presented that the whole case should simply be stayed so as to keep it on a uniform track while also taking into account all the various concerns already discussed.

There is a limited exception to the stay. All matters in this case will immediately cease and be stayed, except of course for the District Court's action on Plaintiffs' pending objections to the undersigned's recommendation on the propriety of a preliminary injunction. The parties may also seek reconsideration of this Order, as a party is entitled to do in the ordinary course. And, of course, to the extent the District Court disagrees with the undersigned's recommendation on the preliminary injunction issue, a lifting of the stay may be appropriate at that time. Moreover, the stay put in effect here to effectuate the Court's wishes with respect to scheduling of pretrial matters should not be construed by any party to affect their substantive rights, including the right to seek an appeal from the District Court's order on Plaintiffs' motion for preliminary injunction.

Finally, and to be clear, the relevant investigative and prosecutorial authorities should feel unrestrained to investigate and pursue any criminal matters related to these proceedings as

---

[9] *See* the undersigned's October 18, 2018 Report and Recommendation at 3-7 for a full discussion of the application of *Younger* abstention to this case.

may be appropriate, under the constraints and restrictions that normally apply to any such investigations or prosecutions. Should any individual feel his or her rights may or have been violated as a result of any such investigation or proceeding, that matter—to the extent it is a party's wish to bring it to this Court's attention—can be addressed once the stay in this case is lifted.

**IT IS SO ORDERED**.

SIGNED this 19th day of November, 2018.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE