## UNITED STATES DSICTRICT COURT
## WESTERN DISCTRICT OF TEXAS
## SAN ANTONIO DIVISION

RUSSELL ZINTER, *et al*;

    *Plaintiffs*,                              Case No.: 5:18-CV-680-FB-RBF

vs.

CHIEF JOSEPH SALVAGGIO, *et al*;

    *Defendants*.

_____/

## **PLAINTIFFS' STATEMENT ON THE STAY**

Plaintiffs' submit that the Stay should be lifted, at least in part. This case was stayed for six months *sua sponte* by the Court on June 13, 2019, ECF #69. The Court explained, ECF #66 pg 1 of 11 and pg 2 of 11,

> "…that forging ahead with this civil case at this time may inappropriately impede several interrelated and intertwined ongoing criminal investigations and prosecutions. *See id.* at 12 n. 10. And added to these two concerns, it now also appears that these civil proceedings threaten to devolve into a distracting spectacle, especially if this civil case proceeds contemporaneously with the aforementioned state investigations and prosecutions. The simple solution of temporarily staying these civil proceedings, under the Court's discretionary authority to manage its docket and the progress of pretrial proceedings, is the best course at this juncture.

Simply put, this Court was made aware that this action is strongly connected to some criminal prosecutions and investigations and, **_relying on Salvaggio's testimony_**, ruled it necessary to Stay the case so that law enforcement could prosecute and investigate without dealing with full-blown discovery of the instant



Exhibit A

action. However, it has seemingly become more clear that the pending prosecutions and investigations are either minor misdemeanors (such as blocking a doorway, captured entirely on several camera angles), rather legally farfetched (as will be explained herein in greater detail), or are simply being dismissed. To break this down into digestible pieces, the criminal charges/investigations can be broken down into several categories:

    a. Those that were summarily ***dismissed*** by the magistrate well before Salvaggoio's testimony;

    b. Those that were filed ***prior to*** Salvaggio's October 4, 2018 testimony, and are now either resolved or still pending; and

    c. Those that have been charged ***after*** Salvaggio's testimony

Let's examine these one at a time to see whether the Stay needs to be continued.

**1. <u>Those summarily dismissed by the magistrate.</u>**

The charges levied against three Plaintiffs, which were immediately summarily dismissed by the magistrate, are:

- Brian Howd for Interference on June 23, 2018, charged on June 24, 2018 and summarily dismissed by the magistrate;
- Joseph Brandon Pierce – charged on the June 23, 2018 incident but that charge was summarily dismissed by the magistrate as well;
- James Springer – charged with Interference on the June 18, 2018 incident but the magistrate summarily dismissed it as well.

The only one of these charges that has been re-charged is the one against Brian Howd, which is discussed in greater detail herein. Certainly, the dismissed charges against Pierce and Springer don't warrant the Stay being continued. The re-charged Howd charge is discussed in detail below.

## 2. **Pending or resolved at the time of the Oct. 4, 2018 hearing.**

There were at the time of the hearing and subsequently at the time of the Stay being entered, three plaintiffs being criminally charged:

- Mark Brown only on the June 14, 2018 incident Cause Nos. 577193 and 577195). These matters have recently been dismissed by the prosecutor. Certainly, these dismissed cases don't warrant the Stay to be continued.

- David Bailey only on the June 18, 2018 incident (Cause No. 577789). This matter has been scheduled and rescheduled for trial repeatedly, but still involves only a misdemeanor charge of blocking a doorway which was caught in its entirety on camera. Plaintiff submits that nothing discoverable in this action could possibly hinder this prosecution. This so-called crime is captured entirely on video, and any criminal trial would likely be very short.

- James Allen Springer only on the June 23, 2018 incident (Cause NO. 2018CR7461) and this is the only felony charged against any Plaintiff, and it certainly is a bit of stretch, because it alleges that Springer is liable for a posting made on his YouTube page by someone else. This flies in the face of the Communications Decency Act, which obviously preempts the Texas law relied upon in this criminal action, and states in Section 230 that "No provider or user of an interactive computer service shall be treated as the publisher or

speaker of any information provided by another information content provider." (47 U.S.C. § 230). Plaintiffs submit that such a baseless prosecution, also which has been scheduled and rescheduled repeatedly, is pending against only one Plaintiff, and should not be the basis of a Stay being continued – certainly not against all Plaintiffs.

- Jason Green, who received a ticket in the mail for Failure to identify as a Witness (which is not even a crime in Texas) from the June 23, 2018 incident. Rather than return from Ohio to Texas to fight it, he just paid the ticket and the Court entered a plea of No Contest. In any event, it has been resolved. The ticket was issued on June 27, 2018 and the fine was paid and case closed on August 30, 2018. Again, resolved charges shouldn't support a Stay being continued.

- The Defendants, ECF #33 pg 4 of 5, pointed to a criminal charge levied against Jack Miller, Cause Number 2018CR8725, but that relates to a May 2, 2018 incident which has nothing to do with the facts of this case other than the support it gives to Plaintiff's position that these Defendants really have it out for Mr. Miller. This unrelated charge, alleging that Jack Miller was carrying a weapon where prohibited, certainly does not warrant a Stay being continued against all Plaintiffs in this unrelated action.

3. **Charges filed after Salvaggio's testimony.**

This should be the biggie. The chief testified on October 4, 2018 that he was in daily contact with the FBI, as incredulous as that sounds, and that many more state and federal prosecutions would be forthcoming. This sounded scary to the plaintiffs

and also to Undersigned Counsel, yet Plaintiffs did not necessarily accept this claim at face value. To date, the following new charges have been filed:

- Brian Howd related to the June 23, 2018 incident, but not re-charged until Dec. 10, 2018:

    o Cause No. 603326 which alleges that Howd refused to turn over his camera, which supposedly contained evidence of a crime, when requested to turn it over by the police. This criminal charge is a joke. If a 7-11 camera captures video of a crime and 7-11 refuses to turn it over to the police unless the police have a warrant, has 7-11 committed a crime? Lawful or unlawful, this prosecution will not be hindered in any way by the Stay in this case being lifted.

    o Cause No. 683206 which alleges that Howd's crimes of Interference and Resisting Arrest alleges that he was "stiffening up his body to prevent the complainant from arresting him." This was during what is most likely an unlawful arrest, but we digress.

4. **To date, no other charges.**

To examine in greater detail the testimony upon which this Stay entered, Salvaggio testified to the following:

- That state and federal charges are coming on every one of those individuals (meaning the plaintiffs) for crimes such as Organized Crime and Riot.
- That he was turning over evidence to the FBI daily
- That there will be "a lot more charges coming"

- That he turned over all the seized property to the District Attorney as of October 4, 2018.

- That he saw video showing of Plaintiff Bailey blocking someone from entering the doorway, yet the video we saw in court showed only one person enter and Bailey moved aside as she entered and in fact the only people who ever obstructed her entry were the defendant officers as they charged out.

- That video evidence exists showing officers giving "six warnings" to Plaintiff Brown to get back and more video that Brown was "lording over" the officers. However, Slavaggio admitted that the video Plaintiffs played in Court did not show this, and he has not produced such footage.

- That the District Attorney advised him to detain people for refusing to identify themselves as witnesses. (*This is in blatant contradiction to Texas law, which only makes it a crime for a witness to **lie** to the police about his identification, but not to simply refuse to answer. See Texas penal Code Section 38.02. Further, Plaintiff questions whether the Bexar County District Attorney did in fact actually advise Salvaggio to do things which look an awful lot like unlawful activity.*)

Plaintiffs submit that Slavaggio's claims are a bit extreme, i.e. that the plaintiffs are members of a cabal of anti-government anarchist zealots intent on overthrowing the government, and such strong claims should not be automatically accepted by the Court without at least compelling the defendants to make ***some*** proffer of evidence that these claims are in fact true. If they are, obviously Plaintiffs would have a very difficult time challenging this Stay.

But the reality is that these criminal cases are not being tried and are in fact beginning to finally be dismissed. At the very least, discovery should be opened limitedly, for example:

- On the June 14, 2018 incidents for which there are now **ZERO** pending prosecutions.
- On the June 18 and June 23 incidents, with the understanding that any evidence that could hinder the pending prosecutions against Springer and Howd, may be redacted or withheld until the criminal cases are resolved.

Further, Protective Orders can ensure that the discovery process is not abused, but at this point, the defendants are simply delaying the prosecution of this action.

Here's the bottom line: Plaintiffs contend, as is clear from the nature of this lawsuit, that the criminal charges are vindictive in nature and an affront to the Constitution. But either Salvaggio was telling the truth in his Oct 4, 2018 testimony, or he was not. If he was being truthful, Plaintiffs could not even challenge the Stay and would agree that the defendants need to be able to work on their investigation. But Plaintiffs have reservations as to whether Salvaggio was in fact being truthful. And again, the Court in its Report and Recommendation, ECF #66 pg 1 of 11, relied upon the Chief's "credible testimony" in entering the Stay, and on the Defendants' "credible evidence" such as the Chief's testimony, in denying Plaintiffs' Motion, see ECF #62, page 4 of 13.

Presumably we can all probably agree that if Salvaggio was being truthful then the Stay should be continued, but if he was not being truthful, then this Stay should be lifted. So how can we find out without hindering law enforcement?

7

Plaintiffs have a suggestion:

Perhaps the Court can test some of Salvaggio's testimony, just to establish whether Salvaggio is being truthful. And Plaintiffs would even agree to such test taking place under seal or even *in chambers*. For example:

- Salvaggio testified that he had been in daily contact with the FBI:
    - *Show the Court **some** proof. An Agent's name, emails, call logs, etc.*
- Salvaggio testified that he had turned over all the seized property to the District Attorney as of October 4, 2018.
    - *Prove it. An email chain, a letter, etc. Based on the pending criminal matters and Undersigned Counsel's investigation, there is reason to believe that these items were NOT turned over to the D.A.*
- Salvaggio testified that state and federal charges are coming on every one of those individuals (meaning the plaintiffs) for crimes such as Organized Crime and Riot
    - *Show the Court something, anything, to support this claim.*

In other words, Salvaggio made many claims which can be proven or disproven relatively easily and without much if any burden on the defendants. However, Plaintiffs are cognizant of the fact that doing so in open court may hinder any such criminal investigations, and Plaintiffs further would understand if the defendants would not want to even show their evidence to Plaintiffs' counsel even with an "Attorneys Eyes Only" protective order in place. But that does not mean that an indefinite Stay is appropriate based solely on their claim to be working with the FBI to bring Organized Crime charges against every plaintiff.

Therefore, rather than simply accepting Salvaggio's claims at face value, Plaintiffs request that the Court pick a few of Salvaggio's claims and test them to see if in fact Salvaggio is being truthful. Once such testing has been completed to the satisfaction of the Court, the Court could then enter an Order either lifting the Stay or extending the Stay.

Alternativity, discovery should be opened subject to reasonable parameters that protect the pending prosecutions against Bailey for the June 18, 2018 alleged misdemeanor of blocking a door, against Howd for his alleged June 23, 2018 misdemeanor Interference and Resisting, and against Springer for the alleged June 23, 2018 felony of not deleting someone else's post on his YouTube page.

Lastly, Plaintiffs are concerned that this case could create a precedent for any police agency which is being sued to simply cry out "They're a cabal of organized criminals" and get an indefinite stay on the proceedings. It has been now been over a year since the case was stayed – the Defendants should be compelled to show that this Stay has accomplished ***something*** before the Court extends it.

Dated: December 13, 2019

Respectfully Submitted,

EXCOLO LAW, PLLC

*/s/ Solomon M. Radner*
Solomon M. Radner
Attorney for Plaintiffs
26700 Lahser Rd, Suite 401
Southfield, MI 48033
(866) 939-2656
sradner@excololaw.com