# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

RUSSELL ZINTER;
JACK MILLER;
BRIAN HOWD;
JAMES A. MEAD;                                    CIVIL ACTION NO: 5:18-CV-680
JOSEPH BRANDON PIERCE;
MARK BROWN;
DAVID BAILEY;
JUAN GONZALES JR.;
KEVIN EGAN;
JONATHON GREEN;
JAMES SPRINGER;
GREG GARDINER;
SELENA HERRARA;
JASON GREEN;
THERESA C. RICHARD.

       *Plaintiffs*,

vs.

CHIEF JOSEPH SALVAGGIO;
LIEUTENANT DAVID ANDERSON;
DEPUTY *JANE DOE* GOLDMAN;
OFFICER JOHNNY VASQUEZ, #552, ID 1176;
CPL. CHAD MANDRY;
DETECTIVE JIMMIE WELLS;
CORPORAL LOUIS FARIAS, BADGE 534;
OFFICER BRANDON EVANS, BADGE 556;
OFFICER UZIEL HERNANDEZ;
OFFICER YARBROUGH;
OFFICER BRETON;
OFFICER AZAR;
OFFICER URDIALES;
OFFICER KING;
OFFICER CASTRO;
OFFICER TACQUARD;

OFFICER E. RIVERA;
The CITY OF LEON VALLEY, a political
subdivision of the State of Texas;
NIKO LAHOOD in his official capacity as Bexar
County District Attorney; and
JOE GONZALES in his official capacity as Bexar
County District Attorney.

*Defendants.*

_____/

## SECOND AMENDED COMPLAINT AND JURY DEMAND

NOW COME Plaintiffs, by and through their attorneys, Brandon Grable of
Grable Grimshaw Mora PLLC, and Solomon M. Radner of Johnson Law PLC,
complaining of Defendants, respectfully allege as follows:

## INTRODUCTION

1.     By way of brief introduction, this case involves incidents that took
place during protests just outside of the Leon Valley Police Department on June 14,
2018, June 18, 2018, and June 23, 2018. These plaintiffs include fifteen people who
were detained, arrested, criminally charged, and were subject to property seizure
without any lawful basis.

2.     Plaintiffs Springer, Howd, Bailey, Brown, Jason Green, and Pierce
were charged with crimes, **all of which were eventually dismissed**.

3.     On June 14, 18, and 23, of 2018 the complained-of actions took place,
all of which revolved around the Leon Valley Police Department's refusal to allow
the plaintiffs to peacefully protest on these days. On all days, the police unlawfully
detained, arrested, criminally charged, seized the plaintiffs' recording equipment,

and used excessive force on the plaintiffs, as will be explained in greater detail herein.

4.    Plaintiffs first filed suit on July 4, 2018, an appropriate date to defend the Constitution.

5.    Defendants King and Brooks, through untrue statements on multiple affidavits, then convinced Judge Jefferson Moore to sign warrants on August 7, 2018, authorizing the defendants to examine the contents of the seized recording equipment and cell phones, and all emails sent or received by the plaintiffs' on their google Gmail accounts. It is unknown at this time if these warrants were ever relied upon to actually invade the plaintiffs' privacy by reviewing emails or by examining the contents of the devices.

6.    Plaintiffs, upon learning of these warrants from Google, filed for an Emergency TRO on August 17, 2018 pointing out to the Court that such an invasion of privacy would be irreparable harm, and that Plaintiffs had a substantial likelihood of prevailing on the merits of this action.

7.    A TRO was entered on August 20, 2018 and a hearing was held on October 4, 2018.

8.    During the hearing, defendant Salvaggio convinced the Court that the defendants were engaging in a good faith criminal investigation of all the plaintiffs, that this investigation included working with the U.S. Attorney, Bexar County District Attorney, and FBI, and that the defendants were turning over evidence daily to the FBI. Defendant Salvaggio further convinced the Court that state and federal criminal charges would be coming on each of the plaintiffs.

9.    Despite the defendants failing to provide any support for these bold claims, the Court refused to enjoin the defendants from executing the warrants. See ECF #62, and ECF #67, relying on the *Younger* Abstention Doctrine and Salvaggio's aforementioned testimony.

10.   The case was then stayed from October 19, 2018 (ECF #62) all the way until the stay was lifted on October 14, 2020 (ECF #79).

11.   During that time, Plaintiffs Springer, Howd, Pierce, Jason Green, Brown, and Bailey were maliciously charged with crimes by the defendants with the sole goal of extorting a guilty plea out of them, which the defendants intended on then relying upon in this action to support the herein-complained of unlawful seizures by the defendant law enforcement officers. They acted under the belief that a plea from the plaintiffs, would render this lawsuit moot and therefore overzealously and unconstitutionally continued to prosecute these plaintiffs.

12.   Defendants LaHood and Gonzales enacted and enforced an unconstitutional policy or practice against these plaintiffs, to wit:

> Prosecute the plaintiffs, hang the possibility of jail time and criminal/felony records over their heads, assign multiple prosecutors to these frivolous cases, all to coerce and extort a plea bargain out of the plaintiffs, for the sole purpose of protecting and defending the unlawful actions of the defendants police officers, specifically because Plaintiffs were exercising their rights to free speech.

13.   No plaintiff was willing to plead guilty, and all charges against all plaintiffs were ultimately dismissed, with the dismissal of the felony charge, IE the Retaliation charge against Mr. Springer, being entered on Oct 22, 2020.

14.   The Stay was finally lifted on October 14, 2020.

15.   The Stay was only ever entered because Salvaggio convinced the Court, through his testimony and nothing else, that all the plaintiffs were actively being investigated by multiple law enforcements including the FBI for some very serious criminal offenses, such as organized crime, and that this lawsuit would impede law enforcement's ability to investigate. Salvaggio further testified to the Court, during his October 4, 2018 testimony, that state and federal criminal charges would be coming against all then-named plaintiffs. To date, all criminal charges have been dismissed and not a single plaintiff was ever charged with a federal crime.

16.   The plaintiffs were denied their day in court for two years all because Salvaggio gave several hours of false testimony to the Court on October 4, 2018.

17.   This complaint involves three dates of constitutional violations, of which the fifteen plaintiffs were victims, at the hands of twenty defendants.

## JURISDICTION AND VENUE

18.   This is a civil rights action in which the Plaintiffs seeks relief for the violation of their rights secured by 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments.

19.   Jurisdiction of this Court is found upon 28 U.S.C. § 1331.

20.   Venue is properly laid in the Western District of Texas under 28 U.S.C. § 1391(b)(2).

21.   The events that give rise to this lawsuit took place at the police department located in Leon Valley, Texas and in the Bexar County Court.

## PARTIES

**Plaintiffs:**

22.   Plaintiff, Russell Zinter ("Zinter"), is a law-abiding citizen of the United States and a resident of the City of San Antonio, Texas.

23.   Plaintiff, Jack Miller ("Miller"), is a law-abiding citizen of the United States and a resident of the City of San Antonio, Texas.

24.   Plaintiff, Brian Howd ("Howd"), is a law-abiding citizen of the United States and a resident of the City of Norton, OH and he was on vacation in the San Antonio area at all pertinent times.

25.   Plaintiff, James A. Mead ("Mead"), is a law-abiding citizen of the United States and a resident of the City of San Antonio, Texas.

26.   Plaintiff, Joseph Brandon Pierce ("Pierce"), is a law-abiding citizen of the United States and a resident of the City of Crowley, Texas.

27.   Plaintiff, Mark Brown ("Brown"), is a law-abiding citizen of the United States and a resident of the City of Tucson, Arizona.

28.   Plaintiff David Bailey ("Bailey") is a law-abiding citizen of the United States and a resident of the City of San Antonio, Texas

29.   Plaintiff Juan Gonzales Jr, ("Gonzales"), is a law-abiding citizen of the United States and a resident of the City of San Antonio, Texas.

30.   Plaintiff Kevin Egan, ("Egan"), is a law-abiding citizen of the United States and a resident of the City Chicago, IL.

31.  Plaintiff Jonathon Green is a law-abiding citizen of the United States and a resident of the City of Westerville, OH.

32.  Plaintiff James Springer, ("Springer"), is a law-abiding citizen of the United States and a resident of the City of Rowlett, TX.

33.  Plaintiff Greg Gardiner, ("Gardiner"), is a law-abiding citizen of the United States and a resident of the City of Killeen, TX.

34.  Plaintiff Selena Herrara, ("Herrara"), is a law-abiding citizen of the United States and a resident of the City of Buffalo, OK.

35.  Plaintiff Jason Green is a law-abiding citizen of the United States and a resident of the City of Pataskala, OH.

36.  Plaintiff Theresa C. Richard, ("Richard"), is a law-abiding citizen of the United states and a resident of Crowley, Louisiana.

**<u>Defendants</u>**:

37.  Defendant City of Leon Valley ("City Defendant") is a political subdivision of the State of Texas, acting under color of state law, and is a person for the purposes of a 42 U.S.C. 1983 action.

38.  Defendant Joseph Salvaggio is and was at all pertinent times the chief of the Leon Valley police department and as such was Leon Valley's policymaker and/or decisionmaker regarding law enforcement training, supervision, rules and procedures. He also at all pertinent times acted as supervisor to all other Leon Valley named defendants, all of whom were at all pertinent times his subordinates.

39.   Defendant *Jane Doe* Goldman was at all pertinent times a sheriff deputy employed by Bexar County and was at all pertinent times acting under color of state law in performance of her duties as a sheriff deputy.

40.   Defendant Lieutenant David Anderson was at all pertinent times a supervisory police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

41.   Defendant Johnny Vasquez, #552, ID 1176, was at all pertinent times a police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

42.   Defendant Chad Mandry was at all pertinent times a supervisory police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

43.   Defendant Jimmie Wells was at all pertinent times a detective police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

44.   Defendant Uziel Hernandez was at all pertinent times a police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

45.   Defendant Louis Farias was at all pertinent times a police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

46.   Defendant Brandon Evans was at all pertinent times a police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

47.   Defendant Yarbough was at all pertinent times a police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

48.   Defendant Breton was at all pertinent times a police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

49.   Defendant Azar was at all pertinent times a police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

50.   Defendant Urdiales was at all pertinent times a police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

51.   Defendant King was at all pertinent times a police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

52.   Defendant Castro was at all pertinent times a police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

53. Defendant Tacquard was at all pertinent times a police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

54. Defendant Rivera was at all pertinent times a police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

55. At all times relevant hereinafter mentioned, the individual Defendants were personally acting under the color of state law, and, with the exception of Goldman, LaHood, and Joe Gonzales, in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the City of Leon Valley.

56. Defendants Niko LaHood and Joe Gonzales were duly elected District Attorneys of Bexar County, LaHood until January 2019, and Gonzales since that time. In this capacity, both Gonzales and LaHood were the ultimate policymakers and decision makers for Bexar County with respect to enacting and enforcing policies and procedures governing the prosecution of the plaintiffs. Both LaHood and Gonzales are being sued only in their official capacities, as Bexar County District Attorney for enacting and enforcing an unconstitutional policy. This is a *Monell* claim only.

57. Each and all the acts of the individual Defendants alleged herein were committed by said Defendants while acting within the scope of their employment by the Leon Valley Police Department, other than Goldman, Gonzales, and LaHood.

58.  All defendants, with the exception of LaHood and Joe Gonzales, are being sued in their individua and official capacities, and individual supervisory capacities where appropriate. LaHood and Joe Gonzales are being sued in their official capacities only.

Each and all of the acts of the individual defendants were committed by Defendants despite their knowledge that they were engaging in unlawful and unconstitutional acts, and yet did them anyway knowingly, recklessly, intentionally, wantonly, callously, purposely, purposefully,  sadistically, cruelly, deliberately, and/or with deliberate indifference, gross negligence, and/or reckless disregard.

## STATEMENT OF FACTS

59.  This action involves activity that took place on June 14, 2018, June 18, 2018 and June 23, 2018, which are addressed herein chronologically.

### *The June 14, 2018 Incident*

60.  On June 14, 2018, a small peaceful crowd gathered outside the Leon Valley police department to protest what they perceived to be an unlawful arrest.

61.  Among those present, was Plaintiff Mark Brown.

62.  Brown and a second individual attempted to enter the municipal building, which was home to, among other things, the police station, municipal offices, and courthouse. Brown was holding a camera during this attempted entry.

63.  The duo was stopped at the door and ordered to turn around since cameras are not permitted in the building, per Leon Valley policy. Although the building houses the police department, Leon Valley policy precludes any cameras from being used anywhere in the building since the building is occasionally used as

a courthouse. This policy is in effect even on days and during times when court is not in session.

64.    While Brown and this other individual were outside, the other individual was subjected to a violent arrest. Mr. Brown stood by recording this arrest from a few feet away.

65.    Defendant Wells ordered Mr. Brown to back up, and Mr. Brown complied. Mr. Brown backed away while still holding up his recording devices to record the violent arrest, until Mr. Brown was standing in the street.

66.    At that moment, Defendant Vasquez reached Mr. Brown. Immediately and without warning, Defendants Wells and Vasquez began to physically and forcefully arrest Mr. Brown for absolutely no lawful reason, and in spite of Mr. Brown complying with these defendants' orders.

67.    Within seconds, Defendants Anderson, Yarbough, Vasquez, Wells, and Farias all violently took Mr. Brown to the ground, also for no lawful reason. Defendant Vasquez then drive-stunned Mr. Brown twice with a tazer. Mr. Brown was then handcuffed by one of these defendants.

68.    Defendant Anderson asked the crowd of defendants, "Who's the arresting officer?" Defendant Vasquez answered, "I tazed him so I'll just do it."

69.    Defendants then conspired to concoct a false narrative justifying their two most obvious unlawful actions they had just taken: 1) the arrest of Mr. Brown, and 2) the tazing of Mr. Brown.

70.    The police report, written by defendant Vasquez contains multiple lies in an attempt to justify the defendants' unlawful actions. Defendant Vasquez wrote:

a. Defendant wells "repeatedly told him (Mr. Brown) to put his hands behind his back." This is untrue. Vasquez instructed Mr. Brown to back up and Mr. Brown complied.

b. Mr. Brown "began to violently kick and thrash his body weight forcibly to prevent himself from being arrested." This too is an outright lie – Mr. Brown never kicked or thrashed anyone, but Vasquez included this lie in his report to justify Vasquez's use of a tazer.

71.     Mr. Brown was then frivolously and maliciously charged with Interference with Public Duties, and Resisting Arrest, both of which were thrown out by the prosecutor and dismissed by the Bexar County Court on April 9, 2019.

72.     Mr. Brown was subjected to a painful and violent unlawful arrest, two unlawful tazings, and the stress of two criminal charges pending for 299 days.

### *The June 18, 2018 Incident*

73.     On June 18, 2018, a peaceful crowd gathered outside the Leon Valley police station to protest what they perceived to be unlawful police actions.

74.     Among those gathered were Plaintiffs Russell Zinter, James A. Mead, Joseph Brandon Pierce, David Bailey, and Juan Gonzales.

75.     This protest included the display of a partially burnt parody American flag made popular by law enforcement as a form of pro-police propaganda. The propaganda parody American flag looks similar to the American flag, but it contains a single blue stripe going through it horizontally. This parody flag is not the real American flag – it is a pro-law enforcement parody used for literature:



76.    While this display may have been in poor taste, it is unquestionably protected by the First Amendment. However, the sight of this burnt flag infuriated the defendant police officers, who decided that they would arrest at least some of those in the crowd, whether or not lawful basis existed.

77.    Defendants Farias, Breton, Wells, Azar, Supervisor Urdiales, King, Evans, Mandry, Supervisor Castro, Tacquard, Rivera, and Supervisor Anderson without lawful basis detained and/or arrested Plaintiffs Bailey, Springer, Mead, Zinter, Pierce, Gonzales, and non-party Padilla, and unlawfully seized property as follows:

        a.   Anderson ordered the false and unlawful arrest of Bailey for the alleged crime of "Obstructing a Highway or Other Passageway" even though Bailey was not obstructing anything or anyone;

b. Anderson advised Bailey that he was under arrest and Farias advised the crowd that since they were witnesses to the above crime, that they must identify themselves and further that all their recording devices contain evidence of the crime and are therefore being seized. Defendants Anderson, Farias, Mandry, Rivera, and Evans detained Mr. Bailey and seized Mr. Bailey's 2008 Mercedes Benz CLK550, which was unconstitutionally held for 28 hours before it was returned. These defendants seized Mr. Bailey's Samsung S6 Edge phone, GoPro 4 Black, Camera stabilizer, Black Web 10,000 milliamp, battery pack, GoPro microphone, Miscellaneous wires, and ATT tablet which was in the seized vehicle but which was taken out of the vehicle and remains in police custody.

c. Farias, Mandry, and other officers arrested Gonzales, after violently grabbing him and throwing him against a window. Defendant E. Gonzales seized his GoPro Hero 6 and his Samsung Galaxy S8. These defendants charged Gonzales with Interference with Public Duties and transported him to jail, but the magistrate rejected the charge because no probable cause existed;

d. Defendant Azar attempted to unlawfully grab Springer's video recorder but Springer pulled his camera away to protect his property from this unlawful seizure. Defendants Azar, Farias, Evans, and Tacquard then grabbed Springer and pinned him up against a wall while Defendants Evans and Castro handcuffed Springer; Springer's camera phone was

seized, and Springer was maliciously charged with Interfering with Public Duties. Springer was booked that night before the magistrate dismissed the charge the following morning. Further, Defendant Evans had Springer's Tahoe towed and Defendant Evans conducted an unlawful search of Springer's vehicle. Springer had a Samsung Smart phone and his Ruger pistol seized by these same defendants. This property, with the exception of the Tahoe, is still in police custody.

e. Farias ordered Zinter to identify himself as a witness, which Zinter did only because he was given an unlawful order to do so, and Farias then seized Zinter's camera and cell phone because it supposedly contained evidence of a supposed crime. Defendant Rivera then took possession of these seized items.

f. Defendant Urdiales arrested Mead for Failure to Identify as a Witness and Defendant Wells seized Mead's recording device supposedly because it contained evidence of a supposed crime. While Mr. Mead was in police custody and handcuffed in a conference room, defendant Mandry approached him and tightened his handcuffs for absolutely no reason, causing severe pain to Mr. Mead.

g. Defendant Evans escorted Pierce away from City Hall and seized Pierce's recording equipment;

78. The above actions were done at the direction of Chief Salvaggio and Lieutenant Anderson and other supervisors, acting in their capacities as both policymakers and/or decisionmakers for Leon Valley, in their supervisory capacities

over the subordinate officers, and in their individual capacities, and resulted in the defendants unlawfully confiscating personal property from the people present, and unlawfully and unconstitutionally detaining, arresting, and/or seizing property from those present.

79.   These seizures were without any lawful basis. The detainments and arrests were without lawful basis. The criminal charges charged were without any lawful basis. Excessive force was used by the police unlawfully.

80.   "Failure to Identify as a Witness" is not even a crime in Texas, but that did not stop the defendants for detaining people claiming that they were in violation of "Failure to Identify as a witness."

### *The June 23, 2018 Incident*

81.   On June 23, 2018, a peaceful crowd gathered at the Leon Valley police station to protest what they perceived to be unlawful actions by the Leon Valley police.

82.   Among those present were Plaintiffs Springer, Pierce, Jason Green, Brian Howd, Greg Gardiner, Selena Herrera, Juan Gonzales, Kevin Egan, Jonathon Green, and Theresa Richard.

83.   Many of the plaintiffs were livestreaming the protest on YouTube.

84.   Unbeknownst to all plaintiffs, some unknown jerk, with the YouTube name "Skorp Kitsan" left at least four comments on Mr. Springer's YouTube livestream, in each of which Salvaggio's home address was written.

85.   Unbeknownst to any Plaintiff, Defendant Salvaggio had decided that A) these YouTube comments were a felony under Texas Penal Code 36.06, B) that

Mr. Springer was guilty of said felony for not deleting these comments, that C) everyone present with a camera somehow had evidence of this felony, and D) that the police have the right to seize all such evidence even without a warrant.

86.     In the afternoon, at around 4:00 PM, Defendant Salvaggio announced that there that he would hold a press conference shortly and showed the crowd where the press conference would take place, specifically so the crowd would relocate to that area with their cameras.

87.     Instead of a press conference, Defendant Salvaggio ordered his subordinate Leon Valley officers to arrest of all those present and he further ordered the confiscation of any property capable of taking pictures or video. Defendant Salvaggio and the other defendants also directed criminal charges to be levied against some of those gathered, even though no lawful basis whatsoever existed to levy these charges, and there was an absence of reasonable suspicion or probable cause.

88.     Some were even arrested for the supposed crime of Failure to Identify as a Witness even though that is not a crime in Texas.

89.     There was no lawful basis to detain or arrest people, nor was there a lawful basis to confiscate anybody's property. The police then kept all this property until May 2020 when the defendants finally decided it was time to return most of the unlawfully seized property and mailed it back to the plaintiffs.

90.     Specifically:

a. Mandry lied in his report to get Mr. Springer charged with a felony by writing that Defendant Salvaggio's information was "broadcast by AP1 and AP2…" This is simply false. This information was written as a comment by someone other than Mr. Springer, IE by a YouTuber known only as "Skorp Kitsan" but that is not included in the report, because the report was written with the purpose of tricking a prosecutor into feloniously charging Mr. Springer. Mr. springer was in fact charged and the felony was pending against him for about two years until it was finally dismissed.

b. Defendant Evans arrested Mr. Springer for the alleged crime of Retaliation, PC 36.06. In reality, Evans and the other defendants knew at the time that no probable cause or even reasonable suspicion existed to believe Mr. Springer had committed this offense.

c. Mr. Pierce was arrested by Defendant Vasquez for the alleged crimes of Interference with Public Duties and Failure to Identify, even though the defendants knew there was no lawful basis to do so. Mr. Pierce had his Samsung Verizon Galaxy J7 and selfie stick seized unlawfully as well as his knife, black wallet, Samsung Verizon Galaxy J7, Black outdoor back pack, Silver USB cord, Black mouse, Small tripod, EECU debit card, Black tape, AC adapter white, Wall plug, Hyundai portable

charging device, Camera digital box containing 3 attachments, 16 GB san disk, charging outlet port for HP, and two USB cards.

d.  Mr. Jason Green was arrested by defendant Saucedo for the alleged crimes of Interference with Public Duties and Failure to Identify, even though the defendants knew there was no lawful basis to do so. Green was booked and spent the night in jail before the magistrate dismissed the case the following morning. Mr. Green was handcuffed for several hours and was complaining about them, but they were never loosened. Mr. Green went to the Mount Carmel East Hospital in Ohio on June 27, 2020 and was treated for bruised wrists.

e.  Mr. Howd was arrested by defendants Parra and Hernandez for the alleged crimes of Interference with Public Duties and Resisting Arrest, based on Mr. Howd allegedly resisting by refusing to allow the defendant to seize his recording device, even though the defendants knew there was no lawful basis to seize Mr. Howd's device or to arrest Mr. Howd. The defendants claimed that Mr. Howd recorded the arrest of Mr. Springer and therefore contained evidence which they were permitted to seize. In reality, these defendants knew that Mr. Howd did not record any crime and further that his device was not subject to warrantless seizure and further that was no basis to arrest Mr. Howd or

transport him to jail. Mr. Howd was then re-charged in December 2018, and the charges were finally dismissed on Nov 5, 2019.

f.  Mr. Gardiner was detained in handcuffs by defendants Vasquez and Farias, who then seized Mr. Gardiner's firearms and recording equipment, specifically a GoPro camera, a UK Camera stick, and a 32GB ScanDisk memory card, even though the defendants knew there was no lawful basis to do so.

g.  Selena Herrara was detained as a witness and had her phone seized. Defendant Griego conducted the detainment and property seizure, after being ordered to do so by defendants Saucedo and Salvaggio.

h.  Juan Gonzales was detained and unlawfully ordered by defendants Vasquez and Griego, under threat of arrest, to identify himself as a witness, so Gonzales complied.

i.  Kevin Egan, a 70-year old man at the time, was detained as a witness and ordered, under threat of arrest to identify himself, which Egan did. Salvaggio, Saucedo, Vasquez, and Farias all participated int his detainment.  Mr. Egan was having serious health concerns and an ambulance was called about twenty minutes after being detained in the hot sun, and he was transported to the hospital. To cover their tracks, Mr. Egan's name does not appear in a single police report.

j.  Jonathon Green was detained by Salvaggio, Saucedo, Vasquez, Friego, Evans, and/or Farias, and those same defendants seized his Galaxy S8 Plus and its Otter Box case, which have still not been returned. Mr. Green was held in custody for around six hours before finally being released, causing Mr. Green to miss his flight home, which caused him to lose his job. Mr. Green was residing at Pier Pont Apartments in Westerville, OH, which was being subsidized by Mr. Green's employer. When Mr. Green was terminated from employment, his apartment lease was terminated as well, and he had to move with his family including his newborn baby. Mr. Green went to the Mount Carmel East Hospital on June 27, 2020 and was treated for his shoulder injury that he sustained while in custody when an officer jerked Mr. Green's handcuffed arms up quickly and painfully.

k.  Theresa C. Richard was detained and had her iPhone 8 Plus seized without any lawful basis. Defendant Saucedo grabbed Ms. Richard's phone out of her hands at the behest of defendant Salvaggio, who ordered her detainment. These defendants also took her drivers license and her monopod. Her property was seized by Salvaggio, Saucedo, and/or E. Rivera. Finally, in May 2020, the defendants mailed Ms.

Richard her property back to her, after maintaining unlawful possession and control over it for almost two years.

l.   Jack Miller was present for the protest and was forced, under threat of arrest, to leave the area or be subject to detainment, arrest, and/or prosecution. Mr. Miller was not detained, but his first Amendment rights to protest were trampled on by the defendants when they announced the detainments of all those present and the seizures of their property.

m.   Mead was detained by Vasquez as a witness and ordered to identify himself. Mr. Mead refused and was then further detained or arrested for Failure to Identify as a Witness. Mr. Mead was then placed in the back of a police car at which time he identified himself. Vasquez looked up Mr. Mead in a law enforcement computer and then released him from the police car but ordered him to sit against a wall with everyone else who was being detained. Vasquez seized Mr. Mead's Motorola flip phone, issued a property receipt and then released him.

**THE JUNE 14, 2018 CAUSES OF ACITON:**

**Count 1 – June 14, 2018 Incident**
**Unlawful Arrest or Detention – 42 USC 1983 and the Fourth Amendment**

**Plaintiff Mark Brown**
**Vs**
**Defendants Leon Valley, Salvaggio, Anderson, Yarbough, Vasquez, Wells,**
**Farias**

91.     Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

92.     Yarbough, Vasquez, Wells, and Farias, under the direct supervision of Salvaggio and Anderson and at their behest, and in accordance with the policies of Leon Valley, arrested or detained Plaintiff without probable cause of any criminal wrongdoing.

93.     If it was a detention that occurred, the detention was not based on reasonable suspicion supported by articulable facts that criminal activity was occurring.

94.     If an arrest occurred, there was no probable cause to arrest Plaintiff.

95.     Plaintiff suffered harm as a result of these actions.

**Count 2 – June 14, 2018 Incident**
**First Amendment Retaliation – Assault/Arrest/Detention/Property**
**Seizure/Prosecution – 42 USC 1983 and the First Amendment**

**Plaintiff Mark Brown**
**Vs**
**Defendants Yarbough, Vasquez, Wells, Farias, Leon Valley, Anderson,**
**and Salvaggio**

96.     Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

97.     Specifically, Yarbough, Vasquez, Wells, and Farias, under the direct supervision of Salvaggio and Anderson and at their behest, and in accordance with

the policies of Leon Valley, arrested, detained, assaulted, tazed, and seized the property of Plaintiff .

98.    These adverse acts were done in retaliation for Plaintiff engaging in constitutionally protected conduct as described herein, and to prevent him from engaging in such conduct, specifically recording the police.

99.    The defendants' adverse acts would deter a man of ordinary firmness from continuing to engage in such conduct in the future.

100.    Plaintiff suffered harm as a result.

### Count 3 – June 14, 2018 Incident
### Excessive Force – 42 USC 1983 and the Fourth Amendment

### Plaintiff Mark Brown
### Vs
### Defendants Leon Valley, Salvaggio, Yarbough, Vasquez, Wells, Anderson, and Farias

101.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

102.    Yarbough, Vasquez, Wells, and Farias, under the direct supervision of Salvaggio and Anderson and at their behest, and in accordance with the policies of Leon Valley, tackled, injured, and tazed Plaintiff for absolutely no lawful reason. Plaintiff at no time resisted and these actions were in no way necessary or justifiable. Alternatively, they had the ability, opportunity, and obligation to intervene while Vasquez tazed Mr. Brown, but they chose not to.

103.   Plaintiff suffered an injury, which resulted directly and only from the defendants' use of force that was clearly excessive, and the excessiveness of the force was clearly unreasonable.

104.   Plaintiff suffered harm as a result.

### Count 4 – June 14, 2018 Incident
### Unlawful Seizure of Property – 42 USC 1983 and the Fourth Amendment

### Plaintiff Mark Brown
### Vs
### Defendants Leon Valley, Salvaggio, Yarbough, Vasquez, Wells, Anderson, and Farias

105.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

106.   Defendants created a meaningful interference with Plaintiff's possessory interests in his property, which was unreasonable because the interference was unjustified by law. Specifically, these defendants seized Plaintiff's car and camera, despite there being no lawful basis to do so.

107.   Plaintiff suffered harm as a result.

### Count 5 – June 14, 2018 Incident
### Abuse of Process and Malicious Prosecution – 42 USC 1983 and the Fourth and Fourteenth Amendments

### Plaintiff Mark Brown
### Vs
### Defendants Leon Valley, Salvaggio, Yarbough, Vasquez, Wells, Anderosn, Farias, LaHood, and Gonzales

108.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

109.   Defendants engaged in the extortionate perversion of lawfully initiated process to illegitimate ends in that they procured a prosecution against Plaintiff knowing he is innocent of the charged crime. They initiated the charges to somehow justify their own unlawful actions.

110.   Defendants LaHood and Gonzales enacted unconstitutional policies and procedures to maliciously and frivolously prosecute Mr. Brown, and to retaliate against him for engaging in constitutionally protected conduct.

111.   A criminal proceeding was commenced against Mr. Brown.

112.   The defendants initiated or procured the proceeding with their false statements and charges.

113.   The proceeding was terminated in the plaintiff's favor when the charges were dismissed.

114.   Plaintiff was innocent of the crime charge.

115.   The defendants lacked probable cause to initiate the criminal proceeding.

116.   The defendants acted with malice.

117.   Plaintiff suffered harm as a result.


## THE JUNE 18, 2018 CAUSES OF ACITON:


### Count 6 – June 18, 2018 Incident
### Unlawful Arrest and Detention – 42 USC 1983 and the Fourth Amendment

### Plaintiffs Mead, Bailey, Gonzales, Springer, and Zinter
### Vs

**<u>Defendants Leon Valley, Salvaggio, Anderson, Mandry, Evans, Urdiales,</u>**
**<u>Gonzales, Azar, Rivera, Tacquard, and Castro</u>**

118.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein

119.   These Defendants arrested or detained these Plaintiffs.

120.   Mead makes this claim against Urdialies, Wells, Anderson, Salvaggio, and Leon Valley.

121.   Bailey makes this claim against Anderson, Farias, Rivera, Mandry, Salvaggio, and Leon Valley.

122.   Gonzales makes this claim against Farias, Mandry, Gonzales, Anderson, Salvaggio, and Leon Valley.

123.   Springer makes this claim against Azar, Farias, Evans, Tacquard, Castro, Anderson, Salvaggio, and Leon Valley.

124.   Zinter makes this claim against Farias, Rivera, Anderson, Salvaggio, and Leon Valley.

125.   Pierce makes this claim against Evans, Anderson, Salvaggio, and Leon Valley.

126.   If detainments occurred, they were without reasonable suspicion supported by articulable facts that criminal activity was occurring.

127.   If arrests occurred, there was no probable cause to arrest Plaintiffs.

128.   Plaintiffs suffered harm as a result.

**<u>Count 7 – June 18, 2018 Incident</u>**
**<u>First Amendment Retaliation – Assault/Arrest/Detention/Property</u>**
**<u>Seizure/Prosecution/Prevention – 42 USC 1983 and the First Amendment</u>**

**Plaintiffs Mead, Bailey, Gonzales, Springer, and Zinter**
**Vs**
**Defendants Leon Valley, Salvaggio, Anderson, Mandry, Evans, Urdiales,**
**Gonzales, Azar, Tacquard, and Castro**

129.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

130.   Zinter's personal property, including his camera and phone, were taken by Farias, under the direct supervision of Salvaggio and Anderson and at their behest, and in accordance with the policies of Leon Valley, as retaliation for his participation in a lawful protest and to prevent him from engaging in such.

131.   Mead was detained by Urdiales and Wells and was injured by Mandry's unnecessary tightening of the handcuffs. Further, Mead's personal property, including his camera and Bailey' camera which Mead was holding, were seized by these defendants. Further, Mead was threatened with criminal prosecution if he dared set foot on any of a number of public properties, and Mead was taken into custody, all under the direct supervision of Salvaggio and Anderson and at their behest, and in accordance with the policies of Leon Valley, as retaliation for his participation in a lawful protest and to prevent him from engaging in such.

132.   Pierce's phone was seized by Evans, under the direct supervision of Salvaggio and Anderson and at their behest, and in accordance with the policies of Leon Valley, as retaliation for his participation in a lawful protest and to prevent him from engaging in such.

133.   Bailey was arrested, had his property seized, and was falsely charged with a criminal charge which is pending, but makes this claim against Anderson,

Farias, Rivera, and Mandry, under the direct supervision of Salvaggio and at his behest, and in accordance with the policies of Leon Valley, as retaliation for his participation in a lawful protest and to prevent him from engaging in such protests, and for his lawful display of a partially burnt law enforcement "thin blue line" parody American flag.

134.   Gonzales' personal property was seized, he was handcuffed and detained, and he was threatened with criminal prosecution if he dared set foot on any of a number of public properties, by Farias, Mandry, and Gonzaels, all under the direct supervision of Salvaggio and Anderson and at their behest, and in accordance with the policies of Leon Valley, as retaliation for his participation in a lawful protest and to prevent him from engaging in such.

135.   At the hands of Azar, Farias, Evans, Tacquard, and Castro, Mr. Springer was arrested, was subjected to far more force than necessary to effectuate an arrest, had his personal property, including his camera, vehicle, and pistol seized, and was falsely charged with the crime of "interference" which the magistrate dismissed, all under the direct supervision of Salvaggio and Anderson and at their behest, and in accordance with the policies of Leon Valley, as retaliation for his participation in a lawful protest and to prevent him from engaging in such.

136.   Defendants' actions were averse to Plaintiffs.

137.   These adverse acts were done in retaliation for Plaintiffs engaging in constitutionally protected conduct as described herein, and to prevent them from engaging in such conduct.

138.   The defendants' adverse acts would deter a person of ordinary firmness from continuing to engage in such conduct in the future.

139.   Plaintiffs suffered harm as a result.

**Count 8 – June 18, 2018 Incident**
**Excessive Force – 42 USC 1983 and the Fourth Amendment**

**Plaintiff Mead, Gonzales, Springer,**
**Vs**
**Defendants Leon Valley, Salvaggio, Mandry, Evans, Farias, Gonzales,**
**Tacquard, Castro, and Azar**

140.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

141.   Mead was subjected to being injured by Mandry when Mandry approached an already handcuffed Mead, and tightened Mead's handcuffs to the point where they were digging into Mead's skin.

142.   Defendants Farias, Mandry and Gonzales grabbed Mr. Gonzelas and shoved him against a window, which was more force than necessary to effectuate an arrest and caused unnecessary pain and injury to Mr. Gonzales.

143.   Mr. Springer was subjected to far more force than necessary to effectuate an arrest at the hands of Evans, Azar, Farias, Tacquard, and Castro, specifically by these defendants grabbing Mr. Springer and twisting Springer shoulder in an extremely painful position.

144.   Plaintiffs suffered injury, which resulted directly and only from the defendants' use of force that was clearly excessive, and the excessiveness of the force was clearly unreasonable.

145.   Plaintiffs at no time resisted, obstructed, or assaulted the defendants.

146.   Plaintiffs suffered harm as a result.

### Count 9 – June 18, 2018 Incident
### Unlawful Seizure of Property – 42 USC 1983 and the Fourth Amendment

### Plaintiffs Mead, Bailey, Gonzales, Springer, Pierce, and Zinter
### Vs
### Defendants Leon Valley, Salvaggio, Anderson, Mandry, Evans, Urdiales, Gonzales, Azar, Tacquard, and Castro

147.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

148.   Pierce's cell phone was seized by Evans, under the direct supervision of Salvaggio and Anderson and at their behest, and in accordance with the policies of Leon Valley, despite the fact that there was no lawful basis to seize it.

149.   Zinter's personal property was seized by Farias, and Rivera, under the direct supervision of Salvaggio and Anderson and at their behest, and in accordance with the policies of Leon Valley, despite the fact that there was no lawful basis to seize it.

150.   Mead's personal property was seized by Unrdiales and Wells, under the direct supervision of Salvaggio and Anderson and at their behest, and in accordance with the policies of Leon Valley, despite the fact that there was no lawful basis to seize it.

151.   Bailey's personal property was seized by Anderson, Farias, Rivera, and Mandry, under the direct supervision of Salvaggio and Anderson and at their

behest, and in accordance with the policies of Leon Valley, despite the fact that there was no lawful basis to seize it.

152.   Gonzales' personal property was seized by Farias, E. Gonzales, and Mandry under the direct supervision of Salvaggio and Anderson and at their behest, and in accordance with the policies of Leon Valley, despite the fact that there was no lawful basis to touch it.

153.   Springer's personal property was seized by Azar, Farias, Evans, Tacquard, and Castro, under the direct supervision of Salvaggio and Anderson and at their behest, and in accordance with the policies of Leon Valley, despite the fact that there was no lawful basis to seize it.

154.   Defendants created a meaningful interference with Plaintiffs' possessory interests in their respective property, which was unreasonable because such interference was unjustified by law.

155.   Plaintiffs suffered harm as a result.

### Count 10 – June 18, 2018 Incident
### Malicious Prosecution – 42 USC 1983 and the Fourth and Fourteenth Amendment

### Plaintiffs Bailey and Springer
### Vs
### Defendants Leon Valley, Salvaggio, Evans, Anderson, Farias, Rivera, Mandry, Azar, Farias, Tacquard, Castro, LaHood, and Joe Gonzelas

156.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

157.   Bailey makes this claim against Anderson, Farias, Rivera, Mandry, Salvaggio, Leon Valley, LaHood, and Joe Gonzales. Bailey's charge was finally dismissed January 14, 2020.

158.   Springer makes this claim against Azar, Farias, Evans, Tacquard, Castro, Anderson, Salvaggio, Leon Valley, LaHood and Joe Gonzales. There was no probable cause that Springer was engaging in criminal wrongdoing or that he committed the criminal office of "interference." The charge was dismissed by the magistrate since no probable cause existed. Springer's claim against LaHood and Joe Gonzales is because the charge was initially rejected by the magistrate, but then these defendants re-charged Mr. Springer in December 2018, based on the herein complained of unconstitutional policy.

159.   Bailey's claim against LaHood and Joe Gonzales is because the charge was prosecuted based on the herein complained of unconstitutional policy and was in fact dismissed Oct 4, 2019 and then refiled and prosecuted again by these defendants on Oct 11, 2019; the second prosecution was finally dismissed on January 14, 2020. Such overzealous prosecution for such a minor charge, all the while begging Mr. Bailey to take any plea deal at all, only to finally dismiss the charges when bailey refused all offers, could have served no other possible purpose than that which is complained of herein.

160.   A criminal proceeding was commenced against the Plaintiffs.

161.   The defendants initiated or procured the proceeding through their false statements and charges.

162.   The proceeding was terminated in the plaintiffs' favor.

163.   The plaintiffs were innocent of the crime charged.

164.   The defendants lacked probable cause to initiate the criminal proceeding and acted with malice.

165.   The plaintiffs suffered harm as a result.

## THE JUNE 23, 2018 CAUSES OF ACTION:

### Count 11 – June 23, 2018 Incident
### Unlawful Seizure of Person and Property – 42 USC 1983 and the Fourth Amendment

### Plaintiffs Howd, Mead, Pierce, Egan, Jason Green, Springer, Gardiner, Herrera, Gonzales, Egan, Jonathon Green, Richard, Miller
### Vs
### Defendants Leon Valley, Salvaggio, Hernandez, Evans, Vasquez, Mandry, Evans, Saucedo, Parra, Farias, Griego, and Rivera

166.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

167.   Howd brings this claim against Parra, Hernandez, Salvaggio, and Leon Valley.

168.   Mead brings this claim against Vasquez, Salvaggio, and Leon Valley.

169.   Pierce brings this claim against Vasquez, Salvaggio, and Leon Valley.

170.   Egan brings this claim against Saucedo, Vasquez, Farias, Salvaggio, and Leon Valley.

171.   Jason Green brings this claim against Saucedo, Salvaggio, and Leon Valley.

172.   Springer brings this claim against Mandry, Evans, Salvaggio, and Leon Valley.

173.   Gardiner brings this claim against Vasquez, Farias, Salvaggio, and Leon Valley.

174.   Herrera brings this claim against Saucedo, Griego, Salvaggio, and Leon Valley.

175.   Juan Gonzales brings this claim against Vasquez, Griego, Salvaggio, and Leon Valley.

176.   Egan brings this claim against Saucedo, Vasquez, Farias, Salvaggio, and Leon Valley.

177.   Jonathon Green brings this claim against Saucedo, Vasquez, Friego, Evans, Farias, Salvaggio, and Leon Valley.

178.   Richard brings this claim against Saucedo, Rivera, Salvaggio, and Leon Valley.

179.   Miller brings this claim against Salvaggio and Leon Valley.

180.   These Defendants arrested or detained these Plaintiffs and seized their property.

181.   If detainments occurred, the detention was not based on reasonable suspicion supported by articulable facts that criminal activity was occurring.

182.   If arrests occurred, there was no probable cause to arrest Plaintiffs.

183.   Plaintiffs suffered harm as a result.

**Count 12 – June 23, 2018 Incident**
**First Amendment Retaliation – Assault/Arrest/Detention/Property-Seizure/Prosecution/Prevention – 42 USC 1983 and the First Amendment**

**Plaintiffs Howd, Mead, Pierce, Egan, Jason Green, Springer, Gardiner,
Herrera, Gonzales, Egan, Jonathon Green, Richard, Miller
Vs
Defendants Leon Valley, Salvaggio, Hernandez, Evans, Vasquez, Mandry,
Evans, Saucedo, Parra, Farias, Griego, and Rivera**

184.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set

forth above and incorporate them as if fully set forth herein.

185.   Howd brings this claim against Parra, Hernandez, Salvaggio, and Leon

Valley.

186.   Mead brings this claim against Vasquez, Salvaggio, and Leon Valley.

187.   Pierce brings this claim against Vasquez, Salvaggio, and Leon Valley.

188.   Egan brings this claim against Saucedo, Vasquez, Farias, Salvaggio,

and Leon Valley.

189.   Jason Green brings this claim against Saucedo, Salvaggio, and Leon

Valley.

190.   Springer brings this claim against Mandry, Evans, Salvaggio, and Leon

Valley.

191.   Gardiner brings this claim against Vasquez, Farias, Salvaggio, and

Leon Valley.

192.   Herrera brings this claim against Saucedo, Griego, Salvaggio, and Leon

Valley.

193.   Juan Gonzales brings this claim against Vasquez, Griego, Salvaggio,

and Leon Valley.

194.   Egan brings this claim against Saucedo, Vasquez, Farias, Salvaggio, and Leon Valley.

195.   Jonathon Green brings this claim against Saucedo, Vasquez, Friego, Evans, Farias, Salvaggio, and Leon Valley.

196.   Richard brings this claim against Saucedo, Rivera, Salvaggio, and Leon Valley.

197.   Miller brings this claim against Salvaggio and Leon Valley.

198.   These adverse acts were done in retaliation for Plaintiffs engaging in constitutionally protected conduct as described herein, and to prevent them from engaging in such conduct.

199.   The defendants' adverse acts would deter a man of ordinary firmness from continuing to engage in such conduct in the future.

200.   Plaintiffs suffered harm as a result.

**Count 13 – June 23, 2018 Incident**
**Excessive Force and Refusal to Medically Treat – 42 USC 1983 and the**
**Fourth and Fourteenth Amendment**

**Plaintiffs Egan, Pierce, Jason Green and Jonathon Green**
**Vs**
**Defendants Leon Valley, Salvaggio, *Jane Doe* Goldman, Saucedo, Vasquez,**
**Friego, Evans,**

201.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

202.   Pierce was subjected to humiliating sexual assault by Deputy *Jane Doe* Goldman while in her custody.

203.   Jason Green brings this claim against Saucedo, Salvaggio, and Leon Valley.

204.   Jonathon Green brings this claim against Saucedo, Vasquez, Friego, Evans, Farias, Salvaggio, and Leon Valley.

205.   Egan brings this claim against Saucedo, Vasquez, Salvaggio, and Leon Valley.

206.   Plaintiffs suffered an injury, which resulted directly and only from the defendants' use of force that was clearly excessive, and the excessiveness of the force was clearly unreasonable.

207.   Plaintiffs suffered harm as a result.

**Count 15 – June 23, 2018 Incident**
**Malicious Prosecution – 42 USC 1983 and the Fourth Amendment**

**Plaintiffs Howd, Jason Green, and Springer**
**Vs**
**Defendants Leon Valley, Salvaggio, Mandry, Saucedo, Parra, Hernandez, Evans, LaHood, Joe Gonzales**

208.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

209.   Howd brings this claim against Parra, Hernandez, Salvaggio, Leon Valley, LaHood, and Joe Gonzales.

210.   Jason Green brings this action against Squcedo, Salvaggio, Leon Valley, LaHood, and Joe Gonzales.

211.   Springer brings this claim against Mandry, Evans, Salvaggio, Leon Valley, LaHood, and Joe Gonzales.

212.   Criminal proceeding were commenced against the Plaintiffs.

213.   The defendants initiated or procured the proceeding through their false statements and charges.

214.   The proceedings were terminated in the Plaintiffs' favor.

215.   The plaintiffs were innocent of the crimes charged.

216.   The defendants lacked probable cause to initiate the criminal proceedings and  acted with malice.

217.   The plaintiffs suffered damages as a result.

## *Monell* Liability

218.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

219.   A municipality is liable under 42 U.S.C. § 1983 if the acts that violated a person's right were undertaken pursuant to the municipality's policies and customs.

220.   Defendant Leon Valley directly caused the constitutional violations suffered by Plaintiffs and is liable for the damages caused as a result of the conduct of the individual Defendants. The conduct of the individual Defendant officers was a direct consequence of the policies and practices of Defendant City.

221.   At all times relevant in this complaint, direct and proximate cause of the damages and injuries complained of were caused by policies, practices and /or customs developed, implemented, enforced, encouraged, and sanctioned by Defendant City, including the failure:

a. To adequately supervise and train its officers and agents, including individual Defendants, thereby failing to adequately discourage further constitutional violations on the part of its police officers;

b. To properly and adequately monitor and discipline its officers, including individual Defendants; and

c. To adequately and properly investigate citizen complaints of police misconduct and instead, acts of misconduct were tolerated by the Defendant City. Defendant City has acted with deliberate indifference to the constitutional rights of the Plaintiffs. As a direct and proximate result of the acts as stated herein by each of the Defendants, each of the Plaintiffs' constitutional rights have been violated.

222.   This failure to supervise, discipline, or control its officers demonstrates deliberate indifference to the constitutional rights of the plaintiffs and is directly responsible for the individual defendants acting the way they did as outlined in this lawsuit.

223.   Further the de facto unwritten policy, procedure, or custom, described herein, demonstrates deliberate indifference to the constitutional rights of the plaintiffs and is directly responsible for the individual defendants acting the way they did as outlined in this complaint.

224.   Defendant City's supervision of the defendant officers was deficient as it to relates to excessive force, unlawful arrests, and unlawful seizures and searches of cell phones. Defendant City made a deliberately indifferent choice to not provide adequate supervision of these officers to ensure that such actions are not repeated,

and that is exactly why these defendant officers were enabled and in fact emboldened to violate the plaintiffs' Constitutional rights as outlined herein.

225.   As a proximate result of the unconstitutional acts and omissions of Defendant City, Plaintiffs were harmed and suffer damages for their physical, mental, and emotional injury and pain, mental anguish, humiliation, and embarrassment.

226.  Further, Defendant City has explicit unconstitutional policies including:

a) To detain people who are witnesses to a crime, even though there is no reasonable suspicion or probable cause of criminal wrongdoing;

b) To arrest people for failing to ID as witnesses;

c) To arrest people for failing to ID themselves even when there is no reasonable suspicion of criminal wrongdoing;

d) To not allow people to recording in a public building because it is once in a blue moon used as a court facility;

e) To hand out trespass warnings to people threatening an unlawful arrest;

f) To seize people's phones/cameras without a warrant, consent, reasonable suspicion of criminal wrongdoing, or any other lawful basis;

g) To seize people's cameras if the camera recording a crime;

227.   These policies directly caused the harm suffered by the Plaintiffs in the instant action.

228.   Further, the official capacity claims brought against LaHood and Joe Gonzales are based on the herein complained of unconstitutional policies.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs demand judgment and pray for the following relief, jointly and severally, against all Defendants:

a. Declaratory judgment that Leon Valley's policies are unconstitutional;

b. Declaratory judgment that LaHood's and Gonzales' policy is unconstitutional;

c. Full and fair compensatory damages to be assed against each and every defendant in an amount to be determined by a jury;

d. Punitive damages to be assessed against each and every defendant except Leon Valley, LaHood, and Joe Gonzales, in an amount to be determined by a jury;

e. Reasonable attorney's fees and the costs and disbursements of this action; and

f. Any such other relief as appears just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable, pursuant to Fed. R. Civ. P. 38(b).

/

/

/

Respectfully submitted,

**GRABLE GRIMSHAW MORA, PLLC**

*/s/ Brandon J. Grable*
Brandon J. Grable
State Bar No.: 24086983
1603 Babcock Road, Suite 280
San Antonio, Texas 78229
Telephone:  (210) 761-5687
brandon@ggm.law

**JOHNSON LAW, PLC**

*/S/ Solomon M. Radner*
Solomon M. Radner  (MI No. P73653)
Attorney for Plaintiffs
535 Griswold St, Suite 2600
Detroit, MI 48226
313-324-8300
sradner@venjohnsonlaw.com

DATED: November 30, 2020

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of November, 2020, a copy of the foregoing document was served via the Court's CM/ECF system, in accordance with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Western District of Texas, to all counsel of record for the parties having already appeared in this matter. Plaintiffs will effectuate service upon the newly added defendants.

*/s/ Solomon M. Radner*