UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **RUSSELL ZINTER; ET AL.** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL NO. SA-18-CA-680-FB** |
| | § | |
| **CHIEF JOSEPH SALVAGGIO; ET AL.** | § | |
| | § | |
| **Defendants.** | § | |

<u>**PLAINTIFFS' RESPONSE TO DEFENDANTS LAHOOD AND GONZALES'
MOTION TO DISMISS**</u>

NOW COME Plaintiffs, by and through counsel, Solomon M. Radner, and Johnson Law, PLC, and file this response in opposition to Defendants LaHood and Gonzales' Motion to Dismiss.

For the reasons stated herein, Plaintiffs respectfully request this Honorable Court deny Defendants' motion.

<u>**STATEMENT OF OPPOSITION**</u>

Defendant LaHood and Gonzales' motion to dismiss should be denied because Plaintiffs have alleged sufficient facts to state a claim for municipal liability for Defendants' unconstitutional policy, practice, and custom. Defendant LaHood and Gonzales, district attorneys operating in their official capacities as policymakers for Bexar County, enacted and enforced the policies and procedures for Bexar County's false prosecution of Plaintiffs. Defendants' policy included the use of criminal charges for the sole purpose of protecting and defending the unlawful actions of the individual defendant police officers despite their knowledge that the Plaintiffs were engaged in protected conduct. (See ECF No. 87, Plaintiffs' Amended Complaint). Plaintiffs allege a pattern of charges brought with no legal basis, and in many instances brought after the same charge had

1

already been dismissed by a magistrate. These charges were maintained without a legal basis by Defendants and were not dismissed for several months to two years. These allegations are sufficient to state a claim for municipal liability.

## STATEMENT OF LEGAL AUTHORITIES PRESENTED

The sufficiency of Plaintiffs' pleadings is governed by Fed. R. Civ. P. 8(a)(2), *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).

Authority for making a claim for municipal liability specifically can be found in *Monell v. Department of Social Services,* 436 U.S. 658 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986); *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000); *Crane v. Texas*, 766 F.2d 193 (5th Cir. 1985).

Authority for making a claim based on the wrongful institution of criminal process can be found in *Winfrey v. Rogers*, 901 F.3d 483, 491 (5th Cir. 2018).

## STATEMENT OF FACTS

On July 4, 2018, Plaintiffs filed this lawsuit in response to the Defendants violations of several constitutionally protected rights. (ECF No. 1, p. 1-39). Plaintiffs' complaint and amended complaint details the slew of constitutional violations inflicted by defendants on three separate occasions. (*Id*.; ECF No. 87, p. 1-45). On each occasion, Defendants prohibited peaceful protest and unlawfully detained, arrested, criminal charged, seized recording equipment, and used excessive force on the Plaintiffs. (*Id*. at ¶ 1-3).

Defendants acts impinged on the guarantees of the First and Fourth Amendment - each arrest, use of force, and continuation of criminal charges was in direct response to Plaintiffs' constitutionally protected conduct, and were done to deter and unlawfully criminalize protected

speech and to cover up the unlawful acts of the officers. (*Id*. at ¶ 1-12). Prior to the filing of the Amended Complaint, the case was stayed based on defendants' statements regarding "several interrelated and intertwined ongoing criminal investigations and prosecutions." (ECF No. 66, p. 2; ECF No. 87, ¶ 8-9;). These investigations are finally complete – no charges stuck, each and every criminal allegation against each and every Plaintiff was dismissed.  (ECF No. 87, p. 2, ¶ 1-2). The final baseless charge, a felony, was dismissed on October 22, 2020 - after approximately two years. (*Id*. at ¶ 13, 90(a)).

On the first occasion, June 14, 2018, Plaintiff Mark Brown was in a small peaceful crowd outside the Leon Valley police department to protest an unlawful arrest. (ECF No. 87, p. 11-13). Mr. Brown was violently arrested and tased in response to his recording of another individual being arrested. (*Id*.). Mr. Brown had complied with all orders and there was no legal basis for defendants to tase and arrest him. (*Id*.). Mr. Brown was charged with two crimes that were maintained for 299 days without a legal basis and in retaliation for his constitutionally protected conduct. (*Id*. at ¶ 71-72, 110).

A few days later, on June 18, 2018, Plaintiffs Zinter, Mead, Bailey, Springer, and Gonzales among others, gathered in front of the police station to continue to protest unlawful police actions. (*Id*. at p. 13-17, ¶ 73-77). Plaintiffs displayed a partially burnt parody flag made popular by law enforcement. (*Id*. at ¶ 73). Displaying this flag and protesting unlawful police actions are actions protected by the First Amendment. (*Id*. at ¶ 76). In response, Plaintiffs were all arrested and charged with crimes by defendants. (*Id*. at ¶ 77). Plaintiffs were even charged with "Failure to identify as a Witness," which is not a crime in Texas. (*Id*. at ¶ 80).  Defendants seized a laundry list of Plaintiffs' properties – much of which remains in defendants' possession. (*Id*. at ¶ 77-78).

Shortly after on June 23, 2018, a peaceful crowd once against gathered at the Leon Valley police station to protest police misconduct. (*Id.* at ¶ 81). Present on this day were Plaintiffs Springer, Jason Green, Howd, Richard, Gardiner, Herrera, Gonzales, Egan, and Johnathon Green. (*Id.* at ¶ 82). Many of the Plaintiffs were live streaming their protest on YouTube. (*Id.* at ¶ 83). During the day of the protest, Defendant Salvaggio, chief of police of Leon Valley, announced that he would hold a press conference and showed the protesters where it would take place, with the intention that Plaintiffs would relocate to the area of the upcoming press conference, cameras in hand. (*Id.* at ¶ 86). Plaintiffs did, and Defendant Salvaggio proceeded to order his Leon Valley police officers to arrest all Plaintiffs present and confiscate any property capable of taking pictures or video. (*Id.* at ¶ 87-90). Defendant Officers followed the chief's orders. Defendant Salvaggio and other defendants also directed criminal charges to be levied against some of the protesters, without any lawful basis and in the absence of reasonable suspicion or probable cause. (*Id.*). Once again, some Plaintiffs were arrested for the non-existent crime of 'failure to identify as a witness.' (*Id.* at ¶ 88). The arrests, property seizures, and continued criminal charges were brought without a lawful basis. (*Id.* at ¶ 89-90). Defendants kept all of Plaintiffs' property until May 2020, when they decided to return it and mail it back to Plaintiffs. (*Id.*).

Many of the criminal charges brought against Plaintiffs were dismissed by a magistrate for lack of probable cause within 24-48 hours of the charges being levied on Plaintiffs. (*Id.* at ¶ 77, 90, 135, 158-159). Notwithstanding this finding, Defendants recharged many Plaintiffs with the same crimes, without any new legal basis. (*Id.*). These criminal charges and the many others levied by defendants were maintained for a period of several months to two years before they were all dismissed. (*Id.* at ¶ 2, 13, 15, 71-72, 90, 157-159).

**STANDARD OF REVIEW**

All that is required under the Federal Rules of Civil Procedure is for Plaintiffs to plead "a short and plain statement of the claim showing that [they are] entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement need only provide Defendants "fair notice" of the claims and their respective factual bases. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Specific facts are not necessary." *Inhale, Inc. v. Gravitron, LLC,* 2018 U.S. Dist. LEXIS 223241, at *3 (W.D. Tex. Dec. 10, 2018) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Instead, "a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Balle v. Nueces County*, 952 F.3d 552, 556 (5th Cir. 2017) (quotations and citations omitted).

In deciding a motion under Rule 12(b)(6), the Court views the pleadings in a light most favorable to the Plaintiffs and assumes that all facts in Plaintiffs' complaint are true. *Club Retro, L.L.C., v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). The issue "is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence to support his claims." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 582 (5th Cir. 2020). In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) "are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 231 (5th Cir. 2009).

Prior to *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) and *Twombly,* 550 U.S. at 544, and not overruled therein, the Supreme Court explicitly held that there is no heightened pleading standard in civil rights cases alleging municipal liability under 42 U.S.C. § 1983. *See Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). While the Fifth Circuit has not weighed in on this divide, the district courts have, and through their analysis have crafted a "minimal factual allegations" non-exhaustive list of factors to determine whether a plaintiff states a claim for municipal liability sufficient to withstand a Rule 12(b)(6) motion to dismiss. *See Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 843-844 (S.D. Tex. 2011); *Flanagan v. City of*

*Dallas*, 48 F. Supp. 3d 941, 947 (N.D. Tex. 2014); *Sanchez v. Gomez*, 283 F. Supp. 3d 524, 531-532 (W.D. Tex. 2017).[1] As shown herein, Plaintiffs' complaint sufficiently alleges municipal liability against Bexar County for Defendant LaHood and Gonzales' official policy which was the moving force behind the Fourth Amendment violations suffered by Plaintiffs.

## LEGAL ARGUMENT

I.   PLAINTIFFS' MONELL CLAIM IS NOT BARRED BY PROSECUTORIAL IMMUNITY OR THE ELEVENTH AMENDMENT

### a.   Prosecutorial Immunity in Not A Defense in An Official Capacity Suit

"Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." *Burge v. Par. of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). "Unlike government officials sued in their individual capacities, municipal entities and local governing bodies do not enjoy immunity from suit, either absolute or qualified, under § 1983." *Id. See also Singleton v. Cannizzaro*, 956 F.3d 773, 778 n.3 (5th Cir. 2020).

As clearly stated by the Fifth Circuit, "the District Attorney may not invoke an absolute prosecutorial immunity privilege in an [] official capacity suit." *Burge*, at 467. In *Burge*, the Fifth Circuit found that "the district court erred in granting summary judgment for the District Attorney in his official capacity on the basis of his absolute prosecutorial immunity because that form of personal or individual immunity is not available in an official capacity suit." *Id*. As noted by defendants in their brief, Plaintiffs' claims against them are in their official capacity. (ECF No. 94,

---

[1] *See also Gallentine v. Housing Auth.*, 919 F. Supp. 787, 810-811 (E.D. Tex. 2013) (citing to *Leatherman* and *Thomas*, collecting cases, denying motion to dismiss where allegations in the complaint "generally gives the [entity] fair notice of the nature of [the plaintiff]'s claims.").

p. 1 n.1). Accordingly, defendants' claim that they are entitled to prosecutorial immunity for a claim against them in their official capacity is without merit.

> **b.  Eleventh Amendment Immunity Is Not an Available Defense Because Defendants' Were Acting on Behalf of The County, Not the State**

The "Eleventh Amendment does not apply to counties and similar municipal corporations." *Crane v. Texas*, 759 F.3d 412, 415 (5th Cir. 1985). Suits against officials "in their official capacity therefore should be treated as suits against" the entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also id*. ("[b]ecause the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's 'policy or custom' must have played a part in the violation of federal law."); *see also Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

While defendants claim they are entitled to immunity on the basis of their position as district attorneys in the State of Texas, the law cited by Defendants omits the established Fifth Circuit precedent that permits claims and liability against the county for certain acts of district attorneys. *See Crane v. Texas*, 766 F.2d 193 (5th Cir. 1985) (holding that Texas district attorney acted as county official in setting county policy for the authorization of misdemeanor warrants), *cert. denied*, 474 U.S. 1020, 106 S. Ct. 570, 88 L. Ed. 2d 555 (1985). The Fifth Circuit has made clear that the law "does not absolve a county of all responsibility for the actions of a district attorney in the performance or his or her duties." *Esteves v. Brock*, 106 F.3d 674, 678 (5th Cir. 1997). "For those duties that are administrative or managerial in nature, the county may be held liable for the actions of a district attorney who functions as a final policymaker for the county." *Id*. In *Esteves*, the Fifth Circuit held that a district attorney acted as a state official when using peremptory challenges during a jury selection. *Id*. at 678.

Thus, defendants' claim that they are immune from an official capacity claim against the County solely on the basis of their position as a Texas district attorney, (Defs' Brief, ECF No. 94, p. 8), fails where it is not the legal standard.

Because Plaintiffs' claims against Defendants' in their official capacities involve the district attorney's administrative and managerial actions in creating policies of Bexar County, as explained herein, Plaintiffs' claims are not barred by the Eleventh Amendment. *See Crane*, 766 F.3d at 194-195.

## II. PLAINTIFFS HAVE PLEAD SUFFICIENT FACTS TO DEMONSTRATE MONELL LIABILITY AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITY

An official policy can be shown through evidence of a "policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmakers or by an official to whom the lawmakers have delegated policy-making authority." *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000) (citation omitted). "Alternatively, official policy is a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id*. "Finally, a final decisionmaker's adoption of a course of action tailored to a particular situation and not intended to control decisions in later situations may, in some circumstances, give rise to municipal liability under § 1983." *Id*. (quotations omitted). Indeed, "a single decision by a policy maker may, under certain circumstances, constitute a policy for which the County [or city] may be liable." *Id*. at 462.

A "municipality may be held liable for the illegal or unconstitutional actions of its final policymakers themselves as they engage in the setting of goals and the determination of how those goals will be achieved." *Turner v. Upton County*, 915 F.2d 133, 136 (5th Cir. 1990) (county liability was appropriate based on the plaintiff's allegations that the sheriff and the elected district

attorney conspired to subject her to a "sham trial"). Fifth Circuit precedent specifically permits *Monell* liability for practices and customs that are "not authorized by officially adopted and promulgated policy." *Brown*, 219 F.3d at 457.

As discussed herein, whether the acts of a Texas district attorney can constitute final policymaking for the county depends on the scope of the district attorney's conduct. *See Crane v. Texas*, 766 F.2d 193 (5th Cir. 1985) (holding that Texas district attorney acted as county official in setting county policy for the authorization of misdemeanor warrants); *Esteves v. Brock*, 106 F.3d 674, 678 (5th Cir. 1997) (holding that a district attorney acted as a state official in using peremptory challenges during jury selection); *Brown v. Lyford*, 243 F.3d 185, 191-192 (5th Cir. 2001) (holding pro tem prosecutor was not decisionmaker for county - no evidence he acted as a final policy maker for county, no allegation county had unconstitutional policy, and by working only a single case "he did not assume general management of the array of cases in that office.").

Following this precedent, district courts have denied motions to dismiss such as defendants. In *Booth v. Galveston Cty.*, 352 F. Supp. 3d 718, 724 (S.D. Tex. 2019), the court found plaintiff's complaint sufficiently stated a claim against the county for the acts of the district attorney where it was alleged that the district attorney promulgated an allegedly unconstitutional misdemeanor and a felony bail schedule. In *Brown v. City of Houston*, 297 F. Supp. 3d 748, 766 (S.D. Tex. 2017), the court similarly found the complaint sufficiently alleged municipal liability for an unconstitutional county policy by district attorney policymakers for implementing a "do whatever it takes" conviction culture.

Here, Plaintiffs allege an unconstitutional policy on behalf of Defendants LaHood and Gonzales carried out in their official capacities. Specifically, Plaintiffs Springer, Bailey, Brown, Green, and Howd have specifically alleged the district attorney defendants, LaHood and Gonzales,

enacted and enforced the policies and procedures for Bexar County's false prosecution of Plaintiffs. (ECF No. 87, p. 10, ¶ 56, p. 4, ¶ 11). Defendants' policy included the use of criminal charges for the sole purpose of protecting and defending the unlawful actions of the individual defendant police officers despite their knowledge that the plaintiffs were engaged in protected conduct. (ECF No. 87, p. 4, ¶ 12). Any policy used "for the sole purpose of defending the unlawful actions of the defendant officers, specifically because Plaintiffs were exercising their rights to free speech" is not within the scope of enforcing the criminal laws of the state of Texas because free speech is not a crime in Texas and covering up the unlawful acts of police officers in the State of Texas is not a function of the district attorney that can be considered to be within the scope of the role of enforcing the laws of the State of Texas. (*Id*.). Charing innocent people with false crimes to cover up police misconduct is not a function of a Texas district attorney.

Plaintiffs complaint alleges instances of this policy. For example, Plaintiff Springer alleges that he was charged with the criminal offense of "interference." (*Id*. at p. 34, ¶ 158). This charge was dismissed by the magistrate since no probable cause existed. (*Id*.). After this dismissal, LaHood and Gonzales re-charged Mr. Springer with the same frivolous crime, also later dismissed, in furtherance of their unconstitutional policy. (*Id*.). Plaintiff Bailey was also a victim to Defendants' unconstitutional policy. Once again, the original frivolous criminal charge brought against Mr. Bailey was dismissed and then brought again by Defendants LaHood and Gonzales. (*Id*. at p. 34, ¶ 159). During this time period, Defendants repeatedly urged Mr. Bailey to take a plea deal, despite the fact that the charge had already been once dismissed. (*Id*.). Mr. Bailey, like all other Plaintiffs charged, did not take a plea deal for the frivolous charge. (*Id*.). The charge was later dismissed, again.  (*Id*.). Plaintiff Brown specifically alleges he was prosecuted solely "to retaliate against him for engaging in constitutionally protected conduct." (*Id*. at p. 27, ¶ 110).

Similarly, two other Plaintiffs present, Howd, Green also were charged with frivolous crimes by defendants for engaging in constitutionally protected conduct, later dismissed. (*Id*. at p. 4, ¶ 11). Because constitutionally protected conduct is not a crime in the State of Texas, Defendants were not enforcing Texas law. Accordingly, defendants are not protected by sovereign immunity and their conduct can be the basis of a *Monell* claim against Bexar County.

In the Fifth Circuit, "pleadings are sufficient when they make specific factual allegations that allow a court to reasonably infer that a policy or practice exists and that the alleged policy or practice was the moving force behind" the constitutional violation. *Balle v. Nueces County*, 952 F.3d 552, 559 (5th Cir. 2017). "As other courts have recognized, there is middle ground between "allowing boilerplate allegations, on the one hand, or requiring plaintiffs to plead specific factual details to which they do not have access before discovery, on the other."" *Sanchez v. Gomez*, 283 F. Supp. 3d 524, 532 (W.D. Tex. 2017) (quoting *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 842 (S.D. Tex. 2011)).

"In the context of municipal liability, as opposed to individual officer liability, it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery." *Id*. (quoting *Thomas*, 800 F. Supp. 2d at 842). "Thus, while stating a claim against a municipality requires more than a barebones recitation of the elements of municipal liability, plaintiffs need not "specifically state what the [municipal] policy is" and can rely on "minimal factual allegations" at this stage in the litigation." *Id*. (quoting *Thomas*, at 842-43).

These minimal factual allegations could include, but are not limited to, "past incidents of misconduct by the defendant to others, multiple harms that occurred to the plaintiff himself, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy

or training inadequacy." *Sanchez*, 283 F. Supp at 532 (quoting *Thomas v. City of Galveston*, 800 F. Supp. at 843-844 (citing cases involving failure to train)). "Those types of details, or any other minimal elaboration a plaintiff can provide, help to "satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests," *Twombly*, 550 U.S. at 555 n.3; and also to "permit the court to infer more than the mere possibility of misconduct."" *Thomas*, at 844 (quoting *Iqbal*, 129 S. Ct. at 1950).

As discussed herein, Plaintiffs' allegations exceed this threshold. Plaintiffs allege both the specific challenged policy, as well as multiple examples of the policy carried out against Plaintiffs. Plaintiffs' complaint sufficiently allege Defendants' actions were outside the scope of their role as prosecutors for the state of Texas. Plaintiffs complaint plausibly alleges that defendants, LaHood and Gonzales are (1) final policymakers for Bexar county; and (2) that they implemented an unconstitutional policy, practice, or custom to utilize criminal charges for the sole purpose of protecting and defending the unlawful actions of the individual defendant police officers despite their knowledge that the plaintiffs were engaged in protected conduct. (ECF No. 87, p. 4, ¶ 12). Plaintiff has alleged multiple instances of charges brought and maintained without a legal basis and in direct response to protected conduct. (*See supra*, p. 9-11; *infra*, p. 14-15).  It is established that entity, or county liability, may be established by a single act of a final policymaker. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (finding municipal liability based on single decision of county prosecutor). Accordingly, Plaintiffs state a claim for municipal liability for a un unlawful policy, practice, or custom against Defendants and this motion should be denied.

III. PLAINTIFFS' COMPLAINT SUFFICIENTLY ALLEGES DEFENDANTS UNCONSTITUTIONAL POLICY VIOLATED THEIR FOURTH AMENDMENT RIGHTS

While defendants claim Plaintiffs fails to state a constitutional violation, (ECF No. 94, p. 12), a policy to prosecute individuals without a legal basis is itself unconstitutional because the Fourth Amendment to the United States Constitution requires a legal basis, i.e., probable cause that the individual committed the charged offense. Because this policy was the moving basis behind constitutional violations alleged by Plaintiffs, the wrongful institution and continuation of criminal charges without a legal basis that came in addition to the arrest and detentions without probable cause. Plaintiffs specifically allege Fourth Amendment violations against Defendants LaHood and Gonzales in their official capacities. (See ECF No. 87, p. 26, 33, 39).

While the Fifth Circuit has determined "there is no "freestanding constitutional right to be free from malicious prosecution," "[t]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example."" *Winfrey v. Rogers*, 901 F.3d 483, 491 (5th Cir. 2018) (quoting *Castellano v. Fragozo*, 253 F.3d 939, 953 (5th Cir. 2003)). As noted by the Fifth Circuit in *Winfrey*:

> In *Albright v. Oliver*, 510 U.S. 266, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1998), a plurality of the Supreme Court said that malicious-prosecution claims must be based on the Fourth Amendment, rather than on "the more generalized notion of 'substantive due process,'" because the Fourth Amendment is the explicit textual source against this type of government behavior. *Id*. at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). And recently, in *Manuel v. City of Joliet*, 137 S. Ct. 911, 197 L. Ed. 2d 312 (2017), the Supreme Court considered whether a plaintiff had stated a Fourth Amendment claim when he was arrested and charged with unlawful possession of a controlled substance based upon false reports written by a police officer and an evidence technician. *Id*. at 915. There, the Court said the plaintiff's "claim fits the Fourth Amendment, and the Fourth Amendment fits [the plaintiff's] claim, as hand in glove." *Id*. at 917.

Thus, while the Fifth Circuit does not recognize a standalone claim for malicious prosecution, the Supreme Court and the Fifth Circuit have recognized malicious prosecution claims based on Fourth Amendment violations. *Id*. As explained by the Fifth Circuit, "a malicious

prosecution claim is based upon "detention accompanied…by *wrongful institution* of legal process." *Id*. at 492 (quoting *Wallace v. Kato*, 549 U.S. 384, 390 (2007) (emphasis in original).

In *Winfrey*, the Court vacated the district court's grant of summary judgment to a deputy for claims under the Fourth Amendment. In its opinion the Court found the plaintiff stated a claim for the tort of malicious prosecution "because [he] was arrested through the wrongful institution of the legal process: an arrest pursuant to a warrant, issued through the normal legal process, that is alleged to contain numerous material omissions and misstatements." 901 F.3d at 493.

Here, Plaintiffs suffered Fourth Amendment violations where they were arrested without probable cause and had criminal charges wrongfully instituted against them pursuant to Defendant LaHood and Gonzales unconstitutional policy, practice, or custom to utilize false criminal charges for the sole purpose of protecting and defending the unlawful actions of the individual defendant police officers despite their knowledge that the plaintiffs were engaged in protected conduct. (ECF No. 87, p. 4, ¶ 12).

Plaintiff Springer alleges he was arrested without probable cause by the individual defendant officers. (ECF No. 87, ¶ 77, 135). Springer further alleges that he was wrongfully charged with crimes by district attorneys LaHood and Gonzales after the same charges had already been dismissed by the magistrate for lack of probable cause. (*Id*. at ¶ 158). These charges were also dismissed. (*Id*. at ¶ 162).

Plaintiff Bailey also alleges he was arrested without probable cause by the individual defendant officers. (*Id*. at ¶ 77, 133). Bailey also alleges that he was wrongfully charged with crimes by the district attorneys defendants LaHood and Gonzales after the same charges had already been dismissed by the magistrate for lack of probable cause. (*Id*. at ¶ 158). These charges were also dismissed. (*Id*. at ¶ 162).

Plaintiff Brown also alleges he was arrested and subject to wrongful criminal charges. Mr. Brown alleges he was arrested without probable case and charged with two crimes by defendants LaHood and Gonzales that remained pending for 299 days before finally being dismissed. (*Id*. at ¶ 66-72, 108-117). Brown alleges these charges were utilized to retaliate against him for engaging in protected conduct because he was innocent of all crimes brought and maintained by defendants in their capacity as district attorneys for approximately one year. (*Id*. at ¶ 109-110, 72).

Plaintiff Howd also alleges he was arrested without probable cause by the individual defendant officers. (*Id*. at ¶ 90(e)). Like Bailey and Springer, Howd also alleges that he was wrongfully charged with crimes by district attorneys LaHood and Gonzales after the same charges had already been dismissed by a magistrate for lack of probable cause. (*Id*.). These false charges were also eventually dismissed close to a year later. (*Id*.).

Plaintiffs allegations thus demonstrate Fourth Amendment violations that stem from Defendants LaHood and Gonzales' policy of maintaining criminal charges without a legal basis, and for the sole purpose of protecting and defending the unlawful actions of the individual defendant police officers despite their knowledge that the plaintiffs were engaged in protected conduct. *See Winfrey*, 901 F.3d at 491-492. The criminal charges brought and maintained against Plaintiffs were based on charges that had already been dismissed for lack of probable cause and were again dismissed for lack of probable cause. In the Fifth Circuit, "government acts that may attend the initiation of a criminal charge could give rise to claims of constitutional deprivation." *Castellano v. Fragozo*, 352 F.3d 939, 953 (5th Cir. 2003). In a recent unpublished case, the Fifth Circuit explained that claims for detention accompanied by wrongful institution of legal process "should be analogized to malicious prosecution." *Fusilier v. Zaunbrecher*, 806 F. Appx. 280, 282 (5th Cir. Mar. 26, 2020). "As the Supreme Court added just last year, malicious prosecution

involves a claim that a "defendant instigated a criminal proceeding with improper purpose and without probable cause."" *Id.* (quoting *McDonough v. Smith*, 139 S. Ct. 2149, 2156, 204 L. Ed. 2d 506 (2019)). "It is therefore most apt when the plaintiff challenge[s] the integrity of criminal prosecutions undertaken pursuant to legal process." *Id.* (citation and quotations omitted).

Plaintiffs allege that Bexar County, through Defendants LaHood and Gonzales in their official capacities as policy makers for Bexar County, perpetuated a policy, practice and custom that violates the Fourth Amendment. A policy to bring criminal charges for the sole purpose of covering up unlawful actions of individual police officers violates the Fourth Amendment. A policy to maintain criminal prosecutions in response to constitutionally protected conduct that is not a crime violates the First and Fourth Amendments. *See McConney v. Houston*, 863 F.3d 1180, 1185 (5th Cir. 1989) (a policy requiring continued process after "probable cause no longer exists raises obvious constitutional concerns."); *Zalaski v. City of Hartford*, 704 F. Supp. 2d 159, 175-176 (D. Conn. 2010) (officers testimony created question of material fact as to whether plaintiff was arrested pursuant to policy of arresting individuals for exercising their constitutional rights); *Cooper v. Lippa*, 2013 U.S. Dist. LEXIS 112698, at *34 (E.D. Va. Aug. 9, 2013) (denying summary judgment to sheriff where he created a "policy of charging [the plaintiff], perhaps even without probable cause," to see how the commonwealth attorney would react).

Plaintiffs' complaint sufficiently alleges Fourth Amendment violations that support an analogization to a claim of malicious prosecution. *See Winfrey*, 901 F.3d at 491-492; *Fusilier*, 806 F. Appx. at 282.  "The Supreme Court has cautioned that courts should not dismiss claims because of an "imperfect statement of the legal theory."" *Melvin v. Barr Roofing Co.*, 806 F. Appx 301, 308 (5th Cir. 2020) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 11, 135 S. Ct. 346, 190 L. Ed. 2d 309 (2014)). "Having informed the city of the factual basis for their complaint, [the plaintiffs]

were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim." *Johnson*, at 12 (abolishing "theory of the pleadings" argument). Accordingly, Plaintiffs respectfully request this Court deny defendants' motion.

## CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request this Court deny Defendant LaHood and Gonzales' Motion to Dismiss.

<br>

          Respectfully Submitted,

Dated: February 8, 2021           JOHNSON LAW, PLC

          By:   */s/ Solomon M. Radner*
              Solomon M. Radner, Esq.
              MI Bar No. P73653
              *Attorney for Plaintiffs*
              535 Griswold St., Suite 2632
              Detroit, MI 48226
              Telephone: (313) 324-8300
              Fax: (313) 324-8301
              Email: sradner@venjohnsonlaw.com

## CERTIFICATE OF SERVICE

I hereby affirm that on February 8, 2021, I caused the foregoing document to be filed electronically with the United States District Court and that a copy of said document was served on all counsel of record through the Court's CM/ECF electronic filing system.

*/s/ Solomon M. Radner*