# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

RUSSELL ZINTER;
JACK MILLER;
BRIAN HOWD;
JAMES A. MEAD;
JOSEPH BRANDON PIERCE;
MARK BROWN;
DAVID BAILEY;
JUAN GONZALES JR.;
KEVIN EGAN;
JONATHAN GREEN;
JAMES SPRINGER;
GREG GARDINER;
SELENA HERRERA;                          CIVIL ACTION NO: 5:18-CV-680-JKP-RBF
JASON GREEN;
THERESA C. RICHARD.
    *Plaintiffs*,

vs.

(FORMER) CHIEF JOSEPH P. SALVAGGIO;
(FORMER) CAPTAIN RUBEN SAUCEDO;
LIEUTENANT DAVID ANDERSON;
LIEUTENANT RONNIE MIKE TACQUARD;
DETECTIVE JIM WELLS;
DETECTIVE TERRY BROOKS;
DETECTIVE ALEX J. KING;
DETECTIVE RUDY A. MUNOZ;
SERGEANT CHAD MANDRY;
SERGEANT EDDIE GONZALES;
SERGEANT KASEY BURLESON;
SERGEANT JOEL URDIALES;
SERGEANT BENJAMIN S. CASTRO;
OFFICER LOUIS A. FARIAS, JR;
OFFICER JOHNNY VASQUEZ;
OFFICER BRANDON A. EVANS;
OFFICER UZIEL J. HERNANDEZ MORENO;
OFFICER CLARENCE E. YARBROUGH II;
OFFICER JO ANN AZAR;
OFFICER RIGOBERTO PARRA;
DEPUTY *JANE DOE* GOLDMAN;
The CITY OF LEON VALLEY, a political
subdivision of the State of Texas;
    *Defendants*.

**THIRD AMENDED COMPLAINT AND JURY DEMAND**

NOW COME RUSSELL ZINTER, JACK MILLER, BRIAN HOWD, JAMES A. MEAD, MARK BROWN, DAVID BAILEY, JUAN GONZALES JR., KEVIN EGAN, JONATHAN GREEN, JAMES SPRINGER, GREG GARDINER; JASON GREEN, and THERESA C. RICHARD[1] ("Plaintiffs"), by and through their attorneys, Brandon Grable and Austin Reyna of Grable Grimshaw PLLC, complaining of Defendants and respectfully allege as follows:

**INTRODUCTION**

1.      By way of brief introduction, this case involves incidents that took place during protests just outside of the Leon Valley Police Department on June 14, 2018; June 18, 2018; and June 23, 2018. These Plaintiffs are among those unlawfully detained, arrested, criminally charged, and were subject to property seizure without any lawful basis.

2.      Plaintiffs Springer, Howd, Bailey, Brown, Jason Green, were charged with crimes, **all of which were eventually dismissed**.

3.      On June 14th, 18th, and 23rd of 2018 the complained-of actions took place, all of which revolved around the Leon Valley Police Department's refusal to allow the Plaintiffs to peacefully protest on these days. On all days, the police unlawfully detained, arrested, criminally charged, seized the Plaintiffs' recording equipment, and used excessive force on the Plaintiffs, as will be explained in greater detail herein.

4.      Plaintiffs first filed suit on July 4, 2018, an appropriate date to defend the Constitution.

5.      Defendants King and Brooks, through untrue statements on multiple affidavits, then convinced Judge Jefferson Moore to sign warrants on August 7, 2018, authorizing the Defendants to examine the contents of the seized recording equipment and cell phones, and all emails sent or received by the Plaintiffs on their Google Gmail accounts.

---

[1] This Third Amended Complaint does not modify, alter, amend or address claims made in prior pleadings by pro-se plaintiffs, Joseph Brandon Pierce and Selena Herrera.

6.      Plaintiffs, upon learning of these warrants from Google, filed for an Emergency TRO on August 17, 2018, pointing out to the Court that such an invasion of privacy would cause irreparable harm and that Plaintiffs had a substantial likelihood of prevailing on the merits of this action.

7.      A TRO was entered on August 20, 2018, and a hearing was held on October 4, 2018.

8.      During the hearing, Defendant Salvaggio misrepresented to the Court that the Defendants were engaging in a good faith criminal investigation of all the Plaintiffs; that this investigation included working with the U.S. Attorney, Bexar County District Attorney, and FBI; and that the Defendants were turning over evidence daily to the FBI. Defendant Salvaggio further misrepresented to the Court that state and federal criminal charges would be coming for each of the Plaintiffs.

9.      Despite the Defendants failing to provide any support for these bold claims, the Court refused to enjoin the Defendants from executing the warrants.[2]

10.      The case was then stayed from October 19, 2018,[3] all the way until the stay was lifted on October 14, 2020.[4]

11.      During that time, Plaintiffs Springer, Howd, Jason Green, Brown, and Bailey were maliciously charged with crimes by the Defendants with the sole goal of extorting a guilty plea out of them—a plea which the Defendants intended upon relying on in this action to support the herein complained-of unlawful seizures by the Defendant law enforcement officers. They acted under the belief that a plea from the Plaintiffs would render this lawsuit moot and, therefore, overzealously and unconstitutionally continued to prosecute these Plaintiffs.

12.      No Plaintiff was willing to plead guilty, and all charges against all Plaintiffs

---

[2] *See* Dkt. 62, and Dkt. 67, relying on the Younger Abstention Doctrine and Salvaggio's aforementioned testimony.

[3] Dkt. 62.

[4] Dkt. 79.

were ultimately dismissed, with the dismissal of the felony charge, i.e., the Retaliation charge against Springer, being entered on October 22, 2020.

13.     The Stay was finally lifted on October 14, 2020.

14.     The Stay was only ever entered because Salvaggio misrepresented to this Court, through his testimony and nothing else, that all the Plaintiffs were actively being investigated by multiple law enforcements including the FBI for some very serious criminal offenses, such as organized crime, and that this lawsuit would impede law enforcement's ability to investigate. Salvaggio further testified to the Court, during his October 4, 2018, testimony, that state and federal criminal charges would be coming against all then-named Plaintiffs. To date, all criminal charges have been dismissed and not a single Plaintiff was ever charged with a federal crime.

15.     The Plaintiffs were denied their day in court for two years all because Salvaggio gave several hours of false testimony to the Court on October 4, 2018.

16.     This complaint involves three dates of constitutional violations.

## JURISDICTION AND VENUE

17.     This is a civil rights action in which the Plaintiffs seeks relief for the violation of their rights secured by 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments.

18.     Jurisdiction of this Court is found upon 28 U.S.C. § 1331.

19.     Venue is properly laid in the Western District of Texas under 28 U.S.C. § 1391(b)(2).

20.     The events that gave rise to this lawsuit took place at the police department located in Leon Valley, Texas and in the Bexar County Court.

## PARTIES

### Plaintiffs subject to this Complaint:

21.     Plaintiff Russell Zinter ("Zinter") is a law-abiding citizen of the United States and a current resident of California.

22.     Plaintiff Jack Miller ("Miller") is a law-abiding citizen of the United States and

a current resident of Texas.

23.     Plaintiff Brian Howd ("Howd") is a law-abiding citizen of the United States and a current resident of Texas.

24.     Plaintiff James A. Mead ("Mead") is a law-abiding citizen of the United States and a current resident of Texas.

25.     Plaintiff Mark Brown ("Brown") is a law-abiding citizen of the United States and a current resident of Arizona.

26.     Plaintiff David Bailey ("Bailey") is a law-abiding citizen of the United States and a current resident of Texas.

27.     Plaintiff Juan Gonzales, Jr., ("Gonzales") is a law-abiding citizen of the United States and a current resident of Texas.

28.     Plaintiff Kevin Egan ("Egan") is a law-abiding citizen of the United States and a current resident of Illinois.

29.     Plaintiff Jonathan Green ("Jonathan") is a law-abiding citizen of the United States and a current resident of Ohio.

30.     Plaintiff James Springer ("Springer") is a law-abiding citizen of the United States and a current resident of Texas.

31.     Plaintiff Greg Gardiner ("Gardiner") is a law-abiding citizen of the United States and a current resident of Texas.

32.     Plaintiff Jason Green ("Jason") is a law-abiding citizen of the United States and a current resident of Ohio.

33.     Plaintiff Theresa C. Richard ("Richard") is a law-abiding citizen of the United States and a current resident of Louisiana.

**Defendants subject to this Complaint**:

34.     Defendant City of Leon Valley ("City Defendant") is a political subdivision of the State of Texas, acting under color of state law, and is a person for the purposes of a 42 U.S.C. 1983 action.

35.     Defendant Joseph P. Salvaggio was at all pertinent times the chief of the Leon Valley police department and as such was Leon Valley's policymaker and/or decisionmaker regarding law enforcement training, supervision, rules, and procedures. He also at all pertinent times acted as supervisor to all other Leon Valley named Defendants, all of whom were at all pertinent times his subordinates.

36.     Defendant Ruben Saucedo was at all pertinent times a captain of the Leon Valley police department and a a supervisory police officer employed by Leon Valley, and he was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

37.     Defendant Lieutenant David Anderson was at all pertinent times a supervisory police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

38.     Defendant Detective Jim Wells was at all pertinent times a detective police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

39.     Defendant Detective Terry Brooks was at all pertinent times a detective police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

40.     Defendant Detective Alex J. King was at all pertinent times a detective police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

41.     Defendant Detective Rudy A. Munoz was at all pertinent times a detective police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

42.     Defendant Sergeant Chad Mandry was at all pertinent times a supervisory police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

43.     Defendant Officer Louis A. Farias, Jr. was at all pertinent times a supervisory police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

44.     Defendant Sergeant Eddie Gonzales was at all pertinent times a supervisory police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

45.     Defendant Sergeant Kasey Burleson was at all pertinent times a supervisory police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of her duties as a Leon Valley police officer.

46.     Defendant Sergeant Joel Urdiales was at all pertinent times a supervisory police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

47.     Defendant Sergeant Benjamin S. Castro was at all pertinent times a supervisory police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

48.     Defendant Lieutenant Ronnie Mike Tacquard was at all pertinent times a police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

49.     Defendant Officer Johnny Vasquez was at all pertinent times a police officer employed by Leon Valley and was at all pertinent times acting under color of state law in

performance of his duties as a Leon Valley police officer.

50.     Defendant Officer Brandon Evans was at all pertinent times a police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

51.     Defendant Officer Uziel J. Hernandez Moreno was at all pertinent times a police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

52.     Defendant Clarence E. Yarbrough II was at all pertinent times a police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

53.     Defendant Officer Jo Ann Azar was at all pertinent times a police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of her duties as a Leon Valley police officer.

54.     Defendant Officer Rigoberto Parra was at all pertinent times a police officer employed by Leon Valley and was at all pertinent times acting under color of state law in performance of his duties as a Leon Valley police officer.

55.     At all times relevant hereinafter mentioned, the individual Defendants were personally acting under the color of state law and in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the City of Leon Valley.

56.     Each and all the acts of the individual Defendants alleged herein were committed by said Defendants while acting within the scope of their employment by the Leon Valley Police Department.

57.     All Defendants are being sued in their individual and official capacities, and individual supervisory capacities where appropriate.

58.     Each and all of the acts of the individual Defendants were committed by Defendants despite their knowledge that they were engaging in unlawful and unconstitutional

acts, and yet did them anyway, knowingly, recklessly, intentionally, wantonly, callously, purposely, purposefully, sadistically, cruelly, deliberately, and/or with deliberate indifference, gross negligence, and/or reckless disregard.

## STATEMENT OF FACTS

59.     This action involves activity arising from events that took place on June 14, 2018, June 18, 2018, and June 23, 2018, which are addressed herein chronologically.

### *Relevant Facts Giving Rise to June 2018 Incidents*

60.     In May 2018, a third party individual went to Leon Valley City Hall while livestreaming on his YouTube channel.  He livestreamed an interaction between himself and Salvaggio which resulted in Salvaggio arresting him.

61.     Concerned citizens that either watched or heard about the interaction involving Salvaggio arrived at Leon Valley at various occasions to personally witness or film activities from public spaces in and around the City Hall building, which is home to the police station, municipal offices, and the local courthouse (which is not in session most of the week).

62.     To stop law-abiding citizens from filming government activities from public spaces within the City Hall building, Salvaggio and the City of Leon Valley interpreted and enforced a local judge's order to read as if recording devices were permanently prohibited inside City Hall (without regard to whether the space was open to the public and without regard to whether court was in session).

63.     Salvaggio and the City of Leon Valley held meetings with other external agencies, including members of the local district attorney's office, and local, state, and federal agencies.  The purpose of these meetings was to associate anyone with a camera or recording device as an "agitator," "anarchist" or criminal.

64.     Ultimately, Salvaggio and the City of Leon Valley implemented policies and customs that targeted anyone that appeared to peacefully record government activity from public spaces.

65.     If Salvaggio and the City of Leon Valley thought someone was in Leon Valley for the purpose of peacefully protesting and lawfully filming government activity—i.e., that someone was associated in anyway with being an "agitator," "auditor," or "cop watcher,"—then these individuals would be targeted by a number of policies, practices, or custom.

66.     One policy, practice, or custom was that law-abiding citizens were required to identify themselves upon request, and if they refused, they would be arrested for failing to identify as a witness.

67.     Another policy, practice, or custom was that law-abiding citizens were required to consent to their recording devices (including phones) to be searched, and if they refused, they would be arrested for interfering with public duties, and then devices would be seized by search incident to arrest.

68.     Once an individual is identified, and their personal property is seized—without regard to whether the individual is ever arrested or charged—Defendants would criminally trespass these individuals from all Leon Valley government-owned property (including sidewalks).  If any of these individuals arrived back on Leon Valley property, they were arrested for violating the criminal trespass order.

69.     If an individual was arrested for failing to identify as a witness or for interfering with public duties, these charges were often dropped by a magistrate or refused by the district attorney's office.  On some occasions, Defendants would attempt to refile the charges.

70.     Another policy, practice, and custom included unlawfully searching and towing arrested individuals' vehicles even if the individuals were not arrested near their vehicles.

71.     The principal goal of Salvaggio and the City of Leon Valley was to chill First Amendment rights and to dissuade law-abiding citizens from peacefully protesting government activity.   These Defendants wanted the world to know that if you can to Leon Valley to challenge the government, you would be arrested and have your belongings seized.

### *The June 14, 2018, Incident*

72.     On June 14, 2018, two individuals gathered outside the Leon Valley Police Department (City Hall building) to film government activity considering recent events.

73.     Among those present was Plaintiff Mark Brown.

74.     Plaintiff Brown attempted to enter the City Hall building. Plaintiff Brown was holding two cameras during this attempted entry.

75.     Plaintiff Brown was stopped at the door and ordered to turn around by Leon Valley police officers since, as of recently, cameras were not permitted in the building, per Leon Valley policy. Although the building houses the police department, Leon Valley policy precludes any cameras from being used anywhere in the building since the building is occasionally used as a courthouse. This policy is in effect even on days and during times when court is not in session. Plaintiff Brown was told that he could film from the sidewalk as long as he stayed out of anyone's way.

76.     While Plaintiff Brown and another individual were outside, the other individual was subjected to a violent arrest. Plaintiff Brown, while standing on a public sidewalk, recorded the arrest from a few feet away.

77.     Defendant Wells approached Plaintiff Brown and ordered him to back up. Plaintiff Brown complied and backed up to the edge of the sidewalk.  Without any lawful basis, Defendant Wells then pushed Plaintiff Brown into the street.

78.     At that moment, Defendant Vasquez reached Plaintiff Brown. Immediately and

without warning, Defendants Wells and Vasquez began to physically and forcefully arrest Plaintiff Brown for absolutely no lawful reason and in spite of Plaintiff Brown complying with Defendants' orders and otherwise being pushed into the street.

79.     Within seconds, under Defendant Anderson's direction, Defendants Brooks, Burleson, Farias, Parra, Yarbough, Vasquez, and Wells, for no lawful reason, all violently took Plaintiff Brown to the ground. Defendant Vasquez then drive-stunned Plaintiff Brown twice with a taser. Defendant Burleson then handcuffed and arrested Plaintiff Brown.

80.     After being tased twice, Plaintiff Brown, visibly bleeding from his left elbow, was unable to stand even with the assistance of two officers. EMS transported him in handcuffs on a stretcher to University Hospital for medical care, even though Plaintiff Brown requested they take him to Audie L. Murphy Memorial Veterans' Hospital directly across the street from University Hospital.

81.     Defendants then conspired to concoct a false narrative justifying their three most obvious unlawful actions they had just taken: 1) the assault of Plaintiff Brown by pushing him into the street, 2) the arrest of Plaintiff Brown, and 3) the tasing of Plaintiff Brown.

82.     The police report, written by Defendant Vasquez, contains multiple misrepresentations and mischaracterizations in an attempt to justify the Defendants' unlawful actions.

83.     While Plaintiff Brown was in police custody, Defendant Officers illegally searched and towed his vehicle from a nearby Walgreens' parking lot. They searched his vehicle without a warrant, probable cause, or the existence of exigent circumstances. When they discovered it was a rental car, they removed his personal possessions from the vehicle and returned the vehicle back to the rental car company.

84.     As a result, Plaintiff Brown incurred a charge for the vehicle not being returned in Arizona, the state he rented it in. He had to pay rent for the days the vehicle was in police custody, and Plaintiff Brown, who was vacationing in San Antonio with his family for Father's Day weekend, had to rent another vehicle to drive his family home to Arizona.

85.     Plaintiff Brown was then frivolously and maliciously charged with Interference with Public Duties and Resisting Arrest, both of which were dismissed by the Bexar County Court on April 9, 2019.

86.     Plaintiff Brown was subjected to a painful and violent unlawful arrest, two unlawful tasings, and the stress of two criminal charges pending for 299 days.

87.     Plaintiff Brown has still not received back the Samsung phone and Samsung tablet that Defendant Officers seized from him, along with his property from the rental car.

88.     One of Plaintiff Brown's recording devices was static recording, and the other was livestreaming.

89.     Individuals that viewed these gross violations of Plaintiff Brown's rights continued to protest Defendants' conduct.

### *The June 18, 2018, Incident*

90.     On June 18, 2018, a peaceful crowd gathered outside the Leon Valley police station to protest what they perceived to be unlawful police actions.

91.     Defendant Officers had prior knowledge of the planned protest.

92.     Among those gathered were Plaintiffs Russell Zinter, James A. Mead, James Springer, David Bailey, and Juan Gonzales.

93.     This protest included David Bailey holding a partially burnt parody American flag made popular by law enforcement as a form of pro-police propaganda while others stood by filming.

94.     The propaganda parody American flag looks similar to the American flag, but it contains a single blue stripe going through it horizontally. This parody flag is not the real American flag – it is a pro-law enforcement parody used for literature purposes:



95.     Regardless what one may thing of this display, it is unquestionably protected by the First Amendment.

96.     Having previously been informed that a protest was planned for the day, Defendant Officers loitered in the lobby with Defendant Anderson.  Other officers were standing in a nearby hallway with Defendants Tacquard and Wells. Defendant Anderson informed the Officers that he would give a signal for them descend en masse upon the peaceful protest to arrest at least some of those in the crowd, whether or not lawful basis existed.

97.     Under the false pretense that Plaintiff Bailey blocked the door to the building when a woman entered, Defendants Anderson, Farias, Azar, Urdiales, King, Evans, Mandry, Castro, and Tacquard, followed by other Defendant Officers, swarmed into the double door area—nearly running over the poor woman in the process—and, without lawful basis, detained and/or arrested Plaintiffs Bailey, Springer, and Gonzales.

98.     Pursuant to City policy, practice, or custom, Defendant Saucedo directed Defendant Officers to seize all cameras from anyone in and around the City Hall building.

99.     Plaintiffs were detained and/or arrested and property was seized as follows:

**David Bailey:**

a.      Defendant Anderson ordered the false and unlawful arrest of Plaintiff Bailey for the alleged crime of "Obstructing a Highway or Other Passageway" even though Plaintiff Bailey was not obstructing anything or anyone;

b.      Defendant Anderson advised Plaintiff Bailey that he was under arrest. Defendant Farias advised the crowd that, since they were witnesses to the above crime, they ***must*** identify themselves and that all their recording devices contained evidence of the crime and were therefore being seized. Defendants Anderson and Wells then arrested Plaintiff Bailey.

c.      After Defendant Anderson arrested Plaintiff Bailey, he took him to the back of the police station. Along the way, as they were passing through the door into the restricted area, Defendant Anderson lightly shoved Plaintiff Bailey into the door. Handcuffed, Plaintiff Bailey was powerless to prevent the blow.

d.      When they arrived in the back detainment area, Defendant Anderson placed Plaintiff Bailey in the "hot room," a small, unventilated room with a wooden bench bolted to the floor. The room was not locked. The AC in the detainment area of the Leon Valley Police Department was working poorly that week, and Defendant Officers and Plaintiffs alike suffered from the Texas summer heat. In that little unventilated room, Plaintiff Bailey suffered even more.

e.      Before leaving a handcuffed Plaintiff Bailey to roast in the heat, Defendant Anderson did not even take the time to check if doing so could risk Bailey's life. No other officers stopped to check on Bailey or to inquire about his medical history. Plaintiff Bailey had to ask to be removed from the room an hour later and to be checked out by EMS for his blood pressure and his heart condition. When Plaintiff Bailey was removed from the hotbox, Defendant Officer Urdiales rotated Plaintiff Springer in. They did not check if Plaintiff Springer had any underlying health conditions.

f.        Following his arrest, Defendants Anderson, Rivera, and Azar seized Plaintiff Bailey's 2008 Mercedes Benz CLK550, which was held for 28 hours before it was returned. These Defendants also seized Plaintiff Bailey's Samsung S6 Edge phone, black GoPro 4, camera stabilizer, Blackweb 10,000 milliamp battery pack, GoPro microphone, miscellaneous wires, and a tablet. Plaintiff Bailey's tablet had been left in his vehicle, but Defendant Officers searched his vehicle and took the tablet out of his vehicle.

**Juan Gonzales, Jr.:**

a.        Gonzales was filming David Bailey.  At the same time Bailey was being arrested, Defendants Farias, Mandry, Urdiales, and other Defendant Officers detained Plaintiff Gonzales because he was a "witness."  Following City of Leon Valley policy, they needed to identify him and take his personal belongings. These officers did this by violently grabbing him, throwing him against a window, and then handcuffing him.

b.        Defendants E. Gonzales and Rivera seized his black GoPro Hero 6 and his black Samsung Galaxy S8+ as "evidence."

c.        Defendant Mandry took Plaintiff Gonzales to the back detainment area, patted him down, and searched his personal possessions for his ID and other recording devices.

d.        Plaintiff Gonzales was held in the back detainment room in handcuffs for at least an hour.  He was never asked to make any witness statements and he was never accused of committing any crime.

e.        Gonzales was not charged with a crime.  However, in accordance with City of Leon Valley policy, Defendant Mandry read Plaintiff Gonzales the criminal trespass warning, forever forbidding him from entering any government-owned property.  Plaintiff Gonzales was not given the opportunity to have a hearing on the order nor was he given an opportunity to appeal the order. This

criminal trespass order did not have an expiration date, nor did it offer allowances for Plaintiff Gonzales to conduct lawful or necessary business in Leon Valley.

**James Springer:**

a.        Springer was filming David Bailey.  At the time Bailey was being arrested, Defendant Azar attempted to unlawfully grab Plaintiff Springer's black Samsung Galaxy S8, but Plaintiff Springer pulled his camera away to protect his property from this unlawful seizure. Defendant Azar grabbed Plaintiff Springer's arm, and Azar and Defendant Officers tried to grab his phone again. When Plaintiff Springer would not surrender his phone to this unlawful seizure, Defendants Azar, Farias, Evans, and Tacquard grabbed Plaintiff Springer and shoved him against a wall, pinning him in place. Multiple Defendants grabbed Plaintiff Springer's arms, pulling them in painful positions behind him, in the process injuring his shoulder. Defendant Officers shouted at him to stop resisting while they already had both of his arms and he was not fighting their hold. When Plaintiff Springer finally pointed this out to them, Defendants Evans and Castro placed him in handcuffs.

b.        Defendant Officers, following Leon Valley policy, seized Plaintiff Springer's black Samsung Galaxy S8 phone without a warrant by claiming it had evidence of a crime . Defendant Officers also took his battery pack and his mini tripod phone holder. When Plaintiff Springer received this phone back in the mail almost two years later, he discovered that the phone had been "bricked," meaning his property was completely unusable.

c.        While handcuffed, Plaintiff Springer was left in the double-door area of the police station under the supervision of Defendant Evans and other Defendant Officers who were shutting off, manipulating, and logging the illegally obtained "evidence" in the front hall of the City Hall building. Plaintiff Springer requested Defendant Officers loosen his handcuffs. Defendants Evans and Azar refused to

help him. Defendant Azar refused because she did not put the handcuffs on Plaintiff Springer. Plaintiff Springer's handcuffs were left tight until eight minutes later when Springer again requested his handcuffs be loosened.

d.         Defendants Salvaggio, Anderson, and Tacquard, huddled to discuss what to charge Springer with.  They decided, pursuant to City policy that Springer was interfering with public duties because he refused to voluntarily surrender his phone.

e.         Plaintiff Springer, still in handcuffs, was then brought by Defendant Officers to the back detainment room. He was held in handcuffs for over an hour and a half. Over forty-five minutes of that time, Plaintiff Springer was held in the "hot box." The handcuffs aggravated Plaintiff Springer's shoulder injury caused by his arresting officers.

f.         Springer was held overnight, and then the magistrate dismissed the charge the following morning.

g.         Defendant Evans took Plaintiff Springer's car keys from his person and conducted an unlawful search of Springer's Chevy Tahoe parked in the police department parking lot (nowhere near where Springer was arrested). Under the guise of recording a property receipt, Defendant Evans searched through the items Plaintiff Springer had inside, even thumbing through the cards in Springer's wallet. Defendant Evans seized Springer's belongings.

h.         Defendant Evans had Plaintiff Springer's Chevy Tahoe towed. When Plaintiff Springer later went to remove his vehicle from the tow yard, he was not allowed to remove the vehicle because his wife's name was on the title. Springer's wife had to drive down from Dallas with their three children, including a newborn, to retrieve their illegally stolen vehicle.  His belongings were returned nearly two years later.

**Russell Zinter:**

a.       Defendants Farias, Tacquard, and Hernandez approached Zinter while he was standing on the sidewalk in front of the City Hall building.  Enforcing City policy, these officers seized Plaintiff Zinter's camera and iPhone under the threat of arrest.

b.       Zinter observed others in the area being arrested, so under fear of also being arrested, he complied with all requests.

c.       Defendants Farias, Tacquard, and Hernandez also ordered Plaintiff Zinter to identify himself as a "witness."  He was never told what crime he allegedly witnessed, or what evidence of a crime he allegedly had possession of.  Zinter did not see the arrest of Bailey, he did not have any recordings on his devices, and he was not asked to make any witness statement.

d.       Defendant Hernandez would not release Plaintiff Zinter's phone, even when Zinter told him that he needed it. Defendant Rivera then took possession of these seized items. Plaintiff Zinter was given a property receipt.  Zinter spent $800 to go purchase another iPhone.  He did not receive his unlawfully seized camera and phone back until almost two years later.

**James A. Mead:**

a.       James Mead was standing on the sidewalk in front of the City Hall building.  He did not observe David Bailey getting arrested.  However, pursuant to City policy, Defendant Urdiales approached Plaintiff Mead and asked for his ID (not what his name was).  When Plaintiff Mead replied he did not have his ID with him, Defendant Urdiales detained and arrested Mead.

b.       Defendant Urdiales represented that Mead was a witness to a crime. However, Mead was never asked to make any witness statement nor was he told what crime he allegedly witnessed.

c.       While Urdailes handcuffed Mead, pursuant to City policy, Defendant

Wells seized Plaintiff Mead's camera from him. Even though Mead was not filming, Defendant Wells, following City policy, informed Mead that his device was being seized as evidence of a crime.

d.        Inside the police station, Defendant Urdiales patted down Plaintiff Mead and searched his possessions looking for his ID. When Defendant Urdiales could not find Mead's ID in his wallet, Mead confirmed again that he did not have his ID with him. Plaintiff Mead volunteered to give Urdiales his name and date of birth. Even though Mead complied with all orders and directives, he was not released nor was his property returned to him.

e.        While in the detainment area, Plaintiff Mead was left sitting in handcuffs for over an hour without any meaningful interaction with the officers. During this time, Defendant Mandry approached him and tightened the cuffs. This caused severe pain to Mead. Mead still suffers to this day from shoulder and wrist pain caused by the handcuffs.

f.        Before he was released, Defendant Mandry read Plaintiff Mead a verbal criminal trespass for all properties owned by Leon Valley. Defendant Mandry told Plaintiff Mead if he ever entered those locations, he would be arrested. Plaintiff Mead never received a physical copy of this criminal trespass order. He was not given the opportunity to have a hearing on the order nor was he given an opportunity to appeal the order. This criminal trespass order does not have an expiration date, nor does it offer allowances for Mead to conduct lawful or necessary business in Leon Valley. This has caused ongoing harm to Mead.

g.        While Mead was in custody, Defendants Anderson, Urdiales, and other officers huddled to discuss what to charge Mead with.    Defendant Anderson decided to "uncomplicate things" by releasing him and Plaintiff Gonalzes.

h.        For standing on a Leon Valley sidewalk while holding a recording device, Plaintiff Mead was forced to identify, named on the police report as a

witness, kept in tight handcuffs for over an hour, forced to surrender his camera as "evidence," and then criminally trespassed from all government-owned property.

100.    The above actions were done at the direction of Defendants Salvaggio, the City of Leon Valley, Anderson, Saucedo, and Wells.

101.    These seizures were without any lawful basis. The detainments and arrests were without lawful basis. The criminal charges charged were without any lawful basis. Excessive force was used by the police unlawfully.

### *The June 23, 2018, Incident*

102.    On June 23, 2018, a peaceful crowd gathered at the City Hall building to protest what they perceived to be unlawful actions by the Leon Valley police.

103.    Among those present were Plaintiffs Gonzales, Springer, Mead, Brian Howd, Greg Gardiner, Kevin Egan, Jason Green, Jonathan Green, Theresa Richard, and Jack Miller.

104.    Many of the Plaintiffs were livestreaming the protest on YouTube.

105.    Unbeknownst to any Plaintiff, some unknown individual with the YouTube name "Skorp Kitsan" made comments on Plaintiff Springer's YouTube livestream depicting Defendant Salvaggio's home address.

106.    Defendant Salvaggio was monitoring the livestream, and consistent with City policy, decided these comments were sufficient to arrest Springer, identify the other Plaintiffs in the area, and then seize their equipment under threat of arrest.

107.    Salvaggio observed that people were starting to leave the area, so around 4:00 P.M., he came outside to announce that there would be a "press conference" in a few minutes. This caused Plaintiffs and others to either remain in the area or return to the area.

108.    Instead of a press conference, Defendant Salvaggio and his subordinate Leon Valley officers flooded from the building and started arresting and detaining all those present and confiscating any property capable of taking pictures or video.  If anyone refused to identify themselves or hand over their property, they were arrested and then searched incident to arrest.

109.    Defendant Salvaggio and the other Defendants detained almost everyone

present; placed some individuals in handcuffs; and directed criminal charges to be levied against some of those gathered, even though no lawful basis whatsoever existed to levy these charges, and there was a clear absence of reasonable suspicion or probable cause.

110.    There was no lawful basis to detain or arrest people, nor was there a lawful basis to confiscate anybody's property. The police then kept all this property until May 2020 when the Defendants finally decided it was time to return most, but not all, of the unlawfully seized property and mailed it back to the Plaintiffs.

111.    The circumstances of each Plaintiff are as follows:

**James Springer:**

a.      At the direction of Salvaggio, Defendant Evans arrested Plaintiff Springer and placed him in handcuffs for the alleged crime of Retaliation, PC 36.06. Defendant Evans brought Plaintiff Springer to the back of the police station, patted him down, and placed him in the hotbox.

b.      Plaintiff Springer requested that Defendant Evans take his handcuffs off while he is confined to the hotbox because his "hands are still jacked up from the last time." Defendant Evans refused. Defendant Evans then read Plaintiff Springer his Miranda rights and informed him he was being charged because of what others commented on his livestream.

c.      Plaintiff Springe had no idea such posts existed and asked when those comments were made. Plaintiff Springer requested to delete the comments that Defendants found offensive but his request was denied because he "had days" to delete the information.

d.      At the time of his arrest, Defendant Officers seized Plaintiff Springer's brand-new Samsung J3 phone as evidence. Plaintiff Springer had just purchased

that phone to replace the Samsung Galaxy S8 officers had seized from him on June 18th. Plaintiff Springer did not receive that phone back, with his other property, for nearly two years.

e.      Plaintiff Springer was held in handcuffs for over seven hours, even though he complained multiple times that his shoulder was still hurting him from his unlawful arrest on June 18th. Despite frequent complaints that the cuffs were hurting Plaintiff's wrists and shoulders, Defendant Officers insisted Plaintiff remained cuffed .

f.      While detained for over seven hours, Plaintiff Springer was held in either the hotbox or the back detainment room. The AC in the detainment area of the Leon Valley Police Department was still not working properly, and Defendant Officers and Plaintiffs alike suffered from the intense Texas summer heat. Despite the rational health concerns, Defendant Officers continued to insist that at least one Plaintiff occupy the hot box at a time. Plaintiff Springer rotated in and out of the hotbox with other Plaintiffs.

g.      When Plaintiffs, including Springer, asked Defendant Officers to leave the unlocked hot box door open to allow the air to circulate, Defendant Officers refused to leave it open. Officers justified their actions by claiming that it was a Leon Valley policy to have one detainee in the hot box at all times. This so-called policy is not in Leon Valley's Police Department Operations Manual.

h.      Following Plaintiff Springer's unlawful arrest, Defendant Mandry, at the direction of Salvaggio, misrepresented in his report information to manipulate a prosecutor into feloniously charging Plaintiff Springer. Plaintiff Springer was in

fact charged with felony pending against him for about two years until it was finally dismissed.

**<u>Jason Green:</u>**

a.      When Defendant Salvaggio emerged from the City Hall building for his "press conference," Plaintiff Jason Green was waiting in front of the station. Salvaggio pointed to Green and stated that he would be under arrest.  Defendant Saucedo handcuffed Plaintiff Jason Green while he and other Defendant Officers informed him that he was a witness to a crime.

b.      Plaintiff Jason Green was instructed to sit in the Texas summer heat on the patio wall in front of the Leon Valley Police Department lined up with the other detainees.

c.      Green was never asked to make any witness statement, nor was he told what crime he allegedly witnessed.

d.      When Defendant Espinoza joined Defendants Salvaggio and Saucedo with the detainees on the front sidewalk, Defendant Salvaggio informed Defendant Espinoza that the detainees needed to be identified and to receive property receipts.  Defendant Salvaggio then pointed at Plaintiff Jason Green and told Defendant Espinoza that Plaintiff Jason Green refused to give up his camera. Plaintiff Jason Green clarified that he had not refused, but rather simply asked why he had to. Defendant Espinoza told him he was a witness to a crime. Defendant Salvaggio gestured a shooing motion to Defendant Espinoza, who told Plaintiff Jason Green that was it.

e.      Defendant Espinoza helped a handcuffed Plaintiff Jason Green to his feet

and brought him inside the station to the back detainment room, where he joined Plaintiffs Egan, his son Jonathan, and Howd sitting around the detainment room.

f.      For publicly questioning Chief Salvaggio, Plaintiff Jason Green was detained in the back of the police station in handcuffs for over seven hours.

g.      Once Plaintiff Jason Green was seated in the detainment area, Defendant Espinoza again unlawfully demanded Jason identify himself.  Plaintiff Jason Green requested his attorney. Defendant Espinoza did not heed to Plaintiff Jason Green's request and continued to admonish him for refusing to identify himself.

h.      Plaintiff Jason Green was handcuffed in the back of the police station for over seven hours. He repeatedly complained that the handcuffs were too tight and that he had no feeling in his hands, especially his thumbs.  Defendants ignored him.

i.      After an unreasonable amount of time, Plaintiff Jason Green was eventually informed that he was not detained as a witness but that he would instead be arrested for the alleged crimes of Interference with Public Duties and Failure to Identify, even though the Defendants knew there was no lawful basis to do so. Plaintiff Jason Green was booked and spent the night in jail before the magistrate dismissed the case the following morning.

**Brian Howd:**

a.      Plaintiff Howd was standing on the sidewalk of Bandera Road, a busy six-lane divided road that runs from Bandera, Texas, as State Highway 16 through the Hill Country before crossing a large section of San Antonio and ending at Culebra Road, when Defendant Officers poured out of the Leon Valley Police

Department.

b.      Plaintiff Howd went to retrieve his camera from his vehicle after Defendant Chief Salvaggio announced that he was going to hold a press conference.

c.      Following City policy and Salvaggio's direction, Defendant Hernandez, bypassing a group of protestors standing at the intersection, approached Plaintiff Howd, shouting that he needed Howd's camera and his ID.

d.      Without warning, Defendant Hernandez tried to physically snatch Plaintiff Howd's camera from his hand while asking for his ID. When Plaintiff Howd did not immediately release his camera and before he had had a chance to even think about identifying himself, Hernandez grabbed Howd's arms and handcuffed him. Defendant Parra assisted Defendant Hernandez in escorting Howd into the police station.

e.      Defendant Tacquard, a supervisor, huddled with Defendants Hernandez and Munoz to decide what to charge Howd with.  Tacquard, pursuant to City policy, agreed with the decision to charge Howd with interference with public duties and resisting arrest.

f.      Plaintiff Howd, a disabled Veteran, was held in handcuffs for over seven hours, causing pain to his shoulders. Despite frequent complaints that the cuffs were hurting Plaintiffs' and non-named parties' wrists and shoulders, Defendant Officers insisted Plaintiffs remained cuffed behind their backs.

g.      Howd was never asked to make a witness statement; never told what crime he allegedly witnessed; and was not asked whether he recorded anything.

h.      The Defendants claimed that Plaintiff Howd recorded the arrest of Plaintiff Springer, and, therefore, his device contained evidence which they were permitted to seize. In reality, these Defendants knew that Plaintiff Howd did not record any crime, that his device was not subject to warrantless seizure, and, further, that there was no basis to arrest Howd or transport him to jail. Plaintiff Howd was then re-charged in December 2018, and the charges were finally dismissed on November 5, 2019.

**Greg Gardiner:**

a.      Plaintiff Gardiner was standing on the sidewalk along Bandera Rd. at the intersection of El Verde Rd. and Bandera Rd. with a group of protestors when Defendant Officers followed Defendant Salvaggio out of the station.

b.      Plaintiff Gardiner had a GoPro on a stick in his hand that he had used earlier in the day to film himself open carrying so that he would have proof— should he ever need it—that he was NOT carrying his firearm in any manner that would cause alarm.

c.      Pursuant to City policy and Salvaggio's direction, Defendant Parra went down the line of individuals seizing their recording devices.

d.      Parra, without a warrant, took Gardiner's GoPro camera, UK Camera stick, and a 32GB ScanDisk memory card.  Gardiner was eventually released, but not with his recording devices.

**Juan Gonzales:**

a.      Plaintiff Gonzales was standing on a public sidewalk (since he was previously criminally trespassed from all government-owned property).

b.      Defendant Griego, pursuant to City policy and Savlaggio orders, detained Plaintiff Gonzales and ordered him to identify himself under threat of arrest. Gonzales complied.

c.      Gonzales did not have any recording devices with him since these items were previously unlawfully seized on June 18, 2018.

**Kevin Egan:**

a.      Plaintiff Egan, a resident of Chicago and a 70-year-old—nearly 71-year-old—man at the time, had come to Leon Valley with a friend, Plaintiff Theresa Richard to observe the protests in Leon Valley.

b.      When Egan and Richard were about to leave Leon Valley and head back to Louisiana, Defendant Salvaggio emerged from the police department to announce that he would hold a press conference in 20 minutes. Plaintiffs Egan and Richard decided they would stick around long enough to hear what Salvaggio had to say.

c.      Defendant Salvaggio exited the police station, issuing orders to detain and/or arrest every peaceful protestor present and to seize every recording device in sight. Defendant Salvaggio informed Plaintiff Egan and the other protestors gathered for the press conference that they were not free to leave. Defendant Salvaggio instructed everyone in the crowd to sit down on the front patio wall, stating that they were all witnesses. Defendants Saucedo and Vasquez helped to detain everyone.

d.      The Defendant Officers then informed the detainees that they would be seizing their phones.

e.       Throughout this time, Plaintiff Egan, panicking and overheating, began to feel dizzy, light-headed, and short of breath. When it reached the point that he could only speak slowly between short breaths and he struggled to keep his head upright, Plaintiff Richard demanded Defendant Salvaggio provide medical assistance. Defendant Salvaggio eventually called EMS.

f.       At this point, Defendant Salvaggio ordered Defendant Farias to identify Plaintiff Egan. When given the unlawful order from Farias to identify himself, Plaintiff Egan complied.

**Jonathan Green:**

a.       Jonathan Green was intending to leave the Leon Valley area until Salvaggio represented he was going to hold a press conference.  When Defendant Chief Salvaggio emerged from the police station for his "press conference," Plaintiff Jonathan Green was waiting in front of the station.

b.       Defendant Salvaggio informed everyone, including Green, that they were not allowed to leave. Salvaggio pointed to Green and specifically stated he was under arrest.

c.       Defendant Officers seized Plaintiff Jonathan Green's black Samsung Galaxy S8 Plus and its Otter Box case, which have still not been returned.

d.       Defendant Saucedo handcuffed Plaintiff Jonathan Green, before passing him to Defendant Espinoza. Defendant Espinoza walked Plaintiff Jonathan Green into the police station through the hallways to the back detainment area.

e.       While detained for two-and-a-half hours, Plaintiff Jonathan Green was held in either the hotbox or the back detainment room.

f.      Despite frequent complaints that the cuffs were hurting, Defendant Officers insisted Plaintiff remained cuffed.

g.      Later on, while Plaintiff Jonathan Green was sitting handcuffed, Defendant Vasquez came for looking for his handcuffs. Defendant Vasquez had handcuffed several Plaintiffs and apparently did not remember who all he had arrested and/or detained. Defendant Vasquez lifted Plaintiff Jonathan Green's handcuffs forward in an aggressive manner, bending Plaintiff Jonathan Green's arm in the opposite direction. This action injured Plaintiff Jonathan Green's shoulder. After his release and trip home, Plaintiff Jonathan Green went to the Mount Carmel East Hospital on June 27, 2020, to be treated for his shoulder injury.

h.      Plaintiff Jonathan Green was held in custody for over two-and-a-half hours before he was finally released. His father, Plaintiff Jason Green, was not released until the next morning. This delay caused Plaintiff Jonathan Green to miss his flight home. He had to pay to re-schedule his flight and to extend his hotel stay and his rental car agreement. Without his phone, he could not inform his employer that he would be returning late. As a result, Plaintiff Jonathan Green lost his job as a Maintenance Supervisor. Jonathan had been residing at Pier Pont Apartments in Westerville, Ohio, which was being subsidized by his employer. When Jonathan was terminated from employment, his apartment lease was terminated as well. He had to move his family including his newborn baby. He lost income, his rent subsidy, and had to pay for his family's move. Additionally, he had to pay to replace the phone the Leon Valley Police Department seized from, and he had to pay for medical treatment for the shoulder injury Defendant

Vasquez caused while he was in custody.

i.      Jonathan was never charged with any crimes nor was he ever informed why he had been placed in handcuffs in the first place.  He was never asked to make any witness statements, never told what crime he allegedly witnessed, and never accused of committing any crime.

**Theresa C. Richard:**

a.      Plaintiff Richard had come to Leon Valley with a friend, Plaintiff Egan, to observe the Leon Valley protests. She and Egan were prepared to leave Leon Valley until Salvaggio came out to announce that he would hold a press conference shortly.  Richard decided to stay for the press conference.

b.      Defendant Salvaggio exited the police station, issuing orders to detain and/or arrest every peaceful protestor present and to seize every recording device in sight. Defendant Salvaggio informed Plaintiff Richard and others that they were not free to leave.

c.      Purusant to City policy and Salvaggio's orders, Defendant Officers informed everyone they would be identified and their cameras and phones would be seized.

d.      While Plaintiff Richard was detained, Defendant Saucedo grabbed her brand new iPhone 8 Plus in its bright pink case and the attached monopod out of her hands. Defendant Saucedo did not have a warrant or cause to do so. Defendant Officers also took her driver's license.

e.      Richard was illegally detained—sitting on a patio wall in the afternoon Texas summer heat surrounded by officers—for over an hour until she finally

received her property receipt and was cleared to leave.

f.      Richard needed her phone and driver license so she could get back to Louisiana and get in touch with Egan (who is in the hospital).  To do so, she offered to let Defendant Officers access the contents on her phone.  While this offer was made to others, they declined Richard's request.

g.      Richard was never informed what crime she allegedly witnessed; she was never asked to provide a witness statement, and she herself was never accused of committing any crime.

h.      Plaintiff Richard suffered emotional distress for which she received medical treatment from her doctor.

**Jack Miller:**

a.      Jack Miller was present for the protest and was forced, under threat of arrest, to leave the area or be subject to detainment, arrest, and/or prosecution. Plaintiff Miller first Amendment rights to protest were trampled on by the Defendant Officers when they announced the detainment of all those present and the seizure of their property.

**James Mead:**

a.      Plaintiff Mead was on a sidewalk since he had previously been (unlawfully) criminally trespassed.  He was intending to leave the area until Salvaggio informed everyone that he would be holding a "press conference" soon.

b.      Defendant Salvaggio exited the police station, issuing orders to detain and/or arrest every citizen present and to seize every recording device in sight. Defendant Salvaggio informed everyone that they were not allowed to leave.

c.      Even though Plaintiff Mead was not on City property, Defendant Vasquez, pursuant to City policy and Salvaggio's orders, approached Plaintiff Mead and demanded his identification and recording devices.

d.      Mead was not filming or photographing anything. Defendant Vasquez ordered him to join the other detainees on the wall. Defendant Vasquez copied down Plaintiff Mead's information from another officer.

e.      Defendant Vasquez then patted Mead down, felt what appeared to be an electronic device, and asked Mead what he had.  Mead, as he pulled it from his pocket, informed him it was a flip phone that was not connected to any service provider, could not livestream, send texts, or make calls other than to 9-1-1. Vasquez seized it from him anyway.

f.      Mead was never asked to make any witness statement, never informed of what crime he allegedly witnessed or had evidence of, but he was still unlawfully detained for about an hour pursuant to City policy and Salvaggio's orders.

## THE JUNE 14, 2018, CAUSES OF ACTION:

### Count 1 – June 14, 2018, Incident
### Unlawful Arrest or Detention – 42 USC 1983 and the Fourth Amendment
### Plaintiff Mark Brown Vs
### Defendants Leon Valley, Salvaggio, Anderson, Yarbough, Vasquez, Wells, Farias

112.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

113.    Yarbough, Vasquez, Wells, and Farias, under the direct supervision of Salvaggio and Anderson and at their behest, and in accordance with the policies of Leon Valley, arrested or detained Plaintiff without probable cause of any criminal wrongdoing.

114.     If it was a detention that occurred, the detention was not based on reasonable suspicion supported by articulable facts that criminal activity was occurring.

115.     If an arrest occurred, there was no probable cause to arrest Plaintiff.

116.     Plaintiff suffered harm as a result of these actions.

### Count 2 – June 14, 2018, Incident
### First Amendment – Official Retaliation – 42 USC 1983 and the First Amendment
### Plaintiff Mark Brown Vs
### Defendants Leon Valley, Salvaggio, and Anderson

117.     Leon Valley and Salvaggio implemented an unlawful policy, practice, or custom of banning and expelling from the public square anyone with a camera that films government activity.  These criminal trespass warnings were developed specifically for anyone the City views as an "auditor," "agitator" or "anarchist."  The trespass is forever.  There is not any expiration date or due process to challenge the trespass warning.  The trespass warning establishes a threat of future arrest if any law-abiding citizen were to return to any government-owned property in Leon Valley.

118.     Salvaggio and Anderson enforced this policy by ordering Yarbough to verbally issue this criminal trespass warning to Plaintiff Brown.

119.     Defendants' actions to ban Plaintiff from all government-owned locations, including City Hall constitutes unlawful official retaliation against Brown for his exercise of his First Amendment rights to free expression, peaceful protest, and petitioning for redress of grievances.

120.     Leon Valley and Salvaggio only apply this policy to Plaintiffs and others similarly situated.

121.     Defendants' conduct, policies, practices, and custom deters Plaintiff from exercising his First Amendment rights.

122.     Plaintiff suffered harm as a result of Defendants' acts.

**Count 3 – June 14, 2018 Incident**
**First Amendment Retaliation – Assault/Arrest/Detention/Property**
**Seizure/Prosecution – 42 USC 1983 and the First Amendment**

**Plaintiff Mark Brown Vs**
**Defendants Yarbough, Vasquez, Wells, Farias, Leon Valley, Anderson, and**
**Salvaggio**

123.     Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

124.     Specifically, Yarbough, Vasquez, Wells, and Farias, under the direct supervision of Salvaggio and Anderson and at their behest, and in accordance with the policies of Leon Valley, arrested, detained, assaulted, tased, and seized the property of Plaintiff.

125.     These adverse acts were done in retaliation for Plaintiff engaging in constitutionally protected conduct as described herein, and to prevent him from engaging in such conduct, specifically recording the police.

126.     The defendants' adverse acts would deter a man of ordinary firmness from continuing to engage in such conduct in the future.

127.     Plaintiff suffered harm as a result.

**Count 4 – June 14, 2018 Incident**
**Excessive Force – 42 USC 1983 and the Fourth Amendment**

**Plaintiff Mark Brown Vs**
**Defendants Leon Valley, Salvaggio, Yarbough, Vasquez, Wells, Anderson, and Farias**

128.     Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

129.     Yarbough, Vasquez, Wells, and Farias, under the direct supervision of Salvaggio and Anderson and at their behest, and in accordance with the policies of Leon Valley, tackled, injured, and tased Plaintiff for absolutely no lawful reason. Plaintiff at no time resisted

and these actions were in no way necessary or justifiable. Alternatively, they had the ability, opportunity, and obligation to intervene while Vasquez tased Brown, but they chose not to.

130.    Plaintiff suffered an injury, which resulted directly and only from the defendants' use of force that was clearly excessive, and the excessiveness of the force was clearly unreasonable.

131.    Plaintiff suffered harm as a result.

## Count 5 – June 14, 2018 Incident
## Unlawful Seizure of Property – 42 USC 1983 and the Fourth Amendment

### Plaintiff Mark Brown Vs
### Defendants Leon Valley, Salvaggio, Yarbough, Vasquez, Wells, Anderson, and Farias

132.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

133.    Defendants created a meaningful interference with Plaintiff's possessory interests in his property, which was unreasonable because the interference was unjustified by law. Specifically, these defendants seized Plaintiff's car and camera, despite there being no lawful basis to do so.

134.    Plaintiff suffered harm as a result.

## Count 6 – June 14, 2018 Incident
## Abuse of Process and Malicious Prosecution – 42 USC 1983 and the Fourth and Fourteenth
## Amendments

### Plaintiff Mark Brown Vs
### Defendants Leon Valley, Salvaggio, Yarbough, Vasquez, Wells, Anderson, Farias,

135.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

136.    Defendants engaged in the extortionate perversion of lawfully initiated process to illegitimate ends in that they procured a prosecution against Plaintiff knowing he is innocent of the charged crime. They initiated the charges to somehow justify their own unlawful actions.

137.    Defendants, enacted and followed unconstitutional policies and procedures to maliciously and frivolously prosecute Brown, and to retaliate against him for engaging in constitutionally protected conduct.

138.    A criminal proceeding was commenced against Brown.

139.    The defendants initiated or procured the proceeding with their false statements and charges.

140.    The proceeding was terminated in the plaintiff's favor when the charges were dismissed.

141.    Plaintiff was innocent of the crime charge.

142.    The defendants lacked probable cause to initiate the criminal proceeding.

143.    The defendants acted with malice.

144.    Plaintiff suffered harm as a result.

## THE JUNE 18, 2018 CAUSES OF ACTION:

### Count 7 – June 18, 2018 Incident
### Unlawful Arrest and Detention – 42 USC 1983 and the Fourth Amendment

### Plaintiffs Mead, Bailey, Gonzales, Springer, and Zinter Vs
### Defendants Leon Valley, Salvaggio, Anderson, Mandry, Evans, Urdiales, Gonzales, Azar, Rivera, Tacquard, and Castro

145.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein

146.    These Defendants arrested or detained these Plaintiffs.

147.    Mead makes this claim against Urdialies, Wells, Anderson, Salvaggio, and Leon Valley.

148.    Bailey makes this claim against Anderson, Farias, Rivera, Mandry, Salvaggio, and Leon Valley.

149.    Gonzales makes this claim against Farias, Mandry, Gonzales, Anderson, Salvaggio, and Leon Valley.

150.     Springer makes this claim against Azar, Farias, Evans, Tacquard, Castro, Anderson, Salvaggio, and Leon Valley.

151.     Zinter makes this claim against Farias, Rivera, Anderson, Salvaggio, and Leon Valley.

152.     If detainments occurred, they were without reasonable suspicion supported by articulable facts that criminal activity was occurring.

153.     If arrests occurred, there was no probable cause to arrest Plaintiffs.

154.     Plaintiffs suffered harm as a result.

**<u>Count 8 – June 18, 2018, Incident</u>**
**<u>First Amendment – Official Retaliation – 42 USC 1983 and the First Amendment</u>**
**<u>Plaintiffs Bailey, Mead, Gonzales, Springer Vs</u>**
**<u>Defendants Leon Valley, Salvaggio, and Anderson</u>**

155.     Leon Valley and Salvaggio implemented an unlawful policy, practice, or custom of banning and expelling from the public square anyone with a camera that films government activity.  These criminal trespass warnings were developed specifically for anyone the City views as an "auditor," "agitator" or "anarchist."  The trespass is forever.  There is not any expiration date or due process to challenge the trespass warning.  The trespass warning establishes a threat of future arrest if any law-abiding citizen were to return to any government-owned property in Leon Valley.

156.     Salvaggio and Anderson enforced this policy by ordering Mandry and other officers to issue this criminal trespass warning to Plaintiffs Bailey, Mead, Gonzales, and Springer.

157.     Defendants' actions to ban Plaintiffs from all government-owned locations, including City Hall constitutes unlawful official retaliation against Plaintiffs for their exercise of their First Amendment rights to free expression, peaceful protest, and petitioning for redress of grievances.

158.    Leon Valley, Salvaggio, and Anderson only apply this policy to Plaintiffs and others similarly situated.

159.    Defendants' conduct, policies, practices, and custom deter Plaintiffs from exercising their First Amendment rights.

160.    Plaintiffs suffered harm as a result of Defendants' acts.

**<u>Count 9 – June 18, 2018 Incident</u>**
**<u>First Amendment Retaliation – Assault/Arrest/Detention/Property</u>**
**<u>Seizure/Prosecution/Prevention – 42 USC 1983 and the First Amendment</u>**
**<u>Plaintiffs Mead, Bailey, Gonzales, Springer, and Zinter Vs Defendants Leon Valley,</u>**
**<u>Salvaggio, Anderson, Mandry, Evans, Urdiales, Gonzales, Azar, Tacquard, and Castro</u>**

161.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

162.    Zinter's personal property, including his camera and phone, were taken by Farias, under the direct supervision of Salvaggio and Anderson and at their behest, and in accordance with the policies of Leon Valley, as retaliation for his participation in a lawful protest and to prevent him from engaging in such.

163.    Mead was detained by Urdiales and Wells and was injured by Mandry's unnecessary tightening of the handcuffs. Further, Mead's personal property, including his camera and Bailey' camera which Mead was holding, were seized by these defendants. Further, Mead was threatened with criminal prosecution if he dared set foot on any government-owned property, and Mead was taken into custody, all under the direct supervision of Salvaggio and Anderson and at their behest, and in accordance with the policies of Leon Valley, as retaliation for his participation in a lawful protest and to prevent him from engaging in such.

164.    Bailey was arrested, had his property seized, and was falsely charged with a criminal charge, but makes this claim against Anderson, Farias, Rivera, and Mandry, under the direct supervision of Salvaggio and at his behest, and in accordance with the policies of Leon Valley, as retaliation for his participation in a lawful protest and to prevent him from engaging in

such protests, and for his lawful display of a partially burnt law enforcement "thin blue line" parody American flag.

165.     Gonzales' personal property was seized, he was handcuffed and detained, and he was threatened with criminal prosecution if he dared set foot on any of a number of public properties, by Farias, Mandry, and Gonzaels, all under the direct supervision of Salvaggio and Anderson and at their behest, and in accordance with the policies of Leon Valley, as retaliation for his participation in a lawful protest and to prevent him from engaging in such.

166.     At the hands of Azar, Farias, Evans, Tacquard, and Castro, Springer was arrested, was subjected to far more force than necessary to effectuate an arrest, had his personal property, including his camera, vehicle, and pistol seized, and was falsely charged with the crime of "interference" which the magistrate dismissed, all under the direct supervision of Salvaggio and Anderson and at their behest, and in accordance with the policies of Leon Valley, as retaliation for his participation in a lawful protest and to prevent him from engaging in such.

167.     Defendants' actions were averse to Plaintiffs.

168.     These adverse acts were done in retaliation for Plaintiffs engaging in constitutionally protected conduct as described herein, and to prevent them from engaging in such conduct.

169.     The defendants' adverse acts would deter a person of ordinary firmness from continuing to engage in such conduct in the future.

170.     Plaintiffs suffered harm as a result.

### Count 10 – June 18, 2018 Incident
### Excessive Force – 42 USC 1983 and the Fourth Amendment

### Plaintiff Mead, Springer, Gonzales Vs Defendants Leon Valley, Salvaggio, Mandry, Evans, Farias, Gonzales, Tacquard, Castro, and Azar

171.     Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

172.     Mead was subjected to being injured by Mandry when Mandry approached an

already handcuffed Mead, and tightened Mead's handcuffs to the point where they were digging into Mead's skin.

173.    Defendants Farias, Mandry and Gonzales grabbed Plaintiff Gonzales and shoved him against a window, which was more force than necessary to effectuate an arrest and caused unnecessary pain and injury to Gonzales.

174.    Springer was subjected to far more force than necessary to effectuate an arrest at the hands of Evans, Azar, Farias, Tacquard, and Castro, specifically by these defendants grabbing Springer and twisting Springer shoulder in an extremely painful position.

175.    Plaintiffs suffered injury, which resulted directly and only from the defendants' use of force that was clearly excessive, and the excessiveness of the force was clearly unreasonable.

176.    Plaintiffs at no time resisted, obstructed, or assaulted the defendants.

177.    Plaintiffs suffered harm as a result.

**Count 11 – June 18, 2018 Incident**
**Unlawful Seizure of Property – 42 USC 1983 and the Fourth Amendment**

**Plaintiffs Mead, Bailey, Gonzales, Springer, and Zinter Vs**
**Defendants Leon Valley, Salvaggio, Anderson, Mandry, Evans, Urdiales, Gonzales, Azar,**
**Tacquard, and Castro**

178.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

179.    Zinter's personal property was seized by Farias, and Rivera, under the direct supervision of Salvaggio and Anderson and at their behest, and in accordance with the policies of Leon Valley, despite the fact that there was no lawful basis to seize it.

180.    Mead's personal property was seized by Urdiales and Wells, under the direct supervision of Salvaggio and Anderson and at their behest, and in accordance with the policies of Leon Valley, despite the fact that there was no lawful basis to seize it.

181.    Bailey's personal property was seized by Anderson, Farias, Rivera, and Mandry,

under the direct supervision of Salvaggio and Anderson and at their behest, and in accordance with the policies of Leon Valley, despite the fact that there was no lawful basis to seize it.

182.    Gonzales' personal property was seized by Farias, E. Gonzales, and Mandry under the direct supervision of Salvaggio and Anderson and at their behest, and in accordance with the policies of Leon Valley, despite the fact that there was no lawful basis to touch it.

183.    Springer's personal property was seized by Azar, Farias, Evans, Tacquard, and Castro, under the direct supervision of Salvaggio and Anderson and at their behest, and in accordance with the policies of Leon Valley, despite the fact that there was no lawful basis to seize it.

184.    Defendants created a meaningful interference with Plaintiffs' possessory interests in their respective property, which was unreasonable because such interference was unjustified by law.

185.    Plaintiffs suffered harm as a result.

### Count 12 – June 18, 2018 Incident
### Malicious Prosecution – 42 USC 1983 and the Fourth and Fourteenth Amendment

### Plaintiffs Bailey and Springer Vs
### Defendants Leon Valley, Salvaggio, Evans, Anderson, Farias, Rivera, Mandry, Azar, Farias, Tacquard, and Castro,

186.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

187.    Bailey makes this claim against Anderson, Farias, Rivera, Mandry, Salvaggio, and Leon Valley. There was no probable cause that Bailey obstructed a highway.  Bailey's charge was finally dismissed January 14, 2020.

188.    Springer makes this claim against Azar, Farias, Evans, Tacquard, Castro, Anderson, Salvaggio, and Leon Valley. There was no probable cause that Springer was engaging in criminal wrongdoing or that he committed the criminal office of "interference."

The charge was dismissed by the magistrate since no probable cause existed. Defendants.

189.    Defendants, through an unconstitutional policy or practice, caused Springer to be re-charged in December 2018.

190.    Defendants, through an unconstitutional policy or practice, caused Bailey to be re-charged.

191.    A criminal proceeding was commenced against the Plaintiffs.

192.    The defendants initiated or procured the proceeding through their false statements and charges.

193.    The proceeding was terminated in the plaintiffs' favor.

194.    The plaintiffs were innocent of the crime charged.

195.    The defendants lacked probable cause to initiate the criminal proceeding and acted with malice.

196.    The plaintiffs suffered harm as a result.

## THE JUNE 23, 2018 CAUSES OF ACTION:

### Count 13 – June 23, 2018 Incident
### Unlawful Seizure of Person and Property – 42 USC 1983 and the Fourth Amendment

### Plaintiffs Howd, Mead, Egan, Jason Green, Springer, Gardiner, Gonzales, Egan, Jonathon Green, Richard, Miller
### Vs
### Defendants Leon Valley, Salvaggio, Hernandez, Evans, Vasquez, Mandry, Evans, Saucedo, Parra, Farias, Griego, and Rivera

197.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

198.    Howd brings this claim against Parra, Hernandez, Salvaggio, and Leon Valley.

199.    Mead brings this claim against Vasquez, Salvaggio, and Leon Valley.

200.    Egan brings this claim against Saucedo, Vasquez, Farias, Salvaggio, and Leon Valley.

201.     Jason Green brings this claim against Saucedo, Salvaggio, and Leon Valley.

202.     Springer brings this claim against Mandry, Evans, Salvaggio, and Leon Valley.

203.     Gardiner brings this claim against Vasquez, Farias, Salvaggio, and Leon Valley.

204.     Herrera brings this claim against Saucedo, Griego, Salvaggio, and Leon Valley.

205.     Juan Gonzales brings this claim against Vasquez, Griego, Salvaggio, and Leon Valley.

206.     Egan brings this claim against Saucedo, Vasquez, Farias, Salvaggio, and Leon Valley.

207.     Jonathon Green brings this claim against Saucedo, Vasquez, Friego, Evans, Farias, Salvaggio, and Leon Valley.

208.     Richard brings this claim against Saucedo, Rivera, Salvaggio, and Leon Valley.

209.     Miller brings this claim against Salvaggio and Leon Valley.

210.     These Defendants arrested or detained these Plaintiffs and seized their property.

211.     If detainments occurred, the detention was not based on reasonable suspicion supported by articulable facts that criminal activity was occurring.

212.     If arrests occurred, there was no probable cause to arrest Plaintiffs.

213.     Plaintiffs suffered harm as a result.

214.     Plaintiffs suffered harm as a result.

### Count 14 – June 23, 2018, Incident
### First Amendment – Official Retaliation – 42 USC 1983 and the First Amendment
### Plaintiffs Springer, Howd, and Jason Green Vs
### Defendants Leon Valley, Salvaggio, and Anderson

215.     Leon Valley and Salvaggio implemented an unlawful policy, practice, or custom of banning and expelling from the public square anyone with a camera that films government activity.  These criminal trespass warnings were developed specifically for anyone the City views as an "auditor," "agitator" or "anarchist."  The trespass is forever.  There is not

any expiration date or due process to challenge the trespass warning.  The trespass warning establishes a threat of future arrest if any law-abiding citizen were to return to any government-owned property in Leon Valley.

216.    Salvaggio and Anderson enforced this policy by ordering officers to issue this criminal trespass warning to Plaintiffs Springer, Howd, and Jason Green.

217.    Defendants' actions to ban Plaintiffs from all government-owned locations, including City Hall constitutes unlawful official retaliation against Plaintiffs for their exercise of their First Amendment rights to free expression, peaceful protest, and petitioning for redress of grievances.

218.    Leon Valley, Salvaggio, and Anderson only apply this policy to Plaintiffs and others similarly situated.

219.    Defendants' conduct, policies, practices, and custom deter Plaintiffs from exercising their First Amendment rights.

220.    Plaintiffs suffered harm as a result of Defendants' acts.

**<u>Count 15 – June 23, 2018 Incident</u>**
**<u>First Amendment Retaliation – Assault/Arrest/Detention/Property-</u>**
**<u>Seizure/Prosecution/Prevention – 42 USC 1983 and the First Amendment</u>**

**<u>Plaintiffs Howd, Mead, Egan, Jason Green, Springer, Gardiner, Herrera, Gonzales, Egan,</u>**
**<u>Jonathon Green, Richard, Miller</u>**
**<u>Vs</u>**
**<u>Defendants Leon Valley, Salvaggio, Hernandez, Evans, Vasquez, Mandry, Evans, Saucedo,</u>**
**<u>Parra, Farias, Griego, and Rivera</u>**

221.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

222.    Howd brings this claim against Parra, Hernandez, Salvaggio, and Leon Valley.

223.    Mead brings this claim against Vasquez, Salvaggio, and Leon Valley.

224.     Egan brings this claim against Saucedo, Vasquez, Farias, Salvaggio, and Leon Valley.

225.     Jason Green brings this claim against Saucedo, Salvaggio, and Leon Valley.

226.     Springer brings this claim against Mandry, Evans, Salvaggio, and Leon Valley.

227.     Gardiner brings this claim against Vasquez, Farias, Salvaggio, and Leon Valley.

228.     Herrera brings this claim against Saucedo, Griego, Salvaggio, and Leon Valley.

229.     Juan Gonzales brings this claim against Vasquez, Griego, Salvaggio, and Leon Valley.

230.     Egan brings this claim against Saucedo, Vasquez, Farias, Salvaggio, and Leon Valley.

231.     Jonathon Green brings this claim against Saucedo, Vasquez, Friego, Evans, Farias, Salvaggio, and Leon Valley.

232.     Richard brings this claim against Saucedo, Rivera, Salvaggio, and Leon Valley.

233.     Miller brings this claim against Salvaggio and Leon Valley.

234.     These adverse acts were done in retaliation for Plaintiffs engaging in constitutionally protected conduct as described herein, and to prevent them from engaging in such conduct.

235.     The defendants' adverse acts would deter a man of ordinary firmness from continuing to engage in such conduct in the future.

236.     Plaintiffs suffered harm as a result.

**Count 16 – June 23, 2018 Incident**
**Excessive Force and Refusal to Medically Treat – 42 USC 1983 and the Fourth and Fourteenth Amendment**

**Plaintiffs Egan, Jason Green and Jonathon Green Vs**
**Defendants Leon Valley, Salvaggio, *Jane Doe* Goldman, Saucedo, Vasquez, Friego, Evans,**

237.     Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth

above and incorporate them as if fully set forth herein.

238.   Jason Green brings this claim against Saucedo, Salvaggio, and Leon Valley.

239.   Jonathon Green brings this claim against Saucedo, Vasquez, Friego, Evans, Farias, Salvaggio, and Leon Valley.

240.   Egan brings this claim against Saucedo, Vasquez, Salvaggio, and Leon Valley.

241.   Plaintiffs suffered an injury, which resulted directly and only from the defendants' use of force that was clearly excessive, and the excessiveness of the force was clearly unreasonable.

242.   Plaintiffs suffered harm as a result.

<u>**Count 17 – June 23, 2018 Incident**</u>
<u>**Malicious Prosecution – 42 USC 1983 and the Fourth Amendment**</u>

<u>**Plaintiffs Howd, Jason Green, and Springer Vs**</u>
<u>**Defendants Leon Valley, Salvaggio, Mandry, Saucedo, Parra, Hernandez, and Evans,**</u>

243.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

244.   Howd brings this claim against Parra, Hernandez, Salvaggio, and Leon Valley.

245.   Jason Green brings this action against Squcedo, Salvaggio, and Leon Valley.

246.   Springer brings this claim against Mandry, Evans, Salvaggio, and Leon Valley.

247.   Criminal proceeding were commenced against the Plaintiffs.

248.   The defendants initiated or procured the proceeding through their false statements and charges.

249.   The proceedings were terminated in the Plaintiffs' favor.

250.   The plaintiffs were innocent of the crimes charged.

251.   The defendants lacked probable cause to initiate the criminal proceedings and acted with malice.

252.   The plaintiffs suffered damages as a result.

### *Monell* Liability

253.     Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above and incorporate them as if fully set forth herein.

254.     A municipality is liable under 42 U.S.C. § 1983 if the acts that violated a person's right were undertaken pursuant to the municipality's policies and customs.

255.     Defendant Leon Valley directly caused the constitutional violations suffered by Plaintiffs and is liable for the damages caused as a result of the conduct of the individual Defendants. The conduct of the individual Defendant officers was a direct consequence of the policies and practices of Defendant City.

256.     At all times relevant in this complaint, direct and proximate cause of the damages and injuries complained of were caused by policies, practices and /or customs developed, implemented, enforced, encouraged, and sanctioned by Defendant City, including the failure:

a.      To adequately supervise and train its officers and agents, including individual Defendants, thereby failing to adequately discourage further constitutional violations on the part of its police officers;

b.      To properly and adequately monitor and discipline its officers, including individual Defendants; and

c.      To adequately and properly investigate citizen complaints of police misconduct and instead, acts of misconduct were tolerated by the Defendant City. Defendant City has acted with deliberate indifference to the constitutional rights of the Plaintiffs. As a direct and proximate result of the acts as stated herein by each of the Defendants, each of the Plaintiffs' constitutional rights have been violated.

257.     This failure to supervise, discipline, or control its officers demonstrates deliberate indifference to the constitutional rights of the plaintiffs and is directly responsible for the individual defendants acting the way they did as outlined in this lawsuit.

258.     Further the de facto unwritten policy, procedure, or custom, described herein,

demonstrates deliberate indifference to the constitutional rights of the plaintiffs and is directly responsible for the individual defendants acting the way they did as outlined in this complaint.

259.    Defendant City's supervision of the defendant officers was deficient as it to relates to excessive force, unlawful arrests, and unlawful seizures and searches of cell phones. Defendant City made a deliberately indifferent choice to not provide adequate supervision of these officers to ensure that such actions are not repeated, and that is exactly why these defendant officers were enabled and in fact emboldened to violate the plaintiffs' Constitutional rights as outlined herein.

260.    As a proximate result of the unconstitutional acts and omissions of Defendant City, Plaintiffs were harmed and suffer damages for their physical, mental, and emotional injury and pain, mental anguish, humiliation, and embarrassment.

261.    Further, Defendant City has explicit unconstitutional policies including:

a)    To detain people who are witnesses to a crime, even though there is no reasonable suspicion or probable cause of criminal wrongdoing;

b)    To arrest people for failing to ID as witnesses;

c)    To arrest people for failing to ID themselves even when there is no reasonable suspicion of criminal wrongdoing;

d)    To not allow people to recording in a public building because it is once in a blue moon used as a court facility;

e)    To hand out trespass warnings to people that peacefully protest government conduct in or around Leon Valley City Hall;

f)    To seize people's phones/cameras without a warrant, consent, reasonable suspicion of criminal wrongdoing, or any other lawful basis;

g)    To seize people's cameras if the camera recording a crime;

262.    These policies directly caused the harm suffered by the Plaintiffs in the instant action.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs demand judgment and pray for the following relief, jointly and severally, against all Defendants:

a.   Declaratory judgment that Leon Valley's policies are unconstitutional;

b.   Injunctive relief barring Defendants from engaging in any retaliatory acts against Plaintiffs or others engaged in First Amendment activities based on such individuals' past, present, or future exercise of rights protected under the First Amendment,

c.   Nominal Damages for denial of due process of law, violations of Fourth Amendment rights, and denial of the First Amendment rights of free expression and petitioning for the redress of grievances, as the Court finds appropriate, from one or more Defendants;

d.   Full and fair compensatory damages to be assed against each and every Defendant in an amount to be determined by a jury;

e.   Punitive damages to be assessed against each and every Defendant except Leon Valley, in an amount to be determined by a jury;

f.   Reasonable attorney's fees and the costs and disbursements of this action; and

g.   Any such other relief as appears just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable, pursuant to Fed. R. Civ. P. 38(b).

Respectfully submitted,

**GRABLE GRIMSHAW PLLC**

*/s/ Brandon J. Grable*
**BRANDON J. GRABLE**
Texas State Bar No. 24086983
brandon@g2.law
**AUSTIN M. REYNA**
Texas State Bar No. 24118645
austin@g2.law
1603 Babcock Road, Suite 280
San Antonio, Texas 78229
Telephone: (210) 963-5297
Facsimile: (210) 641-3332
**COUNSEL FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

      This is to certify that a true and correct copy of the foregoing instrument has been served upon the below named parties, via electronic mail or certified mail according to the Federal Rules of Civil Procedure on this 13th day of January 2022.

**<u>Charles Frigerio</u>**                  **Email:** csfrigeriolaw@sbcglobal.net
Law Offices of Charles S. Frigerio      **Email:** frigeriolaw1995@sbcglobal.net
111 Soledad, Suite 840
San Antonio, Texas 78205
*Attorney for Defendants, Officers*

**<u>Adolfo Ruiz</u>**               **Email:** aruiz@rampagelaw.com
Denton Navarro Rocha Bernal & Zech
2517 North Main Avenue
San Antonio, TX 78212
*Attorneys for Defendants, City*

**<u>Brandon Joseph Pierce</u>**      **Email:** ethicsinstead@protonmail.com
644 Kerry
Crowley, Texas 76026

**<u>Selena Herrera</u>**             **CMRRR #**
202 S. Hoy Street
Buffalo, Oklahoma 73834

                        */s/Brandon J. Grable*
                        **Brandon J. Grable**