GRABLE
GRIMSHAW
PLLC

January 13, 2022

**VIA EMAIL:**
Adolfo Ruiz
Patrick Bernal
DNRBZ P.C.
2517 N. Main Avenue
San Antonio, Texas 78212
aruiz@rampagelaw.com
pbernal@rampagelaw.com

RE:   No. SA:18-CA-680-JKP-RBF, *Zinter et al. v. Salvaggio et al.,* filed in the United States District Court, Western District of Texas, San Antonio Division.

Dear Pat and Adolfo:

I appreciate you promptly responding to our December 2021 conferral concerning the City's privilege log and discovery concerns. The purpose of this correspondence is to address some discrepancies.

## PRIVLEGE LOG

In reviewing the amended privilege log furnished on December 10, 2021, we still have some concerns. Most of the privilege log makes assertions of attorney-client privilege or work-product privilege. Obviously, Salvaggio is not an attorney and cannot establish work-product privileges. Concerning the attorney-client privilege extends to confidential communication to a lawyer for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding. Please provide adequate information to the documents referenced in this letter that justifies the assertion of these privileges.

There were other privileges asserted that I will discuss below. I will address each document separately:

**COLV 00927**: You assert attorney-client and work-product privilege and annotate that the document is Salvaggio's correspondence to the City Attorney regarding the "court security notice." You redacted all the participants to the email. Please clarify whether the City's position is that Salvaggio was a policymaker seeking a legal opinion. Please provide your position as to why Salvaggio's response, and the participants to his response, are redacted.

**COLV 00928**: You assert attorney-client and work-product privilege and annotate that the document is Salvaggio's response to an open records request from Jack Miller. The specific request pertains to the criminal trespass warning issued to Plaintiff Miller. Please provide your position as to why Salvaggio's response, and the participants to his response, are redacted.

**COLV 02620**: You represent that this document is an email from the City Attorney concerning Jack Miller attending open meetings. However, the email shows that it was from Salvaggio to hljohnston@fbi.gov. It would appear you mislabeled this document as privileged. Even if it were privileged, that privilege was waived when Salvaggio shared the information with hljohnston@fbi.gov.

**COLV 02673**: You represent that this document is an email from the City Attorney concerning "Rob Moffatt email." However, the email shows that it was from Salvaggio to hljohnston@fbi.gov. It would appear you mislabeled this document as privileged. Even if it were privileged, that privilege was waived when Salvaggio shared the information with hljohnston@fbi.gov.

**COLV 06365**: The "From" line appears redacted or removed. Please provide an unaltered version of this email. There are not any privileges asserted for this document.

**COLV 06773-06774**: These documents have email recipients redacted, and with attorney-client and work product privileges. Interestingly, the communications are not redacted, so we are not clear how a recipient would meet the definitions supporting the privileges asserted. Please provide your position as to why the recipients are redacted in these emails.

**COLV 06777-06779**: These documents pertain to discussions related to Jack Miller's criminal trespass warning. Please clarify why these emails are redacted in their entirety. The trespass was already issued at this time, so it is not clear why these communications would be confidential or related to any legal proceeding.

**COLV 07115-07127**; **07131-07143, 07146-07209**. You have not produced any of these documents, and for some of them, you indicate that the entire document is protected by attorney-client and work-product privileges. Please evaluate these documents and determine whether you intended to *completely* withhold them. Otherwise, please produce them immediately.

Here are my specific concerns:

1. **COLV 07119-07126**. We do not understand how discussions about a citizen's complaint about Salvaggio is deemed attorney-client or work privilege. Please explain why you think this information is privileged, and as a last resort, why you are not able to produce even a redacted document with only the alleged confidential communications redacted.

2. **COLV 07127**. You produced COLV 07128-07129. The portion you did not produce purports to be an email from Salvaggio to other officers. It does not appear that any of the participants are attorneys. Furthermore, the context of the discussion appears to be related to a news article. What does this have to do with legal opinions or proceedings? Please explain why COLV 07127 is not being produced.

3. **COLV 07150-07194**. These documents appear to be email correspondence involving "auditor" emails and attachments. We are unclear why the entirety of this correspondence and its attachments would be deemed confidential or privileged. Please explain why these documents are not being produced.

4. **COLV 07200**. Please produce the email from Joseph Salvaggio to Jay Norton. There is reason why this email would be redacted for attorney-client and work product privileges. Please provide context and an explanation as to why this email is redacted. It would appear, that if it is "regarding 6/04/2018" that it would be with respect to the large multi-agency meeting that took place with many individuals. If so, then there is reason to not produce this document.

## WRITTEN DISCOVERY

I have either not received the following documents and they are not listed on your privilege log, so please supplement accordingly: **COLV 07210-08215; 08262-08881**.

I received the following documents, but they are altered or redacted, and they are not listed on your privilege log. Please supplement accordingly: **COLV 00265-00272, 09302, 9369, 09877-09878, 09886, 09902-10046, 10130, 10146-10148, 10525-10541, 10459-10578, 10584-10592, 10604-10612, 10615, 10705, 10707-10726, 10734-10763, 10785-10788, 10793, 10795-10859**

In reviewing your December 23, 2021 correspondence and current production, I wanted to attempt to confer to resolve some outstanding discovery matters.

**EMAILS GENERALLY:** We are concerned that the emails produced in PDF format may have been altered or redacted in some way (other than what was asserted in your privilege log). For all emails that do not have any assertion of privilege, please produce them in their native formats.

**TEXT MESSAGES:** Your December 23, 2021 correspondence, for item number 1, requests that we limit our inquiry for text messages on Salvaggio's and Anderson's phones to a reasonable timeframe. We request all text messages made between May 30, 2018 through December 31, 2018 that pertain to Plaintiffs, auditors, or agitators.

**EMAIL COMMUNICATIONS:** Your December 23, 2021 correspondence, for item number 4, indicates we would discuss further representations made by Salvaggio with respect to email correspondence to various agencies. For instance, we know that Salvaggio made a presentation at an Alamo Area conference in early June 2018, and this spurred a multi-hour, multi-agency meeting at the Bexar County District Attorney's Office. We do not have any emails pertaining to the Alamo Area conference or the multi-agency meeting. We know that Salvaggio testified to emailing other agencies as early as May 2018 following the arrest of Jesus Padilla. We have reason to believe that we have not received all relevant emails in this matter.

**POWERPOINTS:** You produced PDF versions of PowerPoints, as indicated in your December 23, 2021 correspondence, for item number 12. Please produce the native files along with all versions in your client's possession. Please produce any emails where these PowerPoints were attached.

**DA COMMUNICATIONS:** Your December 23, 2021 correspondence, for item number 15, where we asked for written correspondence and documents indicating where the District Attorney's office recommended warrantless seizure of personal property, you indicated that this information was produced with the City's Second Supplemental Responses. This is not clear to me. Please identify the proper documents. It could be possible that the documents you are referring to were not produced.

In addition, there are emails, such as COLV 08882, 08899, and 08933, for example, that appear altered with some yellow markings. Please explain these alterations and whether we have all of the attachments referenced.

Moreover, we think all communication with the Bexar County District Attorney's office involving "auditors" should have been produced under Request for Production No. 8. The City did not make any objections to this request.

**COURTROOM ORDER**: Your December 23, 2021 correspondence, for item number 16, seems to indicate that we are seeking information from the municipal court. We are seeking information within the City's possession. Specifically, COLV 10771 references email communications involving Salvaggio on June 8, 2018. Your privilege log also makes several references to emails with Salvaggio and others discussing posting signage (see for example,, your amended privilege log, item 68, which reference June 8, 2018 communications involving Salvaggio and presumably the court order, but you withheld these emails).

**CITIZENS POLICE ADVISORY COMMITTEE:** Pursuant to Requests for Production Nos. 1 and 5, please produce agendas, minutes, notes, memos, files, and other materials provided to, or generated by, the Leon Valley Citizens Police Advisory Committee that relate to "auditors." For example, a June 20, 2018 agenda for the committee identifies a section for the "Chief's Report" which includes at item f, "Auditors."

## CITY DEPOSITION

We previously conferred on scheduling 30(b)(6) deposition(s) for the City of Leon Valley on the topics below. I wanted to provide the topics in formal correspondence to keep everything together. Please let me know what date(s) you propose and we will get a notice out. I only added one item to the list (number 39).

1. **Chief Salvaggio's authority as Chief of Police for Leon Valley at all times relevant to this lawsuit**

2. **Chief Salvaggio's duties and responsibilities as Chief of Police for Leon Valley at all times relevant to this lawsuit**

3. **Decision-making process and evaluations in deciding to recommend and then approve the hiring of Chief Salvaggio for the Chief of Police position**

4. **Chief Salvaggio's termination as Leon Valley's Chief of Police**

5. **The incidents and investigations related to this lawsuit**

6. **Briefings, communications, updates, etc provided by Chief Salvaggio to the City (City Council and City Manager) concerning the incidents that gave rise to this lawsuit**

7. **City's discovery responses and production**

8. **Factual basis of City's defenses asserted in this lawsuit**

9. **City's retention policy for emails, text messages, and other written communication**

10. **City's cell phone policy**

11. **City's definition of the terms "auditors," "agitators," and "anarchists."**

12. **Operational Security Plans related to "auditors"**

13. **COLV 11255-11287**

14. **Process concerning the handling of complaints made against Leon Valley employees**

15. Process concerning the handling of complaints made against Leon Valley police officers

16. Decision making process concerning June 2018 policy or "court order" concerning the prohibition of the use of recording devices within the City Hall building

17. Disciplinary action arising from any complaints made as a result of the incidents that gave rise to this lawsuit

18. City's position on whether the arrests of Plaintiffs were lawful

19. City's position on whether the detention of Plaintiffs were lawful

20. City's position on whether the seizure of Plaintiffs' personal property was lawful

21. City's position on whether Plaintiffs had a right to be at the Leon Valley City Hall location on June 14, 2018

22. City's position on whether Plaintiffs had a right to be at the Leon Valley City Hall location on June 18, 2018

23. City's position on whether Plaintiffs had a right to be at the Leon Valley City Hall location on June 23, 2018

24. Decision making process concerning the issuance of Criminal Tresspass Warnings to Plaintiffs that indefinitely banned them from City property

25. Decision making process in creating the Criminal Tresspass Warnings tendered to Plaintiffs

26. Policies, procedures, training materials, and educational materials provided to City employees concerning "auditors," "agitators," and "anarchists."

27. Policies and procedures concerning a citizen's right to be on public property within Leon Valley

28. Leon Valley's tactical responses to protests occurring in Leon Valley in June 2018

29. Leon Valley's knowledge concerning Chief Salvaggio's "Press Conference"

30. Crimes Plaintiffs were accused of committing

31. Evidence Plaintiffs were allegedly possessing

32. City's handling and possession of Plaintiffs' personal property

33. Leon Valley statements to media concerning the incidents that gave rise to this lawsuit

34. Statements of Leon Valley employees made to media concerning the incidents that gave rise to this lawsuit

35. Knowledge of Plaintiffs prior to June 14, 2018

36. Knowledge of Plaintiffs prior to June 18, 2018

37. Knowledge of Plaintiffs prior to June 23, 2018

38. Guidance allegedly received from Bexar County District Attorney's Office concerning the right to take personal property from a "witness"

39. Leon Valley Citizens Police Advisory Committee, and its involvement arising from May and June 2018 interactions between Leon Valley and Plaintiffs, "auditors," "agitators," and "anarchists"

Please supplemental your production, and provide me with date(s) for the 30(b)(6) deposition(s) by end of day Tuesday, **January 18, 2022**. I am available by phone or email should you wish to confer about a specific matter outlined in this correspondence. Thank you for your professional cooperation.

Brandon J. Grable