UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **RUSSELL ZINTER; ET AL.** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL NO. SA-18-CA-680-JKP-RBF** |
| | § | |
| **CHIEF JOSEPH SALVAGGIO; ET AL.** | § | |
| | § | |
| **Defendants.** | § | |

DEFENDANT CITY OF LEON VALLEY'S
MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES, Defendant CITY OF LEON VALLEY ("City") and files this Motion for Summary Judgment pursuant to Rule 56, Fed. R. Civ. Proc., and would respectfully show the Court the following:

## I. <u>NATURE OF THE LAWSUIT</u>

1.     Plaintiffs Russell Zinter, Jack Miller, Brian Howd, James A. Mead, Joseph Brandon Pierce,[1] Mark Brown, David Bailey, Juan Gonzalez, Jr., Kevin Egan, Jonathan Green, and James Springer[2] ("Plaintiffs") filed a civil rights action against the City and the Individual Police Officer

---

[1] Plaintiffs' former Counsel Radner filed a motion to withdraw as counsel and indicated that Plaintiff Joseph Brandon Pierce no longer wished to be represented by him.  The Court granted said motion; Plaintiff Pierce has not made an appearance in this case since this date.  **[Dkt. 100; 5/12/2021 Text Order].** Plaintiffs' Counsel's Motion to Withdraw was granted and Plaintiff Selena Herrera was required to show cause as to her continued interest in the referenced matter or be dismissed with prejudice pursuant to the Court's Order to Show Cause [Dkt. 109].  Plaintiff Herrera failed to file a response.  Plaintiff Herrera's mail via United States Postal Service continues to be returned and marked "Return to Sender.  No Mail Receptacle.  Unable to Forward."
[2] Plaintiffs' Second Amended Complaint adds Plaintiffs, Greg Gardiner, Selena Herrera, Jason Green, and Theresa C. Richard.

Defendants[3], ("Individual Defendant Officers")alleging various First, Fourth, and Fourteenth Amendment claims pursuant to 42 U.S.C. §1983, involving incidents occurring on June 14, June 18, and/or June 23, 2018.  [Dkt. 87].

2.      Plaintiffs fail to state a cognizable claim against Defendant City under the U.S. Supreme Court standard enunciated in *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiffs also fail to state a proper claim for declaratory and other relief.

## II.  <u>INTRODUCTION</u>

3.      Plaintiffs belong to a group identifying themselves as First and Second Amendment activists; constitutional activists; and or auditors (collectively referred to herein as "auditors") and have been protesting in the City of Leon Valley, in publicized protests concerning the open carry of handguns and long rifles and videotaping encounters with police officers.   The auditors claim their First Amendment constitutional right to film police officers and public employees in and around various public areas including city halls, municipal courts, post offices and police departments, among others.   In general, auditors goad police by refusing to comply or by deliberately delaying compliance with legitimate police officer orders and commands, thereby creating encounters with police officers leading to the auditors being questioned, detained and/or arrested.  Many of the auditors have YouTube channels where they show videos or live stream encounters with police officers.  Generally, auditors question the police during an investigation, detention, or arrest. Auditors embellish their reaction to police officer's actions and encounters with police officers and exaggerate alleged injuries, if any, received by their encounter with officers.  Some auditors receive compensation for the number of "views" their YouTube channel

---

[3] Chief Salvaggio, Lt. Anderson, Sgt. Urdiales, Det. King, Cpl. Mandry, Cpl. Farias, and Officers Vasquez, Wells, Evans, Hernandez, Yarbrough, Breton, Azar, Castro, Tacquard, Rivera, and Jane Doe Goldman.

receives.

### III.   UNDISPUTED FACTS

4.      The Plaintiffs assert the City retaliated against them for exercising First Amendment rights to videotape police officers, causing Fourth Amendment violations of unlawful arrest, excessive force, and seizure of property claims, which affect their Fourteenth Amendment rights.[4]  Plaintiffs' alleged causes of action against the City and Individual Defendant police officers arise out of three separate incidents as described below:

**June 14, 2018**

5.      Plaintiff Mark Brown ("Brown;" YouTube name "Tuc. Police Suck"[5]) and another auditor by the name of Jesus Padilla ("Padilla;" YouTube name "Mexican Padilla") were live streaming from the sidewalk in front of the municipal building which houses City Administration, Municipal Court and the Police Department (referred to herein collectively as "City Hall").   Prior to June 14, 2018, City police officers issued a trespass notice to Padilla not to enter onto City Property,[6] **[Exhibit "A" Brown Deposition p. 65:1-9].**   Plaintiff Brown entered City Hall, where Municipal Court was in session; however, Brown was ordered to leave because he could not film inside the foyer while municipal court was in session, pursuant to a Standing Order issued on that date, by Municipal Judge Lawrence Morales. **[Exhibit "B" Defendant Urdiales' video (COLV 00014) 13:52:07-13:53:08; Exhibit "C" Standing Order (Def Officers 3)].**   Brown shouted at the officers not to put their hands on him and to never put their hands on him again.  **[Exhibit "B" Urdiales video 13:52:35-13:52:52].** Brown's companion, Padilla, moved onto City property

---

[4] Plaintiffs only refer to the Fourteenth Amendment by name in the Jurisdictional section and in the title of Counts 5, 10 and 13 **[Dkt. 87]**.  No substantive arguments are made for Plaintiffs alleged Fourteenth Amendment violations.
[5] Brown owns and maintains a YouTube channel **[Exhibit "A" Brown Deposition p. 39:3-5; p. 42:20-23].**
[6] Jesus Padilla (a/k/a Mexican Padilla) is not a Plaintiff in this suit; however, he was issued a criminal trespass notice not to return to City property because of a prior incident on May 2, 2018, when Padilla entered a restricted area in City Hall. Padilla refused to leave when ordered to do so and was arrested.

while filming Brown's interaction with police and violated the trespass notice issued to him on May 2, 2018. **[Exhibit "B" Urdiales video 13:52:28, 13:53:02].**  While attending a shift briefing, Defendant Officer Vasquez reported that the City receptionist announced over the intercom that officers were immediately needed in the front of City Hall.  **[Exhibit "D" 6/14/18 Police Report pp. 4,7 (COLV 000125, 000128); Exhibit "E" Vasquez Deposition p. 73:1-16].**

5.      Individual Defendant officers responded and approached Padilla to arrest him.  **[Exhibit "B" Urdiales video 13:53:18- 13:53:49]**.  At this time, despite officers' verbal commands to move back, Brown disregarded the officer's command and did not immediately distance himself from the officers' arrest of Padilla, which interfered in Padilla's arrest.  **[Exhibit "F" (COLV 00006) Vasquez video 13:52:50-13:52:57].**  While officers attempted to arrest Brown for Interference with Public Duties, Brown argued with police offices, struggled with police while they were attempting to handcuff him, and actively resisted arrest.[7]  **[Exhibit "G" (COLV 00009) Azar video, 13:55:04–13:55:15].**  To gain control of Brown, because he was actively resisting arrest and it was unknown if Brown possessed any weapons, Officer Vasquez deployed his electronic control device (Taser) [**Exhibit "D" p. 5 (COLV 000126); Exhibit "E" Vasquez Deposition p. 101:16-24; Exhibit "F" 13:52:57–14:01:04; Exhibit "G" 13:53:06–13:54:00].**  Brown was also charged with resisting arrest and issued a criminal trespass preventing him from entering City property.  **[Exhibit "H" (COLV 00013) Yarbrough video, 16:00:12–16:01:47].** During his arrest, Brown indicated that he was hurt and requested an ambulance and a stretcher which arrived at the scene and transported Brown to University Hospital. **[Exhibit "F" 13:59:53–14:03:42; Exhibit "G" 13:54:14-13:54:19, 13:56:27-13:56:28].**  Brown was evaluated by paramedics and emergency and taken to University Hospital with minor scrapes to Brown's arm. **[Exhibit "D" p.**

---

[7] As seen from the videos, Exhibits B, F, G, H, Brown is a very large man.

**7, (COLV 000128) Yarbrough Supplement].**  Brown testified that he returned to the City to lend his support to the protest on June 18, 2018. Brown was not involved in any encounters with the police on June 18th.  Brown did not attend the protest on June 23rd.  **[Exhibit "A" Brown Deposition pp. 130:10-25; 131:1-22].**  Plaintiff Brown asserts, "First Amendment Retaliation-Assault/Arrest/Detention/Property Seizure/Prosecution;" and Fourth Amendment Excessive Force, Unlawful Seizure of Property, Abuse of Process, and Malicious Prosecution against Individual Defendant Officers Yarbough, Vasquez, Wells, Farias, Anderson and Salvaggio; and the City of Leon Valley.  **[Dkt. 87, ¶105-117, Plaintiffs' Second Amended Complaint].**

**June 18, 2018**

6.      On June 18, 2018, Plaintiffs Gonzales (Suspect 1), Mead (Suspect 2), Zinter (Witness 1), Bailey (Arrested Person 1), Springer (Arrested Person 2), Pierce (Witness 2), and other citizens not identified, were conducting a protest at City Hall.   Bailey carried a modified representation of the American flag with blue stripes in front of the doors of City Hall.   Several auditors accompanied Bailey to film the encounter. **[Exhibit "I" 6/18/18 Incident Report, p. 10 (COLV 000141), Azar Supplement; Exhibit "J" (COLV 000026) Farias video, 13:46:12–13:46:42].** When asked what the flag meant in his deposition, Bailey testified that it meant, "Watch the killers backs. Screw us against them. Police are their own—you know, their own cabal."  When asked if it was a pro-police or anti-police flag, Bailey responded, "I would say, in my opinion, it's neither, It's an antisociety flag, anticitizen flag. "It's them against us.  Than's their frame of mind." **[Exhibit "K" Bailey Deposition, p. 28:21-25; p. 29:1-25; p. 30:1-25].**  Although the auditors were informed by Anderson not to block the entrance to City Hall.  **[Exhibit "I" p. 9 (COLV 000140); Exhibit "K" p. 34:1-17].**   Despite Anderson's warnings, Bailey positioned himself in front of the doorway and obstructed the entrance. Bailey was arrested for obstructing a

passageway.  **[Exhibit "I" pp. 9-10 (COLV 00140-00141), Farias narrative; Exhibit "K" p. 34:18, p. 35:1-21; Exhibit "K" p. 34:1-17].**

7.      Plaintiff Springer was arrested for interference with public duties by physically refusing to relinquish his camera/phone by pulling away and preventing Farias from seizing his camera as evidence of a crime (Bailey's arrest).   Plaintiff Bailey was arrested for the misdemeanor charge of Obstruction of a Passageway. Springer was charged with Interference with Police Duties **[Exhibit "I" pp. 9, 11 (COLV 00140, 00142), Evans Supplement].**  Both Bailey and Springer were also given notices of trespass. **[Exhibit "I" p. 9 (COLV 00140)].** Gonzales was detained and placed in handcuffs by refusing to relinquish his recording device, was released, and given a trespass warning. **[Exhibit "I" pp. 11, 12 (COLV 00142-00143), Mandry Supplement].**  Mead was detained and placed in handcuffs for failure to identify himself as a witness, he later identified himself and relinquished his video device.  He was released and given a trespass warning. **[Exhibit "I" p. 11 (COLV 00142), Urdiales Supplement; p. 15 (COLV 00146), CID Supplement].** Zinter cooperated with the officers and relinquished his recording device, identified himself, and was released **[Exhibit "I" p. 9 (COLV 00140)].** Pierce identified himself as a witness and relinquished his recording device and was released. **[Exhibit "I" p. 13 (COLV 00144)].**[8]

**June 23, 2018**

7.      Auditors were demonstrating outside City Hall.  Of the auditors present, Plaintiff James Springer and third-party individual, Bao-Quoc Trac Nguyen ("Nguyen") were sharing Chief Salvaggio's home address, his family's names, and phone numbers during Springer and/or Nguyen's live streams on their personal YouTube accounts. **[Exhibit "L" 7/10/18 Salvaggio report (Def Officer Bates Nos. 667, ¶2; No. 669, ¶2; 671, ¶2)].**   The publication of this

---

[8] Plaintiffs were provided property receipts for their video devices.

information resulted in posted derogatory remarks and death threats against Chief Salvaggio and his family by viewers of Springer's and Nguyen's YouTube accounts. **[Exhibit "M" Screen shots; Exhibit "N" Egan Deposition, p. 77:15-23; Exhibit "O" Howd deposition, p. 57:1-13].** These posts commenced on or about June 18, 2018. **[Exhibit "L" ¶ 2, Def Officer Bates No. 668].** There is no evidence that neither Springer, Nguyen, nor their moderators, if any, attempted to delete or stop the publication of Salvaggio's home address, family's names, and phone numbers; along with the derogatory comments and threats from being broadcasted, and/or removed.

8. Chief Salvaggio received direction from the Bexar County District Attorney's Office ("DA") on or about May/June 2018 that the Leon Valley police could seize phones of witnesses to a crime. **[Exhibit "P" Salvaggio Deposition, p. 34:23-25, p. 35:1-4; p. 143:1-13].** On or about May or June 2018, the DA's office discussed the seizure of phones/recording devices with Salvaggio because the City was losing original evidence and/or needed to capture evidence and this was the DA's office instructions to Salvaggio to follow **[Exhibit "P" p. 143:1-21; p. 174:4-16; p. 180:3-14]**. After the seizure of the recording devices, then a search warrant is obtained**. [Exhibit "P" p. 174:17-25; p. 175:1-3; p. 260:8-25; p. 261:1-12].** Salvaggio, his captain, lieutenant or sergeant would disseminate the instructions from the DA to the other officers. **[Exhibit "P" p. 182:4-15].** On June 23, 2018, prior to the arrest and/or detention of the effected Plaintiffs, Salvaggio contacted the DA to receive additional guidance prior to going outside. **[Exhibit "P" p. 143:22-25; p. 144:1-20; p. 206:6-25; p. 207:1-14; p. 227:1-25; p. 228: 1-5].** At approximately 4:00 p.m., Salvaggio informed the group and/or an individual from that group that he was going to make a statement[9] because he wanted Springer and Bao to stick around since the threats appeared on Springer's and Bao's videos. **[Exhibit "P" p. 230:23-25; p. 231:1-3; p.**

---

[9] Plaintiffs use the reference "press conference"

**258:13-25; p. 259:1].**  Plaintiff Howd was arrested for interference with public duties and resisting arrest, search or transport.  Plaintiff Miller was across the street at a store and only saw the arrests occur. Miller was not arrested.  Plaintiff Springer was arrested for Obstruction or Retaliation under Texas Penal Code § 36.06, a third-degree felony.  Plaintiff Pierce was arrested for interference with public duties and failure to identify himself as a witness. Plaintiff Jonathan Green was identified, detained, and released for possible charges to be filed later[10].  **[Exhibit "Q" 06/23/18 Incident Report Bates Nos. COLV 00147-00187; Exhibit "L" Bates Nos. COLV 00207-00216].**

## IV.   ARGUMENTS AND AUTHORITIES

### A.  Summary Judgment Standard

9.      When ruling on a motion for summary judgment, the Court must view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.,* 402 F.3d 536, 540 (5th Cir. 2005). However, when the nonmoving party fails "to address or respond to a fact raised by the moving party and supported by evidence, the court may consider the fact as undisputed" and "[s]uch undisputed facts may form the basis for a summary judgment." *Broadcast Music, Inc. v. Bentley,* Civil Action No. SA-16-CV-394-XR, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017).

### B.      Municipal Immunity under Monell

10.     Under § 1983, "[p]arties can sue a municipality that has violated their constitutional rights 'under color of any statute, ordinance, regulation, custom, or usage.'" *Advanced Tech. Bldg. Sols., L.L.C. v. City of Jackson*, 817 F.3d 163,165–66 (5th Cir. 2016) (citing 42 U.S.C. § 1983 (2015)). However, for claims against municipalities and local governments, merely establishing a

---

[10] Nguyen was arrested from obstruction retaliation by threat under Texas Penal Code § 36.06.

constitutional violation by an employee of a local governmental entity is not enough to impose liability upon that entity. *Monell v. Dep't of Soc. Servs*., <u>supra</u>.  Rather, Plaintiffs must show that the municipality itself—not merely its employees—has violated the Constitution.  *Piotrowski v. City of Hous*., 237 F.3d 567, 578 (5th Cir. 2001).  To make a claim against a municipality under §1983, plaintiffs "must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir.2009) (citing *Piotrowski*, 237 F.3d at 578).

11.     In a §1983 suit against a city, the claim must be based upon the implementation or execution of a policy or custom which was <u>officially</u> adopted by the City.  *Monell* holds that a governmental entity can be found liable under Section 1983 <u>only</u> if the entity itself causes the constitutional violation at issue.  *Monell,* 436 U.S. at 690-91.  Thus, Plaintiffs must allege with **specificity** and **particularity** that their claims are based on the City's official policy, **not** the policy of an individual official or officer.  *Bennett v. City of Slidell,* 728 F.2d 762, 769 (5th Cir.1984).

12.     An official policy or custom can be found in the form of "written policy statements, ordinances, or regulations," or a widespread practice that is "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Peterson,* 588 F.3d at 847 (citing *Piotrowski,* 237 F.3d at 579).  When a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy," it can satisfy this requirement. *Bennett* at 862.

13.     The Fifth Circuit has characterized the Supreme Court's understanding of a custom as "'persistent and widespread . . . practices,' 'systematic maladministration' of the laws, practices that are 'permanent and well settled,' and 'deeply embedded traditional ways of carrying out . . .

policy.'" *Bennett*, 728 F.2d at 768 (5th Cir. 1984) (citing *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 167–68 (1970)). "[I]solated events are generally insufficient to be the persistent, often repeated constant violations that constitute custom and policy as required for municipal section 1983 liability." *Gates v. Texas Dep't of Protective & Regulatory Servs*., 537 F.3d 404, 437 (5th Cir. 2008) (citing *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995) (internal quotations omitted)). Further, even a "handful" of instances would not rise to the level of a pervasive custom or practice. *Pineda v. City of Hous.,* 291 F.3d 325, 329 (5th Cir. 2002).

14.     "If actions of city employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Webster v. City of Hous.,* 735 F.2d 838, 842 (5th Cir. 1995). "It is thus clear that a plaintiff must demonstrate 'a pattern of abuses that transcends the error made in a single case.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 850–51 (5th Cir. 2009) (quoting Piotrowski, 237 F.3d at 582). "A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Id*. at 851 (quoting *McConney v. City of Hous*., 863 F.2d 1180, 1184 (5th Cir.1989).

### C.     Declaratory Judgment Act

15.     The Declaratory Judgment Act "does not create a substantive cause of action," but "is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law." *Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.,* 2009 U.S. Dist. LEXIS 88527 (N.D. Tex. Sept. 25, 2009). The availability of a declaratory judgment depends upon the existence of an underlying judicially remediable right because the declaratory judgment is not itself a cause of action, only a form of relief the court may grant. *See Schilling v. Rogers*,

363 U.S. 666, 677 (1960); *Collin Cnty., Tex., v. Homeowners Ass'n for Values Essential to Neighborhoods,* 915 F.2d 167, 171 (5th Cir. 1990).

          **D.**      **Greater weight is given to video recording evidence.**

16.     "Further, although courts view evidence in the light most favorable to the nonmoving party, they give greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Valderas v. City of Lubbock,* 937 F. 3d 384, 388 (5th Cir. 2019), reissued 774 Fed. Appx. 173, 176 citing, Griggs *v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016) (citing *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011)). "Although we view the evidence in the light most favorable to the nonmoving party, the plaintiff bears the burden of demonstrating that a defendant is not entitled to qualified immunity." *Valderas* at 388, citing, *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (citing *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010)).

17.     "However, the general proposition that we accept plaintiff's version of the facts in the qualified-immunity summary-judgment setting 'is not true to the extent that there is *clear contrary* video evidence of the incident at issue.' *The Estate of Dillon Taylor, et al. v. Salt Lake City, et al*., 2021 WL 4955461 * 8 (10th Cir. Utah, Oct 26, 2021) citing *Taylor Thomas v. Durastanti*, 607 F.3d 655, 659 (10th Cir. 2010) (emphasis added); *Emmett*, 973 F.3d at 1131 (noting the appropriateness of relying on video evidence that clearly contradicts plaintiff's "story"); *cf. Bond*, 981 F.3d at 813 n.7 ("Because this is an appeal from a grant of summary judgment, we describe the facts viewing the video in the light most favorable to the Estate, as the nonmoving party."). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should *not* adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,*

550 U.S. 372, 380 (2007).  "Nevertheless, because there is video and audio recording of the event, we are not required to accept factual allegations that are "blatantly contradicted by the record." *Tucker v. Shreveport* 998 F. 3d 165 (5th Cir. 2021) citing *Scott* at 380.  "Rather, we should 'view [] the facts in the light depicted by the videotape'." *Id.* at 381.

## II.   THERE IS NO *MONELL* LIABILITY FOR THE CITY OF LEON VALLEY

### A. Policy or Custom

18.     Plaintiffs have failed to identify any policy or custom that caused the alleged constitutional violations in this case.  In Plaintiffs Second Amended Complaint, Plaintiffs generally assert that the City "directly caused the constitutional violations suffered by Plaintiffs and is liable for the damages caused as a result of the conduct of the individual Defendants." **[Dkt. 87, ¶ 220].** Further, Plaintiffs do nothing more than include the City as a defendant along with the individual Defendant officers asserting that the conduct of these officers was a direct consequence of the policy and practices of the City **[Dk. 87, ¶220]**.  However, Plaintiffs do not assert in their Second Amended Complaint that the City's alleged policies, which are the basis of Plaintiffs' lawsuit, were officially adopted by the City.

19.     Plaintiffs assert that the City's alleged unwritten, policy, procedure, or custom described in their Second Amended Complaint is directly responsible for the individual Defendant officers acting the way they did. **[Dkt. 87, ¶223]**.  However, these alleged seven (7) policies, delineated in Plaintiffs' Second Amended Complaint, ¶226 (a) – (g), are merely alleged actions by the individual Defendant officers which occurred on June 14th, 18th and/or 23rd, 2018.  Plaintiffs cannot establish that these seven alleged actions by individual Defendant officers, which Plaintiffs are asserting are the result of following a City policy(ies), and which occurred in the course of three (3) separate days, rise to the level of a "pervasive custom or practice."  *Pineda* at 329.  Plaintiffs do not identify

similar incidents in the City prior to June 14, 2018, of alleged police misconduct in Plaintiffs'
Second Amended Complaint.

20.     The depositions of the following Plaintiffs concerning the June 14th, June 18th, and June
23rd, 2018, incidents, reveal they cannot identify a City policy, practice, or custom that violated
their constitutional rights:

21.     **June 14, 2018 incident**: Brown believes Chief Salvaggio does not like cameras taking
pictures or videos of police officers.  Brown testified he had no idea if Chief Salvaggio was
following orders from the City and did not know if the City had a policy. **[Exhibit "A" Brown's
Deposition, p. 105:1-25; p. 106:1; p. 110:6-13; p. 111:1-11].**

22.     **June 18, 2018 incident:**  Mead believes he was arrested by Defendant Anderson because
he had a camera and he failed to identify himself. Mead testified he did not know if Anderson was
following City policy. **[Exhibit "R" Mead Deposition, p. 63:1-24; p. 64:5-9].**  Bailey's testimony
reveals he believes the City has an unwritten policy to violate people's rights, and because the City
retaliated against him, guesses the City also has a policy of retaliation **[Exhibit "K" Bailey
Deposition p. 60:5-16]**.  Gonzales' testimony reveals he believes police officers can do anything
they want because they are City employees. **[Exhibit "S" Gonzales Deposition, p. 82:4-25; p.
83:1-14]**.  Zinter testified he does not know the City's policies regarding the seizure of his phone,
but guesses it was a directive from Salvaggio or Anderson. **[Exhibit "T" Zinter Deposition p.
36:19-25; p. 37:1-7]**.

23.     **June 23, 2018 incident**:  Howd testified he did not know what policies the City had or did
not have. **[Exhibit "O" Howd Deposition, p. 79:20-25; p. 80:1-12]**.  Egan testified he does not
believe Salvaggio followed any City policy but believed that the City allowed Salvaggio to do
what he wanted. **[Exhibit "N" Egan Deposition, p. 91:1-25; p. 92:1-16]**.  Jason Green's testified

he does not know the City's policies regarding retaliation of First Amendment rights but claims that he was illegally arrested. **[Exhibit "U" Jason Green Deposition, p. 96:5-22].**  Gardiner testified he does not know if there are City polices that deal with City employee conduct with people who are not employees of the City. **[Exhibit "V" Gardiner Deposition, p. 59:8-25; p. 60:1-19]**.   Jonathan Green testified he does not know of any of the City's specific policies. **[Exhibit "W" Jonathan Green Deposition p. 93:13-21].**  Richard's testified she believes the police chief is the City and an employee of the city. **[Exhibit "X" Theresa Richard Deposition, p. 52:18-25; p. 53:1-11].**

  **B.  Promulgated by a Municipal Policymaker.**

24.    Plaintiffs have not shown that the City's alleged policy was adopted by the City's policymaker(s).  Plaintiffs must show that the alleged policy or custom was adopted or maintained by the municipality's policymakers who have either actual or constructive knowledge of the alleged policy, practice, or custom. *Brown*, 520 U.S. at 410; *Piotrowski* at 579 ("Actual or constructive knowledge of a custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority."); *Webster v. City of Houston,* 735 F.2d 838, 842 (5th Cir. 1984).  Plaintiffs merely contend that Police Chief Salvaggio was a policymaker regarding enforcement training, supervision, rules and procedures and supervisor of the Individual Defendant officers and other Leon Valley police officers.  **[Dkt. 87, ¶38].** Plaintiffs also simply assert that Individual Defendant Lt. Anderson and other unnamed supervisors were policymakers for the City because of their supervisory capacities. **[Dkt. 87, ¶78].**

25.    Chief Salvaggio and Lt. Anderson were not policymakers for the City.  Pursuant to the City's Charter and Ordinances, the City Manager is the policymaker for the City with the authority to hire, fire, and supervise the Police Chief and police officers **[Exhibit "Y" Affidavit of City**

**Manager Caldera].**  The City's 2018 and 2022 organizational charts clearly show that the City Manager supervises the police chief. **[Exhibit "Y" at "Y4" and "Y5"].**

26.     As cited above, Plaintiffs have not shown that a policymaker for the City, having policy making authority, had actual or constructive knowledge of an alleged unconstitutional policy, practice or custom and acted with 'deliberate indifference'[11] as to its known or obvious consequences.   Plaintiffs assert the following conclusory allegation: "Further the de facto unwritten policy, procedure, or custom, described herein, demonstrates deliberate indifference to the constitutional rights of the plaintiffs and is directly responsible for the individual defendants acting the way they did as outlined in the complaint." **[Dkt. 87, ¶223].**  This is insufficient to establish *Monell* liability.  As cited above, Plaintiffs claims must be based on the City's official policy, **not** the policy of an individual official or officer.  *Bennett* at 769.

### C.  Failure to Train

27.     Plaintiffs contend in one reference that the City failed to adequately train the individual Defendant officers to discourage further constitutional violations. **[Dkt. 87, ¶221 (a)].**   "A municipality's failure to train its police officers can without question give rise to § 1983 liability." *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009) (citations omitted).  "The failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).  "In resolving the issue of a city's liability, the focus must be

---

[11] To establish deliberate indifference, a plaintiff must plead a pattern of similar violations. *Connick v. Thompson*, 563 U.S. 51, 62 (U.S. 2011). "Deliberate indifference is a stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Valle v. City of Houston*, 613 F.3d 536, 547 (5th Cir. 2010); *Brown v. Bryan Cty., OK*, 219 F.3d 450, 457 (5th Cir. 2000) (quoting *Bd. of the Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 410 (1997)).

on [the] adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton*, 489 U.S. at 390.

28.     "To prevail on a 'failure to train theory' a plaintiff must demonstrate: (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Zarnow,* 614 F.3d at 170 (citing *World Wide Street*, 591 F.3d at 756). "In order for 'liability to attach based on an "inadequate training" claim, a plaintiff must allege with **specificity how** a particular training program is defective.'" *Id*. (Emphasis added) (quoting *Roberts v. City of Shreveport,* 397 F.3d 287, 293 (5th Cir. 2005)). Further, the Fifth Circuit has— on multiple occasions—"rejected attempts by plaintiffs to present evidence of isolated violations and ascribe those violations to a failure to train." See *Zarnow*, 614 F.3d at 170; *Goodman v. Harris Cnty*., 571 F.3d 388 (5th Cir. 2009).

29.     Plaintiffs have not identified or provided evidence "with specificity" as to any inadequate training of police officers by the City of Leon Valley pursuant to *Zarnow*. Plaintiffs make no allegations against the City for having a history of unlawful training. Plaintiffs merely assert in their Second Amended Complaint that the City failed "[t]o adequately supervise and train its officers and agents, including individual Defendants, thereby failing to adequately discourage further constitutional violations on the part of its police officers." **[Dkt. 87, ¶221 (a)]**. In contrast, the City has submitted evidence establishing that it properly trains its officers in the form of an affidavit with his attached report from their expert Craig R. Miller. **(Exhibit "Z" Miller Affidavit, Exhibit "Z-1" expert report, Bates No. 11260).** Chief Miller provided opinions in his expert report that the City sufficiently and adequately trained its police officers, stating as follows: "[A]ll of the LVPD [Leon Valley Police Department] officers involved in the demonstrations on June 14,

18, and 23 of 2018 were provided LVPD in-service training as well as instruction by various police academies. These academies include the San Antonio Police Department Academy, Alamo Area Council of Government (AACOG) Academy, Bexar County Sheriffs' Academy, San Antonio College Law Enforcement Academy, Texas DPS Academy, and the East Texas Police Academy. All of these academies are certified by the Texas Commission on Law Enforcement (TCOLE) regarding arrest procedures as they relate to the laws of the State of Texas found in the Texas Penal Code." **(Exhibit "Z", Expert Report Chief Miller ¶¶ 30-34, DEFT COLV 11260-11261).**

30.	The Fifth Circuit "consider[s] compliance with state requirements as a factor counseling against a 'failure to train' finding." *Zarnow*, 614 F.3d at 171 (citing *Conner v. Travis Cnty*., 209 F.3d 794, 798 (5th Cir. 2000)).  Further, Plaintiffs fail to identify any deficiencies in training or how those deficiencies caused the constitutional violations alleged in this case. As a result, Plaintiffs do not establish that the City of Leon Valley's training practices are inadequate as to use of force, proper arrest, or any other relevant area. Plaintiffs fail to identify a fact issue under this theory of municipal liability, entitling the City to judgment as a matter of law on the failure to train claim.

### D.  Failure to Supervise

31.	Plaintiffs' claim against the City for failure to supervise its officers also fails as a matter of law.  The failure to train rational applies to a failure to supervise claim. *Rogers v. Colony, Texas* 2020 WL 5544612 *3 (E.D. Tex., Sept. 16, 2020).  The same three criteria as cited above in *Zarrow*, applies here.  *Zarnow*, 614 F.3d at 170.  As to deliberate indifference, "the inadequacy of police training, or in this case supervision, may serve as the basis for Section 1983 liability <u>only</u> where the failure to train amounts to <u>deliberate indifference</u> to the rights of persons with whom the police come in contact.

32.     Plaintiffs assert generally that Defendant officers, "under the direct supervision of Salvaggio and Anderson <u>and</u> at their behest, <u>and</u> **in accordance with the policies of Leon Valley** . . ." (Emphasis added) **[Dkt 87, ¶92]**. (1) ". . . arrested or detained Plaintiff [Brown] without probable cause of any criminal wrongdoing". **[Id]**.   (2) ". . . arrested, detained, assaulted, tazed, and seized the property of Plaintiff [Brown]" **[Dkt 87, ¶97];** (3) ". . .tackled, injured, and tazed Plaintiff [Brown] absolutely no lawful reason". **[Dkt 87, ¶102];** (4) Zinter's personal property was taken, ". . as retaliation for his participation in a lawful protest and to prevent him from engaging in such". **[Dkt 87, ¶130];** (5) Mead was threatened with criminal prosecution and was taken into custody, ". . . as retaliation for his participation in a lawful protest and to prevent him from engaging in such". **[Dkt 87, ¶131];** (6) Pierce's phone was seized, ". . . as retaliation for his participation in a lawful protest and to prevent him from engaging in such". **[Dkt 87, ¶132];** (7) Bailey was arrested, and his property seized, ". . . as retaliation for his participation in a lawful protest and to prevent him from engaging in such protests, and for his lawful display of a partially burnt law enforcement 'thin blue line' parody American flag". **[Dkt 87, ¶133];** (8) Gonzales' personal property seized, was handcuffed and detained, ". . . as retaliation for his participation in a lawful protest and to prevent him from engaging in such". **[Dkt 87, ¶134];** (9) Springer was arrested, and his property taken, ". . . as retaliation for his participation in a lawful protest and to prevent him from engaging in such". **[Dkt 87, ¶135];** (10) Pierce's cell phone, and the personal property of Zinter, Mead, Bailey, Gonzales, and Springer were seized, ". . .despite the fact that there was no lawful basis to seize it". **[Dkt 87, ¶¶148-153]**.

33.     Plaintiffs' assert that the Individual Defendant officers' alleged actions were under the supervision of Salvaggio and/or Anderson, <u>and</u> pursuant to their request, <u>and</u> those actions were in accordance with <u>unidentified</u> polices adopted by the City.  However, as argued above, Plaintiffs

have failed to show with **specificity** how the actions of the Individual Defendant officers were in accordance with what defective City policy. Plaintiffs have not proven any of its three components, failure to supervise, by an order of supervisors, and pursuant to City policies.  Further, in following the alleged City polices, how did it cause deliberate indifference to the rights of Plaintiffs.

###    E.  Failure to Discipline[12]

34.    Plaintiffs contend that the City failed to properly and adequately monitor and discipline its officers to include the individual Defendant officers which demonstrates deliberate indifference to the constitutional rights of the plaintiffs and is directly responsible for the individual defendants acting the way they did as outlined in this lawsuit." **[Dkt. 87, ¶221 (b); ¶222].**   Plaintiffs have failed to identify any instances where the City showed deliberate indifference in the discipline of its police officers.  As cited *Supra*, to establish deliberate indifference, a plaintiff must plead a pattern of similar violations. *Connick* at 62.  Plaintiff has not provided a pattern of similar violations by Individual Defendant officers or evidence of any systemic maladministration. Therefore, there is no genuine issue of material fact as to the failure to discipline claim against the City under § 1983.

###    F.  Moving Force.

35.    Plaintiffs have not plead or submitted any evidence that identifies any official policy, practice or custom that was the moving force behind the alleged constitutional violations.  The Fifth Circuit has emphasized that without **all** the requisite elements for a *Monell* claim to establish liability, municipal liability is not possible. "[W]here a court fails to adhere to the rigorous

---

[12] Plaintiffs only allege that the City "tolerated" the police misconduct. [Dkt. 87 ¶221 (c)]. Plaintiffs have not asserted that the City effectively "ratified" the allegedly unconstitutional conduct after the fact by failing to discipline the officers involved.   However, a municipality's failure to discipline is not adequate to establish ratification. *Piotrowski*, 237 F.3d at 582.  Therefore, there is no genuine issue of material fact as to Plaintiffs' tolerance claim.

requirements of culpability (by policymakers) and causation, municipal liability collapses into *respondeat superior* liability." *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (quoting *Bd. of County Comm.of Bryan Cnty. v. Brown*, 520 U.S. 397, 415 (1997) (reference to policymakers added); *City of Canton v. Harris*, 489 U.S. 378, 391-92 (1989). "That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; . . ." *Board of the County Com'rs of Bryan County, Okla. v. Brown,* 520 U.S. 397, 406-407 (1997). Individually named Defendant police officers were employed by the City, when these officers allegedly committed the purported acts set forth in Plaintiffs' Second Complaint. As such, Plaintiffs fail to prove a *Monell* liability claim against the City and their causes of action against the City should be dismissed.

## III.   DISMISSAL OF DECLARATORY JUDGMENT ACTION IS WARRANTED

36.     The Declaratory Judgment Act is an enabling act that confirms discretion on the courts rather than an absolute right on a litigant. *Wilton v. Seven Falls Co*., 515 U.S. 277, 287 (1995). The act confers on federal courts discretion in deciding whether to declare the rights of litigants. *Id.* at 286. The fact that a Court can enter a declaratory judgment does not mean that it should. *Hewitt v. Helms,* 482 U.S. 755, 762 (1987). The act provides no independent basis for jurisdiction. *Medtronic Inc. v Mirowski Family Ventures L.L.C*., 134 S.Ct. 843, 848 (2014).

37.     The Fifth Circuit has held that to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, the plaintiff must allege facts from which it appears that he/she will suffer injury in the future. *Bauer v. Texas,* 341 F.3d 352, 358 (5th Cir. 2003). In the instant case, plaintiffs do not plead any injunctive relief. Plaintiffs merely ask the Court to declare that the City's policies are unconstitutional, without sufficient facts. Plaintiffs do not have an underlying judicially

remediable right and cannot seek their attorney's fees for declaratory relief.   Accordingly, the City

seeks dismissal of Plaintiffs' declaratory judgment action. **[Dkt. 87, Prayer for Relief (a)(e)].**

      **WHEREFORE, PREMISES CONSIDERED**, Defendant City of Leon Valley prays the

Court grant its Motion for Summary Judgment and that all of Plaintiffs' claims be dismissed with

prejudice.   The City prays for such other and further relief to which it is justly entitled.

      Signed this 24th day of February, 2022.

<div style="margin-left:40%">

Respectfully submitted,

DENTON NAVARRO ROCHA BERNAL & ZECH
A Professional Corporation
2517 N. Main Avenue
San Antonio, Texas 78212
Telephone:    (210) 227-3243
Facsimile:    (210) 225-4481
pbernal@rampagelaw.com
aruiz@rampagelaw.com


BY:    ***/s/ Adolfo Ruiz***
       PATRICK C. BERNAL
       State Bar No. 02208750
       ADOLFO RUIZ
       State Bar No. 17385600
       COUNSEL FOR DEFENDANT
       CITY OF LEON VALLEY

</div>

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing instrument has been served upon the below named individual(s) via certified mail, return receipt requested, unless otherwise indicated, and according to the Federal Rules of Civil Procedure on the 24th day of February, 2022.

Brandon J. Grable                                    **Email:** brandon@ggm.law
Austin M. Reyna                                      **Email:** austin@ggm.law
GRABLE GRIMSHAW MORA, PLLC
1603 Babcock Road, Suite 280
San Antonio, Texas 78229


Charles S. Frigerio                                  **Email:** csfrigeriolaw@sbcglobal.net
Law Offices of Charles S. Frigerio PC                **Email:** csf@frigeriolawfirm.com
111 Soledad, Ste. 840                                **Email:** HXS@frigeriolawfirm.com
San Antonio, Texas 78205


Brandon Joseph Pierce                                **Email:**  ethicsinstead@protonmail.com
644 Kerry
Crowley, Texas 76026


Selena Herrera                                       **CMRRR & Copy First Class Regular Mail**
202 S. Hoy Street
Buffalo, Oklahoma 73834


                                                     _*/s/ Adolfo Ruiz*_
                                                     PATRICK C. BERNAL
                                                     ADOLFO RUIZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RUSSELL ZINTER; ET AL. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL NO. SA-18-CA-680-JKP-RBF |
| | § | |
| CHIEF JOSEPH SALVAGGIO; ET AL. | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT CITY OF LEON VALLEY'S MOTION FOR SUMMARY JUDGMENT
APPENDIX TO EXHIBITS**

| | |
|---|---|
| **Exhibit A** | Excerpts from the Deposition of Mark Brown, taken January 6, 2022 |
| **Exhibit B** | Body camera video recording of Sgt. Joel Urdiales, taken June 14, 2018 [COLV 00014] |
| **Exhibit C** | Municipal Governing Court Decorum Leon Valley Municipal Court, dated June 14, 2018 |
| **Exhibit D** | City of Leon Valley Incident Report, dated June 14, 2018 [COLV 00124-00131] |
| **Exhibit E** | Excerpts from the Deposition of Officer Johnny Vasquez, taken December 15, 2021 |
| **Exhibit F** | Body camera video recording of Officer Johnny Vasquez, taken June 14, 2018 [COLV 00006] |
| **Exhibit G** | Body camera video recording of Officer Joann Azar, taken June 14, 2018 [COLV 00009] |
| **Exhibit H** | Body camera video recording of Officer Clarence Yarbrough, taken June 14, 2018 [COLV 00013] |
| **Exhibit I** | City of Leon Valley Incident Report, dated June 18, 2018 [COLV 00132-00146] |

| **Exhibit J** | Body camera video recording of Cpl. Louis Farias, taken June 18, 2018 [COLV 00026] |
| **Exhibit K** | Excerpts from the Deposition of David Bailey, taken January 5, 2022 |
| **Exhibit L** | Report authored by Joseph Salvaggio, dated July 10, 2018 [Def Officers 666-675] |
| **Exhibit M** | Screen shots from live stream video recordings of Bao-Quoc Trac Nguyen and James Springer [COLV 000229-000244] |
| **Exhibit N** | Excerpts from the Deposition of Kevin Egan, taken January 12, 2022 |
| **Exhibit O** | Excerpts from the Deposition of Brian Howd, taken January 12, 2022 |
| **Exhibit P** | Excerpts from the Deposition of Joseph Salvaggio, taken December 13, 2021 |
| **Exhibit Q** | City of Leon Valley Incident Report, dated June 23, 2018 [COLV 00147-00187] |
| **Exhibit R** | Excerpts from the Deposition of James Mead, taken January 11, 2022 |
| **Exhibit S** | Excerpts from the Deposition of Juan Gonzales Jr., taken January 6, 2022 |
| **Exhibit T** | Excerpts from the Deposition of Russell Zinter, taken January 11, 2022 |
| **Exhibit U** | Excerpts from the Deposition of Jason Green, taken January 10, 2022 |
| **Exhibit V** | Excerpts from the Deposition of Gregory Gardiner, taken January 5, 2022 |
| **Exhibit W** | Excerpts from the Deposition of Jonathan Green, taken January 7, 2022 |
| **Exhibit X** | Excerpts from the Deposition of Theresa Richard, taken January 7, 2022 |
| **Exhibit Y** | Affidavit of Leon Valley City Manager Crystal Caldera, dated February 24, 2022<br>• Y-1, Charter Sections 5.01, 5.02 and 5.03, City Manager<br>• Y-2, Section 1.05.032, Powers and duties City Manager of the Code of Ordinances<br>• Y-3, Section 9.02.033, Powers of police officers of the Code of Ordinances<br>• Y4, 2018 City of Leon Valley Organizational Chart<br>• Y5, 2022 City of Leon Valley Organizational Chart |
| **Exhibit Z** | Affidavit of Craig Miller, dated February 24, 2022<br>• Z1, Miller report and documents |