UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RUSSELL ZINTER; ET AL. | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL NO. SA-18-CA-680-JKP-RBF |
| CHIEF JOSEPH SALVAGGIO; ET AL. | § § § | |
| Defendants. | § | |

## DEFENDANT CITY OF LEON VALLEY'S
## RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES, Defendant CITY OF LEON VALLEY ("City") and files this its Response to Plaintiffs' Motion for Partial Summary Judgment ("MPSJ") **[Dkt. 153-1]** and would respectfully show the Court the following:

**I.   Plaintiffs have not demonstrated that a City final policymaker implemented any unconstitutional policies.**

1. Plaintiffs begin their Monell waiver claim with a City's policymaker's knowledge of an alleged policy to "Arrest Free Speakers" asserting the conclusory allegation that, "Defendant City created a policy to arrest or detain individuals for protesting and filming the police by alleging they had been 'witnesses to a crime' or because they 'failed to identify.'" **[Dkt. 153-1, p. 48, Subsection 1].** In support of their accusation, Plaintiffs refer to Plaintiffs' MPSJ Exhibit 111, the Leon Valley Police Department June 23, 2018, Incident Report **[Dkt. 153-1 p. 48 fn 323]** for the Court to extrapolate Plaintiffs' imaginative interpretation of the report.

A. **Plaintiffs failed to establish that Salvaggio[1] was a final policymaker for the City of Leon Valley.**

2.   Plaintiffs assume that because Salvaggio was a "City Executive Head" that he is automatically a final policymaker for the City of Leon Valley, without offering more than suppositions and speculative evidence, in light of the City's summary judgment evidence of the Charter, and Ordinance provisions, the Affidavit and deposition testimony of City's Manager, Caldera. **[Dkt. 153-1, p. 47, Sec. G].**  Mere "improbable inferences" and "unsupported speculation" are not proper summary judgment evidence. *Zarnow v. City of Wichita Falls Texas,* 614 F. 3d 161, 169 (5th Cir. 2010), citing Forsyth *v. Barr,* 19 F.3d 1527, 1533 (5th Cir.1994).

B. **Plaintiffs have not shown evidence that the City's Manager together with Salvaggio developed, implemented, and enforced unwritten polices, customs, and practices to target citizens engaged in First Amendment activities.**

3.   Plaintiffs MPSJ is replete with misrepresented deposition testimony. Plaintiffs mischaracterize City Manager, Crystal Caldera's deposition testimony and represent to the Court the following self-serving interpretation: "Defendant City Manager knew of Defendant Salvaggio's unconstitutional acts beginning in May 2018 and gave him the authority to continue to detain, threaten arrest, or physically arrest, individuals and seize their personal property because they were filming the police." **[Dkt. 153-1, pp. 51-52].** In reality, the testimony concerned a "City Manager's Report" prepared by then Assistant City Manager, Caldera, who complied information from all the City's department heads into one report dated June 27, 2018, and sent to then City Manager, Kelly Kuenstler.  Salvaggio prepared his portion of the report for police activity from June 11, 2018 to June 24, 2018.   Salvaggio's portion of the report discussed the "week-long interaction with a group of agitators resulting in arrests for harassment of a police officer, harassment, retaliation, obstructing a passageway, resisting arrest, failure to identity and

---

[1] To the same extent, Defendant Lt. Anderson.

interference with duties of a police officer." **[Dkt. 153-3, Plaintiffs' MPSJ Exhibit 85, p. 40:1-25; p. 41:1-25; p. 42:1-25; p. 43:1-2]**. Plaintiffs' argument ignores that the City Manager's comprehensive department report is dated three (3) days after the last event on June 24, 2018. Plaintiffs also fail to mention that the report was a summation of what already occurred from all departments for the City Manager's edification. Plaintiffs' argument gives the illusion of a single isolated report from the police department to the immediate attention to the City Manager.

4. The City Manager could not have provided, acquiesced, or delegated[2] ex post facto authority to Salvaggio to detain, threaten arrest, or physically arrest individuals, and seize their personal property after the June 14th, 18th and 23rd incidents have already occurred. Plaintiffs cherry pick the sections from Ms. Caldera's response without the benefit of optimal completeness of her responses to the line of questioning where Plaintiffs construes Ms. Caldera's response to support their argument. **[Dkt. 153-3, Plaintiffs' MPSJ Exhibit 85, p. 37:20-25; p. 38:1; p. 40:l-25; p. 41:1-21].**

5. Administrative oversight of Salvaggio was conducted by the City Manager. **[Dkt. 153-3, Plaintiffs' MPSJ Exhibit 85, p. 73:24-25; p. 74:1-13].** The police policies had to be approved by the City Manager. **[Dkt. 153-1, Plaintiffs' MPSJ Exhibit 85, p. 19:14-24].** `The Affidavit of Ms. Caldera and the attachments to Defendant City's Motion for Summary Judgment **[Dkt. 152-1, pp. 222-232, Exhibits "Y", "Y-1" – "Y-5"]** provides a copy of the City's Charter and Ordinances that the City Manager is the policymaker for the City with the authority to hire, fire, and supervise the Police Chief and police officers. **[Dkt. 152-1 pp. 222-224, Exhibit "Y" Affidavit of City Manager Caldera].** The City's 2018 and 2022 organizational charts clearly

---

[2] Defendant contends Plaintiffs have not shown that City Manager, Kuenstler, had the authority to provide, acquiesced, or delegate her authority under the City's Charter and/or ordinances to Salvaggio in this regard.

show that the City Manager supervises the police chief. **[Dkt. 152-1, pp. 222-232, Exhibit "Y" at "Y4" and "Y5"].**

6.     In addition, the City Manager approves the City's personnel manual including the provision that, "The security of city hall and all other city properties, the direct responsibility is the chief of police" **[Dkt. 153-3, Plaintiffs' MPSJ Exhibit 85 Caldera Deposition p. 15:8-25; p. 16:1-12].** When asked if the city wanted to change or alter the provision regarding the direct responsibility of the chief of police in the personnel manual, Ms. Caldera responded that to her knowledge, the City Charter is very clear that the City Manager is the one that oversees the administrative functions and Charter language provides that the city council may not impose on the functions of the city administrator. She clarified that she would need to verify with the City's attorney **[Dkt. 153-3, Plaintiffs' MPSJ Exhibit 85, Caldera Deposition p. 16:19-25; p. 17:1-4].**  The administrative oversight of the Chief of Police and police policies by the City Manager is specified in the legislation set forth in the City's Charter and Ordinances.  The affidavit and deposition testimony of current City Manager, Caldera, verifies the City Managers administrative review of the police chief and the police department policies and the implementation thereof.  As such, Plaintiffs' contention that Salvaggio must be a final policymaker for the City because he is a "City Executive Head" is merely conclusory.  Even still, the Fifth Circuit in *Zarnow v. City of Wichita Falls Texas*, held that, "Still, we have maintained that 'neither complete discretionary authority nor the reviewability of such authority [reference to the Chief of Police] automatically results in municipal liability.  There must me more." *Zarnow,* 614 F. 3d 161, 168, citing *Bolton v. city of Dallas, Tex.*, 541 F. 3d 545, 551 (5th Cir. 2008).

**C. Plaintiffs cannot show that the City Manager provided or gave Salvaggio <u>final</u> policy making authority.**

7.      Plaintiffs cite *Rivera v. Hous. Indep. Sch. Dist.*, 349 F. 3d 244, 247 (5th Cir. 2003) to establish that, "The policymaker must have final policymaking authority." *Id.* However, Plaintiffs only provide conclusory assertions that the Leon Valley City Manager, "through custom and usage, provided Salvaggio with policymaking authority." Plaintiffs rely on their manipulation of the Fifth Circuit's holdings in *Gros v. City of Grand Prairie Texas*, 181 F. 3d 613, 615-16 (5th Cir. 1999) and *Zarnow v. City of Wichita Falls*, 640 F. Supp. 2d 844, 848 (N.D. Tex. 2009). *Gros* and *Zarnow* are both distinguishable from the instant case because the City of Leon Valley's Charter and Ordinances expressly state that the City Manager has policymaking authority for the police department policies and the City Manager has administrative control and supervision over the police chief. **[Dkt. 152-1, pp. 222-232, Exhibit "Y" at "Y4" and "Y5"].** In *Gros*, the court held that there were sources of "state and local law" that determined which officials or bodies possessed <u>final</u> policymaking authority. However, contrary to the holding in *Gros,* Plaintiffs have not presented "custom or usage" evidence that Salvaggio was the <u>final</u> policymaking authority of the police departments policies. *Gros* at 616. Plaintiffs have not provided evidence to demonstrate that Salvaggio, ". . . was given the reins to promulgate Defendant City policy for police officers to detain or arrest individuals who filmed the police or were standing at or near any First Amendment protest." **[Dkt. 153-1, p. 50, ¶2].** On the contrary, at the direction of Salvaggio, Defendant Anderson prepared an Operational Security Plan for the First Amendment Audit/Demonstration on June 18, 2018, which was used for the June 23, 2018, Audit/Demonstration, and discussed at the June 18, 2018 police pre-event briefing. The Operational Security Plan informed the officers that the police department is committed to the protection of the constitutional rights of persons and groups to conduct peaceful and lawful

demonstrations.  **[Dkt. 153-3, Plaintiffs' MPSJ Exhibit 44, p. 3 ¶4, DEFT COLV 11305-11308; Dkt. 153-3 Exhibit 98 Anderson Deposition, p. 56:2-23; p. 103:6-25, p. 104:1-25, 105:1-25, 106:1-14; Salvaggio Deposition, Exhibit 50, p. 156:12-25; p. 157:1-14].**  Since Plaintiffs' have not established that a City's final policy maker, Plaintiffs have not satisfied the first requirement for the City's waiver of immunity under *Monell* and the City must be dismissed from this case.

### II.   In the alternative, Plaintiffs have not shown that the City has an unconstitutional policy, practice, or custom that violated Plaintiffs' constitutional rights.

8. Assuming arguendo, Plaintiffs have identified a final policymaker, Plaintiffs have not provided sufficient evidence that either Salvaggio or another final policymaker actually or constructively knew of the existence of an unconstitutional policy or policies.

### A.   Salvaggio's or City Manager's alleged interpretation of Municipal Court's Decorum Order is not a policy, custom or practice of the City.

9. Judge Morales' Standing Orders Governing Court Decorum regarding Leon Valley Municipal Court Municipal Court **[Dkt. 153-3, Plaintiffs' MPSJ Exhibit 51, Def Officers Bates No. 000003, Standing Orders]** is not a policy, practice, or custom of the City.  A municipality cannot be liable for judicial conduct it lacks the power to require, control, or remedy, even if that conduct parallels or appears entangled with the desires of the municipality." *Eggar v. City of Livingston,* 40 F.3d 312, 316 (9th Cir. 1994).  The Fifth Circuit has held that a municipal judge acting in his judicial capacity does not act as a municipal official or lawmaker. *Johnson v. Moore,* 958 F.2d 92, 94 (5th Cir. 1992).  Actions taken by municipal judges in their judicial capacities cannot constitute municipal policy. *Harris v. City of Austin*, 2016 WL 1070863 *4 (W.D. Tex. March 3, 2016). "Courts likewise have found that standing was lacking in claims against municipalities based on he acts of local judges whom they did not have power to control. *Freedom

*From Religion Foundation, Inc., v. Mack,* 2018 WL6981153 (S.D. Tex. Sept. 27, 2018), citing *Eggar* at 316.

      **B.**      **City of Leon Valley does not have a "Trespass Policy"**

10.      Plaintiffs have not shown that the City has a policy, practice, or custom of issuing trespass notices to alleged First Amendment Auditor Groups. Although Plaintiffs constantly premised their deposition questions regarding the City's "trespass policy," the testimony provided by the City's policymaker, City Manager, Caldera, repeatedly stated that she did not know of any City of Leon Valley criminal "trespass policy.**" [Dkt. 153-3, Plaintiffs' MPSJ Exhibit 85, p. 46:4-7; p. 62:25; p. 63:1-5]**. As such, Plaintiffs cannot demonstrate that City Manager Caldera, or any alleged final policy maker were aware or constructively knew of the existence of a "trespass policy." Therefore, Plaintiffs do not have a valid §1983 claim against the City. *Meadowbriar Home for Children, Inc. v. Gunn,* 81 F. 3d 521, 532-33 (5th Cir. 1996).[3]

11.      Plaintiffs assert in their Motion for Partial Summary Judgment that, "All of the arrests were pretextually directed at the instruction of Defendant Salvaggio." **[Dkt. 153-1 p. 47, ¶1].** Plaintiffs must allege with **specificity** and **particularity** that their claims are based on the City's official policy, **not** the policy of an individual official or officer. *Bennett v. City of Slidell,* 728 F.2d 762, 769 (5th Cir.1984). Plaintiffs have failed to establish a City policy, practice or custom.

      **III.**      <u>**In the alternative, Plaintiffs have not shown that the City Manager, or any other final policymaker, knew of the existence of the alleged policy with deliberate indifference to the Plaintiffs' constitutional rights.**</u>

12.      To demonstrate deliberate indifference to a constitutional right, the plaintiff <u>must</u> show "that a municipal actor disregarded a <u>known</u> or <u>obvious</u> <u>consequence</u> of his action." *Board of Cnty.*

---

[3] The Court denied Plaintiff's Motion to Leave to file their Third Amended Complaint to add an additional new claim for First Amendment retaliation regarding the City's alleged official retaliation based on the City's practice of criminally trespassing Plaintiffs **[Dkt. 145]** which Plaintiffs are attempting to reassert in their Motion for Partial Summary Judgment. **[Dkt. 153-1].**

*Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 410 (1997) (Emphasis added). As demonstrated by his deposition testimony, Chief Salvaggio received direction from the Bexar County District Attorney's Office ("DA") on or about May/June 2018 that the Leon Valley police could seize phones of witnesses to a crime. **[Dkt. 153-3 Plaintiffs' MPSJ Exhibit 50 Salvaggio Deposition, p. 34:23-25, p. 35:1-4; p. 143:1-13].** On or about May or June 2018, the DA's office discussed the seizure of phones/recording devices with Salvaggio because the City was losing original evidence and/or needed to capture evidence and this was the DA's office instructions to Salvaggio to follow **[Dkt. 153-3 Plaintiffs' MPSJ Exhibit 50, p. 143:1-21; p. 174:4-16; p. 180:3-14]**. The disregarded "known" or "obvious" consequences of Salvaggio's actions were not present since Salvaggio testified in his deposition that he was following the advice and/or direction of the Bexar County District Attorney's office. **[Dkt. 153-3 Plaintiffs' MPSJ Exhibit 50, p. 35:1-4; p. 181:4-14; p. 142:24-25; p. 143:1-25; p. 144:1-12; p. 183:17-22; p. 264:24-25; p. 265:1-24; p. 124:2-18; p. 134:2-25; p. 135:1-9].**

13.     However, assuming arguendo, that the information provided to Salvaggio by the District Attorney's Office may have not been accurate or correct, a police chief's promulgation to his department of misinformation did not establish deliberate indifference to constitutionally protected rights.[4]  *Zarnow* 614 F. 3d. at 161. In addition, any "Unintentionally negligent oversight" by Salvaggio over his officers, does not satisfy the deliberate indifference standard. *Zarnow* 614 F. 3d. at 170, citing *Gonzalez v. Ysleta Indep. Sch. Dist*., 996 F. 2d 745, 756 (5th Cir. 1993) (citation omitted).

---

[4] Salvaggio, his captain, lieutenant or sergeant would disseminate the instructions from the DA to the other officers. **[Dkt. 153-3 Plaintiffs' MPSJ Exhibit 50 Salvaggio Deposition, p. 182:4-15].**

**IV.     In the alternative, Plaintiffs never asserted that the City's alleged polices, practices and customs were the moving force to arrest and detain Plaintiffs and unlawfully seize their property.**

14.     Not until Plaintiffs filed their Motion for Summary Judgment do they plead that the City's alleged unconstitutional policies were the cause of the constitutional violations suffered by Plaintiffs.  Even then, Plaintiffs generally refer this Court to the Deposition testimony of Salvaggio and two emails from the then City Manager Kuenstler **[Dkt. 153-1, p. 52, fn 333 and 334]** and expect the court to engage in an exercise of "Where is Waldo" to deduce municipal culpability and causation against the City.  Plaintiffs further embellish the deposition testimony in this case by manipulating Salvaggio's "Yes" answer to Plaintiffs' counsel's question, "Okay.  But you told officers prior to going out there on June 23rd 2018, to **seize recording devices from anyone out there recording, correct**?   **[Dkt. 153-3 Exhibit 50 Salvaggio Deposition, p. 242:17-20].**  (Emphasis added).  To, "Defendant Salvaggio testified that, before the protest on June 23rd, he ordered his officers to have **all recording equipment seized from any individual who was present." [Dkt. 153-1, p. 52, ¶2].**  (Emphasis added).  Not only is Plaintiff's evidence on the "moving force" requirement conclusory, but it is also misleading.  Plaintiffs continue to assert the conclusory allegation that this alleged order by Salvaggio, ". . . did not apply to any other individuals other than those Defendant Salvaggio and Defendant City Manager deemed to be a part of the "auditors" regardless of whether facts supporting this proposition existed or were verified." **[Dkt. 153-1, p. 52, ¶2]**.  However, Plaintiffs do not present any objective evidence that they were arrested, and their recording devices seized when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been arrested or their video equipment seized.[5]

---

[5] The Supreme Court recently held, a "plaintiff pressing a [First Amendment] retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." (An exception exists "when a plaintiff presents objective evidence

15. The Fifth Circuit has emphasized that without **all** the requisite elements for a *Monell* claim to establish liability, municipal liability is not possible. "[W]here a court fails to adhere to the rigorous requirements of culpability (by policymakers) and causation, municipal liability collapses into *respondeat superior* liability." *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (quoting *Bd. of County Comm.of Bryan Cnty. v. Brown*, 520 U.S. 397, 415 (1997). (reference to policymakers added); *City of Canton v. Harris*, 489 U.S. 378, 391-92 (1989). "That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; . . ." *Board of the County Com'rs of Bryan County, Okla. v. Brown,* 520 U.S. 397, 406-407 (1997). Plaintiffs fail to prove a *Monell* liability claim against the City and their causes of action against the City should be dismissed.

### V. In the Alternative, Plaintiffs', Brown, Springer, Jonathan Green, Jason Green, and Mead, alleged injuries were *de minimis*.

16. Plaintiffs asserts that Brown, sustained injuries when he was tased during his arrest on June 18, 2018. The video shows that Brown did receive scrapes on his forearm from his arrest. **[Dkt. 152-1 Exhibit "F", Vasquez body cam video recording at 13:59:53–14:03:42; Exhibit "G" Azar body cam video recording at 13:54:14-13:54:19, 13:56:27-13:56:28].** Brown testified in his deposition that he is a large man 6'8" approximately 250 lbs. and hurt his ribs and neck but did not hurt his shoulder during his June 14, 2018, arrest and does not believe or know if he received any injuries. **[Dkt. 153-3 Exhibit 10 Brown Deposition, p. 115:5-10; p. 158:16-25; p. 159:1-25; 160:1-8]**. Brown recalled receiving treatment at the VA hospital, but just reported bruising and taser marks on his body. **[Dkt. 153-3 Exhibit 10 Brown Deposition, p. 164:3-25; p. 165:1-16].** Although indicating that he provided his medical records to Defendant's counsel, no medical

---

that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724, 1727 (2019).

records were received for Brown's alleged medical treatment he received for the alleged injuries on June 14, 2018, he testified to in his deposition. No medical records were provided for any mental or psychological injuries he alleged may have occurred.

17. Plaintiff Springer asserts that police officers purposefully maneuvered Springer's arm in an unnatural position causing, "significant shoulder pain" and alleging that his handcuffs were tight causing him to lose circulation in his hands. **[Dkt. 153-1, pp. 18-19, Subsection 2; Dkt. 153-3, Exhibit 76 Springer Affidavit p. 83, ¶7].** No medical records were received for verification or treatment of Springer's alleged injuries he received on June 18, 2018. No medical records were provided for any mental or psychological injuries he alleged may have suffered.

18. Plaintiff Johnathan Green asserts that he received a shoulder injury and he complained that his handcuffs were too tight regarding his arrest and detention on June 23, 2018. **[Dkt. 153-3, Exhibit 78 Jonathan Green Affidavit p. 92, ¶¶8-9].** No medical records were received for verification or treatment of Johnathan Green's alleged injuries he received on June 23, 2018. Although Plaintiffs' MPSJ references Johnathan Green's affidavit as evidence that he went to Mount Carmel East Hospital on June 27, 2018, to be treated for his shoulder injury resulting from his June 23, 2018, arrest, no reference was made in his affidavit. **[Dkt. 153-1, pp. 28-29, Subsection 7; Dkt. 153-3, Exhibit 78 Jonathan Green Affidavit p. 92, ¶¶8-9].** In his deposition, Johnathan Green, testified that he had a sprained shoulder and did not seek any medical treatment for his alleged injury after his June 27, 2018, hospital visit. No medical records were provided for any mental or psychological injuries he alleged may have suffered.

19. Plaintiff Jason Green asserts that handcuffs were placed on him too tight during his detention on June 23, 2018. He complains that he suffers from occasional numbness to his thumbs as a result of being handcuffed during his detention. **[Dkt. 153-1, p. 25, Subsection 2; Dkt 153-**

**3 Jason Green Affidavit p. 86-89, ¶13].** No medical records or bills were received for verification or treatment of Jason Green's alleged injuries he received on June 23, 2018. No medical records were provided for any mental or psychological injuries he alleged may have suffered.

20. It is well-settled in the Fifth Circuit that in order to state a claim for excessive force, the plaintiff's alleged injury, though not required to be significant, must be more than *de minimus*." *Martinez v. Nueces County,* 2015 U.S. Dist. LEXIS 470, *10,*11 (S.D. Tex. Jan 5, 2015, no pet.), citing *Williams v. United States,* 2009 U.S. Dist. LEXIS 100154, 2009 WL 3459873, *12, *13 (S.D. Tex. 2009) ("Short-term pain alone is insufficient to constitute more than *de minimis* injury for purposes of an excessive force claim.") (". . . claim of 'severe bruising and scrapes upon his body' and 'extreme pain from being kicked and sprayed in the eyes with pepper spray' were *de minimis"*), ("While the shoving and kicking, as alleged by the plaintiff, may have been unnecessary and inappropriate, the minor injury inflicted support the conclusion that the harm sustained was no more than *de minimis."*); *Grandpre v. Gusman*, 2018 WL 3632364, * 5 (E.D. La 2018).

21. Plaintiffs who claim receiving an injury as a result of the June 14th, 18th and 23rd incidents have failed to allege or provide sufficient evidence that they suffered more than a *de minimis* injury. As the summary judgment evidence supports, there were no ascertainable injuries on Plaintiffs at the time or after the dates of their alleged incidents. Plaintiffs have not provided any medical records to prove that they had injuries resulting from the alleged excessive force used by Individual Defendant Officers or any alleged Officer supervisor.

22. Even taking Plaintiffs' alleged injuries as true, their encounters with Individual Defendant Officers, were "*de minimis"* and their alleged *"de minimis"* injury was not for an extended time. From Plaintiffs' pleading, affidavits, and deposition testimony, Plaintiffs handled any injuries they

may have incurred as "*de minimis.*" "[A] *de minimis* use of force will rarely suffice to state a constitutional claim. *Regels v. Giardono* 113 F. Supp 3d 574, 599 (N.D.N.Y. 2015).

## CONCLUSION

23. When ruling on a motion for summary judgment, the Court must view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.,* 402 F.3d 536, 540 (5th Cir. 2005). However, when the nonmoving party fails "to address or respond to a fact raised by the moving party and supported by evidence, the court may consider the fact as undisputed" and "[s]uch undisputed facts may form the basis for a summary judgment." *Broadcast Music, Inc. v. Bentley,* Civil Action No. SA-16-CV-394-XR, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017).

**WHEREFORE, PREMISES CONSIDERED**, Defendant City of Leon Valley prays the Court grant its Motion for Summary Judgment and that all of Plaintiffs' claims be dismissed with prejudice. The City prays for such other and further relief to which it is justly entitled.

Signed this 10th day of March, 2022.

Respectfully submitted,

DENTON NAVARRO ROCHA BERNAL & ZECH
A Professional Corporation
2517 N. Main Avenue
San Antonio, Texas 78212
Telephone:   (210) 227-3243
Facsimile:   (210) 225-4481
pbernal@rampagelaw.com
aruiz@rampagelaw.com

BY:   */s/ Adolfo Ruiz*
PATRICK C. BERNAL
State Bar No. 02208750
ADOLFO RUIZ
State Bar No. 17385600
COUNSEL FOR DEFENDANT
CITY OF LEON VALLEY

**CERTIFICATE OF SERVICE**

      This is to certify that a true and correct copy of the foregoing instrument has been served upon the below named individual(s) via certified mail, return receipt requested, unless otherwise indicated, and according to the Federal Rules of Civil Procedure on the 10th day of March, 2022.

| | |
|---|---|
| Brandon J. Grable<br>Austin M. Reyna<br>GRABLE GRIMSHAW MORA, PLLC<br>1603 Babcock Road, Suite 280<br>San Antonio, Texas 78229 | **E-NOTIFICATION** |
| Charles S. Frigerio<br>Law Offices of Charles S. Frigerio PC<br>111 Soledad, Ste. 840<br>San Antonio, Texas 78205 | **E-NOTIFICATION** |
| Brandon Joseph Pierce<br>644 Kerry<br>Crowley, Texas 76026 | **Email:** ethicsinstead@protonmail.com |
| Selena Herrera<br>202 S. Hoy Street<br>Buffalo, Oklahoma 73834 | **CMRRR & Copy First Class Regular Mail** |

                                              */s/ Adolfo Ruiz*
                                              PATRICK C. BERNAL
                                              ADOLFO RUIZ