UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **RUSSELL ZINTER; ET AL.** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL NO. SA-18-CA-680-RCL-RBF** |
| | § | |
| **CHIEF JOSEPH SALVAGGIO; ET AL.** | § | |
| | § | |
| **Defendants.** | § | |

---

**DEFENDANT CITY OF LEON VALLEY'S REPLY TO
PLAINTIFFS' RESPONSE TO CITY'S MOTION FOR SUMMARY JUDGMENT**

---

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES, Defendant CITY OF LEON VALLEY ("City") and files this its Reply to

Plaintiffs' Response[1] to Defendant City's Motion for Summary Judgment ("MSJ") **[Dkt. 171-1]**

and would respectfully show the Court the following:

**I.  Plaintiffs cannot establish that the alleged actions by officers rose to the level of pervasive custom or practice.**

**A. Plaintiffs allege isolated incidents.**

1.      The alleged detentions and/or arrests in May 2018 and June 2018 are isolated incidents that

do not support a *Monell* cause of action against the City.  Plaintiffs attempt to weave a series of

isolated incidents to create an illusionary pattern of alleged coordinated tactics against First

Amendment auditors, protestors, or demonstrators by the City of Leon Valley through its police

officers under the direction of former police chief Joseph Salvaggio.

---

[1] Defendant objects to Plaintiffs' late filing of their Response on March 11, 2021, and requests that the Court not consider Plaintiffs' Response.

2.      "[I]solated events are generally insufficient to be the persistent, often repeated constant violations that constitute custom, and policy as required for municipal section 1983 liability." *Gates v. Texas Dep't of Protective & Regulatory Servs*., 537 F.3d 404, 437 (5th Cir. 2008) (citing *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995) (internal quotations omitted)). Further, even a "handful" of instances would not rise to the level of a pervasive custom or practice. *Pineda v. City of Hous.,* 291 F.3d 325, 329 (5th Cir. 2002).  A pattern requires "sufficiently numerous prior incidents as opposed to isolated instances."  *Peterson* 588 F.3d at 851.

3.      An official policy or custom can be found in the form of "written policy statements, ordinances, or regulations," ***or a widespread practice that is "so common and well-settled*** as to constitute a custom that fairly represents municipal policy." *Peterson,* 588 F.3d at 847 (citing *Piotrowski,* 237 F.3d at 579) (Emphasis added).   The Fifth Circuit has characterized the Supreme Court's understanding of a custom as "'persistent and widespread . . . practices,' 'systematic maladministration' of the laws, practices that are ***'permanent and well settled*,'** and '***deeply embedded traditional ways of carrying out . . . policy.'"***  *Bennett*, 728 F.2d at 768 (5th Cir. 1984) (citing *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 167–68 (1970)).

4.      "If actions of city employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees."  *Webster v. City of Hous.,* 735 F.2d 838, 842 (5th Cir. 1995.  "A pattern also requires 'sufficiently ***numerous*** prior incidents,' ***as opposed to 'isolated instances*.'"** *Id*. at 851 (quoting *McConney v. City of Hous*., 863 F.2d 1180, 1184 (5th Cir.1989) (Emphasis added).  To establish a pattern, a plaintiff must offer ***similarity*** and ***specificity***; "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the

specific violation in question." *Ramirez v. Escajeda*, 298 F. supp 933, 943 (W.D. Tex. 2018) (Emphasis added), citing *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 382–83 (5th Cir. 2005).

### B. Plaintiffs' isolated incidents do not meet the "widespread," "well settled," or "numerous" standards.

5.      Plaintiffs attempt a shotgun approach to establish a pattern of unconstitutional policies, practices, or customs by the City without identifying a persistent, or permanent pattern.  Plaintiffs aver the start of the alleged pattern began on May 1, 2018, with Padilla's self-inflicted arrest, then the violation of his criminal trespass charges.  At the end of May, Plaintiff Miller was arrested for carrying a weapon in prohibited places.  These two instances are totally unrelated and establish no pattern.

6.      The first incident begins with the arrest of third-party First Amendment Auditor Jesus Padilla ("Padilla") (YouTube name: "Mexican Padilla").[2]  On May 2, 2018, Padilla was discovered in a secured area of City Hall and was requested to leave the premises.  Padilla refused to leave and refused to submit to arrest for not leaving the restricted area.  **[Dkt. 168-6, p. 75, Salvaggio Report 7/10/18].**  Padilla was arrested for Criminal Trespass and Resisting Arrest.  Padilla broadcasted a call for other, "First Amendment Auditors" to come to Leon Valley **[Dkt.  171-4, pg. 360].** On May 9, 2018, Padilla returned to City Hall with other auditors.  Padilla was arrested for violation of criminal trespass. **[Dkt.  171-1, pg. 11].**  This encounter was also live streamed and/or videoed and broadcasted on YouTube channels **[Dkt.  171-1, p. 11, fn 73].**

7.      The second unrelated incident occurred on May 31, 2018.  Visibly posted Penal Code 30.06 and 30.07 signs were posted at the entrance of City Hall, providing notice that weapons were not

---

[2] Plaintiffs' Response to City's MSJ, Dkt. 171-4, pp. 86, 2123; DEFT COLV 2954; Criminal case, Tarrant County CC6, case 1546160, harassment (judge).

permitted on the premises. Plaintiff, Jack Miller, intentionally walked inside City Hall carrying a holstered handgun during the time municipal court was in session.  After Miller entered the building, he was stopped by Leon Valley police, and was escorted out of the building.  Miller returned to City Hall without the handgun to file a complaint regarding the alleged illegal enforcement of 30.06 and 30.07.  Miller was later arrested later that night at his home for violation of Texas Penal Code 46.03[3] Weapon in Prohibited Places. **[Dkt. 171-4 Plaintiffs' Exhibit 52, fn 89, Incident Report 5/31/18; Officer Bates 000170 – 000202]**.

8.      The June 14, 18 and 23rd incidents are sufficiently documented in Defendant's Motion for Summary Judgment **[Dkt. 152 ¶¶4-8].**

9.      On June 14th, Padilla accompanied Plaintiff, Brown, to Leon Valley City Hall. Brown testified that Padilla chose to take him to Leon Valley.  **[Dkt. 171-4 Plaintiffs' Exhibit 10 p. 226, pg. 62:17-25; p. 63:1-25; p. 64:1-19].**   After Brown was denied entry into City Hall pursuant to the Municipal Judge Morales' Standing Order and escorted outside, Padilla intentionally entered City property again in violation of his criminal trespass charge.   This provided an opportunity for Brown to interfere (intentionally or not) in Padilla's arrest by not timely obeying police officers' orders to step back then actively resisting arrest.  Brown was arrested for Interference with Public Duties of an Officer, Texas Penal Code §38.15 (a) and Resisting Arrest §38.03 (a).   **[Dkt. 152-1 Exhibit "D" p. 17, June 14, 2018 Incident Report].**

10.      On June 18th, Plaintiff, Bailey carried a modified representation of the American flag with blue stripes in front of the doors of City Hall and was arrested for Obstructing a Public Passageway, pursuant to Texas Penal Code §42.03. **[Dkt. 152-1 Exhibit I p. 38, June 18, 2018 Incident Report].**  Plaintiff Springer was recording and was charged with Interference with Public Duties

---

[3] Plaintiff Miller created the deception that the holstered weapon on his person was real but a replica. [Dkt. 153-3, p. 75, ¶4].

<u>of an Officer</u> by physically refusing to relinquish his camera/phone by pulling away and preventing Farias from seizing his camera as evidence of a crime (Bailey's obstruction of passageway). Texas Penal Code §38.15. **[Dkt. 152-1 Exhibit Q p. 132, June 23, 2018 Incident Report].**

11.      On June 23rd, the Plaintiffs involved on this day, were detained and released, or arrested. Those arrested were charged with the following:

      (i)      Plaintiff Springer was arrested for <u>Obstruction or Retaliation</u> under Texas Penal Code § 36.06, a third-degree felony.
      (ii)     Plaintiff Pierce was arrested for <u>Interference with Public Duties of an Officer</u> and <u>Failure to Identify</u>. Texas Penal Code §38.15, §38.02.
      (iii)    Plaintiff Jason Green was arrested for <u>Interference with Public Duties of an Officer</u>, <u>Resisting Arrest,</u> and <u>Failure to Identify</u>. Texas Penal Code §38.15, §38.02, §38.03.

12.      The incidents which are the basis of Plaintiffs' claims, are wholly unrelated and fail to establish a pattern.  On June 14th, Brown was arrested for Interfering with Public Duties of an Officer by not obeying instructions to timely stand back in Padilla's third arrest for criminal trespass.  On June 18th, Bailey was arrested for blocking a passageway, and Pierce was arrested for Interfering with Public Duties of an Officer, by refusing to relinquish his camera when instructed to do so.  Dissimilar to Brown's arrest for the same charge. The arrests on June 23rd consisted of two instances of Interference with Public Duties of an Officer and Failure to Identify and one instance of Resisting Arrest.  The most serious charge of Obstruction or Retaliation was only asserted against Springer and third-party Bao-Quoc Trac Ngyuen.

13.      The remaining Plaintiffs were either detained and/or released; or, like Miller, just left the premises.  Assuming arguendo, if errors were committed by individual officers or Chief Salvaggio in performance of a City policy, custom or practice, the Plaintiffs must demonstrate, ". . .a pattern of abuses that transcends the error made in a single case." *Peterson at* 850–51 (quoting Piotrowski, 237 F.3d at 582).

14.     Prior to June 14, 2018, Plaintiffs provide nothing but conjecture, that there was a pattern of similar persistent, numerous, and widespread abuses and/or instances by the City of an alleged policy of arresting Plaintiffs for filming police officers or public buildings (inside or outside) or any other alleged unidentified or assumed constitutional violation Plaintiffs are asserting. In addition, Plaintiffs have not plead in their Second Amended Complaint that the City's alleged policy was the "moving force" behind the Plaintiffs' alleged injuries, which is necessary to support their *Monell* claim against the City. *Monell v. Department of Social Services,* 436 U.S. 658, 694 (1978). **[Dkt. 87]**.[4]  Plaintiffs only referenced "moving force" in their Motion for Summary Judgment, based on the conclusory assumption that an unidentified City Manager deferred all law enforcement decisions and policy making to Salvaggio. **[Dkt. 153-1, p. 51, ¶2].**  Salvaggio is not a final policy maker for the City pursuant to the City Charter and City Ordinances. **[Dkt. 152-1 pp. 222-224, Affidavit of City Manager Caldera, Exhibit Y].**

**II.     Plaintiffs only alleged cause of action against the City is First Amendment Retaliation.**

15.      Plaintiffs' Motion for Summary Judgment indicates that Plaintiffs are only seeking judgment against the City on their First Amendment Retaliation claim on Count 12 (XII) of their Second Amended Complaint **[Dkt. 153-1, pp. 2-3].**  However, under Count 12, Plaintiffs assert a wide berth of alleged violations of constitutionally protected conduct to include in the Complaint but does not provide paragraph or section references. **[Dkt. 87, p. 38 ¶198].**  From the other Counts listed in Plaintiffs' Complaint, Count 1, regarding the June 14th incident, the allegation against the City is retaliation against Plaintiff, Brown, for "recording the police."  **[Dkt. 87, p. 25, ¶98]**. However, Plaintiffs removed Count 1, against the City in their Motion for Summary Judgment.

---

[4] Only referenced in Plaintiffs' Response to City's Motion for Summary Judgment [Dkt. 153-1, p. 47, Sec. G.]

**[Dkt. 153-1, p. 32 Sec. C].**[5]  Count 7, refers to the June 18th incident and asserts an allegation against the City that it retaliated against the named Plaintiffs for their ". . . participation in a lawful protest and to prevent them from engaging in such". **[Dkt. 87, p. 29 ¶¶130-139].**  It appears that retaliation against Plaintiffs for participation in a lawful protest is the basis of the City's retaliation against Plaintiffs.

16.      In a similar case to the instant lawsuit, *Culbertson v. Palmer*, 790 F. 3d 608 (5th Cir. 2015), Plaintiffs were employees of a college that contracted to oversee breath alcohol testing for the Harris County Sheriff's Office. Plaintiffs sued the County and District Attorney for causing the college to terminate Plaintiffs and asserted a §1983 First Amendment retaliation claim for their expression of free speech regarding criticisms of the police department.  *Id.* at 616.  Plaintiffs claimed that the County was liable for retaliation because of a *de facto* policy or custom of retaliation for the exercise of First Amendment rights. *Id.* at 628. Plaintiffs alleged that retaliation can be **inferred** from the number of individuals from the District Attorney's Office who participated in the campaign against Plaintiffs and the "very public nature" of that campaign.  *Id.* at 628.  The *Culbertson* court held, "The plaintiffs' complaint falls short of alleging that Harris County had a "persistent, widespread practice" of retaliation for the exercise of First Amendment rights." *Id.* The court further found that the retaliatory campaign against Plaintiffs was publicly known, but Plaintiffs failed to allege a "widespread practice" of retaliation because they "offered **no evidence that similar retaliation had victimized others**." *Id.* (Emphasis added).  There was, in other words, no allegation of a "widespread practice" of retaliation that is "so common and well settled" as to constitute the policy of Harris County.  *Id.*, citing *Webster v. City of Houston,* 735 F.2d 838, 853 (5th Cir.1984).

---

[5] Yet again, Plaintiffs assert that they were deprived in their constitutional right to film on June 18 and 23, 2018. **[Dkt. 153-1, p. 42, Sec. 1; p. 44, Sec. 3].**

167.    A recent insightful Fifth Circuit case cited by Plaintiffs, *Villarreal v. City of Laredo*, 14 F. 4th 532 (5th Cir. Nov 1, 2021) bears noting.  In *Villarreal,* Plaintiff journalist filed § 1983 action against city, police officers, prosecutors, and county alleging pattern of harassment and retaliation, culminating in her arrest, in violation of her First, Fourth, and Fourteenth Amendment rights. *Id.* The court found that, "Villarreal does not allege that city employees retaliated against, investigated, or arrested anyone else because of their speech," citing *Culbertson* at 628. The *Villarreal* court affirmed the district court's judgment dismissing Villarreal's municipal liability claim against the City of Laredo.  *Id.*  In the instant case, Plaintiffs has presented insufficient and/or no evidence that similar retaliation(s) had victimized others and that said practice is widespread, common, and well settled.  As such, Plaintiffs claims against the City should be dismissed.

### A.    No chilling effect from preventing Plaintiffs in engaging in the future protest activities.

17.    In response to Defendants' Motion for Summary Judgment, as to why Plaintiffs are not entitled to declaratory relief, Plaintiffs respond, "The inquiry is not whether the Plaintiffs have alleged injunctive relief, but rather whether Plaintiffs have alleged 'facts from which it appears there is a substantial likelihood that [they] will suffer injury in the future'. . . . "Throughout this Response, Plaintiffs have relayed a harrowing nature of the likelihood of success and the threat of injury if they are to be in the vicinity of Defendant City."  **[Dkt. 171-1, pp. 42-43].**  However, most if not all Plaintiffs have testified in their depositions that after their alleged arrest or detention on June 14th and 18th, they returned the following day for the next rally or protest at the City. Plaintiff Brown testified that he went back to the City on June 18, 2018. **[Dkt. 171-4, Plaintiffs' Exhibit 10 p. 129:24 to 134:2].**  Also, some Plaintiffs testified that they attended and filmed other rallies and/or protests after June 23, 2018.

18.     What is common to the First Amendment Retaliation claims in Plaintiffs' Second Amended Complaint in Counts, 1, 7, and 12 is the paragraph, "The defendants' adverse acts would deter a person of ordinary firmness from continuing to engage in such conduct in the future."  **[Dkt. 87, ¶¶ 99, 138, and 199].**  Plaintiffs cite *Villarreal* and *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002), to support their major contention that if a person goes to Leon Valley, the City and/or police officers will threaten you with arrest, ripping equipment from your hand, and threatened with future arrest, ". . . all for exercising a Constitutional right that would chill a person of ordinary firmness from continuing to engage in filming the police or a protest for fear they may be manhandled or have their personal property illegally seized. **[Dkt. 153-1, pp. 44-45].**  However, Plaintiffs misinterpret *Villarreal*, the most recent 5th Circuit case cited by Plaintiffs.[6]  In *Villarreal*, the Fifth Circuit held that, "Notwithstanding that the second element turns on "a person of ordinary firmness," this court has held that 'a retaliation claim requires some showing that *the plaintiffs' exercise of free speech has been curtailed*'."  *Villarreal* at 542, citing *Keenan* at 259.  The court noted that Villarreal failed to allege that her own "exercise of free speech has been curtailed." *Id.* The court found that, although Villarreal's contention that "a chilling injury does not require the injured party to stop exercising her First Amendment rights," may be the law in other circuits, "it is not the law of this circuit." *Id.*  The Fifth Circuit held that, "[w]e are duty-bound to follow our circuit precedent.  Accordingly, we must hold that Villarreal has failed to sufficiently plead a First Amendment retaliation claim."  As such, Plaintiffs have to show that it is their free speech that has been curtailed.

## III.     If Individual Defendant Officers are entitled to qualified immunity, the City retains its sovereign immunity.

---

[6] Plaintiffs provide the Lexis cite: 2021 U.S. App. LEXIS 325, at *15 (5th Cir. Nov. 1, 2021).  **[Dkt. 153-1, p. 41, Sec. F].**

19.     Defendant Officers are entitled to the protective shroud of qualified immunity for Plaintiffs' claims if no constitutional violation was committed against Plaintiffs and the Individual Defendant officers' actions were objectively reasonable based on established law at the time of the incidents in question, as a matter of law. ***Mullinex v. Luna***, 577 U.S. 7, 12 (2015).  Under *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the first step in the qualified immunity analysis is "to consider the materials submitted in support of, and in opposition to, summary judgment in order to decide whether a constitutional right would be violated if all facts are viewed in favor of the party opposing summary judgment.  If no constitutional violation is shown, the inquiry ends. *Cunningham v. City of Wenatchee,* 345 F.3d 802, 810 (9th Cir.2003).  As such, if Plaintiffs fail on their burden of proof, the inquiry ends and the City retains its sovereign immunity.

## IV.     Plaintiffs identify themselves as First Amendment auditors, protestors and/or demonstrators.

20.     Plaintiffs argue that they are not associated with a group that call themselves "First Amendment Auditors", but that Plaintiffs simply had independent motives for wanting to protest and film during the "relevant time periods". **[Dkt. 171-1, p. 5, ¶4].** Plaintiffs cite to Plaintiff, Mead's deposition as a person with independent motives to protest and film. **[Dkt. 171-1, p. 5, fn 19].**  However, Mead testified in his deposition that he donated money and created a web page called Fan Club dedicated to correcting misinformation regarding first amendment laws. **[Dkt. 171-4 p. 104, Plaintiffs' Exhibit 6 at p. 26:11-25; p. 27:1-25; p. 28:1-2].**  Plaintiffs also cite to Plaintiff Brown's deposition, where he indicated that he went to Leon Valley on June 18, 2018, to lend his support, and to protest his arrest on June 14th. **[Dkt. 171-4 p. 243, Plaintiffs' Exhibit 10 p. 130:10-131:7].**  However, Brown did testify that he is for all constitutional rights and did attend

First and Second Amendment protests. **[Dkt 171-4 p. 219, Plaintiffs' Exhibit 10 p. 34:12-25; p. 35:1-3].**

21.    Although Plaintiffs appear to be distancing themselves from the term "First Amendment" either auditors/protestors/demonstrators or a combination of all three, Plaintiffs clearly understood their right to video or record police officers, since most if not all Plaintiffs were in possession of at least one recording device during the June 14, 18, and 23, 2018 incidents.  It appears it is the Plaintiffs associate "First Amendment" auditors, protestors, and demonstrators in a negative context and not the City.

**WHEREFORE, PREMISES CONSIDERED**, Defendant City of Leon Valley prays the Court grant its Motion for Summary Judgment and that all of Plaintiffs' claims be dismissed with prejudice.  The City prays for such other and further relief to which it is justly entitled.

Signed this 17th day of March, 2022.

Respectfully submitted,

DENTON NAVARRO ROCHA BERNAL & ZECH
A Professional Corporation
2517 N. Main Avenue
San Antonio, Texas 78212
Telephone:     (210) 227-3243
Facsimile:     (210) 225-4481
pbernal@rampagelaw.com
aruiz@rampagelaw.com

BY:     */s/ Adolfo Ruiz*
PATRICK C. BERNAL
State Bar No. 02208750
ADOLFO RUIZ
State Bar No. 17385600
COUNSEL FOR DEFENDANT
CITY OF LEON VALLEY

## <u>CERTIFICATE OF SERVICE</u>

       This is to certify that a true and correct copy of the foregoing instrument has been served upon the below named individual(s) via certified mail, return receipt requested, unless otherwise indicated, and according to the Federal Rules of Civil Procedure on the 17th day of March, 2022.

Brandon J. Grable                              **E-NOTIFICATION**
Austin M. Reyna
GRABLE GRIMSHAW MORA, PLLC
1603 Babcock Road, Suite 280
San Antonio, Texas 78229

Charles S. Frigerio                             **E-NOTIFICATION**
Law Offices of Charles S. Frigerio PC
111 Soledad, Ste. 840
San Antonio, Texas 78205

Brandon Joseph Pierce                       **Email:**  ethicsinstead@protonmail.com
644 Kerry
Crowley, Texas 76026

Selena Herrera                             **CMRRR & Copy First Class Regular Mail**
202 S. Hoy Street
Buffalo, Oklahoma 73834

                                     ***/s/ Adolfo Ruiz***
                                     PATRICK C. BERNAL
                                     ADOLFO RUIZ